1  Jennifer A. Golinveaux (SBN: 203056)
   JGolinveaux@winston.com
2  Samantha K. Looker (SBN: 340564)
   SLooker@winston.com
3  Winston & Strawn LLP
   101 California Street, 35th Floor
4  San Francisco, CA 94111-5840
   Telephone:     (415) 591-1000
5
   Attorneys for Plaintiff
6  MUSI INC.

7

8                UNITED STATES DISTRICT COURT
9                NORTHERN DISTRICT OF CALIFORNIA
                        SAN JOSE DIVISION
10

11 | MUSI INC., | Case No. 5:24-cv-06920 |
12 | Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
13 | v. | |
14 | APPLE INC., | |
15 | Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Musi Inc. ("Musi"), through its undersigned counsel, hereby brings this civil action against Defendant Apple Inc. ("Apple") for breach of contract and breach of the implied covenant of good faith and fair dealing, and alleges as follows:

## I. NATURE OF THE ACTION

1. This case arises from Apple's abrupt removal of Musi's mobile software application (the "Musi app") from the Apple App Store ("the App Store"), based upon an unsubstantiated third-party complaint, and in violation of the parties' contractual agreements. Despite its obligations to investigate complaints in good faith, Apple removed the Musi app based upon unsupported accusations from a third party who has failed to respond to Musi's communications. Worse, Apple was fully aware that the third party had failed to substantiate its claims to Musi. Apple's improper removal of the Musi app has caused—and continues to cause—substantial harm to Musi's business and reputation.

2. Plaintiff Musi is a mobile computing software company and the developer, owner, and operator of the Musi app, which provides users with enhanced functionality to interact with publicly available content on YouTube's website through an augmentative interface. Since its inception, and until September 24, 2024, when it was removed by Apple, the Musi app has only been available for download on the Apple App Store—an online marketplace for apps that is pre-installed on Apple smartphones. On September 24, 2024, Apple abruptly removed the Musi app from the App Store on the basis of a five-word complaint dated July 29, 2024 from a complainant identified as "YouTube Legal" ("Complainant"), with no supporting evidence or documentation. Despite Musi's efforts to contact Complainant to understand the nature and basis of its concerns, Complainant failed to either respond to Musi or to substantiate its accusations. Musi, on the other hand, has promptly responded to all of Apple's communications regarding the complaint.

3. Even more concerning, in April and May of 2021, Musi engaged with outside counsel for YouTube (apparently the same Complainant) to address several questions YouTube had about the functionality of the Musi app and compliance with the YouTube Terms of Service. Musi substantively addressed YouTube's concerns but heard nothing further from YouTube until several years later in March 2023, and July 2024 when YouTube sent a standard notice to Apple stating that the Musi app

violated its intellectual property rights without any explanation. Musi again contacted YouTube to address its concerns without receiving any response. During that time, Musi continued to offer the Musi app on the App Store, operating in substantially the same manner, without incident.

4. Apple nonetheless suddenly and unjustifiably removed the Musi app from the App Store on the basis of the July 2024 complaint. To date, the Musi app has not been restored. The removal was all the more galling in light of the fact that Apple threatened to remove the app if Musi did not try to resolve the alleged complaint with the Complainant, and Apple was fully aware that the Complainant had elected not to communicate in any way directly with Musi.

5. Apple's unjustifiable removal of the Musi app from the App Store not only violates the implied covenant of good faith and fair dealing, but also Apple's own contractual obligations to developers who make applications available on the App Store.

6. This civil action states claims and seeks monetary, injunctive, and other appropriate relief for Apple's breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. THE PARTIES

7. Plaintiff Musi, Inc. is a foreign corporation with its principal place of business in Manitoba, Canada.

8. Defendant Apple, Inc. is a business incorporated under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Musi is a foreign corporation with citizenship different from Apple, an American corporation.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Apple maintains its principal place of business in the State of California and in this District, and because a substantial part of the events or omissions giving rise to Musi's claims occurred in, were directed to, and/or emanated from this District.

11. Venue is also proper because Apple has consented to the exercise of personal jurisdiction by this Court. Apple and Musi are parties to the Apple Developer Program License Agreement ("the Developer Agreement"). Section 14.10 of the Developer Agreement provides that "[a]ny litigation or other dispute resolution" between the parties "arising out of or relating to this Agreement, the Apple Software, or [the parties'] Relationship . . . will take place in the Northern District of California", and that the parties "consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District." (Developer Agreement Schedule 1 § 14.10. Ex. A) As detailed below, Musi's claims against Apple "arise[] out of or relat[e] to" the Developer Agreement and their relationship. *Id.*

### IV.   INTRADISTRICT ASSIGNMENT

12. This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred there. Pursuant to Local Rule 3-2(e), for those case categories which are not district-wide, civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

### V.   GENERAL ALLEGATIONS

#### A.   Apple's App Store

13. Apple designs, manufactures, and sells mobile computing devices, including smartphones—branded "iPhones." iPhones are portable electronic devices that connect wirelessly to the internet and have advanced computing capabilities, including internet browsing and music streaming.

14. To function, smartphones require a mobile operating system ("mobile OS"). A mobile OS is piece of software that manages the smartphone's hardware and allows users to run software applications developed specifically for use on the smartphone, i.e., "apps."

15. iPhones are sold with Apple's proprietary mobile OS pre-installed, named "iOS." iPhone users frequently rely on iOS apps developed by Apple, as well as third-party iOS apps, to fully enjoy their iPhone's capabilities. Apps must be iOS-based to operate on iPhone.

16. Third-party developers make their iOS apps available to iPhone users primarily through Apple's App Store. The App Store is an app marketplace developed and operated by Apple for iOS

apps. As the developer, owner, and operator of the App Store, Apple contracts with all third-party iOS app developers that distribute their apps using the App Store, including Musi.

17. The App Store allows iPhone users to browse, search for, and download Apple-developed iOS apps, as well as third-party iOS apps—as long those third-party apps are approved by Apple. Without approval, a third-party iOS app cannot not be made available on the App Store.

**B. Apple's Developer Program License Agreement**

18. Apple's App Store is the primary means through which iOS apps are distributed to consumers. And as the developer, owner, and operator of the App Store, Apple enjoys singular power to choose which iOS apps are made available. However, these powers are limited by the terms and conditions enumerated in the Developer Agreement. Attached as Exhibit A is a true and correct copy of the Developer Agreement.

19. Apple requires all third-party iOS developers to enter into the Developer Agreement before they can develop apps using iOS. The Developer Agreement grants third-party developers a limited, personal, non-exclusive, and revocable license to use Apple's software and services, provided the third-party developer builds and operates its app in compliance with the terms and conditions contained therein. (Developer Agreement §§ 1.1, 2.1, 3.2(g), Ex. A)

20. If a third-party developer wishes to make its iOS app available for download on the App Store, it must apply for distribution with Apple. (Developer Agreement §§ 6.1, 6.9, Ex. A) To qualify, the third-party developer must show that its app complies with the "Documentation and Program Requirements then in effect as well as with any additional guidelines that Apple may" place in the Developer Agreement. (Developer Agreement § 6.1, Ex. A)

21. Once the iOS app is deemed qualified for distribution by Apple (*i.e.*, a "Licensed Application"), the third-party developer must agree to additional conditions enumerated in Schedule 1 of the Developer Agreement before the app can be distributed using the App Store. (Developer Agreement, Schedule 1 § 1.1, Ex. A) A true and correct copy of Schedule 1 is found in Exhibit A.

22. Schedule 1 § 1.2(b) states that the third-party developer must authorize Apple to "provide hosting services[,] . . . subject to the terms of the Agreement, in order to allow for the storage

of, and end-user access to, the Licensed Applications" on the App Store. (Developer Agreement, Schedule 1 § 1.2(b), Ex. A)

23.   And Schedule 1 § 4.1(b) requires the third-party developer to guarantee to Apple that "none of the Licensed Applications . . . violate or infringe any patent, copyright, trademark, trade secret or other intellectual property or contractual rights of any other person, firm, corporation or other entity." (Developer Agreement, Schedule 1 § 4.1, Ex. A)

24.   If a dispute arises over the content or use of a Licensed Application, the third-party developer must permit Apple to share its contact information with the party filing the dispute and to follow Apple's app dispute process "on a non-exclusive basis and without any party waiving its legal rights." (Developer Agreement, Schedule 1 § 4.2, Ex. A)

25.   Relatedly, Schedule 1 § 6.3 states that Apple "reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without good cause, by providing notice of termination to" the third-party developer. (Developer Agreement, Schedule 1 § 6.3, Ex. A) However, Schedule 1 § 6.3 goes on to state, in relevant part:

> Without limiting the generality of this Section 6.3, [the third-party developer] acknowledge[s] that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple *reasonably believes*, based on human and/or systematic review, and, including without limitation upon notice received under applicable law, that: . . . (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added).

26.   If the Licensed Application charges end-users a fee of any kind through its use, the third-party developer must also enter into a separate agreement with Apple, named Schedule 2, "before any such commercial distribution of [the] Licensed Application may take place via the App Store." (Developer Agreement § 7.2, Ex. A) And if the third-party developer wishes to sell its iOS app "for a fee through Custom App Distribution," then the developer must separately agree to the terms enumerated in another agreement named Schedule 3. *Id.* Attached as Exhibit B is a true and correct copy of Schedules 2 and 3 of the Developer Agreement.

27.   Notably, Schedule 2 § 7.3 and Schedule 3 § 7.3 contain identical language as Schedule

1 § 6.3, stating in relevant part:

### Schedule 2
. . .

**7.3.** Apple reserves the right to cease marketing, offering, and allowing download by End-Users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any End-User's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . .

(Developer Agreement, Schedule 2 § 7.3, Ex. B)

### Schedule 3
. . .

**7.3.** Apple reserves the right to cease marketing, offering, and allowing purchase by Custom App Distribution Customers and download by End-Users of the Custom Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Custom Applications if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Custom Applications and/or any End-User's possession and/or use of those Custom Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . ."

(Developer Agreement, Schedule 3 § 7.3, Ex. B).

**C. The Musi App**

28. Musi is a mobile computing software company based in Canada that owns and operates the Musi app, an iOS-based mobile application.

29. The Musi app provides users with enhanced functionality to interact with publicly available content on YouTube's website through its own augmentative interface—specifically, Musi's proprietary user interface components and proprietary organizational functionality/metadata. The Musi app does not rely on YouTube's Application Programming Interface ("API"), nor do Musi's servers store, process, or transmit YouTube videos. Instead, the Musi app plays or displays content based on the user's own interactions with YouTube and enhances the user experience via Musi's proprietary technology.

**D. Apple's Wrongful Removal of the Musi App from the App Store**

30. Since at least 2015, Musi has engaged in sporadic dialogue with YouTube. And throughout, Musi has repeatedly expressed its commitment to offer the Musi app in a way that fully complies with YouTube's Terms of Service.

31. In the past, when YouTube has raised a question concerning the Musi app's functionality, Musi has, in good faith, consistently either (a) adjusted the app's functionality, or (b) provided details about how the Musi app works and explained why it is fully compliant with YouTube's Terms of Service.

32. In April 2021, YouTube's outside counsel raised several questions regarding the Musi app's functionality. Specifically, YouTube's counsel claimed that the Musi app violated YouTube's Terms of Service because (1) the Musi app accessed and used YouTube's non-public interfaces; (2) the Musi app used the service for a commercial use; and (3) the Musi app violated YouTube's prohibition on the sale of advertising "on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales."

33. Musi addressed these concerns by explaining to YouTube's counsel that (1) at no point does the Musi app access YouTube's non-public interfaces; (2) the Musi app merely allows users to access YouTube's publicly available website through a functional interface and, thus, does not use YouTube in a commercial way; and (3) the Musi app does not sell advertising on any page that only contains content from YouTube or where such content is the primary basis for such sales. Musi provided a detailed basis in support of these conclusions, and explained why YouTube's assertions were premised on a misunderstanding of the Musi app's functionality.

34. YouTube never responded. Instead, in March 2023, YouTube again complained about the Musi app's functionality, to which Musi promptly responded. YouTube—again—failed to respond.

35. Since that time, Musi has continued to offer the Musi app on the App Store. Musi has conducted routine updates to the Musi app, but the Musi app has otherwise operated in a substantially similar manner since May 5, 2021.

36. On August 8, 2024, Apple—via representatives of its App Store—emailed Musi, stating that it had received a notice from "YouTube Legal" "that Claimant believes" that the Musi app "infringes its intellectual property rights" and directed Musi to "see their comments below." The referenced comments simply stated "violating YouTube Terms of Service." Attached as Exhibit C is a true and correct copy of the August 8, 2024 Email from Apple.

37. Apple's August 8, 2024 email did not provide any further details regarding the bases behind Complainant's assertions. The nature of Complainant's intellectual property was not described. And the specific sections of Complainant's Terms of Service allegedly violated by the Musi app were not named or cited. Nevertheless, Musi's attorney promptly responded to Apple and Complainant on August 12, explaining that these accusations were "unsubstantiated," and that Musi had previously contacted Complainant directly to resolve the dispute but had received no response. Attached as Exhibit D is a true and correct copy of Musi's August 12, 2024 through September 6, 2024 responses.

38. A month later, on September 6, Complainant emailed Apple again, inaccurately claiming that Musi failed to initiate contact to resolve the matter. Ex. D. In doing so, Complainant carbon copied—without explanation—several third parties that have no apparent relation to the matter. Nonetheless, Musi again promptly responded that same day to correct the record and reiterate that the Musi app did not infringe Complainant's intellectual property or violate Complainant's terms of service. Musi again invited Complainant to discuss its concerns. Attached as Exhibit E is a true and correct copy of Musi's September 6, 2024 response to Complainant. But again, Musi did not receive a response from Complainant.

39. Ignoring Musi's communications entirely, on September 18, 2024, Apple advised Musi that, according to its records, the matter remained unresolved. Musi responded by explaining to Apple that Musi's communications to Complainant had gone unanswered and reiterated that Complainant had failed to provide any relevant information regarding its complaint. Attached as Exhibit F is a true and correct copy of Musi's September 18, 2024 through September 24, 2024 responses.

40. Having heard nothing further from either Complainant or Apple, Musi's counsel followed up with Apple on September 24, 2024 updating Apple that:

> To date, we have received no communication from the Complainant in response to our September 6 correspondence, nor has the Complainant substantiated its complaint with further details.
>
> Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.
>
> Musi will continue to keep App Store Notices informed as to the status of this dispute.

Ex. F.

41. Apple responded by ignoring Musi's communications altogether and stating that "your app will be removed from the App Store on the basis of intellectual property infringement," which it did later that day. Attached as Exhibit G is a true and correct copy of the September 24, 2024 response.

42. Apple's decision to abruptly and arbitrarily remove the Musi app from the App Store without any indication whatsoever from the Complainant as to how Musi's app infringed Complaint's intellectual property or violated its Terms of Service, and in light of the fact that Musi has continued to operate the Musi app in a substantially similar matter since May 2021, was unreasonable, lacked good cause, and violated Apple's Development Agreement's terms. Apple's decision has caused immediate and ongoing financial and reputational harm to Musi. Without the Court's immediate intervention, Musi and consumers face irreparable damage.

## FIRST CAUSE OF ACTION

### Breach of Contract

43. Musi repeats and incorporates herein by reference the allegations in the preceding paragraphs of this complaint.

44. Apple breached several conditions contained in the Developer Program License Agreement, including Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 (the "Sections").

45. These Sections curtail Apple's ability to remove any Licensed Applications, including the Musi app, from its App Store. Specifically, these Sections provide that Apple may only cease the download of any Licensed Application on the App Store if Apple "*reasonably believes*, based on human and/or systematic review," that the Licensed Application infringes "patent, copyright, trademark, trade secret or other intellectual property rights of any third party."

46. Based upon the correspondence to date, Apple had no reasonable basis to believe that the Musi app infringed Complainant's intellectual property rights.

47. Accordingly, Apple removed the Musi app from the App Store in violation of the terms of its own Developer Agreement.

48. As a direct and proximate result of Apple's breach, Musi has suffered direct, actual, compensatory, and consequential damages in an amount to be determined at trial. Those damages include but are not limited to lost profits and other consequential damages that are not waivable by contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive relief to prevent Apple's continuing breach.

## SECOND CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

49. Musi repeats and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

50. California law implies in every contract a covenant of good faith and fair dealing, such that neither party will compromise the rights of the other to receive the benefits of the contract. The covenant aims to effectuate the contract's guarantees, and to protect the parties' expectations. In doing so, the covenant requires each party to do all things reasonably contemplated by the contract's terms. For this reason, under the Development Agreement, Apple has a continuing obligation to act in good faith and deal fairly with Musi, as it does with all its partners.

51. Schedule 1 § 6.3, as well Schedules 2–3 § 7.3, provide that Apple may only cease marketing and/or allowing downloads by end-users of Licensed Applications on the App Store if Apple "*reasonably believes*, based on human and/or systemic review," that the Licensed Applications infringed a third-party's intellectual property rights. Accordingly, Apple was required to perform its contractual obligations in good faith and to avoid any acts or material omissions which unfairly interfere with the right of Musi to receive the benefits of the Developer Agreement.

52. Upon information and belief, Apple violated its covenant of good faith and fair dealing by failing to ensure that the Complainant had provided to Musi—in response to Musi's repeated

requests—the bases for its complaint, so that the two parties might attempt to resolve any issues as had been the case in prior dealings with the parties, before removing the Musi app.

53. Had Apple met its duty of good faith and fair dealing, the Musi app would never have been removed for violating Schedule 1 § 6.3, Schedules 2 § 7.3, and Schedule 3 § 7.3. Musi and the Musi app were fully compliant with the contractual obligations enumerated in Apple's Development Agreement. The Musi app did not and does not infringe any intellectual property rights held by Complainant, and a reasonable inquiry into the matter would have led Apple to conclude the same. Despite this, Apple abruptly removed the Musi app from its App Store without conducting a reasonable inquiry. Thereby, in effect, taking an affirmative step to frustrate the purpose of the Development Agreement.

54. As a direct and proximate result of Apple's breach of the covenant of good faith and fair dealing, Musi has suffered direct, actual, compensatory, and consequential damages in an amount to be determined at trial, plus prejudgment interest at the maximum legal rate. Those damages include but are not limited to lost profits and other consequential damages that are not waivable by contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive relief to prevent Apple's continuing breach.

**PRAYER FOR RELIEF**

WHEREFORE, Musi respectfully prays for judgment against Apple, and that the Court decree as follows:

a. The conduct alleged in the First Cause of Action herein be adjudged to constitute an unjustified breach of contract under California law;

b. The conduct alleged in the Second Cause of Action be adjudged to constitute a breach of the covenant of good faith and fair dealing under California law;

c. That Musi be entitled to a preliminary and permanent injunction to have the Musi app restored on the App Store platform.

d. That Musi be awarded direct, actual, compensatory, and/or consequential damages on its breach of contract and breach of the implied covenant and good faith and fair dealing claims, and

that Apple be preliminarily and permanently enjoined from continuing to engage in the underlying wrongful conduct and ordered to immediately reinstate the Musi app to the App Store.

  e.  Award Musi prejudgment interest at the maximum legal rate; and

  f.  For such other and further relief that this Court deems just and proper.

## JURY DEMAND

Musi demands a trial by jury.

Dated:  October 2, 2024      Respectfully submitted,

              WINSTON & STRAWN LLP

              By: */s/ Jennifer A. Golinveaux*
                Jennifer A. Golinveaux (SBN: 203056)
                JGolinveaux@winston.com
                Samantha K. Looker (SBN: 340564)
                SLooker@winston.com
                Winston & Strawn LLP
                101 California Street, 35th Floor
                San Francisco, CA 94111-5840
                Telephone: (415) 591-1000

                Attorney for Plaintiff
                MUSI INC.