Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Jennifer Milici (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MUSI INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>APPLE INC.,<br><br>　　　　Defendant. | Case No. 5:24-cv-06920-EKL<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge: The Honorable Eumi K. Lee<br>Hearing Date: April 16, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 7 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................................... 1

III. STATEMENT OF FACTS .................................................................................................... 2

    A. Musi's Contractual Relationship With Apple ........................................................... 2

    B. Apple's Removal Of The Musi App .......................................................................... 3

IV. LEGAL STANDARD ........................................................................................................... 5

V. ARGUMENT ........................................................................................................................ 6

    A. Apple's Exercise Of Its Contractual Discretion Cannot Support A Breach Of Contract Claim ......................................................................................................... 6

    B. Musi Cannot State A Claim For Breach Of The Implied Covenant Based On Conduct Expressly Permitted By Its Agreements With Apple ............................. 10

VI. CONCLUSION ................................................................................................................... 14

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Agosta v. Astor*,
    120 Cal. App. 4th 596 (2004) ...................................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................................5

*Careau & Co. v. Security Pacacific Business Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990) .................................................................................................13

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
    2 Cal. 4th 342 (1992) .........................................................................................................10, 12

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) ..........................................................................12

*FTC v. EDebitPay, LLC*,
    695 F.3d 938 (9th Cir. 2012) .....................................................................................................8

*Enhanced Athlete Inc. v. Google LLC*,
    479 F. Supp. 3d 824 (N.D. Cal. 2020) ...............................................................................12, 13

*Epic Games, Inc. v. Apple Inc.*,
    559 F. Supp. 3d 898 (N.D. Cal. 2021) .................................................................................1, 14

*Estate of Ridenour v. Commissioner of the Internal Revenue Service*,
    36 F.3d 332 (4th Cir. 1994) .......................................................................................................8

*In re Gilead Sciences Securities Litigation*,
    536 F.3d 1049 (9th Cir. 2008) ...................................................................................................5

*Hervey v. Mercury Casualty Co.*,
    185 Cal. App. 4th 954 (Cal. App. 2010) ...................................................................................6

*Intango, LTD v. Mozilla Corp.*,
    2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) ...........................................................7, 8, 9, 11, 12

*Jamison v. Certain Underwriters at Lloyd's Under Policy No.
    B0146LDUSA0701030*,
    599 Fed. App'x 720 (9th Cir. 2015) ..........................................................................................6

*Jeong v. Nexo Financial LLC*,
    2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ............................................................................11

*In re Johnny M.*,
　100 Cal. App. 4th 1128 (2002) ..........................................................................................8

*Kelly v. Skytel Communications, Inc.*,
　32 F. App'x 283 (9th Cir. 2002) ......................................................................................12

*Levy v. State Farm Mutual Automobile Insurance Co.*,
　150 Cal. App. 4th 1 (Cal. App. 2007)................................................................................6

*Manzarek v. St. Paul Fire & Marine Insurance Co.*,
　519 F.3d 1025 (9th Cir. 2008) ..........................................................................................5

*Miron v. Herbalife International, Inc.*,
　11 Fed. App'x 927 (9th Cir. 2001) ...................................................................................6

*Mount Vernon Fire Insurance Corp. v. Oxnard Hospitality Enterprise, Inc.*,
　219 Cal. App. 4th 876 (Cal. App. 2013)..........................................................................10

*Oasis West Realty, LLC v. Goldman*,
　51 Cal. 4th 811, 821 (2011) ..............................................................................................6

*Prager Univiversity v. Google LLC*,
　85 Cal. App. 5th 1022 (Cal. App. 2022)............................................................................6

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
　732 F. Supp. 2d 952 (N.D. Cal. 2010) ............................................................................12

*Salami v. Los Robles Regional Medical Center*,
　103 Cal. App. 5th 1023 (Cal. App. 2024)..........................................................................6

*Solomon v. North American Life and Casualty Insurance Co.*,
　151 F.3d 1132 (9th Cir. 1998) ........................................................................................10

*Song fi, Inc. v. Google, Inc.*,
　108 F. Supp. 3d 876 (N.D. Cal. 2015) .........................................................................9, 12

*Sprewell v. Golden State Warriors*,
　266 F.3d 979 (9th Cir. 2001) ............................................................................................5

*Steckman v. Hart Brewing, Inc.*,
　143 F.3d 1293 (9th Cir. 1998) ..........................................................................................5

*Sweet v. Google*,
　2018 WL 1184777 (N.D. Cal. Mar. 7, 2018)..................................................................11

*Tritz v. United States Postal Service*,
　721 F.3d 1133 (9th Cir. 2013) ..........................................................................................5

*TrustLabs, Inc. v. Jaiyong*,
    2024 WL 1354486 (N.D. Cal. Mar. 30, 2024) ......................................................................... 6

*Vectren Communications Services v. City of Alameda*,
    2009 WL 2566722 (N.D. Cal. Aug. 18, 2009) ..................................................................... 11

*Vellejo v. Narcos Productions LLC*,
    418 F. Supp. 3d 1084 (S.D. Fla. 2019) ................................................................................. 8

*Viridis Corp. v. TCA Global Credit Master Fund, LP*,
    721 Fed. App'x 865 (11th Cir. 2018) ................................................................................... 8

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ................................................................................ 6

**Statutes and Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Musi Inc. ("Musi") admits that under the parties' agreements, Apple expressly reserved the right to remove Musi's music streaming app (the "Musi app") from Apple's App Store "at any time, with or without cause."  Compl. ¶¶ 25, 27.  Musi nonetheless attempts to bring contract claims against Apple for removing the Musi app following complaints from YouTube that the app violates YouTube's Terms of Service.  It is black letter law that conduct expressly permitted by a contract cannot support a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing.  Here, the unambiguous language of the parties' contracts granted Apple the right to remove the Musi app at its discretion and, therefore, precludes Musi's claims.

Apple's removal of the Musi app from App Store was a legitimate business decision grounded in the terms of Apple's agreements with Musi.  Compl. ¶¶ 25, 27.  The broad contractual provisions granting Apple the discretionary right to remove apps exist for good reason; Apple's ability to curate which apps are available on App Store benefits both consumers and developers because it "provides a safe and trusted user experience on iOS, which encourages both users and developers to transact freely and is mutually beneficial."  *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1038 (N.D. Cal. 2021), *aff'd in part, rev'd in part and remanded on other grounds*, 67 F.4th 946 (9th Cir. 2023).  Furthermore, as Musi itself has acknowledged in its pleadings, "Apple does not act as arbiter for disputes amongst third parties."  Compl. Ex. F at 3.  Thus, Apple was under no obligation to mire itself and App Store in what Musi described as "an active legal issue between" Musi and YouTube.  *Id.* at 2.  For these reasons, as detailed below, this Court should dismiss Musi's Complaint with prejudice.

## II.  STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss the Complaint with prejudice because the relevant contracts expressly permitted Apple to remove the Musi app from App Store at Apple's discretion,

foreclosing Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

### III. STATEMENT OF FACTS

#### A. Musi's Contractual Relationship With Apple

Musi is a software company based in Canada. Compl. ¶ 28.[1] Musi owns and operates an iOS-based mobile application (or "app") that allows users "to interact with publicly available content on YouTube's website through [Musi's] own augmentative interface." *Id.* ¶ 29. As a third-party app developer, Musi was required to agree to Apple's Developer Program License Agreement ("DPLA") before distributing its app on Apple's App Store. *Id.* ¶ 19. The DPLA "grants third-party developers a limited, personal, non-exclusive, and revocable license to use Apple's software and services[.]" *Id.* Free apps approved for distribution on App Store are subject to the additional provisions of Schedule 1 of the DPLA. *Id.* ¶ 21. Paid apps and apps distributed through Apple's Custom App Distribution program are subject to the additional provisions contained in Schedule 2 and Schedule 3 of the DPLA, respectively. *Id.* ¶ 26.

The DPLA explicitly provides Apple with the discretionary right to delist third-party apps for download on App Store, including under § 6.3 of the DPLA, Schedule 1 (for free apps); § 7.3 of the DPLA, Schedule 2 (for paid apps); and § 7.3 of the DPLA, Schedule 3 (for paid apps distributed through Custom App Distribution). Each of these provisions states that "Apple reserves the right to cease marketing, offering, and allowing download" of covered apps "*at any time, with or without cause*, by providing notice of termination to You." Compl. Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA, Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3) (emphasis added).[2] The DPLA, Schedule 1 goes on to state:

---

[1] Apple accepts Musi's factual allegations as true for purposes of the present motion only. *See infra* Section IV.

[2] Musi incorrectly alleges that "Schedule 1 § 6.3 states that Apple 'reserves the right to cease … allowing download … at any time, with or without *good* cause[.]'" Compl. ¶ 25 (emphasis added). Musi attached the contract to its complaint, and the contract states that Apple may exercise its right "with or without cause." *Id.* Ex. A at 84.

> ***Without limiting the generality of this Section 6.3***, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: … (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party[.]

*Id.* Ex. A at 84 (DPLA, Schedule 1 § 6.3) (emphasis added). Section 7.3 of both Schedule 2 and Schedule 3 of the DPLA include substantively similar provisions, though Schedules 2 and 3 also empower Apple to cease "the marketing" of covered apps. *Id.* Ex. B at 11, 20 (DPLA, Schedule 2, § 7.3; DPLA, Schedule 3 § 7.3).

Additionally, as a third-party app developer, Musi is also subject to the Apple Developer Agreement ("ADA"), which provides that:

> Apple may terminate or suspend you as a registered Apple Developer at any time in Apple's sole discretion. If Apple terminates you as a registered Apple Developer, Apple reserves the right to deny your reapplication at any time in Apple's sole discretion. …. Upon any termination, or, at Apple's discretion, suspension, all rights and licenses granted to you by Apple will cease[.]

Declaration of Jennifer Milici in Support of Apple's Motion to Dismiss ("Milici Decl.") Ex. 1 at 4 (ADA § 10).[3]

**B.    Apple's Removal Of The Musi App**

Musi has been in conversation with YouTube regarding the Musi app and its compliance with the YouTube Terms of Service since at least 2015. Compl. ¶¶ 30-31. In April 2021, outside counsel for YouTube identified a number of specific concerns with the Musi app's functionality and potential violations of the YouTube Terms of Service, including that the app appeared to "access[] and use[] YouTube's non-public interfaces"; "use[] [YouTube content] for commercial use"; and "violate[] YouTube's prohibition on the sale of advertising 'on any page of any website or application that only contains [YouTube content] or where [YouTube content] is the primary

---

[3] Apple respectfully requests that the Court take judicial notice of the ADA, submitted as Exhibit 1 to the Declaration of Jennifer Milici, for the reasons explained in Apple's concurrently filed Request for Judicial Notice.

basis for such sales." *Id.* ¶ 32. In response, Musi disputed YouTube's understanding of the Musi app's functionality, *id.* ¶ 33, but Musi and YouTube did not reach a final resolution regarding YouTube's concerns, *id.* ¶ 34. While Musi has made routine updates to the Musi app, the app has "operated in a substantially similar manner since May 5, 2021." *Id.* ¶ 35.

On March 22, 2023, Apple received a complaint from YouTube that the Musi app "infringes its intellectual property rights. In particular … its terms of use." Compl. Ex. C at 6. Apple shared this complaint with Musi the following day, provided contact information for YouTube Legal, and directed Musi to "correspond[] directly with [YouTube]" to resolve the complaint. *Id.* at 6-7. Musi responded that the complaint was "unsubstantiated," but the complaint otherwise went unresolved. *Id.* at 2-5. On July 29, 2024, YouTube contacted Apple to reiterate its position that the Musi app violates the YouTube Terms of Service. *Id.* at 1. Apple shared this communication with Musi on August 8, 2024, *id.*, noting that Apple "look[ed] forward to receiving written assurance that your application does not infringe Claimant's rights," and informing Musi that failure to resolve the complaint directly with YouTube could result in the removal of the Musi app from App Store. *Id.* at 1-2.

Apple reached out to Musi and YouTube on August 14, 2024, and September 18, 2024, noting that it had not received confirmation that YouTube's complaint about the Musi app's functionality had been resolved. *See* Compl. Ex. F at 2-4. In its September 18, 2024 message, Apple notified Musi that "[i]f the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store." *Id.* at 3. Counsel for Musi responded on September 19, 2024, stating that they had been in communication with YouTube Legal—without confirming whether the matter had been resolved—and "acknowledg[ing] that Apple does not act as arbiter for disputes amongst third parties." *Id.* at 1-2.

Musi's September 19, 2024 response is inconsistent with a September 6, 2024 message from YouTube to Apple, which stated that "Musi has not reached out to us … and this app continues to violate our Terms of Service." Compl. Ex. F at 4. While Musi's counsel responded in a separate September 6, 2024 message that he "did not receive a response to [his] last substantive

communication [with YouTube], which detailed how Musi's service works and why it is fully in compliance with YouTube's Terms in response to YouTube's questions," *id.* Ex. E at 1, that message did not specify when Musi's last substantive communication with YouTube took place. The only substantive communication described in Musi's Complaint occurred in April 2021, three years prior to YouTube's July 2024 complaint. *See id.* ¶ 33.

On September 24, 2024, Apple notified Musi that it would be removing the Musi app from App Store. Compl. ¶ 2; *id.* Ex. G at 1. At the time of removal, Apple explained to Musi that "Apple informed you of the claim, and of your responsibility to resolve the matter directly with the Claimant, or risk removal of your App from the App Store." *Id.* On October 2, 2024, rather than resolving its dispute with YouTube, Musi sued Apple for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. 1. Musi then moved for a preliminary injunction seeking to compel Apple to reinstate the Musi app on App Store. Dkt. 10.

## IV.    LEGAL STANDARD

While the Court must "accept factual allegations in [a] complaint as true" on a motion to dismiss, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), a complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Meeting *Twombly*'s plausibility standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor are courts "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Courts also need not accept "allegations that contradict matters properly subject to judicial notice or by exhibit." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell*, 266 F.3d at 988); s*ee also Tritz v. U.S. Postal Service*, 721 F.3d 1133, 1135 n.1 (9th Cir. 2013) (while courts "generally accept the allegations in [a] complaint as true," they "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint" (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.

1998)).

## V. ARGUMENT

### A. Apple's Exercise Of Its Contractual Discretion Cannot Support A Breach Of Contract Claim

"The elements of a breach of contract claim are: '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" *Salami v. Los Robles Reg'l Med. Ctr.*, 103 Cal. App. 5th 1023, 1027 (Cal. App. 2024) (quoting *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). "In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (citing *Miron v. Herbalife Int'l, Inc.*, 11 Fed. App'x 927, 929 (9th Cir. 2001)); *see also TrustLabs, Inc. v. Jaiyong*, 2024 WL 1354486, at *13 (N.D. Cal. Mar. 30, 2024); *Levy v. State Farm Mutual Auto. Ins. Co.*, 150 Cal. App. 4th 1, 6, 8 (Cal. App. 2007).

While well-pled factual allegations are taken as true for the purpose of a motion to dismiss, a plaintiff's interpretation of a contract is not. *See Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, 599 Fed. App'x 720, 721 (9th Cir. 2015) (Although "facts … are deemed to be [undisputed] on a ruling on a demurrer [or motion to dismiss], the interpretation of a contract … is a question of law.'" (second alteration in original) (quoting *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 962-63 (Cal. App. 2010))); *Levy*, 150 Cal. App. 4th at 7 ("The meaning to be ascribed to … any contract, is a question of law. It is a matter, in the first instance, for the trial court's determination[.]"). Accordingly, if the alleged conduct—taken as true at the pleading stage—is expressly permitted under the contract, the conduct cannot sustain a breach of contract claim. *See, e.g., Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1037 (Cal. App. 2022) (affirming dismissal of breach of contract claim where "the parties 'entered into written contracts' granting defendants 'unfettered[] and unilateral discretion to remove, restrict, demonetize, or de-emphasize content as [d]efendants see fit'"); *Intango, LTD v. Mozilla Corp.*,

2020 WL 12584274, at *6 (N.D. Cal. Aug. 25, 2020) (dismissing breach of contract claim where defendant acted consistently with the contract's "plain terms").

Here, the very DPLA provisions Musi cites in its Complaint give Apple the sole and complete discretion to remove apps from App Store. Each provision begins with "Apple reserves the right to cease marketing, offering, and allowing" downloads or purchases of the developer's application "at any time, *with or without cause*, by providing notice of termination." Compl. Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA, Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3) (emphasis added).

Despite the agreements' plain language, Musi alleges that Apple's removal of the Musi app somehow constitutes a breach. *See* Compl. ¶¶ 42, 47. Musi's claims are based on the remarkable contention that the DPLA provisions cited above "*curtail* Apple's ability to remove any Licensed Applications," and that Apple may not actually remove applications "at any time, with or without cause." *Id.* ¶ 45 (emphasis added). Deliberately misreading the terms, Musi insists that Apple can only remove applications "if Apple '*reasonably believes*, based [on] human and/or systematic review,' that the Licensed Application infringes 'patent, copyright, trademark, trade secret or other intellectual property rights of any third party.'" *Id.* ¶ 45 (emphasis in original).

The governing contracts require nothing of the sort. Musi ignores the operative first sentence of each of these provisions and distorts the language that comes after. Specifically, following the clear, unambiguous grant of discretion to Apple in its very first sentence, each provision states that—"*[w]ithout limiting the generality*" of rights granted in the section—the developer "acknowledge[s] that Apple may cease allowing download" of apps "in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws," that the applications "infringe … intellectual property rights of any third party." Compl. Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA. Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3) (emphasis added).

Musi reads the phrase "without limiting" exactly backwards to *limit* the express right granted to Apple in the preceding sentence to act in its sole discretion. *Id.* ¶ 45. It is axiomatic

that the phrase "*without limiting* the generality of the foregoing" introduces terms that expand or elaborate, not terms that limit. *See Vellejo v. Narcos Productions LLC*, 418 F. Supp. 3d 1084, 1089 (S.D. Fla. 2019) ("Plaintiff argues that this clarification is a limitation, but the language at the start of the very sentence setting out the movie rights says, 'without limiting the generality of the foregoing[.]' … Under California law, this language indicates that the rights assigned are broader than the enumerated rights that follow."); *see also FTC v. EDebitPay, LLC*, 695 F.3d 938, 943 (9th Cir. 2012) ("'[I]ncluding but not limited to' language 'is a phrase of enlargement.' It indicates an intention that enumerated examples following the phrase should not be construed as an exhaustive listing." (quoting *In re Johnny M.*, 100 Cal. App. 4th 1128, 1135 (2002))); *Est. of Ridenour v. Comm'r*, 36 F.3d 332, 335 (4th Cir. 1994) ("[T]he grant of general power precedes the list of specific powers, which begins with the phrase '[w]ithout limiting the generality of the foregoing,' preserving the broad grant of authority initially conferred."); *Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 Fed. App'x 865, 871 (11th Cir. 2018) (second alteration in original) (holding that "[t]he 'including, without limiting the generality of the foregoing' clause [] stated *examples* of things" covered by a preceding release (emphasis added)).

Judge Cousins's decision in *Intango* is particularly instructive. The opinion addressed a similar termination provision that (1) expressly provided, in the first sentence, that Mozilla reserved the right "in [its] sole discretion" to remove or revoke add-ons to its software, and (2) which proceeded, in the second sentence, to state that Mozilla's right "applies, but is not limited to, Add-ons that, in [Mozilla's] reasonable opinion, violate [the parties'] Agreement or the law, [or] any applicable Mozilla policy." 2020 WL 12584274, at *6. Judge Cousins expressly ruled out the possibility that this second sentence could be read to limit the broad discretion reserved to Mozilla in the first sentence:

> [U]nder the Distribution Agreement, Mozilla may "remove or revoke access to any Listed or Unlisted Add-ons." *See* § 7. That right "is not limited to" situations where Mozilla found that the add-on violates Mozilla policy. *Id*. Thus, Intango's contention that Mozilla unreasonably found that its add-ons violated Mozilla policy or that the removal was conducted in bad faith is beside the point. The Distribution Agreement simply permits Mozilla to remove Intango's add-ons "at any time." *Id*. … [T]he express terms of the Distribution Agreement permit Mozilla to remove

> Intango's add-ons even if Mozilla's asserted reason for removal was pretextual. A contrary result would impermissibly impose substantive limits on Mozilla expressly disclaimed by the parties' agreement.

*Id.* at *6-7.

Even if Apple had not received a credible third-party complaint from YouTube that Musi was "infring[ing] … intellectual property rights of a third party" and was thus failing to perform under the DPLA, Compl. Ex. A at 15 (DPLA § 2.8); *see also id.* at 17 (DPLA § 3.1)—Judge Cousins's reasoning in *Intango* would still squarely apply: whether Apple had a "reasonable belief" that Musi violated the legal rights of third parties is "beside the point." *See Intango*, 2020 WL 12584274, at *6. Apple reserved the sole discretion to remove the Musi app "with or without cause." As in *Intango*, that sole discretion is fatal to Musi's breach of contract claim. *See also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 884-85 (N.D. Cal. 2015) (dismissing plaintiff's breach of contract claim with prejudice where the YouTube Terms of Service authorized YouTube "to relocate or remove videos in its sole discretion" and to "discontinue any aspect of the Service at any time").

Furthermore, interpreting the DPLA provisions to circumscribe Apple's broad discretion to remove apps "with or without cause" makes no sense in the context of the parties' overall contractual relationship. The ADA, which also governs Apple's relationship with registered developers such as Musi, provides—without any qualification—that "Apple may terminate or suspend … a registered Apple Developer at any time in Apple's sole discretion" and that "[u]pon any termination or, at Apple's discretion, suspension, all rights and licenses granted … by Apple will cease." Milici Decl. Ex. 1 at 4 (ADA ¶ 10). While Apple has not terminated or suspended Musi's developer account, this provision further undermines Musi's construction of the cited DPLA provisions, which illogically implies that Apple was limited in its discretion to remove the Musi app but also had full discretion to terminate Musi's developer account entirely (and the Musi app along with it). The Court should avoid such an absurd result. *See, e.g., Mount Vernon Fire*

*Ins. Corp. v. Oxnard Hosp. Enter., Inc.*, 219 Cal. App. 4th 876, 882 (Cal. App. 2013) (in interpreting contracts, courts "seek a commonsense interpretation which avoids absurd results").

### B. Musi Cannot State A Claim For Breach Of The Implied Covenant Based On Conduct Expressly Permitted By Its Agreements With Apple

Conduct that a contract expressly permits "can never violate an implied covenant of good faith and fair dealing." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 376 (1992). As the Ninth Circuit has made clear, "a party cannot be held liable on a bad faith claim for doing what is expressly permitted in the agreement." *Solomon v. North Am. Life and Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) (applying California law). As such, implied covenant claims premised on expressly permitted conduct are prohibited "as a matter of law." *Id.*

Musi alleges that Apple breached the implied covenant of good faith and fair dealing "by failing to ensure that [YouTube] had provided to Musi—in response to Musi's repeated requests—the bases for its complaint … before removing the Musi app," and by "abruptly remov[ing] the Musi app from its App Store without conducting a reasonable inquiry." Compl. ¶¶ 52-53. But Musi cannot rely on the implied covenant to impose obligations that conflict with the express terms of the parties' agreements, which explicitly grant Apple the right to remove the Musi app "at any time, with or without cause." *Id.* Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA. Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3); *see supra* Section V.A. Such an express grant of discretionary power may only be impliedly limited in the "rare" case in which a contract would not otherwise be supported by adequate consideration. *See Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995). But Musi's agreements with Apple are supported by more than sufficient consideration, and Musi does not—and could not—allege otherwise. *See* Compl. ¶ 19 (noting that the DPLA "grants third-party developers a limited, personal, non-exclusive and revocable license to use Apple's software and services"). Because Musi has received sufficient consideration in exchange for its agreement to the terms of the DPLA—including Apple's express reservation of discretionary termination rights—it cannot evade the terms of its contractual

agreement with Apple by relying on the implied covenant. *See, e.g.*, *Vectren Comm's Servs. v. City of Alameda*, 2009 WL 2566722, at *4 (N.D. Cal. Aug. 18, 2009) ("An implied covenant will not be read into a contract to prohibit a party from doing something that is expressly permitted by the agreement."); *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004) (the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement" (internal citation omitted)).

Courts have declined to impose good faith requirements on the exercise of discretionary rights under similar circumstances. *See, e.g.*, *Sweet v. Google*, 2018 WL 1184777, at *9 (N.D. Cal. Mar. 7, 2018) ("Regardless of how YouTube exercised its discretionary power in determining whether to display advertisements under the Partner Program Terms, the agreement (which consists of both the TOS and the Partner Program Terms) between Zombie and YouTube was supported by adequate independent consideration. In particular, YouTube allowed Zombie to post videos on its forum free of charge in exchange for getting a license to its content."); *Jeong v. Nexo Financial LLC*, 2022 WL 174236, at *2, 19-20 (N.D. Cal. Jan. 19, 2022) (dismissing implied covenant claim where Borrow Terms governing defendant's cryptocurrency platform gave defendant the right to suspend the use of a particular cryptocurrency in its "sole and absolute discretion," and plaintiff had not pled sufficient facts to demonstrate that defendant's discretionary suspension rights "rendered the contract illusory").

Once again, *Intango* is instructive. In that case, Intango alleged that Mozilla breached the implied covenant by removing Intango's add-ons for Mozilla's Firefox internet browser, despite the fact that a provision of the parties' Distribution Agreement allowed Mozilla, "in [its] sole discretion, [to] remove or revoke access to any Listed or Unlisted Add-ons"—including, "but [] not limited to, Add-ons that, in [Mozilla's] reasonable opinion, violate this Agreement, or the law, any applicable Mozilla policy, or is in any way harmful or objectionable." *Intango*, 2020 WL 12584274, at *6-7. Judge Cousins rejected Intango's arguments that Mozilla's removal decision breached the implied covenant because it was "unreasonabl[e]" or otherwise "conducted in bad faith," finding such arguments irrelevant where the contract permitted "Mozilla to remove

1   Intango's add-ons 'at any time.'" *Id.* at *6.

2       Likewise, as in *Carma*, Apple's removal of the Musi app was "entirely consistent with the express terms" of the parties' agreements. *Carma*, 2 Cal. 4th at 362. As *Intango* and other cases show, *Carma*'s reasoning is no less applicable where the contractual rights at issue are discretionary. *See, e.g.*, *Kelly v. Skytel Comms., Inc.*, 32 F. App'x 283, 285 (9th Cir. 2002) ("When a contract expressly confers unrestricted discretion on one party, courts may not imply a covenant of good faith and fair dealing to limit that party's discretion and contradict the contract's express terms."). Musi's implied covenant claim therefore fails as a matter of law. *See, e.g.*, *Song fi*, 108 F. Supp. 3d at 884-85 (dismissing implied covenant claim with prejudice where the YouTube Terms of Service authorized YouTube "to relocate or remove videos in its sole discretion" and to "discontinue any aspect of the Service at any time"); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (rejecting plaintiff's argument that Facebook "failed to exercise its contractual right to remove or disapprove any post in good faith" where "plaintiff [] conceded that Facebook had the contractual right to remove or disapprove any post or ad at Facebook's sole discretion"); *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 833 (N.D. Cal. 2020) (dismissing implied covenant claim based on discretionary rights in YouTube Terms of Use and Community Guidelines).

    Moreover, even if Apple's discretionary removal rights were subject to an implied obligation to exercise those rights in good faith, Musi has not plausibly alleged that Apple exercised those rights in bad faith. To bring a claim for breach of the implied covenant, Musi must plausibly allege that "[Apple] unfairly interfered with [Musi's] rights to receive the benefits of the contract." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) ("In California, the factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."). An "honest mistake, bad judgment, or

negligence" is not actionable. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394-95 (1990); *see also id.* at 1376 (breach of the implied covenant "implies unfair dealing rather than mistaken judgment"). Nor is Musi's mere disagreement with Apple's decision sufficient to state a claim, *see, e.g.*, *Enhanced Athlete*, 479 F. Supp. 3d at 833 (dismissing implied covenant claim where Google had "sole discretion" to determine whether plaintiff's videos "violated the Terms of Use and Community Guidelines, and to 'discontinue' service 'at any time,'" and noting that whether plaintiff "disagreed with [Google's] reasoning, or lost revenue as a result, is simply inapposite"). Here, Musi's implied covenant claim amounts to nothing more than an allegation that Apple exercised bad judgment, or that Musi disagrees with Apple's exercise of its judgment; Musi alleges no facts supporting the conclusory allegation that Apple acted in bad faith. *See* Compl. ¶ 53 ("Had Apple met its duty of good faith and fair dealing, the Musi app would never have been removed for violating Schedule 1 § 6.3, Schedule[] 2 § 7.3, and Schedule 3 § 7.3. … The Musi app did not and does not infringe any intellectual property rights held by [YouTube], and a reasonable inquiry into the matter would have led Apple to conclude the same.").

Musi suggests that Apple's "inquiry" into YouTube's complaint was insufficient to allow Apple to form a "reasonable belie[f]" that the Musi app was violating YouTube's Terms of Service. Compl. ¶¶ 51-53. Of course, Apple was not required to form any such belief before removing the Musi app under its discretionary removal rights. Even so, Musi's Complaint fails to plausibly allege that Apple's inquiry was unfair or unreasonable. As Musi's counsel has acknowledged, "Apple does not act as an arbiter for disputes amongst third parties." *Id.* Ex. F at 1-2. And as Musi's own pleadings and exhibits demonstrate, YouTube stated to Apple on at least three occasions that the Musi app violates the YouTube Terms of Service. *See id.* Ex. C at 1, 7; *id.* Ex. F at 4. Apple shared YouTube's complaints with Musi, and made clear that failure to resolve the complaint directly with YouTube could result in the removal of the Musi app from App Store. *Id.* Ex. C at 1-2. Apple removed the Musi app only after it sent multiple follow-up communications requesting an update on the status of the dispute, and did not receive confirmation that the dispute had been resolved. *Id.* Exs. C, F. Musi alleges that YouTube was unresponsive to its attempts to

resolve the dispute, *see id*. ¶¶ 36-40, but even taking that allegation as true, that is between Musi and YouTube—not Musi and Apple. Apple is not obligated by the terms of its developer agreements or the implied covenant of good faith and fair dealing to actively moderate or adjudicate disputes between app developers and third parties and is not obligated to keep an app on App Store when it has been put on notice that the app may be violating the legal rights of a third party.

Far from demonstrating bad faith, Apple's exercise of its discretionary termination rights is fundamental to its effective management of App Store, as it allows Apple to "provide[] a safe and trusted user experience on iOS, which encourages both users and developers to transact freely and is mutually beneficial" to both consumers and developers. *Epic Games*, 559 F. Supp. 3d at 1038. Apple's discretionary termination of an app in the face of unresolved complaints that the app is violating the rights of third parties—particularly where the developer of the app in question has described the complaint as involving "an active legal issue," Compl. Ex. F at 2—cannot plausibly be construed as bad faith. As Musi acknowledges, Apple has clearly stated that it "does not act as arbiter for disputes amongst third parties." *Id.*

## VI. CONCLUSION

For the foregoing reasons, Musi's Complaint fails to state a claim, and the significant deficiencies in its theory of harm cannot be remedied through amendment. No amendment can cure the fundamental defect at the heart of both Musi's claims, which is that Apple acted within its express contractual rights in removing the Musi app from App Store. Accordingly, the Court should dismiss Musi's Complaint with prejudice.

Dated: December 11, 2024

WILMER CUTLER PICKERING
  HALE AND DORR LLP

By: */s/ Jennifer Milici*
Jennifer Milici (*pro hac vice*)

WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*