1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4

5    MUSI INC.,                    )  C-24-06920 EKL
                                   )
6              PLAINTIFF,          )  SAN JOSE, CALIFORNIA
                                   )
7          VS.                     )  JANUARY 9, 2025
                                   )
8    APPLE INC.,                   )  PAGES 1-75
                                   )
9              DEFENDANT.          )
     _____ )
10

11

12            TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE EUMI K. LEE
13          UNITED STATES DISTRICT JUDGE

14

15   A P P E A R A N C E S:

16   FOR THE PLAINTIFF:    WINSTON & STRAWN
                           BY:  JENNIFER A. GOLINVEAUX
17                              SAMANTHA K. LOOKER
                           101 CALIFORNIA STREET, 35TH FLOOR
18                         SAN FRANCISCO, CALIFORNIA  94111

19   FOR THE DEFENDANT:    WILMER, CUTLER, PICKERING
                           HALE AND DORR
20                         BY:  JENNIFER MILICI
                           2100 PENNSYLVANIA AVENUE, NW
21                         WASHINGTON, D.C.  20037

22        APPEARANCES CONTINUED ON THE NEXT PAGE

23   OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                 CERTIFICATE NUMBER 9595

24

25        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
            TRANSCRIPT PRODUCED WITH COMPUTER

```
 1

 2        APPEARANCES (CONTINUED)

 3


 4        FOR THE DEFENDANT:        WILMER, CUTLER, PICKERING
                                    HALE AND DORR
 5                                  BY:  CHRISTOPHER W. JOHNSTONE
                                    2600 EL CAMINO REAL, SUITE 400
 6                                  PALO ALTO, CALIFORNIA  94306

 7                                  BY:  LYDIA TURNAGE
                                    7 WORLD TRADE CENTER
 8                                  250 GREENWICH STREET
                                    NEW YORK, NEW YORK  10007
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                    JANUARY 9, 2025

 2                    P R O C E E D I N G S

 3        (COURT CONVENED AT 2:02 P.M.)

 4            THE CLERK:  WE'RE CALLING CASE NUMBER

 5    5:24-CV-6920-EKL, MUSI, INC. VERSUS APPLE, INC.

 6        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES ON

 7    THE RECORD, STARTING WITH COUNSEL FOR THE PLAINTIFF.

 8            MS. GOLINVEAUX:  GOOD AFTERNOON, YOUR HONOR.

 9        JENNIFER GOLINVEAUX OF WINSTON & STRAWN ON BEHALF OF

10    PLAINTIFF MUSI.

11        AND WITH ME AT COUNSEL'S TABLE IS SAMANTHA LOOKER OF

12    WINSTON & STRAWN.

13            THE COURT:  GOOD AFTERNOON.

14            MS. MILICI:  GOOD AFTERNOON, YOUR HONOR.

15        JENNIFER MILICI FROM WILMER, HALE FOR APPLE, AND WITH ME

16    AT COUNSEL TABLE ARE CHRIS JOHNSTONE AND LYDIA TURNAGE FROM

17    WILMER, HALE AS WELL.

18            THE COURT:  GOOD AFTERNOON TO YOU ALL.

19        ALL RIGHT, COUNSEL.  SO WE'RE HERE TODAY ON A COUPLE OF

20    DIFFERENT MATTERS, BEGINNING MOST IMPORTANTLY WITH THE MOTION

21    FOR PRELIMINARY INJUNCTION.

22        AFTER THAT, AS I INDICATED, WE'RE GOING TO GO AHEAD AND GO

23    INTO CASE MANAGEMENT, FINISH THE CASE MANAGEMENT CONFERENCE AND

24    TOUCH UPON SOME OF THE DISCOVERY ISSUES AND CALL THE INFORMAL

25    DISCOVERY CONFERENCE.
```

```
1          BEGINNING WITH THE MOTION FOR PRELIMINARY INJUNCTION, THE

2     COURT INDICATED THAT IT WOULD GIVE EACH PARTY ABOUT 20 MINUTES,

3     GIVE OR TAKE.  IF IT NEEDS TO GO A LITTLE BIT MORE, THAT IS

4     FINE.  A LITTLE LESS, THAT'S ALWAYS WELCOME.

5          THE COURT SENT OUT A TENTATIVE RULING INDICATING THAT IT

6     WAS INCLINED TO DENY THE MOTION FOR PRELIMINARY INJUNCTION.

7          I'LL NOTE THAT THAT IS WITHOUT PREJUDICE.

8          THE CLERK:  I'M JUST GOING TO CHECK YOUR MIC, YOUR

9      HONOR.  I'M SORRY.

10          THE COURT:  YES.  LET'S GO OFF THE RECORD FOR ONE

11      MOMENT.

12          (PAUSE IN PROCEEDINGS.)

13          THE COURT:  WE'LL GO BACK ON THE RECORD.

14          THE COURT HAD INDICATED THAT IT'S INCLINED TO DENY THE

15     MOTION FOR PRELIMINARY INJUNCTION BASED ON THE FIRST -- THE

16     LIKELIHOOD OF SUCCESS ON THE MERITS, BUT THAT IT WOULD BE

17     WITHOUT PREJUDICE.

18          AGAIN, THE COURT WELCOMES ARGUMENTS.  I HAVE NOT MADE UP

19     MY MIND IN ANY WAY AND LOOK FORWARD TO COUNSEL'S ARGUMENTS

20     TODAY.

21          LET ME BEGIN WITH THE MOVING PARTY.

22          MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.  I'M

23      JENNIFER GOLINVEAUX FROM MUSI.

24          I'M GOING TO START BY APOLOGIZING, I WAS LOSING MY VOICE

25      EARLIER THIS WEEK AND I THOUGHT IT WAS GETTING BETTER, BUT IT'S
```

1          A LITTLE CREAKY, SO PLEASE BEAR WITH ME.

2              YOUR HONOR, IN LIGHT OF THE TENTATIVE AND THE SPECIFIC

3      QUESTIONS THAT YOU SENT OUT EARLIER THIS WEEK, I'D LIKE TO

4      START BY RESPONDING DIRECTLY TO THE QUESTIONS YOU PUT TO MUSI,

5      AND THEN ADDRESS A COUPLE OF ADDITIONAL POINTS, AS YOU

6      INDICATED, ON THE MERITS, IF THAT'S OKAY FOR YOUR HONOR.

7                  THE COURT:  SOUNDS WONDERFUL.

8                  MS. GOLINVEAUX:  OKAY.

9              SO YOUR HONOR'S FIRST QUESTION ASKED, ASSUMING THE IMPLIED

10     COVENANT OF GOOD FAITH AND FAIR DEALING APPLIES, WHAT DID IT

11     REQUIRE APPLE TO DO IN MUSI'S CASE?

12             YOUR HONOR, EVEN WHERE A CONTRACT ALLOWS DISCRETION, THAT

13     DISCRETION MUST BE EXERCISED IN GOOD FAITH.

14             THIS PRINCIPLE IS REFLECTED IN, FOR EXAMPLE, INFOSTREAM

15     GROUP VERSUS PAYPAL, THAT'S 2012 WESTLAW 3731517 IN THE

16     NORTHERN DISTRICT OF CALIFORNIA; AND ALSO IN CAMPBELL VERSUS

17     EBAY, THAT'S 2014 WESTLAW 3950671, ALSO THE NORTHERN DISTRICT

18     OF CALIFORNIA.

19             BOTH OF THESE CASES FOUND THAT A CLAIM FOR BREACH OF THE

20     IMPLIED COVENANT WAS STATED DESPITE CONTRACTUAL PROVISIONS THAT

21     GAVE THE DEFENDANT DISCRETION TO TERMINATE THE PLAINTIFF'S

22     ACCOUNTS WHERE THE PLAINTIFF HAD ALLEGED FACTS SUGGESTING THAT

23     THE DEFENDANT HAD ACTED IN AN UNFAIR MANNER OR NOT FAIRLY

24     INQUIRED INTO THE PURPORTED BASIS FOR TERMINATION.

25             FOR THOSE REASONS IN THE CAMPBELL CASE, JUDGE ILLSTON

```
 1        DENIED A MOTION TO DISMISS A CLAIM FOR BREACH OF THE IMPLIED

 2        COVENANT; AND SIMILARLY, IN THE INFOSTREAM CASE, JUDGE ROGERS

 3        DID THE SAME.

 4                  THE COURT:  SO, COUNSEL, MY RECOLLECTION WAS THAT

 5        THOSE CASES, WHICH I BELIEVE WERE -- WHICH WERE INFORMATIVE TO

 6        THE COURT, BUT AM I CORRECT THAT THEY WERE ONLY RAISED IN THE

 7        CMC STATEMENT VERSUS AN ACTUAL BRIEFING?

 8                  MS. GOLINVEAUX:  YOUR HONOR, WE DID CITE THEM IN THE

 9        CMC, THAT IS CORRECT.

10                  THE COURT:  OKAY.

11                  MS. GOLINVEAUX:  UNDER THE FACTS OF THIS CASE, YOUR

12        HONOR, THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

13        REQUIRED APPLE TO, AT THE LEAST, ONLY REMOVE THE MUSI APP,

14        WHICH HAD BEEN UP ON THE APP STORE FOR MORE THAN A DECADE, ONLY

15        REMOVE THE MUSI APP AFTER FORMING A REASONABLE GOOD FAITH

16        BELIEF OF INFRINGEMENT, AND AFTER PROVIDING MUSI WITH A FAIR

17        OPPORTUNITY TO RESPOND TO ANY ALLEGATION THAT THE APP VIOLATED

18        I.P. RIGHTS.

19             YOUR HONOR, THAT DIDN'T HAPPEN HERE.  FIRST, DESPITE

20        REPRESENTING TO MUSI THAT IT WOULD NOT ARBITRATE DISPUTES,

21        WE'VE NOW FOUND OUT THROUGH THIS BRIEFING THAT APPLE, IN FACT,

22        ENGAGED IN BACK CHANNEL UNDISCLOSED COMMUNICATIONS WITH THE

23        COMPLAINANT, YOUTUBE, AND ALSO WITH UNAFFILIATED THIRD PARTIES,

24        SUCH AS THE NMPA.

25                  THE COURT:  WOULD YOU AGREE WITH ME THAT IT SEEMS AS
```

1    THOUGH THAT MAYBE THE THEORY OF THE CASE, OR MAYBE MUSI'S

2    THEORY OF THE CASE HAS SHIFTED, NOT SURPRISINGLY, BUT MAY HAVE

3    SHIFTED DURING THE COURSE OF THE BRIEFING?

4         MS. GOLINVEAUX:  WELL, YOUR HONOR, IT'S FAIR THAT, TO

5    SAY THAT WE DIDN'T KNOW ABOUT THESE COMMUNICATIONS BEFORE.

6    INITIALLY THE -- MUSI KNEW THAT THE APP WAS REMOVED, ACCORDING

7    TO APPLE, BECAUSE OF THIS FIVE-WORD COMPLAINT FROM YOUTUBE IN

8    2024.

9         YOU'RE CORRECT THAT AS PART OF THE BRIEFING OF THE MOTION

10   FOR PRELIMINARY INJUNCTION, MUSI FOUND OUT FOR THE FIRST TIME

11   THAT THERE WERE ADDITIONAL COMMUNICATIONS, INCLUDING A PHONE

12   CONVERSATION WITH YOUTUBE AT LEAST, AND THE NMPA LETTER THAT

13   MUSI HAD NEVER BEEN MADE AWARE OF.

14        THE COURT:  UM-HUM.

15        MS. GOLINVEAUX:  I DON'T KNOW THAT IT CHANGES THE

16   THEORY OF THE IMPLIED COVENANT CLAIM, YOUR HONOR, BUT IT

17   CERTAINLY PUTS MORE MEAT ON IT AND IT GOES TO THE

18   REASONABLENESS, OR THE LACK THEREOF, OF APPLE'S ACTIONS.

19        THE COURT:  I HATE TO DO THIS AND INTERRUPT FOR A

20   MOMENT --

21        MS. GOLINVEAUX:  PLEASE.

22        THE COURT:  -- BUT WE'RE STILL HAVING SOME MICROPHONE

23   ISSUES, SO WE'RE GOING TO GO OFF THE RECORD FOR ONE MORE MINUTE

24   TO MAKE SURE THAT -- WE HAVE A NUMBER OF PEOPLE IN THE GALLERY

25   TODAY AND I WANT TO MAKE SURE THAT THEY CAN HEAR YOU, AND THAT

```
 1        YOU ALL CAN HEAR ME.

 2              MS. GOLINVEAUX:  OKAY.

 3              THE COURT:  SO --

 4              THE CLERK:  THANK YOU, YOUR HONOR.

 5        (PAUSE IN PROCEEDINGS.)

 6              THE COURT:  LET'S GO BACK ON THE RECORD.  THE

 7    MICROPHONES ARE WORKING AGAIN.

 8              MS. GOLINVEAUX:  OKAY.  THANK YOU, YOUR HONOR.

 9              THE COURT:  SOMETIMES.

10              MS. GOLINVEAUX:  YOUR HONOR, BEFORE WE BROKE, I WAS

11    ADDRESSING THE FIRST QUESTION THAT YOU PUT TO MUSI, WHICH IS IF

12    THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING APPLIES,

13    WHAT DID IT REQUIRE APPLE TO DO?

14        AND I MENTIONED THAT AT A VERY MINIMUM, IT REQUIRED APPLE

15    TO ONLY REMOVE THE MUSI APP AFTER FORMING A REASONABLE, GOOD

16    FAITH BELIEF OF AN INFRINGEMENT AFTER PROVIDING MUSI WITH A

17    FAIR OPPORTUNITY TO RESPOND TO ALLEGATIONS, TO ANY ALLEGATIONS

18    THAT THE APP WAS VIOLATING I.P. RIGHTS.

19        AND THAT DIDN'T HAPPEN HERE, YOUR HONOR.  APPLE DIDN'T

20    DISCLOSE EITHER THE FACT OR SUBSTANCE OF DISCUSSIONS WITH

21    YOUTUBE OR THE NMPA TO MUSI, MUCH LESS THAT THOSE

22    COMMUNICATIONS WERE THE BASIS, OR FORMED PART OF THE BASIS FOR

23    APPLE'S REMOVAL OF THE MUSI APP.

24        THAT WASN'T JUST BAD FAITH CONDUCT, YOUR HONOR.  IT

25    FUNDAMENTALLY DENIED MUSI THE FAIR OPPORTUNITY TO RESPOND.
```

1              INDEED, IT WAS WORSE THAN THAT.  IT WAS DECEPTIVE BECAUSE

2       APPLE AFFIRMATIVELY TOLD MUSI THAT ITS COMPLAINT -- THAT THE

3       COMPLAINT THAT IT WAS CONCERNED WITH WAS YOUTUBE'S FIVE-WORD

4       COMPLAINT.

5              THE COURT:  LET ME TAKE -- SO YOU PRESENTED TWO

6       DIFFERENT PARTS OF THIS, ONE WHICH IS THAT THEY EXERCISED THEIR

7       DISCRETION BASED ON A REASONABLE GOOD FAITH, AND THE SECOND IS

8       THAT APPLE PROVIDED MUSI AN OPPORTUNITY, A FAIR OPPORTUNITY TO

9       RESPOND.

10             IS IT MUSI'S ARGUMENT THAT APPLE WAS REQUIRED TO PROVIDE,

11      FOR EXAMPLE, EACH -- TO GIVE MUSI THE FULL OPPORTUNITY TO

12      RESPOND TO ANYTHING THAT WAS PRESENTED, AND THAT IT WAS APPLE'S

13      RESPONSIBILITY TO WEIGH THOSE THINGS, TO WEIGH THOSE ARGUMENTS?

14             MS. GOLINVEAUX:  NOT NECESSARILY, YOUR HONOR.

15             BUT THE FACT THAT APPLE WITHHELD THE SUBSTANCE OF THE

16      COMPLAINTS FROM MUSI AND TERMINATED THE APP BASED ON THESE

17      BACKROOM AND, FRANKLY, DEMONSTRABLY FALSE ALLEGATIONS, AS WE

18      DETAIL FROM THE NMPA LETTER, GOES DIRECTLY TO THE

19      REASONABLENESS OF APPLE'S TERMINATION DECISION, AND TO THE

20      ALLEGED BAD FAITH AND UNFAIR DEALING HERE.

21             THAT'S OUR POSITION.

22             IT WAS MEANINGFUL, YOUR HONOR, BECAUSE AS APPLE KNEW, MUSI

23      RESPONDED PROMPTLY AND SUBSTANTIVELY TO NOTICES THAT IT

24      RECEIVED FROM APPLE AND YOUTUBE.  THERE'S PROOF IN THE RECORD

25      THAT WHEN MUSI HAD THE CHANCE TO RESPOND SUBSTANTIVELY TO

1      COMPLAINANTS, LIKE YOUTUBE OR THE IFPI OR SONY MUSIC, THEY

2      BACKED DOWN.

3            WHEN MUSI'S COUNSEL RESPONDED FULSOMELY TO YOUTUBE'S

4      COUNSEL IN 2021, YOUTUBE BACKED DOWN AND NEVER PURSUED ANY

5      ACTION.  THAT'S IN THE RECORD, YOUR HONOR, AT ECF NUMBER 31-13,

6      EXHIBIT 1.

7            SIMILARLY, WHEN MUSI'S U.K. SOLICITOR RESPONDED IN DETAIL

8      TO THE IFPI, IT, TOO, BACKED DOWN AND NEVER PURSUED ANY ACTION.

9      THAT'S IN THE RECORD IN ECF 31-12, PARAGRAPH 6, AND ECF 31-15,

10     EXHIBIT 3, WHICH IS THE IFPI LETTER.

11            THE COURT:  SO THOSE PRIOR INSTANCES FROM YEARS

12     BEFORE WHICH MUSI PRESENTED IN THE RECORD IN TERMS OF THE

13     DETERMINATION THAT THE COURT IS MAKING, HOW DO THEY WEIGH IN --

14     HOW DOES THAT WEIGH INTO THE ANALYSIS?  BECAUSE IT SEEMS -- I'M

15     TRYING TO FIGURE OUT THE RELEVANCE OF THOSE PAST CIRCUMSTANCES

16     THAT YOU'RE ARGUING VERSUS IN TERMS OF THE ANALYSIS.

17            MS. GOLINVEAUX:  YES, YOUR HONOR.

18            AGAIN, IT GOES TO THE REASONABLENESS HERE AND THE FAIR --

19     AND THE UNFAIRNESS OF THE TERMINATION, BECAUSE THE TERMINATION

20     PURPORTEDLY WAS BASED ON THIS FIVE-WORD COMPLAINT FROM YOUTUBE,

21     VIOLATION OF TERMS OF SERVICE, RIGHT?

22            BUT MUSI HAD ALREADY ADDRESSED ALL OF YOUTUBE'S CONCERNS

23     WITH RESPECT TO THE TERMS OF SERVICE SEVERAL YEARS BEFORE

24     THROUGH OUTSIDE COUNSEL AT WINSTON & STRAWN.

25            NOW, WE KNOW NOW THAT THERE WERE ADDITIONAL CONVERSATIONS,

1    BUT WE DON'T KNOW THE SUBSTANCE OF THOSE CONVERSATIONS, YOUR

2    HONOR.  AND WE WERE -- AND MUSI WAS NEVER GIVEN THE OPPORTUNITY

3    TO RESPOND TO IT, AND THAT GOES TO THE UNREASONABLENESS OF THE

4    TERMINATION HERE.

5          AND, YOUR HONOR, WHEN MUSI WAS NOTIFIED OF THAT FIVE-WORD

6    JULY 29, 2024 YOUTUBE COMPLAINT, MUSI DID WHAT IT ALWAYS HAD.

7    IT RESPONDED PROMPTLY TO APPLE, LETTING APPLE KNOW THAT THE

8    MUSI APP DID NOT INFRINGE AND THAT MUSI HAD ALREADY BEEN IN

9    DETAILED COMMUNICATIONS WITH YOUTUBE ABOUT ITS CONCERNS.

10          BUT DESPITE THIS, AND DESPITE YOUTUBE FAILING TO MAKE ANY

11   SHOWING THAT IT HAD ENGAGED WITH MUSI REGARDING ITS CONCERNS,

12   APPLE REMOVED THE MUSI APP.

13          AND I KNOW YOUR HONOR --

14          THE COURT:  SO I WENT THROUGH -- I WAS GOING THROUGH

15   THE EMAIL STRINGS THIS MORNING, AND IT SEEMS AS THOUGH MANY OF

16   THE RESPONSES WERE LIKE -- WE REVIEWED THEM AND WERE CHECKING,

17   BECAUSE WHEN YOU SAY THAT MUSI RESPONDED, IT SEEMED LIKE MOST

18   OF THE TIME THE RESPONSE WAS, THERE'S NO INFRINGEMENT.

19          WAS THERE A CHANGE IN THE PRODUCT OR ANYTHING ELSE?

20          MS. GOLINVEAUX:  WELL, YOUR HONOR, I THINK THE

21   RESPONSE WAS THAT MUSI HAD BEEN IN TOUCH DIRECTLY WITH YOUTUBE

22   AND THERE WAS NO INFRINGEMENT.

23          THE COURT:  UM-HUM.

24          MS. GOLINVEAUX:  AND YOUTUBE NEVER RESPONDED.  AFTER

25   THAT 2021 DETAILED LETTER TO YOUTUBE'S OUTSIDE COUNSEL AT

```
1      WILSON, SONSINI, YOUTUBE NEVER RESPONDED FURTHER TO MUSI ABOUT

2      ANY PURPORTED CLAIMS, OTHER THAN THIS FIVE-WORD COMPLAINT ON

3      JULY 29, 2024.

4           YOUR HONOR, IF APPLE IS TO REMOVE THE MUSI APP IN GOOD

5      FAITH, IT SHOULD ONLY HAVE DONE SO AFTER YOUTUBE SUBSTANTIATED

6      ITS FIVE-WORD COMPLAINT IN SOME MANNER AND SHOWED THAT IT HAD

7      ACTUALLY ENGAGED WITH MUSI TO ATTEMPT TO REACH A SOLUTION, AND

8      IT SHOULD HAVE ONLY DONE SO AFTER DISCLOSING TO MUSI THE

9      ALLEGATIONS AGAINST IT.

10          THE COURT:  SO THIS GOES BACK TO APPLE NEEDING TO

11     MAKE THAT EVALUATION TO BASICALLY EXAMINE THE VALIDITY?

12          MS. GOLINVEAUX:  WELL, YOUR HONOR, IT REALLY GOES --

13     WE'RE NOT SUGGESTING THAT APPLE SHOULD BE IN THE POSITION OF

14     ARBITER HERE.  WE AGREE WITH THEM ABOUT THAT.

15          BUT IT GOES TO THE REASONABLENESS OF THE TERMINATION

16     DECISION WHEN YOU HAVE MUSI ADDRESSING POINT BY POINT ANY

17     CONCERNS BY YOUTUBE, AND THEN YOUTUBE GOING AWAY AND NOT

18     RESPONDING, BUT THEN HAVING BACK CHANNEL CONVERSATIONS WITH

19     APPLE, WHICH WE DON'T KNOW THE SUBSTANCE OF, NOT ALLOWING MUSI

20     ANY OPPORTUNITY TO RESPOND TO THE ALLEGATIONS AGAINST IT,

21     THAT'S BAD FAITH, YOUR HONOR, AND WE SUBMIT THAT THAT'S NOT

22     REASONABLE AS REQUIRED BY THE CONTRACT.

23          YOUR HONOR, I'LL GO ON TO YOUR SECOND QUESTION, AND LET ME

24     ADDRESS -- THE SECOND QUESTION IS ABOUT ADVERTISEMENTS, YOUR

25     HONOR.
```

1          FIRST, YOU ASKED WHAT IT MEANS WHEN MUSI SAYS THAT IT,

2    QUOTE, DOES NOT INTERFERE WITH ANY ADS TO THE EXTENT THEY'RE

3    INCLUDED WITHIN THE PUBLICLY AVAILABLE VIDEO MEDIA THAT IS

4    STREAMED BY THE MUSI APP'S USER.

5          YOUR HONOR, WHAT THIS MEANS IS THAT IF THERE ARE ADS THAT

6    ARE INCLUDED IN THE VIDEO MEDIA THAT STREAMED, THAT IS, ADS

7    THAT THE VIDEO CREATOR INSERTED INTO THE MEDIA, THE USER WILL

8    SEE THOSE ADS, ALONG WITH THE REST OF THE VIDEO CONTENT.

9          THE MUSI APP DOES NOT REMOVE OR OTHERWISE BLOCK OR

10   SUPPRESS ANY ADS IN THE VIDEO CONTENT.  THE --

11          THE COURT:  YOU MIGHT BE ANSWERING WHERE MY QUESTION

12   WAS ABOUT TO GO, SO WHY DON'T YOU PROCEED.

13          MS. GOLINVEAUX:  I WAS GOING TO SAY, THE SECOND PART

14   OF YOUR QUESTION, YOUR HONOR, IS WHETHER THE MUSI APP IN ANY

15   WAY REMOVES, ALTERS, SUPPRESSES OR SILENCES ADS THAT A USER

16   WOULD SEE OR HEAR WHEN INTERACTING WITH THE MEDIA DIRECTLY

17   THROUGH YOUTUBE'S INTERFACE INSTEAD OF THROUGH THE MUSI APP.

18          IS THAT WHERE YOUR QUESTION WAS DIRECTED, YOUR HONOR?

19          THE COURT:  I THINK SO.

20          MS. GOLINVEAUX:  OKAY.  THE SHORT ANSWER TO THAT

21   QUESTION IS THAT A USER WILL SEE ADS WHEN VIEWING VIDEOS ON THE

22   YOUTUBE WEBSITE USING THE YOUTUBE PLAYER THAT THEY WILL NOT SEE

23   WHEN USING THE MUSI APP, AND THAT IS BECAUSE YOUTUBE SERVES ADS

24   SEPARATELY FROM THE PUBLICLY AVAILABLE MEDIA FILE USING THEIR

25   OWN VIDEO PLAYER.

```
 1              THE COURT:  RIGHT.  SO THE ADS WHICH YOUTUBE INSERTS
 2      WOULD NOT BE SHOWN?
 3              MS. GOLINVEAUX:  WELL, YOUR HONOR, I -- THE ONLY
 4      THING I WOULD TAKE ISSUE WITH THERE IS WITH THE WORD "INSERTS,"
 5      I GUESS, BECAUSE THERE IS A PUBLICLY AVAILABLE VIDEO URL,
 6      RIGHT, THAT'S UNENCRYPTED ON YOUTUBE, AND THAT'S THE CONTENT
 7      FILE, AND SO ANYTHING THAT'S PART OF THAT CONTENT FILE, THE
 8      MUSI USER WILL SEE.  SO IF THERE WERE -- IF -- IN THAT.
 9          BUT THE YOUTUBE PLAYER DOES SEPARATELY PLAY ADS IF YOU'RE
10      UP ON THE PLATFORM THAT MUSI USERS WOULD NOT SEE BECAUSE
11      MUSI -- WELL, WHEN A MUSI APP USER USES THE MUSI APP'S
12      INTERFACE --
13              THE COURT:  I'M WITH YOU.
14              MS. GOLINVEAUX:  -- TO PLAY A YOUTUBE VIDEO, RIGHT,
15      YOUTUBE'S MOBILE WEBSITE IS LOADED BY THE MUSI APP USER.  THE
16      MUSI APP IDENTIFIES THE YOUTUBE VIDEO MEDIA AS A UNIQUE, PUBLIC
17      URL THAT I WAS JUST TALKING ABOUT TO PLAY, AND IT GETS
18      PLAYED -- I KNOW THIS GETS A LITTLE TECHNICAL, YOUR HONOR --
19      BUT IT GETS PLAYED WITH THE NATIVE VIDEO PLAYER MADE AVAILABLE
20      BY APPLE BECAUSE IT'S MADE FOR -- IT'S AN IOS APP.
21              THE COURT:  UM-HUM.
22              MS. GOLINVEAUX:  THAT'S THE VIDEO URL FOR THE CONTENT
23      FILE THAT'S PROVIDED BY YOUTUBE ON THE VIDEO PAGE, UNENCRYPTED,
24      AND IT'S THE ONLY MEDIA THAT MUSI -- THAT THE MUSI USER
25      ACCESSES, IF THAT MAKES SENSE.
```

```
 1          SO WITH REFERENCE TO YOUR SPECIFIC QUESTIONS, THE MUSI APP
 2     DOES NOT REMOVE, ALTER, SUPPRESS, OR SILENCE YOUTUBE
 3     ADVERTISEMENTS.  THE APPLE VIDEO PLAYER SIMPLY PLAYS THE
 4     PUBLICLY AVAILABLE VIDEO FILE ITSELF.
 5          THE COURT:  I'M NOT SURE I AGREE WITH THE FIRST
 6     CLAUSE OF THAT, BECAUSE IT'S STILL SAYING THAT WHAT THE YOUTUBE
 7     PLAYER WOULD HAVE PLAYED, IT'S NOT PLAYING ANY FURTHER.
 8          MS. GOLINVEAUX:  THE -- THE ADVERTISEMENTS THAT THE
 9     YOUTUBE PLAYER WOULD HAVE SERVED UP, THEY WOULD NOT SEE, THAT
10     IS CORRECT, YOUR HONOR.
11          THE COURT:  ALL RIGHT.  THANK YOU.
12          MS. GOLINVEAUX:  SO, YOUR HONOR, I'LL GO ON TO YOUR
13     THIRD QUESTION, AND THAT WAS, WHEN WAS THE FIRST TIME MUSI
14     RESPONDED DIRECTLY TO YOUTUBE AFTER APPLE SENT MUSI THAT
15     AUGUST 8TH, 2024 NOTICE OF YOUTUBE'S JULY 2024 COMPLAINT?
16          SO WHEN APPLE FORWARDED THAT FIVE-WORD COMPLAINT FROM
17     YOUTUBE LEGAL ON AUGUST 8TH, 2024, MUSI'S COUNSEL PROMPTLY
18     RESPONDED TO APPLE FOUR DAYS LATER, ON AUGUST 12TH, AND
19     EXPLAINED TO APPLE THAT COMPLAINANT'S ACCUSATIONS WERE
20     UNSUBSTANTIATED AND THAT MUSI HAD PREVIOUSLY REACHED OUT TO
21     YOUTUBE DIRECTLY TO RESOLVE ITS CONCERNS.
22          THEN WHEN YOUTUBE EMAILED APPLE AGAIN ON SEPTEMBER 6TH AND
23     CLAIMED THAT MUSI HAD FAILED TO INITIATE CONTACT, MUSI'S
24     COUNSEL PROMPTLY RESPONDED DIRECTLY TO YOUTUBE, NOTED THE
25     EARLIER 2021 DETAILED CORRESPONDENCE, AND INVITED YOUTUBE TO
```

```
1        DISCUSS ITS CONCERNS.  THAT'S ECF NUMBER 10-19, EXHIBIT C, YOUR

2    HONOR.

3             BUT, AGAIN, MUSI RECEIVED NO RESPONSE.

4             RECALL, YOUR HONOR, WE HAD THAT DETAILED COMMUNICATION

5    WITH YOUTUBE BACK IN '21 ADDRESSING EVERY ISSUE THAT THEY

6    RAISED, AND THEY NEVER RESPONDED.

7             AND IN 2024, RATHER THAN IDENTIFYING ANY SPECIFIC

8    CONCERNS, YOUTUBE APPARENTLY HAD A BACKROOM CONVERSATION WITH

9    APPLE, UNDISCLOSED TO MUSI, FOLLOWED BY A FIVE-WORD COMPLAINT.

10            THE COURT:  REPEAT THAT ONE MORE TIME, COUNSEL.

11            MS. GOLINVEAUX:  SURE, YOUR HONOR.

12        I WAS TAKING US BACK TO THAT 2021 PERIOD --

13            THE COURT:  RIGHT.

14            MS. GOLINVEAUX:  -- WHEN THE PARTIES HAD REALLY

15    VETTED OUT ANY CONCERNS THAT YOUTUBE HAD RAISED WITH RESPECT TO

16    THE TERMS OF SERVICE --

17            THE COURT:  UM-HUM.

18            MS. GOLINVEAUX:  -- THROUGH THAT DETAILED LETTER IN

19    THE RECORD FROM WINSTON & STRAWN TO WILSON, SONSINI, APPLE'S

20    COUNSEL.

21        THEN YOU JUMP FORWARD THREE YEARS IN 2024.  RATHER THAN

22    IDENTIFYING ANY SPECIFIC CONCERNS, YOUTUBE -- TO MUSI --

23            THE COURT:  CORRECT.

24            MS. GOLINVEAUX:  -- YOUTUBE APPARENTLY HAD THIS

25    BACKROOM CONVERSATION WITH APPLE AND SEEMS TO INDICATE THAT
```

```
1        APPLE SAID, WELL, GO AHEAD AND SEND ANOTHER COMPLAINT, AND THAT

2    THEY SENT THAT FIVE-WORD COMPLAINT, VIOLATION OF TERMS OF

3    SERVICE.

4        WHEN MUSI REACHED OUT TO YOUTUBE DIRECTLY -- THIS IS ON

5    SEPTEMBER 6TH --

6            THE COURT:  RIGHT.

7            MS. GOLINVEAUX:  -- TO UNDERSTAND THE NATURE OF THE

8    COMPLAINT AND INVITE A DISCUSSION, NO RESPONSE.

9            THE COURT:  OKAY.

10           MS. GOLINVEAUX:  AND THEN APPLE REMOVES THE APP ON

11   SEPTEMBER 24TH, DESPITE BEING FULLY AWARE THAT MUSI HAD REACHED

12   OUT TO YOUTUBE DIRECTLY ON SEPTEMBER 6TH AND DESPITE BEING

13   AWARE THAT YOUTUBE HAD NEVER RESPONDED.

14           THE COURT:  OKAY.

15           MS. GOLINVEAUX:  EXCUSE ME, YOUR HONOR.

16       (PAUSE IN PROCEEDINGS.)

17           MS. GOLINVEAUX:  YOUR HONOR, SHALL I GO ON TO

18   QUESTION 4?

19           THE COURT:  YES.

20           MS. GOLINVEAUX:  QUESTION 4, YOU ASKED WHETHER

21   YOUTUBE OR ANY OTHER THIRD PARTY HAVE SUED OR OTHERWISE BROUGHT

22   CLAIMS AGAINST MUSI FOR COPYRIGHT INFRINGEMENT SINCE THE MOTION

23   FOR P.I. WAS FILED.

24       YOUR HONOR, NO, NEITHER YOUTUBE NOR ANY OTHER THIRD PARTY

25   HAS EVER BROUGHT ANY CLAIMS FOR COPYRIGHT INFRINGEMENT AGAINST
```

1       MUSI, OR ANY OTHER CLAIM AGAINST MUSI FOR THAT MATTER, EITHER

2       BEFORE OR AFTER THE MOTION FOR P.I.

3              AND, YOUR HONOR, THIS IS SIGNIFICANT BECAUSE REMEMBER THE

4       MUSI APP HAD BEEN LISTED ON THE APP STORE FOR MORE THAN TEN

5       YEARS.

6              FINALLY, YOUR HONOR, QUESTION NUMBER 5, HAS MUSI CONTINUED

7       TO ATTEMPT TO RESOLVE YOUTUBE'S COMPLAINTS SINCE THIS ACTION

8       WAS FILED?  AND IF SO, WHAT'S THE STATUS OF THOSE EFFORTS?

9              YOUR HONOR, MUSI HAS NOT AGAIN REACHED OUT TO YOUTUBE

10      FOLLOWING THAT SEPTEMBER 6TH, 2024 EMAIL TO WHICH IT NEVER

11      RECEIVED A RESPONSE.  AT THAT POINT, IT SEEMED CLEAR THAT

12      YOUTUBE WAS UNWILLING TO ENGAGE WITH MUSI DIRECTLY, AND THE

13      MUSI APP WAS THEN TAKEN DOWN SHORTLY AFTER.

14             YOUR HONOR, THERE WAS A PRIOR POINT IN TIME IN 2021 WHEN

15      YOUTUBE AND MUSI HAD SUBSTANTIVELY VETTED THE ISSUES AND

16      YOUTUBE WENT AWAY.

17             NOW THERE'S AN ACTIVE LAWSUIT AND YOUTUBE, YOUR HONOR, IS

18      A SIGNIFICANT WITNESS IN THAT LAWSUIT.  AND HONESTLY, HAVING NO

19      RESPONSE FROM THE SEPTEMBER 6TH REACH OUT, MUSI HAS ALMOST

20      NOTHING TO GO ON HERE FROM YOUTUBE IN TERMS OF WHAT ITS

21      SPECIFIC CONCERNS ARE, OTHER THAN THAT FIVE-WORD COMPLAINT,

22      VIOLATION OF TERMS OF SERVICE.

23             THE COURT:  OKAY.

24             MS. GOLINVEAUX:  YOUR HONOR, IF I COULD, IF WE COULD

25       PUT UP THE ONE-PAGE DEMONSTRATIVE?

```
 1                THE COURT:  ABSOLUTELY.

 2                MS. GOLINVEAUX:  SO I UNDERSTAND YOUR HONOR HAS

 3       COMMUNICATED THE TENTATIVE DECISION ON THE LIKELIHOOD OF

 4       SUCCESS ON THE MERITS, BUT I DO WANT TO BRIEFLY TOUCH ON THE

 5       CONTRACT LANGUAGE IF I COULD, YOUR HONOR.

 6                THE COURT:  ABSOLUTELY.

 7                MS. GOLINVEAUX:  SO, YOUR HONOR, THIS IS THE RELEVANT

 8       LANGUAGE FROM THE APPLE DEVELOPER PROGRAM LICENSE AGREEMENT,

 9       AND IT'S REFERRED TO AS THE DPLA IN THE BRIEFING, SCHEDULE 1,

10       SECTION 6.3.

11           YOUR HONOR, WHILE THE FIRST SENTENCE OF SECTION 6.3

12       RESERVES TO APPLE BROAD RIGHTS, THIS MUST BE READ IN CONNECTION

13       WITH THE SECOND SENTENCE WHICH STATES THAT APPLE MAY REMOVE AN

14       APP -- AND THIS IS WHERE THE HIGHLIGHTING STARTS, IF APPLE

15       REASONABLY BELIEVES THAT THE APP IS INFRINGING BASED ON HUMAN

16       AND/OR SYSTEMATIC REVIEW.

17           READING THIS SENTENCE, YOUR HONOR, THE STRUCTURE INDICATES

18       THAT THIS CLAUSE IS A REQUIRED BASIS THAT MUST BE MET BEFORE

19       APPLE MAKES A DECISION TO REMOVE AN APP THAT IT HAS A

20       REASONABLE BELIEF, BASED ON HUMAN AND/OR SYSTEMATIC REVIEW,

21       THAT THE APP IS INFRINGING.

22                THE COURT:  SO, COUNSEL, INCORPORATE IN YOUR

23       DISCUSSION THE FIRST PART OF THAT SENTENCE, THE FIRST CLAUSE,

24       "WITHOUT LIMITING THE GENERALITY OF THIS SECTION 6.3" --

25                MS. GOLINVEAUX:  YES.
```

```
1              THE COURT:  -- AND THEN THE INCLUDING LIMITATION --

2         WELL --

3              MS. GOLINVEAUX:  YES, UNDERSTOOD, YOUR HONOR, OF

4         COURSE.

5         YOUR HONOR, THE "WITHOUT LIMITING THE GENERALITY OF THIS

6         SECTION 6.3" LANGUAGE THAT APPLE FOCUSES ON CANNOT SIMPLY WRITE

7         THE REQUIREMENT OUT OF THE CONTRACT LATER IN THAT SENTENCE.

8         SUCH A READING WOULD RENDER THE SUBSTANCE OF THE SECOND

9         SENTENCE OF 6.3 SUPERFLUOUS AND VIOLATE A CORE PRINCIPLE OF

10        CALIFORNIA CONTRACT LAW, THAT THE CONTRACT SHOULD BE READ IN A

11        WAY TO GIVE EFFECT TO ALL OF ITS PARTS.

12             THE COURT:  SOMEONE COULD ALSO ARGUE THAT MUSI'S

13        INTERPRETATION RENDERS THE FIRST CLAUSE SUPERFLUOUS THEN AS

14        WELL.

15             MS. GOLINVEAUX:  WELL, YOUR HONOR, THE PHRASE -- AND

16        WE'VE CITED TO THE NYGARD CASE ON THIS -- THE PHRASE "WITHOUT

17        LIMITING THE GENERALITY" DOESN'T FORBID ANY SUBSEQUENT LIMITING

18        INSTRUCTIONS.

19        IN NYGARD, THE COURT CONSTRUED THE PHRASE "ANY

20        INFORMATION, KNOWLEDGE, OR DATA OF THE COMPANY" AS LIMITED TO

21        THE KINDS OF PROTECTED INFORMATION THAT ARE MENTIONED FURTHER,

22        DESPITE THE CONTRACT BROADLY COVERING ANY INFORMATION,

23        KNOWLEDGE, OR DATA.

24        LIKEWISE, THE DPLA, WHICH I THINK WE JUST LOST FROM THE

25        SCREEN, DESPITE CONTAINING THAT "WITHOUT LIMITING THE
```

 1     GENERALITY" LANGUAGE, CLEARLY INDICATES ON ITS PLAIN FACE THE

 2     SITUATIONS UNDER WHICH APPLE CAN REMOVE AN APP, NAMELY, IF

 3     APPLE REASONABLY BELIEVES, BASED ON HUMAN AND/OR SYSTEMATIC

 4     REVIEW, THAT IT'S INFRINGING.

 5          AND THIS IS CONSISTENT WITH A COVENANT OF GOOD FAITH AND

 6     FAIR DEALING, WHICH EVEN IF THE LANGUAGE, FOR ARGUMENT'S SAKE,

 7     WAS AMBIGUOUS, THERE'S STILL AN IMPLIED COVENANT OF GOOD FAITH

 8     AND FAIR DEALING WHICH WOULD REQUIRE APPLE TO ACT REASONABLY IN

 9     THE CIRCUMSTANCES, YOUR HONOR, WHICH I TOUCHED ON EARLIER IN

10     THE ARGUMENT.

11          THE COURT:  I THINK THERE'S -- GIVEN THE LANGUAGE OF

12     THE CONTRACT, IT SEEMS AS THOUGH THE COVENANT OF GOOD FAITH AND

13     FAIR DEALING MAY HAVE MORE LEGS THAN THE BREACH OF CONTRACT

14     WOULD.

15          THE READING WHICH MUSI IS OFFERING IN TERMS OF THE PLAIN

16     LANGUAGE OF THE CONTRACT IS A BIT TORTURED.  IT REQUIRES

17     SURPLUSAGE ON EITHER SIDE, TAKING OUT THE "WITHOUT LIMITATION,"

18     AND IT'S BASICALLY READING OUT THE BROAD FIRST SENTENCE OF

19     THE -- OF THAT PARAGRAPH.

20          MS. GOLINVEAUX:  UNDERSTOOD, YOUR HONOR.

21          I WOULD JUST SUBMIT THAT THAT LANGUAGE THAT WE'VE

22     HIGHLIGHTED MUST MEAN SOMETHING, RIGHT?  AND IF YOU ONLY CREDIT

23     THE FIRST PART OF THAT SECOND SENTENCE, THE "WITHOUT LIMITING

24     THE GENERALITY" LANGUAGE, THEN YOU'RE DOING AWAY WITH THE

25     HIGHLIGHTED LANGUAGE.  YOU'RE NOT CREDITING -- YOU'RE NOT

1    GIVING IT ANY TEETH WHATSOEVER AND IT BECOMES AN ILLUSORY

2    CONTRACT AT THAT POINT.

3          I'M A LITTLE OVER, YOUR HONOR.  I THINK THOSE WERE THE KEY

4    PIECES I WANTED TO ADDRESS.

5                THE COURT:  THANK YOU.

6                MS. GOLINVEAUX:  THANK YOU.

7                THE COURT:  THANK YOU, COUNSEL.

8                MS. MILICI:  I DON'T HAVE A TIME ON ME.

9                THE COURT:  I WILL -- I WILL HINT AND GIVE YOU AN

10    INDICATION.

11                MS. MILICI:  THANK YOU.

12                THE COURT:  BUT IT'S FINE.

13                MS. MILICI:  THANK YOU.

14          JENNIFER MILICI FOR APPLE.

15          THANK YOU, YOUR HONOR, FOR HEARING FROM US TODAY.  I

16    APPRECIATE THE TIME.

17          AS THE COURT RECOGNIZED IN ITS TENTATIVE RULING, AND AS

18    JUST DISCUSSED NOW, THE DEVELOPER PROGRAM LICENSE AGREEMENT, BY

19    ITS PLAIN TERMS, UNAMBIGUOUSLY PERMITS APPLE TO CEASE ALLOWING

20    DOWNLOAD OF A LICENSED APPLICATION AT ANY TIME, WITH OR WITHOUT

21    CAUSE, BY PROVIDING NOTICE OF TERMINATION.

22          WE ALL AGREE THAT THIS IS THE RIGHT PARAGRAPH.  THAT'S WHY

23    IT'S THE PARAGRAPH THAT THEY'RE RELYING ON.  IT'S THE PARAGRAPH

24    THAT FORECLOSES THEIR CLAIMS.

25          THIS CLEAR LANGUAGE RENDERS BOTH OF THEIR CLAIMS

1    PROHIBITED AS A MATTER OF LAW, AND I'LL WALK THROUGH THAT FOR A

2    SECOND.

3        SO MUSI'S MOTION PAPERS AND ITS ARGUMENTS INCLUDE A LITANY

4    OF KIND OF ESCALATING DISTRACTIONS ABOUT THIS, AND I'LL ADDRESS

5    SOME OF THOSE IN A SECOND.

6        BUT THE DISPOSITIVE POINT HERE IS THAT NONE OF THE THINGS

7    THAT MUSI SAYS CAN CHANGE WHAT THAT SENTENCE SAYS, AND WHAT

8    THAT SENTENCE SAYS IS THAT APPLE HAS THE RIGHT, AT ANY TIME,

9    WITH OR WITHOUT CAUSE, TO CEASE OFFERING THE APP.

10        MUSI DOESN'T ARGUE THAT IT DIDN'T AGREE TO THIS SENTENCE

11    OR THAT THE SENTENCE ISN'T IN THIS CONTRACT, AND MUSI NOWHERE

12    ARGUES THAT THIS SENTENCE IS AMBIGUOUS.  AND NONE OF IT IS.

13    THERE'S NO AMBIGUITY THAT "APPLE RESERVES THE RIGHT;" THERE'S

14    NO AMBIGUITY TO "CEASE ALLOWING DOWNLOADS;" THERE'S NO

15    AMBIGUITY AS TO "AT ANY TIME;" AND THERE'S NO AMBIGUITY AS TO

16    "WITH OR WITHOUT CAUSE."

17        IT IS CLEAR AS DAY.  AT ANY TIME, WITH OR WITHOUT CAUSE.

18        NOW, MUSI MAKES SEVERAL ARGUMENTS BASED ON CONTRACT

19    INTERPRETATION.  BUT ALL OF ITS ARGUMENTS FAIL AS A MATTER OF

20    LAW.

21        FIRST, AS JUST DISCUSSED, MUSI ARGUES THAT THE CONTRACT

22    HAS TO BE READ AS A WHOLE, AND AS YOUR HONOR JUST NOTED, IT'S

23    MUSI'S ARGUMENT THAT'S ASKING THE COURT TO IGNORE PLAIN

24    LANGUAGE IN THE CONTRACT, AND MUSI'S INTERPRETATION THAT WOULD

25    REMOVE THE ENTIRE FIRST SENTENCE OF THIS SECTION FROM THE

1    CONTRACT, AND WOULD ALSO REMOVE THE PHRASE "WITHOUT LIMITING

2    THE GENERALITY" OF THE FOREGOING.

3        WOULD YOU MIND KEEPING THAT DEMONSTRATIVE UP?

4        WE HAVE OUR OWN DEMONSTRATIVE, BUT SINCE IT'S THE SAME, WE

5    FIGURED WE'D KEEP USING THIS.

6        THE COURT:  THIS IS ONE OF THE FEW TIMES I'VE EVER

7    SEEN THE SAME DEMONSTRATIVE OF JUST ONE PAGE USED BY BOTH

8    SIDES.

9        MS. MILICI:  THAT'S RIGHT.  THAT'S BECAUSE THIS IS

10   WHAT'S CONTROLLING IN THIS CASE.  OUR PERSPECTIVE IS THIS FIRST

11   SENTENCE RIGHT HERE IS THE BEGINNING AND END OF THE CASE AND OF

12   THE MOTION.

13       SO MUSI ITSELF ARGUES THAT UNDER CALIFORNIA LAW, A

14   CONTRACT CAN'T BE READ TO RENDER A PHASE SUPERFLUOUS -- WHICH I

15   ALWAYS SAY WRONG -- AND THAT'S WHAT THEY'RE DOING, EVEN AS THEY

16   ADMIT THAT CALIFORNIA LAW DOESN'T ALLOW THAT.

17       AND MUSI SUGGESTS THAT THE ONLY WAY TO READ THE CONTRACT,

18   TO GIVE MEANING TO THE PHRASES, IS TO IGNORE THE FIRST SENTENCE

19   ALTOGETHER.

20       BUT THAT'S WRONG.  YOU CAN READ THE CONTRACT TO SAY APPLE

21   RESERVES A BROAD RIGHT TO REMOVE AN APP WITH OR WITHOUT CAUSE,

22   WHILE AT THE SAME TIME SAYING, HEY, FOR YOUR INFORMATION, HERE

23   ARE SOME INSTANCES, SOME KINDS OF INSTANCES WHERE APPLE MIGHT

24   EXERCISE THAT DISCRETION.

25       THIS IS A COMMON THING THAT CONTRACTS DO.  IT'S THE SAME

1   THING THAT WAS IN THE CONTRACT IN INTANGO, WHICH IS A CASE THAT

2   MUSI CITED, AND IT'S VERY COMMON.

3        MUSI CITED TO THE NYGARD DECISION AS SUPPORTING ITS

4   CONTENTION THAT THE SECOND SENTENCE HAS TO GIVE MEANING TO THE

5   FIRST, BUT NYGARD DOES NOT APPLY.

6        IN NYGARD, THE COURT WAS USING THE SPECIFIC LIST OF

7   EXAMPLES IN ORDER TO GIVE MEANING TO AN AMBIGUOUS TERM.  IN

8   THAT CASE, THE AMBIGUOUS TERM WAS "INFORMATION."  "INFORMATION"

9   IS VERY BROAD.  I BELIEVE THE EMPLOYEE IN THAT CASE HAD

10  PROVIDED INFORMATION TO THE PRESS ABOUT HIS OWN EXPERIENCE AT

11  WORK, AND THE QUESTION WAS, WAS THE INFORMATION ABOUT HIS OWN

12  EXPERIENCE AT WORK THE KIND OF CONFIDENTIAL INFORMATION THAT

13  WAS RESTRICTED BY THE AGREEMENT?  AND THE COURT SAID VERY

14  CLEARLY IN A FOOTNOTE, I THINK IT'S FOOTNOTE 5, THAT IT WAS

15  APPLYING THIS MAXIM OF INTERPRETATION BECAUSE THE WORD

16  "INFORMATION" WAS AMBIGUOUS IN THE CONTEXT OF THAT CONTRACT.

17       THERE'S NO SUCH AMBIGUOUS TERM HERE.  "AT ANY TIME, WITH

18  OR WITHOUT CAUSE" IS NOT AMBIGUOUS, AND MUSI DOESN'T ARGUE THAT

19  IT IS.

20       IN APPLE'S OPPOSITION BRIEF, WE CITED THE CASE FTC V.

21  EDEBITPAY, WHICH MAKES THIS EXACT POINT ABOUT NYGARD.  NYGARD

22  HAS NO APPLICATION WHEN THE BROAD PHRASE, IN THIS CASE

23  PROVIDING BROAD RIGHTS, IS UNAMBIGUOUS.  IT'S ONLY A RULE OF

24  CONSTRUCTION THAT CAN APPLY TO GIVE MEANING TO AN AMBIGUOUS

25  TERM.

1          SO FOR ALL OF THOSE REASONS, I THINK THE BREACH OF

2     CONTRACT CLAIM OBVIOUSLY MUST FAIL.

3          BUT THIS IS ALSO DISPOSITIVE OF THE GOOD FAITH AND FAIR

4     DEALING CLAIM.

5               THE COURT:  TALK TO ME ABOUT THAT.

6               MS. MILICI:  YEAH.

7          UNDER BINDING NINTH CIRCUIT LAW, IF A CONTRACT EXPLICITLY

8     ALLOWS A PARTY TO ACT WITH OR WITHOUT CAUSE OR IN ITS SOLE

9     DISCRETION, A CLAIM FOR BREACH OF THE DUTY OF GOOD FAITH AND

10    FAIR DEALING IS PROHIBITED.

11         THIS IS IN THE SOLOMON CASE WHICH WE CITE ON PAGE 12 OF

12    OUR OPPOSITION, AND THIS SAYS VERY DIRECTLY, AND I QUOTE, "A

13    PARTY CANNOT BE HELD LIABLE ON A BAD FAITH CLAIM FOR DOING WHAT

14    IS EXPRESSLY PERMITTED IN THE AGREEMENT."

15         IN THAT CASE, IT WAS -- THE DEFENDANT HAD TERMINATED THE

16    LIFE INSURANCE CONTRACT OF THE PLAINTIFF UNILATERALLY, AND THE

17    COURT SAID, YOU KNOW, PARTIES CAN CONTRACT TO ALLOW THINGS THAT

18    THE GOOD FAITH DOCTRINE MIGHT OTHERWISE PROHIBIT.

19         AND IN DOING THAT, THE NINTH CIRCUIT CITED BACK TO THE

20    CALIFORNIA CASE OF CARMA IN WHICH SOMEBODY TERMINATED A LEASE

21    FOR ITS OWN FINANCIAL BENEFIT WHICH, AGAIN, BECAUSE IT WAS

22    EXPRESSLY PERMITTED BY A CONTRACT, COULD NOT PROVIDE THE BASIS

23    OF A GOOD FAITH AND FAIR DEALING CLAIM.

24         AND THE NINTH CIRCUIT VERY DIRECTLY SAID THAT A CLAIM FOR

25    THE IMPLIED COVENANT IS PROHIBITED AS A MATTER OF LAW WHEN THE

1      CONTRACT EXPRESSLY ALLOWS THE CONDUCT.

2          IN OUR BRIEF, WE CITE A NUMBER OF CASES FROM THE NORTHERN

3      DISTRICT OF CALIFORNIA HOLDING EXACTLY THIS AND FOLLOWING THIS

4      RULE.

5          AND, IN FACT, ONE OF THE CASES IS THE INTANGO DECISION

6      WHICH MUSI ITSELF CITED IN ITS OPENING BRIEF.  AND IN INTANGO,

7      JUDGE COUSINS WAS ADDRESSING A CLAIM BROUGHT BY A PLAINTIFF

8      AGAINST MOZILLA AND MOZILLA HAD A CONTRACT THAT, MUCH LIKE THIS

9      ONE, GAVE MOZILLA THE BROAD RIGHT TO TERMINATE AN ADD-ON, BUT

10     THEN ALSO REFERENCED TERMINATIONS BASED ON A GOOD FAITH BELIEF,

11     OR REASON TO BELIEVE THAT THE ADD-ON VIOLATED A MOZILLA POLICY.

12         AND WHAT JUDGE COUSINS HELD IS THAT BECAUSE THE CONTRACT

13     IN THE FIRST CLAUSE SAID THAT MOZILLA COULD TERMINATE IT FOR

14     ANY REASON AT ITS DISCRETION, THERE COULD BE NO CLAIM FOR GOOD

15     FAITH -- FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING.

16     EVEN IF THE REASON MOZILLA GAVE WAS COMPLETELY PRETEXTUAL, AS A

17     MATTER OF LAW, THERE CANNOT BE A CLAIM FOR GOOD FAITH AND FAIR

18     DEALING.

19              THE COURT:  WHAT ABOUT THE ALLEGED BACK CHANNEL

20     DISCUSSIONS AND SO FORTH IF THERE WAS SOME SORT OF CONSPIRING

21     JUST IN TERMS OF THE ALLEGATIONS, WHICH WAS MY POINT OF HAVE

22     THEY MORPHED SOMEWHAT IN THE REPLY BRIEF BECAUSE OF THE

23     DISCUSSIONS, WHICH HAPPENED, WOULD THAT BE -- BUT COULD THAT,

24     COULD THAT BE -- IS THERE A SMALL -- IS IT POSSIBLE TO HAVE

25     THAT BREACH OF IMPLIED COVENANT IN CIRCUMSTANCES SUCH AS THAT?

```
 1              MS. MILICI:  SO I'D LIKE TO RESPOND TO THAT IN TWO

 2     PARTS.  ONE IS THAT THE CONSPIRACY THAT MUSI IS REFERRING TO IS

 3     JUST -- I DON'T -- I, FRANKLY, DON'T UNDERSTAND IT.  THEY

 4     SUGGEST THAT THE MUSIC INDUSTRY VIEWS IT AS A THREAT AND IS

 5     CONSPIRING TO GET IT REMOVED FROM THE APP STORE, BUT AT THE

 6     SAME TIME, THEY CLAIM THAT THEY'RE NOT HARMING ARTISTS AND THAT

 7     THEIR APP FOLLOWS YOUTUBE'S TERMS OF SERVICE.  I THINK BOTH

 8     THINGS CAN'T BE TRUE.

 9              YOU KNOW, APPLE'S IN THE BUSINESS OF DISTRIBUTING APPS.

10     IT'S NOT IN THE BUSINESS OF REMOVING POPULAR APPS, YOU KNOW,

11     FOR NO REASON.

12              AND CERTAINLY -- AND CERTAINLY THE MUSIC INDUSTRY, IF

13     THEY'RE BEING PAID FOR VIEWS OF THE VIDEOS, IT'S HARD TO SEE

14     WHY THERE WOULD BE PRESSURE TO REMOVE AN APP.

15              SO I THINK THAT THIS VERY IDEA THAT THERE'S -- THAT FOLKS

16     ARE CONSPIRING AGAINST IT BECAUSE IT'S A THREAT KIND OF DEPENDS

17     ON BELIEVING IN THE FIRST INSTANCE THAT MUSI IS, IN FACT,

18     HARMING ARTISTS AND VIOLATING THE TERMS OF SERVICE OF YOUTUBE.

19              SO I THINK AS A FACTUAL MATTER, I HAVE A HARD TIME

20     UNDERSTANDING THIS.

21              AND THEN JUST AS A PROCEDURAL MATTER, I THINK, YOU KNOW,

22     MUSI IS SUGGESTING THAT THE DUTY OF GOOD FAITH AND FAIR DEALING

23     WOULD, IF IT APPLIED, REQUIRE APPLE TO PROVIDE COMMUNICATIONS

24     BACK AND FORTH AND TO ACT AS KIND OF A MIDDLEMAN SENDING

25     CORRESPONDENCE EVERYWHERE, AND I THINK THAT THAT'S JUST NOT
```

1       SUPPORTED BY CASE LAW.

2           THIS -- APPLE IS NOT OPERATING IN A COURT OF LAW.  THERE

3       IS NO RULE AGAINST EX PARTE COMMUNICATIONS.  NOTHING IN THE

4       CONTRACT SAYS, YOU SHALL HAVE THE RIGHT TO ENGAGE IN ENDLESS

5       LETTER WRITING WITH THE FOLKS WHO COMPLAIN ABOUT YOU.

6           AS MUSI ITSELF ACKNOWLEDGES, IT IS WELL AWARE OF THE BASIS

7       OF YOUTUBE'S COMPLAINT.  IT DESCRIBES IT IN ITS OWN COMPLAINT

8       IN THIS CASE.

9           NOW, MUSI HAS DENIED THOSE ALLEGATIONS.  BUT MUSI SAYING

10      "I DENY IT" IS NOT THE SAME THING AS IT BEING RESOLVED.

11          AND THE PROCESS THAT MUSI SEEMS TO BE SUGGESTING, WHICH IS

12      THAT APPLE NEEDS TO HOLD EVERYBODY'S HAND AND HAVE THEM, FORCE

13      THEM TO COMMUNICATE WITH EACH OTHER AND, YOU KNOW, SHARE EVERY

14      CORRESPONDENCE IT EVER RECEIVES ABOUT MUSI BEFORE IT CAN

15      DECIDE, HEY, WE DON'T WANT TO DISTRIBUTE THIS UNTIL YOU RESOLVE

16      THIS --

17              THE COURT:  WHICH GOES BACK TO THE POINT THAT APPLE

18       RAISED IN ITS PAPERS ABOUT NOT BECOMING THE ARBITER.

19          BUT MY QUESTION IS A LITTLE BIT OUTSIDE OF THAT IN THE

20      SENSE OF -- SO THE TWO CASES WHICH WERE CITED LATER IN THE CMC

21      STATEMENT, WHICH ARE PROBLEMATIC FOR PURPOSES OF THE COURT'S

22      ANALYSIS FOR THE MOTION FOR PRELIMINARY INJUNCTION, BUT THOSE

23      TWO CASES DO INDICATE THAT THERE COULD BE -- OR DO THEY

24      INDICATE -- LET ME HEAR FROM YOU, COUNSEL, WHAT INFOSTREAM

25      AND -- I CAN'T REMEMBER THE OTHER CASE, BUT --

```
 1              MS. MILICI:  IT WAS CAMPBELL, YOUR HONOR.

 2              THE COURT:  YES.

 3              MS. MILICI:  AND, THANK YOU, I WAS PLANNING TO

 4       ADDRESS THOSE.

 5              SO I DON'T THINK EITHER ONE OF THOSE CASES SUPPORTS THE

 6       POSITION THAT MUSI IS TAKING HERE.  IN INFOSTREAM, THE

 7       ALLEGATION WAS THAT PAYPAL WAS ACTING IN THE SOLE INTEREST OF

 8       THE PLAINTIFF'S COMPETITORS AND THAT IT HAD AN OWNERSHIP

 9       INTEREST IN THOSE COMPETITORS, WHICH IS JUST A COMPLETELY

10       DIFFERENT SET OF FACTS HERE.

11              I DON'T KNOW THAT MUSI IS SUGGESTING THAT THERE ARE

12       COMPETITORS WITH WHOM, YOU KNOW, APPLE HAS A -- IN WHOM APPLE

13       HAS A FINANCIAL INTEREST.

14              IN CAMPBELL VERSUS EBAY, THAT CASE CONCERNED AN AGREEMENT

15       THAT WAS SPECIFICALLY AN AGREEMENT TO MODERATE DISPUTES.  IT

16       WAS THE EBAY BUYER PROTECTION PROGRAM, WHICH -- THROUGH WHICH,

17       YOU KNOW, IF A BUYER SAYS THAT THE GOODS DIDN'T ARRIVE OR THEY

18       WEREN'T -- OR THEY WEREN'T WHAT THEY EXPECTED THEM TO BE, THAT

19       THEY COULD GO THROUGH THIS SYSTEM TO HAVE EBAY DECIDE THE

20       MATTER.

21              SO EBAY HAD ACTUALLY SET UP A SYSTEM TO ARBITRATE

22       DISPUTES, AND THE ALLEGATION THERE WAS THAT IN THOSE DISPUTES,

23       THE BUYER ALWAYS WON.

24              BUT THIS WAS AN ARBITRATION, A MEDIATION PROCEDURE THAT

25       EBAY HAD AGREED TO BY CONTRACT, AND THAT'S JUST -- WHAT APPLE
```

1    HAS DONE HERE IS EXACTLY THE OPPOSITE.  IT'S DISCLAIMED

2    EXPRESSLY ANY REQUIREMENT THAT IT ENGAGE IN SOME KIND OF

3    ADJUDICATORY PROCESS.

4         AND I WOULD JUST POINT THE COURT TO I THINK -- TO THE

5    CASES THAT I THINK ARE MUCH MORE ON POINT AND THAT WE CITED IN

6    OUR BRIEF, AND THAT INCLUDES INTANGO, WHICH WE ALREADY

7    DISCUSSED, AND JUDGE CONTI'S DECISION IN SONG FI V. GOOGLE,

8    JUDGE GILLIAM'S DECISION IN ENHANCED ATHLETE V. GOOGLE, AND

9    JUDGE HAMILTON'S DECISION IN EBEID -- I'M PROBABLY SAYING THAT

10   WRONG -- VERSUS FACEBOOK.

11        AND IN EACH OF THOSE CASES, THE CONTRACT HAD RESERVED THE

12   RIGHT TO THE DEFENDANT TO TAKE AN ACTION, LIKE REMOVING A VIDEO

13   OR AN ACCOUNT OR A POST, WITH OR WITHOUT CAUSE, AND THE

14   PLAINTIFF ARGUED THAT THE DEFENDANT DID IT IN BAD FAITH.  AND

15   IN EACH OF THOSE CASES, THE COURT NOT ONLY DISMISSED THE

16   CLAIMS, BUT DISMISSED THEM WITH PREJUDICE BECAUSE NO FACTUAL

17   ALLEGATIONS COULD CHANGE THE FACT THAT THE CONTRACT EXPRESSLY

18   ON ITS FACE ALLOWED THE DEFENDANT TO TAKE THE ACTION THAT WAS

19   ALLEGED.

20        AND SO EACH OF THOSE CASES HOLD THAT IT DOESN'T MATTER

21   THAT THE PLAINTIFF DISAGREES WITH THE DECISION.  IT DOESN'T

22   MATTER THAT THE -- THAT THEY WERE FINANCIALLY HARMED OR THAT

23   THEY THOUGHT THAT THEY DIDN'T HAVE PROCESS THAT THEY DESERVED.

24        IF THE CONTRACT RESERVES THE RIGHT TO THE DEFENDANT TO

25   TAKE THE ACT, WITH OR WITHOUT CAUSE OR IN ITS SOLE DISCRETION,

1    THE GOOD -- THE DUTY OF GOOD FAITH AND FAIR DEALING CANNOT BE

2    USED TO CHANGE THE EXPRESS TERMS OF THE CONTRACT, AND THAT'S

3    WHAT WOULD BE HAPPENING HERE.

4        WHILE APPLE EXPRESSLY SAID, WE RESERVE THE RIGHT TO REMOVE

5    THIS APP WITHOUT CAUSE, THEN THIS WOULD BE READING THE COVENANT

6    OF GOOD FAITH AND FAIR DEALING TO CHANGE THAT AND TO REALLY

7    WORK A HUGE MODIFICATION OF THAT TERM AND TO IMPOSE REALLY

8    BURDENSOME DUTIES ON APPLE TO GET PARTIES TOGETHER AND MAKE

9    THEM RESOLVE DISPUTES, WHICH IS JUST NOT APPLE'S ROLE.  APPLE

10   IS NOT A COURT.

11       AND I THINK JUST ONE -- I HAVE A COUPLE OF EXAMPLES THAT I

12   COULD MENTION, BUT, YOU KNOW, ONE OF THE COURT'S QUESTIONS WAS

13   ABOUT, YOU KNOW, HAD MUSI, IN FACT, REACHED OUT TO YOUTUBE

14   DURING THE INITIAL PERIOD AFTER THE AUGUST COMPLAINT?

15       AND, YOU KNOW, AS YOU SEE IN THE CORRESPONDENCE, MUSI SAYS

16   TO APPLE, WE'VE BEEN IN TOUCH WITH THEM, YOUTUBE SAYS, NO, THEY

17   HAVEN'T.

18       AND I THINK THE ISSUE IS, LIKE, WHAT IS APPLE SUPPOSED TO

19   DO WITH THAT?  APPLE DOESN'T HAVE THE ABILITY TO PUT PEOPLE

20   UNDER OATH AND DECIDE WHICH ONE OF THEM IS TELLING THE TRUTH,

21   NOR IS THAT APPLE'S ROLE.

22       AND THAT'S -- A LOT OF THIS CORRESPONDENCE, WHEN YOU READ

23   IT, IS JUST LIKE THAT.  PEOPLE HAVE BEEN SAYING FOR MANY YEARS,

24   THE MUSI APP IS MISUSING YOUTUBE'S TERMS OF SERVICE.  IT'S

25   MISUSING IT BY PUTTING ITS OWN ADS ON IT, IT'S MISUSING IT BY

```
 1        MUTING ADS THAT YOUTUBE HAS, AND OTHERWISE.

 2              AND WHAT MUSI RESPONDS IS, NO, WE'RE NOT.

 3              SO I'M NOT SURE WHAT APPLE IS SUPPOSED TO DO WITH THAT.

 4                  THE COURT:  COUNSEL, I'M GOING TO INTERRUPT YOU FOR

 5        ONE MOMENT, BECAUSE I THINK IT MIGHT BE -- THE EVIDENCE SCREEN

 6        KEEPS BLINKING, AND I THINK IT MIGHT BE COUNSEL'S --

 7                  MS. LOOKER:  SHOULD I JUST TAKE IT OFF?

 8                  THE COURT:  WHY DON'T YOU GO AHEAD AND TAKE IT OFF?

 9        IT'S GETTING A LITTLE STROBE-LIKE.

10                  THE CLERK:  MAYBE, IF YOU DO NEED IT, MAYBE YOU CAN

11        PUT IT UP.

12                  MS. MILICI:  I THINK WE'VE LOOKED AT THAT PARAGRAPH

13        ENOUGH I THINK AT THIS POINT, SO I'M OKAY WITH THAT.

14              SO, YOUR HONOR, I THINK ONE OTHER POINT, YOU KNOW, COUNSEL

15        WAS JUST HERE SAYING, WELL, WHEN WE RESPONDED TO IFPI OR TO

16        YOUTUBE IN THE PAST, WE RESOLVED THEIR COMPLAINTS.

17              AND THAT'S JUST DEMONSTRABLY FALSE.  THE LAST

18        COMMUNICATION FROM IFPI TO MUSI, WHICH IS -- IT'S IN THE

19        RECORD.  IT'S IN -- IT'S AT DOCKET 30-13, AND IN THAT LETTER,

20        IFPI SAYS, IT IS CLEAR THAT WE HAVE REACHED AN IMPASSE IN

21        CORRESPONDENCE.  AND THEN IT SAYS, WE HAVE EXPLAINED OUR

22        POSITION IN PREVIOUS CORRESPONDENCE, AND GIVEN THAT YOUR CLIENT

23        CONTINUES TO INFRINGE OUR MEMBERS' RIGHTS AND REFUSES TO CEASE

24        INFRINGING ACTIVITIES, OUR MEMBERS ARE CONSIDERING NEXT STEPS.

25              THAT'S HARDLY EVIDENCE THAT MUSI IS ABLE TO RESOLVE
```

```
1       DISPUTES WHEN IT DISCUSSES THEM DIRECTLY.

2               AND IF YOU LOOK AT THE LETTER FROM --

3                   THE COURT:  WHAT WAS CITE TO THAT AGAIN, COUNSEL?

4                   MS. MILICI:  I'M SORRY.  THAT WAS DOCKET 30-13.

5               AND WITH ITS REPLY BRIEF, MUSI ALSO SUBMITTED THAT 2021

6       LETTER THAT IT HAD SENT TO YOUTUBE'S OUTSIDE COUNSEL, AND THIS

7       IS AT 31-13.  AND I THINK LOOKING AT THIS ALSO HELPS EXPLAIN

8       THE POSITION THAT APPLE IS IN, BECAUSE IF YOU READ IT, IT'S --

9       WHAT MUSI IS SAYING IS THAT, WELL, IT'S OKAY THAT WE HAVE ADS

10      ON YOUTUBE CONTENT BECAUSE WE'RE -- OUR APP IS PROVIDING ENOUGH

11      EXTRA VALUE TO JUSTIFY THAT.

12          MUSI SAYS THAT, THAT THAT SHOULD BE OKAY UNDER THE TERMS

13      OF SERVICE.

14          YOUTUBE APPARENTLY DISAGREES BECAUSE IT IS CONTINUING TO

15      MAINTAIN THAT YOUTUBE -- I MEAN THAT MUSI VIOLATES ITS TERMS OF

16      SERVICE.

17          BUT WHAT IS APPLE SUPPOSED TO DO WITH THAT?  APPLE IS NOT

18      PRIVY TO THE PARTIES' NEGOTIATIONS OF THIS AGREEMENT, TO THEIR

19      LEGITIMATE EXPECTATIONS, TO WHAT IS ENOUGH CONTENT.  APPLE

20      CANNOT ADJUDICATE THAT CLAIM, AND IT MAKES NO SENSE TO SUGGEST

21      THAT APPLE SHOULD.

22          AND CERTAINLY APPLE HAS NEVER AGREED TO DO THAT.

23          SO I WANTED TO GET TO THE COURT'S QUESTIONS TO APPLE,

24      UNLESS YOU --

25                  THE COURT:  NO, I WAS JUST ABOUT TO DIRECT YOU TO
```

```
 1        THAT WITH A TEN MINUTE WARNING.

 2            AND, COUNSEL FROM MUSI, I'M RESERVING YOU ABOUT TWO

 3    MINUTES FOR REBUTTAL.

 4            MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

 5            MS. MILICI:  SO ACTUALLY, JUST BEFORE I GET TO THAT,

 6    VERY QUICKLY, I DO WANT TO SAY THERE'S THIS WHOLE CONVERSATION

 7    ABOUT DO YOU MUTE ADS OR NOT?

 8            AND I THINK ONE THING THAT MUSI HAS NEVER BROUGHT UP HERE,

 9    BUT SEEMS TO BE COMPLETELY TRUE, IS THAT MUSI OFFERS A PREMIUM

10    VERSION OF ITS APP WHERE IT CHARGES A ONE-TIME FEE TO BE AN AD

11    FREE -- TO BE COMPLETELY AD FREE.

12            SO WHATEVER IT IS SAYING ABOUT THE ADS CONTINUING TO RUN,

13    THAT'S NOT -- THAT DOESN'T APPEAR TO BE WHAT IT'S REPRESENTING

14    TO USERS.

15            AND IF YOU LOOK AT, LIKE, THE REDDIT THREADS THAT THEY

16    SUBMITTED, IT'S FULL OF USERS THAT SAY I LOVE THIS APP BECAUSE

17    IT'S AD FREE MUSIC, AND I MISS IT BECAUSE IT'S AD FREE.  AND

18    PEOPLE SAY IT OVER AND OVER AGAIN.  I LOVE THIS AD BECAUSE

19    THE -- I LOVE THIS APP BECAUSE WHEN THE ADS PLAY, THEY DON'T

20    HAVE SOUND AND MY MUSIC KEEPS PLAYING, AND I CAN PAY TO HAVE NO

21    ADS.

22            SO THIS ARGUMENT THAT THEY'RE MAKING THAT, NO, YOUTUBE'S

23    ADS CONTINUE TO RUN, I THINK THAT THAT'S CONTRARY TO EVERYTHING

24    ELSE WE'VE SEEN IN WIRED AND IN THESE PUBLIC PRESS AND WHEN YOU

25    LOOK AT THE APP ITSELF, FRANKLY.
```

```
 1              SO I JUST WANTED TO RAISE THAT IN RESPONSE TO THEIR POINT.

 2              AS TO YOUR QUESTIONS TO APPLE, YOU KNOW, IT'S TRUE THAT

 3    APPLE DID NOT DISCLOSE UNTIL ITS OPPOSITION BRIEFING THE FACT

 4    THAT IT HAD A JULY 15TH PHONE CALL WITH YOUTUBE.

 5              BUT THE PURPOSE OF THAT CALL WAS SIMPLY TO CONFIRM WHETHER

 6    YOUTUBE WAS STILL PURSUING ITS UNRESOLVED 2023 COMPLAINT, AND

 7    THAT COMPLAINT IS REFERENCED IN MUSI'S COMPLAINT TO THIS COURT,

 8    AND MUSI SUBMITS AS AN EXHIBIT TO ITS COMPLAINT COMMUNICATIONS

 9    ABOUT THAT.

10              SO YOUTUBE HAD FILED A COMPLAINT IN 2023, AND THE

11    CONVERSATION -- THERE WAS ALL THIS BACK AND FORTH WITH IFPI

12    THAT LASTED A VERY LONG TIME AND THERE WAS PUBLIC REPORTING,

13    AND APPLE AT THAT POINT REACHED OUT TO YOUTUBE AND SAID, ARE

14    YOU STILL PURSUING YOUR COMPLAINT?

15              AND THEY SAID YES.

16              AND THE OUTCOME OF THAT WAS THEY THEN FILED THE COMPLAINT

17    THAT WAS FORWARDED TO MUSI.

18              SO THERE'S NOT -- THERE'S NOT, LIKE, BACKROOM

19    CONVERSATIONS.  THERE WAS A CALL, ARE YOU STILL PURSUING THIS?

20              THEY SAY YES, THEY SUBMIT THE FORM, AND IT GOES TO MUSI.

21              THIS IS NOT STUFF OF CONSPIRACY.  IT'S TRYING TO MOVE

22    ALONG THE PROCESS.

23              LIKEWISE, APPLE DIDN'T SEND THAT NMPA LETTER TO MUSI.

24    AND, AGAIN, I'LL JUST REMIND THE COURT THAT APPLE'S NOT ACTING

25    AS AN ARBITER HERE.  IT TOLD MUSI THAT YOUTUBE HAD A COMPLAINT.
```

1       THE NMPA LETTER WAS NOT A SEPARATE COMPLAINT, IT WAS IN SUPPORT

2       OF YOUTUBE'S COMPLAINT.

3              AND EVEN IF WE WERE TO LOOK AT THE CONTRACT LANGUAGE,

4       WHICH WE DON'T HAVE UP, BUT I THINK WE ALL RECALL, EVEN IF YOU

5       WERE TO IGNORE THE FIRST SENTENCE AND JUST LOOK AT THE SECOND

6       SENTENCE, THAT SAYS THAT APPLE COULD TERMINATE AN APP BASED ON

7       A REASONABLE BELIEF, BASED ON HUMAN OR SYSTEMATIC REVIEW.

8              IT DOESN'T SAY, YOU KNOW, FOLLOWING A LONG LETTER WRITING

9       CAMPAIGN AND AFTER SHARING EVERY SINGLE ACCUSATION OR

10      COMMUNICATION THAT'S EVER BEEN HAD ABOUT THIS APP.

11             UNDER EVEN -- EVEN IF YOU JUST LOOK AT THAT SECOND

12      SENTENCE, IT WOULD ALLOW APPLE TO LOOK AT THE APP AND SAY, I

13      HAVE A BELIEF THAT THIS IS INFRINGING, AND REMOVE THE APP.

14             SO I THINK THAT THIS PROCESS THAT MUSI IS ENVISIONING --

15      YOU KNOW, THE DUTY OF GOOD FAITH AND FAIR DEALING IS SUPPOSED

16      TO REFLECT THE LEGITIMATE EXPECTATIONS OF THE PARTIES, AND I

17      DON'T SEE HOW THEY COULD HAVE ANY LEGITIMATE EXPECTATION THAT

18      THERE WAS GOING TO BE THIS COURT-LIKE PROCESS WHERE, YOU KNOW,

19      APPLE HEARD FROM BOTH SIDES AND, AND EVERYBODY GOT A CHANCE TO

20      BRIEF THEIR POSITION AND THEN SUBJECT TO APPELLATE REVIEW BY A

21      DISTRICT COURT.

22             THAT IS JUST NOT WHAT'S SET FORTH IN THE CONTRACT, EVEN IF

23      YOU IGNORE THE CONTROLLING FIRST SENTENCE WHICH, UNDER

24      CALIFORNIA LAW, YOU CAN'T.

25             SO THAT'S -- THAT'S AS TO THE FIRST QUESTION.

```
 1              I DO WANT TO JUST RAISE ONE THING.  WHEN THEY -- THE ONLY
 2     THING THAT THEY CITE IN THEIR PAPERS TO SAY THAT THERE IS A
 3     DISPUTE RESOLUTION PROCESS THAT THEY HAVE A LEGITIMATE
 4     EXPECTATION OF, THEY CITE TO SECTION 4.1(G) OF THE CONTRACT,
 5     AND WHAT THAT SAYS IS YOU AGREE TO PERMIT APPLE TO SHARE YOUR
 6     CONTACT INFORMATION WITH THE PARTY FILING A DISPUTE AND TO
 7     FOLLOW APPLE'S APP REVIEW PROCESS ON A NON-EXCLUSIVE BASIS
 8     WITHOUT ANY PARTY WAIVING EXISTING RIGHTS.
 9              SO ALL THAT DOES IS GIVE APPLE THE RIGHT TO GIVE CONTACT
10     INFORMATION TO FOLKS WHO COMPLAIN AND TO SAY THIS PROCESS
11     DOESN'T WAIVE ANYBODY'S LEGAL RIGHTS.
12              IT DOES NOT OBLIGATE APPLE TO, YOU KNOW, MONITOR
13     COMMUNICATIONS BETWEEN PEOPLE AND, YOU KNOW, INSURE THAT
14     EVERYBODY'S TALKING TO EACH OTHER.  THAT'S JUST NOT WHAT THAT
15     SAYS.
16              IN FACT, TO THE EXTENT THAT THERE IS A DISPUTE RESOLUTION
17     PROCESS -- AND I THINK BOTH MUSI SUBMITTED THIS AND WE DID --
18     THIS IS -- WHEN THEY SUBMITTED IT, IT'S DOCUMENT 31-16, AND
19     IT'S THE APP STORE CONTENT DISPUTE WEB PAGE.
20              AND THIS SAYS IF SOMEBODY COMPLAINS ABOUT -- YOU KNOW, IF
21     YOU HAVE A COMPLAINT ABOUT AN APP, UPON RECEIVING YOUR
22     SUBMISSION, WE WILL CONTACT THE PROVIDER OF THE DISPUTED
23     CONTENT AND ASK THAT THEY WORK WITH YOU DIRECTLY TO RESOLVE THE
24     CLAIM.
25              THAT'S THE PROCESS, AND THAT'S EXACTLY WHAT APPLE DID.  WE
```

1    PROVIDED CONTACT INFORMATION AND SAID, WHY DON'T YOU GUYS WORK

2    TOGETHER TO RESOLVE THIS?

3          CERTAINLY THERE'S NO WAY TO READ THESE CONTRACTS TO FORM A

4    LEGITIMATE EXPECTATION THAT APPLE HAD AGREED TO DO SOMETHING

5    ELSE.

6          AS TO THE SECOND QUESTION, WHICH WAS THAT MUSI CLAIMS THAT

7    YOUTUBE NEVER RESPONDED TO MUSI'S ATTEMPTS TO CONTACT THEM, AND

8    THE QUESTION WAS, TO APPLE'S KNOWLEDGE, DID YOUTUBE DIRECTLY

9    CORRESPOND WITH MUSI?

10          APPLE IS NOT AWARE OF DIRECT COMMUNICATIONS FROM YOUTUBE

11    TO MUSI BETWEEN AUGUST 8TH AND SEPTEMBER 24TH.  BUT APPLE WOULD

12    NOT NECESSARILY BE PRIVY TO THOSE COMMUNICATIONS.  THEY

13    CERTAINLY HAVE COMMUNICATED IN THE PAST.

14          APPLE DOES NOT ASK TO BE COPIED ON COMMUNICATIONS.  IN

15    FACT, IT WOULD RATHER NOT BE IN THE MIDDLE OF THOSE

16    COMMUNICATIONS.  IT ASKS THE PARTIES TO PLEASE WORK TOGETHER

17    AND WORK OUT THEIR DISPUTE.

18          SO WE UNDERSTAND THAT MUSI REPRESENTS THAT THERE HAS NOT

19    BEEN COMMUNICATIONS FROM YOUTUBE, BUT HONESTLY, THAT'S OUTSIDE

20    OF APPLE'S SCOPE OF KNOWLEDGE.  WE DON'T -- WE'RE NOT TRYING TO

21    MONITOR THAT.

22          THE COURT:  OKAY.

23          MS. MILICI:  WHAT MATTERED TO APPLE IN THIS CASE IS

24    THAT THE DISPUTE WAS NOT RESOLVED.

25          AND, YOU KNOW, APPLE, IT'S NOT INTERESTED IN CONTINUING TO

1      DISTRIBUTE APPS WHEN MULTIPLE PARTIES ARE CLAIMING THAT IT'S

2      INFRINGING THEIR RIGHTS.  THAT SUBJECTS APPLE TO LEGAL RISKS.

3           AND APPLE CAN MAKE A LEGITIMATE BUSINESS DECISION THAT IT

4      WOULD RATHER NOT BE INVOLVED AND COME BACK TO US IF YOU RESOLVE

5      IT, AND THAT'S WHAT APPLE SAID TO MUSI.  APPLE DID SAY TO MUSI,

6      IF YOU RESOLVE THIS COMPLAINT WITH YOUTUBE, WE'RE HAPPY TO

7      RELIST THE APP.

8           AND NOW MUSI HAS SAID, AND I BELIEVE THEM, THAT THERE HAS

9      BEEN NO COPYRIGHT SUIT OR ANY SUIT FROM YOUTUBE.

10          BUT I WILL NOTE THAT IT'S ALSO TRUE THAT MUSI HAS NOT

11     BROUGHT A DECLARATORY JUDGMENT ACTION.  IF MUSI REALLY THINKS

12     THAT IT DOESN'T BELIEVE -- THAT IT DOESN'T VIOLATE TERMS OF

13     SERVICE, IT ALSO HAS OPTIONS AVAILABLE TO IT TO HAVE THAT

14     ACTUALLY ADJUDICATED BY AN ADJUDICATOR.  MUSI HASN'T PURSUED

15     THOSE OPTIONS, WHICH SUGGESTS TO ME THAT THEY THINK THEY STAND

16     A BETTER CHANCE OF WINNING AGAINST APPLE THAN AGAINST YOUTUBE.

17          I DISAGREE THAT THEY HAVE A CHANCE IN EITHER PLACE, BUT I

18     DO THINK THAT IT'S NOTABLE THAT THROUGH ALL OF THIS, KNOWING

19     THAT YOUTUBE IS TAKING THE POSITION THAT MUSI VIOLATES THE

20     TERMS OF SERVICE, MUSI HAS NEVER SOUGHT TO HAVE A DECLARATION

21     THAT IT DOESN'T.

22          THE COURT:  OKAY.

23          MS. MILICI:  SO I THINK BECAUSE OPPOSING COUNSEL DID

24      NOT ADDRESS THE OTHER WINTER FACTORS.  I'M GOING TO NOT WASTE

25      YOUR TIME WITH THOSE, EITHER.

```
 1            BUT I'M HAPPY TO ADDRESS THEM IF IT'S HELPFUL, THE

 2     IRREPARABLE INJURY AND --

 3            THE COURT:  AT THIS POINT, I THINK THE COURT IS --

 4     THE ARGUMENT SUFFICES.  THANK YOU.

 5            MS. MILICI:  THANK YOU.

 6            MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

 7        JENNIFER GOLINVEAUX FOR MUSI.

 8        THREE QUICK POINTS.

 9            THE COURT:  AND I DO HAVE TWO QUICK FOLLOW-UP

10     QUESTIONS, SO --

11            MS. GOLINVEAUX:  WOULD YOU PREFER TO GO FIRST?

12            THE COURT:  I'LL INTERRUPT YOU LATER.

13            MS. GOLINVEAUX:  OKAY.

14        FIRST, YOUR HONOR, MS. MILICI SAID THAT THE CONTRACT'S

15     ABSOLUTELY UNAMBIGUOUS AND SAYS WHAT IT SAYS, BUT SHE NEVER

16     EXPLAINED HOW THEIR INTERPRETATION CREDITS THAT LANGUAGE THAT

17     COMES AFTER THE "IF," THAT APPLE CAN TERMINATE THE APP IF IT

18     FORMS A REASONABLE BELIEF AFTER HUMAN AND SYSTEMATIC REVIEW.

19        SO SHE'S READING THAT OUT OF THE CONTRACT, AND FOR ALL THE

20     REASONS I ALREADY TOOK YOU THROUGH, WE THINK THAT'S DIRECTLY

21     CONTRARY TO CALIFORNIA LAW OF INTERPRETATION OF CONTRACTS.

22        I THINK MORE CRITICALLY, NUMBER TWO, APPLE'S --

23     RESPECTFULLY, APPLE'S INTERPRETATION OF THE SCOPE --

24            THE COURT:  SO LET'S GO BACK TO THE FIRST ONE.

25            MS. GOLINVEAUX:  YES.
```

1          THE COURT:  I FOUND THAT MORE AS SAYING, BY WAY OF

2     EXAMPLE, EVEN IF YOU WERE TO APPLY THIS STANDARD, AND THEN I

3     THINK APPLE'S COUNSEL DID SAY THEN, OKAY, EVEN IF YOU APPLY IT,

4     EVEN IF YOU WERE TO APPLY THIS STANDARD, IT WOULD HAVE BEEN

5     MET.

6          MS. GOLINVEAUX:  YOUR HONOR, AND I WILL CERTAINLY GET

7     TO THAT IN MY DISCUSSION OF THE COVENANT OF GOOD FAITH AND FAIR

8     DEALING, BECAUSE RESPECTFULLY, ON THIS RECORD, THE NOTION THAT

9     THERE'S NO QUESTION AS TO THE REASONABLENESS OR THE FAIRNESS OF

10    APPLE'S CONDUCT WAS SURPRISING.

11         MS. MILICI SAID THAT APPLE DOESN'T HAVE TO ENGAGE IN A

12    COURT-LIKE PROCESS OR ENDLESS COMMUNICATIONS.

13         MUSI WASN'T ASKING FOR THAT.  WHAT HAPPENED HERE IS THAT

14    APPLE HID THE BALL ON THE KEY ALLEGATIONS, THE ONLY SUBSTANTIVE

15    ALLEGATIONS THAT THEY RECEIVED ABOUT MUSI IN THE FORM OF THAT

16    PHONE CALL WITH YOUTUBE AND IN THE FORM OF THE NMPA LETTER.

17    THEY NEVER EVEN FORWARDED IT TO MUSI.

18         YOU HAVE TO ASK YOURSELF WHY.  THEY NEVER FORWARDED ANY

19    COMPLAINT WITH ANY SUBSTANCE WHATSOEVER THAT MUSI COULD RESPOND

20    TO.

21         AND WHEN MUSI RESPONDED TO THE IFPI, IFPI NEVER PURSUED

22    ANY CLAIMS AFTER IT GOT ITS LETTER FROM MUSI'S U.K. SOLICITOR,

23    AND IFPI NEVER ALLEGED INFRINGEMENT UNDER U.S. LAW.

24         THE COURT:  SO HAS MUSI FILED AN ACTION FOR

25    DECLARATORY JUDGMENT AGAINST ANYONE?

1          MS. GOLINVEAUX:  YOUR HONOR, I WAS GOING TO GET TO

2     THAT POINT THAT MS. MILICI MADE.

3          BUT UNDER THE FACTS HERE, FRANKLY --

4          THE COURT:  I'M JUST ASKING, BECAUSE YOU'RE

5     POINTING -- YOU'RE SAYING, WELL, THEY NEVER DID THIS.

6          MS. GOLINVEAUX:  YES, YOUR HONOR.

7          THE COURT:  SO I'M ASKING, WELL, DID MUSI DO THIS

8     THEN?

9          MS. GOLINVEAUX:  RIGHT.  MUSI DID NOT, BECAUSE

10     THERE'S NOT EVEN, I WOULD SUBMIT, A CASE IN CONTROVERSY BASED

11     ON THE COMMUNICATIONS BACK IN 2021 BETWEEN YOUTUBE AND MUSI

12     WHERE MUSI RESPONDED IN DEPTH AND YOUTUBE NEVER -- IT BACKED

13     OFF AND NEVER RESPONDED AND IT SEEMED TO GO AWAY.

14          TO THIS DAY, YOUTUBE HAS NOT BEEN SPECIFIC, BEYOND THE

15     FIVE-WORD COMPLAINT --

16          THE COURT:  WELL, IT SEEMED LIKE THERE WAS SOME BACK

17     AND FORTH BACK IN 2021 AND SO FORTH.

18          MS. GOLINVEAUX:  AND THEN, WHEN THEY GOT THAT LETTER

19     THAT WE SENT TO WILSON, SONSINI, THERE WAS NO RESPONSE, YOUR

20     HONOR.

21          THE COURT:  OKAY.

22          MS. GOLINVEAUX:  AND THEY'VE NEVER MADE -- THEY'VE

23     NEVER ASSERTED CLAIMS, THEY'VE NEVER SAID, HERE'S WHAT'S WRONG,

24     HERE'S HOW YOU'RE VIOLATING YOUR TERMS AFTER THAT.

25          SO THERE REALLY -- THE NOTION OF A DECLARATORY JUDGMENT

```
1        ACTION IN THOSE CIRCUMSTANCES IS I THINK A LITTLE FARFETCHED.
2              THE COURT:  WELL, IT SEEMS AS THOUGH COUNSEL'S
3        ARGUMENT IS, IF THEY DON'T SUE US, THEN WHAT WE DID IS OKAY,
4        AND I'M NOT SURE THAT'S TRUE, EITHER.  SO, I MEAN, ON BOTH --
5        THE RECORD WILL SPEAK FOR ITSELF IN TERMS OF WHAT'S HAPPENED OR
6        NOT HAPPENED, SO --
7              MS. GOLINVEAUX:  I AGREE WITH YOU ABOUT THAT, YOUR
8        HONOR.  AND I'M NOT -- I'M NOT TRYING TO SUGGEST THAT.
9          WHAT I'M TRYING TO SUGGEST IS THAT THE NOTION THAT APPLE
10       WOULD MAKE ITS DECISION BASED ON THESE UNDISCLOSED
11       COMMUNICATIONS AND LETTERS THAT WERE RIDDLED WITH ERRORS AND
12       THAT MUSI NEVER HAD A CHANCE TO RESPOND TO -- THIS WASN'T A
13       MATTER OF APPLE HAVING TO ENGAGE IN ENDLESS COMMUNICATIONS.  IT
14       JUST NEEDED TO FORWARD THIS TO MUSI AND SAY THIS HAS BEEN
15       SUBMITTED AGAINST YOU SO THAT MUSI COULD RESPOND.
16         MUSI DIDN'T HAVE THAT OPPORTUNITY.
17         AND, FRANKLY, THEIR INTERPRETATION OF THE COVENANT OF GOOD
18       FAITH AND FAIR DEALING WOULD COMPLETELY EVISCERATE ANY NOTION
19       THAT THERE IS A COVENANT.
20         IT'S CLEAR IN CALIFORNIA THAT EVEN A PARTY INVESTED --
21       VESTED WITH DISCRETION STILL MUST EXERCISE THAT DISCRETION IN
22       GOOD FAITH, AND THAT'S NOT COUNTER TO THE SOLOMON CASE THAT
23       MS. MILICI CITED.
24         YOU STILL HAVE TO EXERCISE YOUR DISCRETION.  YOU STILL
25       HAVE TO MAKE YOUR DECISIONS IN GOOD FAITH.
```

```
 1              AND WE ALSO CITE, IN ADDITION TO THE CASES I'VE ALREADY

 2    DISCUSSED, WE CITE TO THRIFTY PAYLESS ON PAGE 17 OF OUR MOTION,

 3    AND TO MILLER, "NO PARTY TO THE CONTRACT WILL DO ANYTHING TO

 4    FRUSTRATE THE OTHER PARTY'S BENEFIT OF THE CONTRACT."

 5              SO IT'S JUST NOT AN ACCURATE STATEMENT OF THE LAW, I WOULD

 6    SUBMIT, TO SAY THAT IF THERE'S A DISCRETION TO TERMINATE, THEN

 7    THERE CAN BE NO VIOLATION OF THE COVENANT.

 8              THE COURT:  WELL, THIS IS SOMETHING WE'LL BE

 9    ADDRESSING ON THE MOTION TO DISMISS --

10              MS. GOLINVEAUX:  YES, YOUR HONOR.

11              THE COURT:  -- ABOUT WHETHER OR NOT THE STANDARD IS

12    MET IN TERMS OF THE PRELIMINARY INJUNCTION.  THAT IS ANOTHER

13    QUESTION.

14              MS. GOLINVEAUX:  YES, YOUR HONOR.

15         DID WE TOUCH ON YOUR QUESTIONS, YOUR HONOR?

16              THE COURT:  OH, THANK YOU.  LET ME PULL BOTH OF THEM

17    UP.

18         (PAUSE IN PROCEEDINGS.)

19              THE COURT:  YOU ANSWERED ONE, WHICH IS THE

20    DECLARATORY JUDGMENT QUESTION FOLLOWING UP ON APPLE'S ARGUMENT.

21         THE SECOND QUESTION I HAVE IS, IS IT MUSI'S POSITION THAT

22    IT IS UNREASONABLE FOR APPLE TO TERMINATE AN APPLICATION AFTER

23    RECEIVING MULTIPLE UNRESOLVED COMPLAINTS?

24              MS. GOLINVEAUX:  I DON'T THINK, AS A BRIGHT LINE

25    RULE, THAT'S MUSI'S POSITION, YOUR HONOR.
```

```
 1              I THINK MUSI'S POSITION IS THAT ON THESE FACTS, WHEN THERE

 2        WAS NO SUBSTANTIVE COMPLAINT THAT WAS EVER PROVIDED TO MUSI,

 3        WHEN APPLE KNEW THAT MUSI HAD REACHED OUT TO YOUTUBE IN

 4        RESPONSE TO THAT SEPTEMBER 2024 FIVE-WORD COMPLAINT, VIOLATION

 5        OF TERMS OF SERVICE, AND SAID, HEY, I SENT YOUR OUTSIDE COUNSEL

 6        A DETAILED LETTER SEVERAL YEARS AGO, LET'S DISCUSS WHAT YOUR

 7        CONCERN IS, AND APPLE KNEW WELL THAT YOUTUBE NEVER RESPONDED,

 8        AND YET, STILL SEVERAL WEEKS LATER TOOK THE APP DOWN.  THAT'S

 9        WHAT'S UNREASONABLE ON THESE FACTS, YOUR HONOR.

10              THANK YOU.

11              THE COURT:  ALL RIGHT.  THE COURT IS GOING TO TAKE A

12        BRIEF RECESS.  I'M INTENDING, JUST TO MOVE THINGS ALONG, TO

13        ISSUE A RULING FROM THE BENCH WITH A WRITTEN ORDER TO FOLLOW.

14        AFTER THAT, WE'RE GOING TO GO INTO THE CASE MANAGEMENT

15        CONFERENCE.

16              IF COUNSEL HASN'T HAD AN OPPORTUNITY TO MEET AND CONFER

17        REGARDING THE DISCOVERY, I AM INCLINED TO MOVE FORWARD WITH THE

18        DISCOVERY IN THIS CASE.  BUT I WOULD ENCOURAGE MUSI TO BE

19        TARGETED.  THERE WILL BE TIME IF THE CASE LIVES ON AND ON.  BUT

20        RIGHT NOW, I THINK THERE'S A FOCUS, AND BEING TARGETED IN TERMS

21        OF NEXT STEPS MIGHT HELP MOVE THE CASE ALONG.

22              SO IF THERE HASN'T BEEN ANY MEET AND CONFERRING ABOUT

23        THAT, IF THERE CAN BE DURING THE BRIEF RECESS, LET'S SAY --

24        WELL, WHY DON'T WE GO AHEAD AND DO 15 MINUTES.

25              ALL RIGHT.  THANK YOU.  THE COURT'S NOW IN RECESS.
```

```
 1              THE CLERK:  ALL RISE.

 2         (RECESS FROM 3:11 P.M. UNTIL 3:38 P.M.)

 3              THE COURT:  SO AS THE COURT NOTED BEFORE ITS RECESS,

 4    I'M INTENDING TO -- WELL, THE COURT WANTS TO ISSUE ITS RULING,

 5    OR AT LEAST TELL YOU WHERE I'M HEADED, IN HOPES OF MOVING THIS

 6    CASE ALONG EXPEDITIOUSLY.

 7              AND SO I'D SENT THE TENTATIVE RULING EARLIER THIS WEEK,

 8    AND THE COURT IS INTENDING TO ADOPT ITS TENTATIVE RULING

 9    DENYING MUSI'S MOTION FOR PRELIMINARY INJUNCTION ON THE BASIS

10    STATED LOOSELY DURING THE -- IN THE EMAIL AND INDICATED

11    SOMEWHAT TODAY DURING THE ARGUMENT.

12              THE COURT FINDS THAT MUSI HAS FAILED TO SHOW LIKELIHOOD OF

13    SUCCESS OR SERIOUS QUESTIONS GOING TO THE MERITS ON EITHER OF

14    THE CLAIMS PRESENTED.

15              AS TO THE BREACH OF CONTRACT CLAIM, THE DEVELOPMENT

16    AGREEMENT, BY ITS PLAIN TERMS, UNAMBIGUOUSLY PERMITS APPLE TO

17    CEASE OFFERING AN APPLICATION WITH OR WITHOUT CAUSE, AND EVEN

18    IF WE WERE TO MOVE FORWARD WITH THE QUESTION REGARDING

19    REASONABLE BELIEF, ON THE CURRENT RECORD, MUSI HAS NOT RAISED

20    SERIOUS QUESTIONS THAT APPLE DID NOT REASONABLY BELIEVE THAT

21    THE MUSI APPLICATION VIOLATED THIRD PARTY INTELLECTUAL PROPERTY

22    RIGHTS.

23              AS TO THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

24    CLAIM, ON THE CURRENT RECORD, AGAIN, MUSI HAS NOT RAISED

25    SERIOUS QUESTIONS THAT APPLE ACTED UNFAIRLY OR IN BAD FAITH
```

1    WHEN IT DECIDED TO REMOVE THE MUSI APPLICATION FROM THE APP

2    STORE.

3        I KNOW THAT APPLE HAD ALSO RAISED THE ARGUMENT THAT THE

4    LAW ON ITS -- THE CASE LAW THAT -- CALIFORNIA CASE LAW

5    PROHIBITS A STANDING BREACH OF CONTRACT CLAIM IF THERE'S NO --

6    A SELF-STANDING IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

7    CLAIM IF THERE'S NO BREACH OF CONTRACT CLAIM.  WE'LL REACH THAT

8    ANOTHER DAY, AS I INDICATED IN TERMS OF THE MOTION TO DISMISS.

9        I'M MAKING NO DETERMINATION AS TO ANY OF THIS.  THIS IS

10   ALL AT THE PRELIMINARY INJUNCTION STAGE, SO WE'LL ADDRESS THAT

11   WHEN WE COME TO IT.

12       A WRITTEN ORDER WILL ISSUE.  I'M MUCH MORE ARTICULATE IN

13   MY WRITTEN ORDER THAN IN MY ORAL, BUT A WRITTEN ORDER WILL

14   ISSUE SHORTLY.

15       BUT WITH THAT, I'M HOPING THAT THAT WILL HELP SHAPE OUR

16   CONVERSATION TODAY IN TERMS OF CASE MANAGEMENT, SO LET'S TURN

17   TO THAT.

18       IN ADDITION TO ITS TENTATIVE REGARDING THE MOTION FOR

19   PRELIMINARY INJUNCTION, THE COURT ALSO SENT COUNSEL A TENTATIVE

20   RULE 16 SCHEDULE, SCHEDULING ORDER IN WHICH IT SET FORTH -- PUT

21   DATES ONTO THE RANGES WHICH COUNSEL HAD PROPOSED.  FOR THE MOST

22   PART, THE COURT HAD ADOPTED MANY OF THE DATES WHICH WERE -- OR

23   THE TIMEFRAMES WHICH APPLE HAD PROPOSED.

24       AT THE SAME TIME, THE COURT, IN ITS DRAFT SCHEDULING

25   ORDER, INDICATED THAT IT WAS NOT INCLINED TO STAY DISCOVERY.

```
 1          SO THERE'S SORT OF A, A LITTLE BIT ON EACH SIDE IN TERMS

 2    OF MOVING FORWARD AND HOW TO PROCEED.

 3          SO LET ME HEAR PARTIES' REACTION, COUNSEL'S REACTION TO

 4    THE DRAFT SCHEDULING ORDER, AND LET'S TALK THAT THROUGH, AND

 5    THEN WE'RE GOING TO GO TO ADR, AND THEN WE'LL MOVE TO THE

 6    INFORMAL DISCOVERY CONFERENCE.

 7          MS. GOLINVEAUX:  YOUR HONOR, WOULD YOU LIKE US TO

 8    STAND AT COUNSEL TABLE TO TALK, OR --

 9          THE COURT:  WITH THE MICROPHONES GOING AS THEY ARE,

10    YOU'RE WELCOME TO STAY SEATED AND WE'LL JUST GO FROM THERE.

11          MS. GOLINVEAUX:  THANK YOU.

12    YOUR HONOR, WE'VE STUDIED YOUR PROPOSED CASE SCHEDULE AND

13    MUSI IS SATISFIED WITH THAT CASE SCHEDULE.

14          THE COURT:  OKAY.

15          MS. MILICI:  YOUR HONOR, THANK YOU.

16    APPLE'S POSITION REMAINS THAT A STAY OF DISCOVERY IS

17    APPROPRIATE GIVEN THAT THE CASE PRESENTS A LEGAL ISSUE AND WE

18    THINK THAT THE DISMISSAL IS APPROPRIATE AND THAT DISCOVERY

19    WON'T CHANGE THE FACT THAT THE OPENING SENTENCE OF THE

20    OPERATIVE PARAGRAPH IS CONTROLLING AND WON'T --

21          THE COURT:  OBJECTION NOTED.

22          MS. MILICI:  THAT SAID, I UNDERSTAND THAT YOUR HONOR

23    IS INCLINED TO GO FORWARD WITH DISCOVERY.

24          WE HAVE JUST DISCUSSED A PROPOSAL TO POTENTIALLY STAGE

25    DISCOVERY.  I DON'T KNOW IF YOU WANT TO TALK ABOUT THAT NOW
```

```
1      OR --

2                THE COURT:  LET'S START WITH THE SCHEDULING ORDER AND

3      SOME OF THE DATES WHICH ARE SET FORTH, AND THEN WE'LL MOVE TO

4      THAT.

5                MS. MILICI:  SO ON THE SCHEDULING ORDER, WE'RE FINE

6      WITH IT.

7          THE ONLY THING THAT I WOULD RAISE IS THAT ONCE WE GET TO

8      THE SUMMARY JUDGMENT BRIEFING, WE HAVE A VERY TIGHT TURNAROUND

9      ON THE OPPOSITION, AND THEN A TIGHT TURNAROUND AROUND THE

10     REPLY, BOTH OF WHICH HAPPEN OVER THE HOLIDAYS.

11               THE COURT:  HMM.

12               MS. MILICI:  THAT'S OBVIOUSLY NOT SOMETHING WE NEED

13     TO RESOLVE NOW AND IS SOMETHING THAT WE COULD RESOLVE DOWN THE

14     ROAD BASED ON THE SCOPE OF THE CASE, IF ANY EXISTS AT THAT

15     POINT, BUT I DID JUST WANT TO FLAG THAT THAT'S -- THAT GIVEN

16     THAT IT JUST PROVIDES A COUPLE OF WEEKS AND THOSE COUPLE OF

17     WEEKS INCLUDE THE HOLIDAYS, THAT TIME MIGHT BE SOMETHING WE'D

18     WANT TO REVISIT AT A LATER DATE.

19               THE COURT:  I THOUGHT THERE WAS ABOUT A MONTH OR FOUR

20     WEEKS BETWEEN EACH OF THE STAGES.  SO THE DEADLINE TO FILE THE

21     SUMMARY JUDGMENT MOTION, NOVEMBER 13TH, AND THE DEADLINE FOR

22     THE OPPOSITION, DECEMBER 9TH, SO FOUR WEEKS, I BELIEVE.

23               MS. MILICI:  I THINK THAT THAT'S ABOUT FOUR WEEKS

24     WITH THANKSGIVING IN THE MIDDLE.

25               THE COURT:  UM-HUM.
```

```
 1              MS. MILICI:  AND LIKE I SAID, YOU KNOW, I DON'T KNOW
 2    WHAT THE SCOPE OF THE CASE WOULD BE AT THAT POINT, AND MAYBE
 3    THAT WOULD BE FINE.  BUT IT DOES SEEM LIKE THAT'S A VERY TIGHT
 4    TURNAROUND OVER A HOLIDAY PERIOD.
 5              THE COURT:  I THOUGHT APPLE HAD ASKED FOR THREE
 6    WEEKS, AND SO I -- I WAS INCLUDING A ONE WEEK HOLIDAY WITH
 7    THAT.
 8              MS. MILICI:  I DON'T HAVE THAT REQUEST IN FRONT OF
 9    ME.
10              THE COURT:  BECAUSE PART OF MY CONCERN IS JUST -- IF
11    WE'RE DOING THAT TO MAINTAIN THE TRIAL DATE WHERE WE ARE, I
12    WOULD LIKE TO AT LEAST GIVE A BUFFER OF ONE MONTH TO GET THE
13    ORDER OUT AND PLENTY OF TIME FOR PARTIES TO SORT OF MEET AND
14    CONFER ON THE BACK END AFTER THE ORDER IS OUT LEADING UP TO THE
15    PRETRIAL.
16              MS. MILICI:  UNDERSTOOD, YOUR HONOR.  AND LIKE I
17    SAID, I'M HAPPY TO LEAVE THIS TO A LATER DATE IF IT BECOMES
18    LIKE -- IF IT APPEARS TO BE AN ISSUE.  RIGHT NOW IT'S FINE.
19              THE COURT:  OKAY.  SO IT SOUNDS AS THOUGH THE CASE --
20    WELL, LET ME TALK ABOUT ADR, BECAUSE THAT DOES IMPACT THE CASE
21    SCHEDULE.
22          SO I WANTED TO FOLLOW UP WITH PARTIES IN TERMS OF WHAT YOU
23    ALL WERE THINKING ABOUT ANY ATTEMPTS AT EARLY -- ANY ATTEMPTS
24    AT MEDIATION OR EARLY ADR.
25              MS. MILICI:  I --
```

```
1              MS. GOLINVEAUX:  I --

2              MS. MILICI:  IN APPLE'S VIEW, IF THIS CASE DOES

3     SURVIVE A MOTION TO DISMISS, WE THINK ADR IN FRONT OF A

4     MAGISTRATE JUDGE WOULD BE HELPFUL.  IF THE PARTIES COULD

5     PRESENT AND GET SOME HONEST FEEDBACK, WE THINK THAT WOULD BE

6     VERY HELPFUL AND WE WOULD REQUEST THAT.

7              THE COURT:  OKAY.

8              MS. GOLINVEAUX:  YOUR HONOR, WHAT WE HAD IN MIND WAS

9     A PRIVATE MEDIATOR.

10             THE COURT:  UM-HUM.

11             MS. GOLINVEAUX:  BUT IF THAT'S APPLE'S PREFERENCE,

12    I'D LIKE TO CONSIDER IT WITH MY CLIENT, BECAUSE THIS IS THE

13    FIRST THAT THEY'VE SUGGESTED THIS.

14        BUT WE MAY BE ABLE TO AGREE TO THAT IF THAT'S THEIR STRONG

15    PREFERENCE.

16             THE COURT:  IS IT APPLE'S STRONG PREFERENCE TO HAVE A

17    MAGISTRATE JUDGE -- AND LET ME HEAR A LITTLE BIT ABOUT WHY --

18    VERSUS PRIVATE MEDIATION?

19             MS. MILICI:  IT IS OUR PREFERENCE.  I THINK THAT IT

20    WOULD BE EFFICIENT AND JUST HELPFUL TO GET THE FEEDBACK FROM A

21    MAGISTRATE JUDGE.

22        IT'S NOT -- I'M HAPPY TO MEET AND CONFER AND DISCUSS IT --

23             THE COURT:  UM-HUM.

24             MS. MILICI:  -- WITH OPPOSING COUNSEL IF THAT MAKES

25    SENSE, BUT THAT IS APPLE'S PREFERENCE.
```

```
1              THE COURT:  OKAY.  WHY DON'T PARTIES MEET AND CONFER

2      AND COMPLETE THE ADR FORM AGAIN, BUT THIS TIME WITH WHAT YOU

3      ARE REQUESTING.  AND IF YOU NEED TO DISCUSS OPTIONS, I'M ALSO

4      HAPPY TO SET YOU UP WITH AN ADR PHONE CONFERENCE, IF THAT'S

5      HELPFUL, WITH OUR ADR PROGRAM COORDINATOR AS WELL.

6          BUT WHY DON'T WE START WITH YOU ALL MEETING AND CONFERRING

7      AND RETURNING THE FORM IN TWO WEEKS.

8              MS. GOLINVEAUX:  THAT SOUNDS LIKE A GOOD SOLUTION,

9      YOUR HONOR.

10             MS. MILICI:  YES.

11             THE COURT:  AND IF YOU NEED THE COURT'S ASSISTANCE

12     OUTSIDE OF THAT, JUST LET ME KNOW.

13             MS. MILICI:  THANK YOU, YOUR HONOR.

14             THE COURT:  AND LET'S TURN TO -- ALL RIGHT.  LET'S GO

15     AHEAD AND TURN TO THE INFORMAL DISCOVERY CONFERENCE ASPECT, AND

16     I'M GOING TO SAY THIS WITH THE QUALIFIER OF GENERALLY IN

17     SAN JOSE, WE USUALLY REFER ALL DISCOVERY TO MAGISTRATE JUDGES,

18     AND THIS CASE IS NO DIFFERENT.  THIS HAS BEEN REFERRED TO

19     JUDGE COUSINS.

20         BUT AS I THINK IT IMPACTS THE CASE SCHEDULE MOVING

21     FORWARD, MAKING SURE THIS ALL MAKES SENSE AND HOW THIS

22     INTERSECTS WITH SOME ASPECTS OF IT, I THOUGHT AT MINIMUM WE

23     COULD DISCUSS AND SHARE SOME THOUGHTS JUST TO HELP FACILITATE,

24     BECAUSE I HAD SOME CONCERNS -- WELL, I HAD SOME FEEDBACK IN

25     REGARD TO SOME OF THE DISCOVERY RESPONSES.
```

```
 1              BUT LET ME HEAR ABOUT YOUR MEET AND CONFER.

 2              MS. GOLINVEAUX:  CERTAINLY, YOUR HONOR.

 3              APPLE'S COUNSEL PROPOSED A STAGING OF DISCOVERY IN WHICH

 4    WE WOULD CUT BACK OUR FIRST ROUND TO A PHASE ONE THAT'S MORE

 5    TARGETED TOWARDS WHAT MIGHT BE RELEVANT ON A MOTION TO DISMISS

 6    HEARING --

 7              THE COURT:  OKAY.

 8              MS. GOLINVEAUX:  -- OF THE AMENDED COMPLAINT, AND I

 9    SAID THAT MUSI IS HAPPY TO CONSIDER THAT, OR WE'RE HAPPY TO

10    STUDY THE DISCOVERY AND COME BACK TO THEM WITH A FORMAL

11    PROPOSAL IN TERMS OF WHICH ONES WOULD FALL IN WHICH BUCKETS.

12              AND IN ADDITION TO THE SPECIFIC REQUESTS THAT APPLE CALLED

13    OUT IN THE CASE MANAGEMENT -- IN THE JOINT CASE MANAGEMENT

14    STATEMENT --

15              THE COURT:  UM-HUM.

16              MS. GOLINVEAUX:  -- MAKING THOSE TIGHTER AND LESS

17    BROAD.

18              THE COURT:  YEAH, THERE WERE SOME BREADTH ISSUES.

19              MS. GOLINVEAUX:  YES.  AND I -- FRANKLY, LOOKING AT

20    THEM, I AGREE WITH YOU.  SO WE'RE HAPPY TO DO THAT AND COME

21    BACK WITH THEM TO GIVE YOU A PROPOSAL.

22              APPLE SUGGESTED -- WELL, I'LL LET YOU DESCRIBE WHAT YOU

23    SUGGESTED, COUNSEL.

24              MS. MILICI:  SURE, I'M HAPPY TO.

25              SO IN APPLE'S VIEW, MANY OF THE -- OR THE VAST MAJORITY OF
```

1    THE REQUESTS HERE ARE IMPROPER.  THEY'RE OVERLY BROAD, THEY'RE

2    UNDULY BURDENSOME, AND THEY'RE GOING TO ISSUES THAT ARE NOT

3    IMPLICATED IN THE CASE.

4         THE COURT:  UM-HUM.

5         MS. MILICI:  AND SO OUR VIEW IS THAT INSTEAD OF

6    TEEING THOSE ISSUES UP AND A LOT OF DISCOVERY DISPUTES IN THE

7    SHORT TERM, THAT WE COULD START WITH REQUESTS 1 AND 2 AND GET

8    STARTED ON THOSE, AND THEN AFTER A DECISION ON THE MOTION TO

9    DISMISS SEE WHAT REMAINS IN THE CASE AND WHAT MAKES SENSE FROM

10   THERE.

11        TO JUST BE CLEAR, APPLE WAS NOT MAKING ANY COMMITMENT TO

12   COMPLETE ANY DISCOVERY BEFORE THE MOTION TO DISMISS HEARING

13   AND, IN FACT, OUR PROPOSAL WAS THAT WE SUGGEST TO THE COURT

14   PERHAPS TRYING TO MOVE UP THE MOTION TO DISMISS HEARING.  APPLE

15   WOULD BE HAPPY TO WORK FASTER ON ITS REPLY BRIEF AND TO GET

16   SOMETHING IN QUICKLY IF WE COULD MOVE UP THE MOTION TO DISMISS

17   HEARING DATE AND BE ABLE TO SEE WHERE WE ARE IN THE CASE.

18        THE COURT:  WELL, LET ME TURN TO MUSI FOR A MOMENT,

19   BECAUSE THIS IS SOMETHING I MEANT TO RAISE IN CASE MANAGEMENT.

20        I CAN'T REMEMBER IF IT WAS THE CASE MANAGEMENT STATEMENT

21   OR OTHERWISE, BUT MY IMPRESSION WAS -- IS MUSI PLANNING TO

22   AMEND ITS COMPLAINT, TO FILE AN AMENDED COMPLAINT WITHIN THE

23   60 DAYS?

24        MS. GOLINVEAUX:  YOUR HONOR, WE DO INTEND TO FILE AN

25   AMENDED COMPLAINT.

1          THE COURT:  BECAUSE THAT WOULD TERMINATE THE -- MOST

2      LIKELY TERMINATE THE MOTION TO DISMISS.

3          SO CURRENTLY THE SCHEDULE SETS FORTH 60 DAYS FOR THE -- TO

4      AMEND.  MY IMPRESSION WAS THAT IF MUSI IS AMENDING, THAT WOULD

5      TERMINATE THOSE MOTIONS TO DISMISS.  WE COULD KEEP THE HEARING

6      DATES POSSIBLY, WHICH WOULD -- I'M THINKING THROUGH.  I NEED TO

7      LOOK AT A CALENDAR AT THE SAME POINT.

8          WE COULD POSSIBLY KEEP THAT MOTION DATE IF WE KNOW WHEN

9      THE AMENDED COMPLAINT IS COMING IN, AND IF YOU ALL CAN MAKE IT

10     WORK, I'M HAPPY TO RESERVE THAT DATE FOR YOU ALL, SO YOU MIGHT

11     BE LOOKING AT THE SAME TIME PERIOD.

12         BUT I AM -- IF MUSI IS INCLINED TO DO THAT, I'D LIKE TO

13     HAVE A DATE, AND I'M GOING TO GO AHEAD AND TERMINATE THE MOTION

14     TO DISMISS UNLESS THERE'S ANY OBJECTION FROM APPLE.

15          MS. MILICI:  YOUR HONOR, I THINK I'VE STATED THIS

16     SEVERAL TIMES, BUT WE DO THINK THAT THE FIRST SENTENCE OF THE

17     SECTION IS CONTROLLING, SO WE'RE ANXIOUS TO GET TO A DECISION

18     ON THAT AS QUICKLY AS POSSIBLE.  I'M HAPPY TO WORK WITH

19     WHATEVER MAKES SENSE FOR THE COURT.

20          THE COURT:  THAT'S WHAT -- I'M TRYING TO HELP IN

21     TERMS OF -- I'LL KEEP YOUR DATE.  YOU'LL HAVE YOUR MOTION TO

22     DISMISS DATE.

23          MS. MILICI:  GREAT.

24          THE COURT:  SO IT'S THE SAME AS IT WOULD HAVE BEEN.

25     I'M NOT GOING TO ADVANCE IT BECAUSE I DON'T THINK THAT'S GOING

1    TO WORK OUT QUITE IN TERMS OF TIMING.

2         I'M HAPPY TO -- MAYBE I SHOULD HAVE HAD YOU ALL MEET AND

3    CONFER ABOUT THIS INSTEAD, BUT I'M HAPPY TO JUST -- AND MUSI

4    CAN SAY WHEN THEY'RE GOING TO FILE THEIR AMENDED COMPLAINT AND

5    WE CAN SORT OF MAKE SURE THAT THAT APRIL DATE WILL STICK, WHICH

6    I THINK IT WOULD.

7         MS. GOLINVEAUX:  WELL, YOUR HONOR, I THINK THAT YOU

8    HAD INDICATED MARCH 10 TO AMEND, AND SO THAT'S -- WE WERE

9    CURRENTLY CONTEMPLATING AMENDING BY THEN.

10        THE COURT:  SO THAT WOULD NOT BE IN TIME FOR THE

11   APRIL DATE.

12        MS. MILICI:  YOUR HONOR, APPLE'S ONLY CONCERN WITH

13   THAT IS THAT WE WOULD ESSENTIALLY BE FORCED TO FINISH DISCOVERY

14   JUST ABOUT BEFORE A DECISION ON THE -- ON WHAT WE THINK IS THE

15   CONTROLLING LEGAL ISSUE IN THIS CASE.

16        SO WE WOULD ENCOURAGE, YOU KNOW, MUSI TO MOVE QUICKER THAN

17   THAT, OR TO POSTPONE DISCOVERY SO THAT WE'RE NOT IN THAT

18   POSITION OF HAVING TO COMPLETE DISCOVERY BEFORE A RULING ON THE

19   MOTION TO DISMISS.

20        MS. GOLINVEAUX:  YOUR HONOR, I THINK ONE OF OUR

21   CONCERNS IS THAT WE -- THERE HAVE BEEN NEW FACTS THAT HAVE COME

22   TO LIGHT AS PART OF THE BRIEFING THAT WE DISCUSSED TODAY THAT

23   ARE RELEVANT TO THE, AT LEAST TO THE COVENANT CLAIM.

24        AND -- BUT ALL WE KNOW SO FAR IS WHAT APPLE FELT WAS

25   IMPORTANT TO PUT IN THEIR OPPOSITION BRIEF, AND SO HAVING SOME

1    LIMITED DISCOVERY ABOUT WHAT COMMUNICATIONS HAPPENED AND WHAT

2    DOCUMENTS EXIST ABOUT THOSE COMMUNICATIONS, NOT JUST THE ONES

3    THAT THEY CHERRY PICKED, WOULD BE IMPORTANT.  AND THAT'S --

4            THE COURT:  BUT THAT'S THE PURPOSE OF STAGED

5    DISCOVERY, RIGHT?

6            MS. GOLINVEAUX:  CORRECT.

7            THE COURT:  THAT'S THE PURPOSE OF US ASKING YOU TO

8    TARGET YOUR DISCOVERY.

9            MS. GOLINVEAUX:  YES.

10           MS. MILICI:  AND, YOUR HONOR, FROM APPLE'S VIEW, IF

11   WE WERE TO GO FORWARD WITH TARGETED DISCOVERY, YOU KNOW,

12   THERE'S REQUESTS THAT WE WOULD MAKE TO MUSI AS WELL, INCLUDING

13   FOR ITS COMMUNICATION WITH YOUTUBE AND OTHER COMPLAINANTS, AND

14   DOCUMENTS THAT SHOW ACTUALLY HOW THAT WORKS.

15           THE COURT:  I'M SORRY, I COULDN'T -- CAN YOU SLOW

16   DOWN A LITTLE BIT?  LET'S MOVE THAT MIC OVER.

17           MS. MILICI:  SURE.

18       IF TARGETED DISCOVERY WERE TO GO FORWARD, APPLE WOULD

19   SERVE DISCOVERY ON MUSI ON THE NARROW TOPICS OF ITS

20   COMMUNICATIONS WITH YOUTUBE AND OTHER COMPLAINANTS, AND ALSO

21   DOCUMENTS THAT WOULD SHOW HOW ITS APP ACTUALLY WORKS, WHICH,

22   YOU KNOW, DESPITE ALL THE THINGS BEFORE THE COURT, I THINK IS

23   STILL VERY CONFUSING.

24           THE COURT:  I MEAN, I -- IF DISCOVERY IS GOING TO

25   OPEN AND BEGIN, APPLE IS ENTITLED TO PROPOUND DISCOVERY AS

```
1      WELL.

2             MS. GOLINVEAUX:  AGREED, YOUR HONOR.

3             THE COURT:  SO THE CURRENT HEARING DATE IS

4      APRIL 16TH.

5             MS. MILICI:  THAT'S CORRECT, YOUR HONOR.

6          (PAUSE IN PROCEEDINGS.)

7             THE COURT:  SO RIGHT NOW I'M TRYING TO DECIDE WHETHER

8      OR NOT TO MOVE THE HEARING DATE A WEEK OR TWO JUST TO MAKE SURE

9      THAT IT HAPPENS IN THE APRIL TIME PERIOD, BOTH IN TERMS OF THE

10     AMENDED COMPLAINT GETTING FILED AND IF THERE'S TIME FOR THE

11     MOTION TO DISMISS PAPERS.

12         TO A LARGE EXTENT, OTHER THAN WHAT IS THE ALLEGATION -- I

13     THINK THEY'RE GOING TO HAVE SIMILAR ARGUMENTS, AND SO I'M

14     EXPECTING THAT TO TURN AROUND QUICKLY, SO WHETHER OR NOT MOVING

15     TO AN APRIL 23RD OR AN APRIL 30TH DATE JUST SORT OF SAFEGUARDS

16     IT.  SO MAYBE THAT'S THE EASIEST WAY TO DO IT.

17            MADAM CLERK, CAN YOU CHECK THOSE DATES?

18            THE CLERK:  THOSE ARE AVAILABLE, YOUR HONOR.

19            THE COURT:  THANKS, LAURA.

20         ANY PREFERENCE FROM EITHER COUNSEL?

21            MS. MILICI:  I DON'T HAVE MY CHILDREN'S SPRING BREAK

22     DATES, BUT I THINK EITHER ONE SHOULD BE FINE.

23            THE COURT:  THAT'S -- YOU'RE --

24            MS. MILICI:  I THINK WE'RE OUT OF THE SCOPE, SO I

25     THINK WE'RE FINE.
```

```
1              THE COURT:  ARE YOU SURE?

2              MS. MILICI:  I THINK SO.  I'LL MAKE EITHER ONE WORK.

3              THE COURT:  MS. GOLINVEAUX?

4              MS. GOLINVEAUX:  YOUR HONOR, MY BOYS HAVE SPRING

5      BREAK THE WEEK OF APRIL 6TH, SO WE ARE GOOD ON THAT FRONT.

6          BUT APRIL 30 WOULD BE BETTER FOR THE SCHEDULE, BUT IF ONLY

7      APRIL 23RD WORKS --

8              THE COURT:  I THINK APRIL 30TH WILL SAFELY AVOID ALL

9      SPRING BREAKS, AND WILL ALSO GIVE A LITTLE MORE CUSHION IN

10     TERMS OF MAKING SURE THAT THE BRIEFING HAPPENS AND IS COMPLETED

11     PRIOR TO THE HEARING.  SO WHY DON'T WE DO APRIL 30TH?

12         AND DO I BELIEVE YOU'RE SAFE BECAUSE I THINK THE LAST ONE

13     IS -- THE LAST SPRING BREAK IS THAT THIRD WEEK IN APRIL.

14         SO WE'LL SET A MOTION TO DISMISS -- WE'LL RESERVE A

15     HEARING FOR YOU.

16         I AM GOING TO -- IN LIGHT OF MUSI'S INTENTION TO FILE AN

17     AMENDED COMPLAINT, I DON'T SEE THEM NOT, I'M GOING TO TERMINATE

18     THOSE NUMBERS -- THOSE DOCKET ENTRIES REGARDING THE CURRENT

19     MOTION TO DISMISS.

20         AND LET'S TURN TO THE DISCOVERY, BECAUSE PERHAPS FOR THE

21     COURT TO PROVIDE AT LEAST MY IMPRESSIONS MIGHT HELP GUIDE AS

22     YOU ALL FIGURE OUT WHAT YOU WANT TO TARGET, AND THEN YOU CAN

23     FOLLOW UP WITH JUDGE COUSINS ABOUT ANY SPECIFICS OR IF YOU NEED

24     HIS FURTHER ASSISTANCE REGARDING A DEFINITIVE DISCOVERY PLAN.

25     BUT I FIGURE AT LEAST NOW THAT I'VE GONE THROUGH THEM, SINCE
```

1    THEY WERE ATTACHED TO THE CASE MANAGEMENT, MAYBE IT WOULD BE

2    HELPFUL.

3              MS. MILICI:  THANK YOU, YOUR HONOR.

4              THE COURT:  SO BEGINNING WITH THE REQUESTS FOR

5    ADMISSIONS, DID APPLE HAVE ANY OBJECTIONS TO THOSE?

6              MS. MILICI:  YOUR HONOR, WE DO.  WE HAVE OBJECTIONS

7    TO -- OH, I'M SORRY.

8         ON THE RFA'S, I DON'T THINK WE DO HAVE SPECIFIC

9    OBJECTIONS.  I THINK WE HAD A QUESTION ABOUT WHETHER IT MAKES

10   SENSE TO DO THOSE SO EARLY, BUT I DON'T THINK WE HAD SPECIFIC

11   OBJECTIONS.

12             THE COURT:  OKAY.  THE COURT'S REACTION IS SIMILAR.

13   SO I DIDN'T THINK THERE WAS -- THERE'S -- THE OVERBREADTH

14   ISSUES AND THE SCOPE ISSUES I THINK WERE MUCH MORE TOWARDS THE

15   LAST INTERROGATORIES, AS WELL AS THE REQUESTS FOR PRODUCTION.

16        AND IN TERMS OF TIMING, I'LL LET PARTIES SORT THAT OUT

17   EITHER ON THEIR OWN OR WITH THE HELP OF JUDGE COUSINS.

18        BUT IT SEEMS LIKE THOSE WERE FAIR GAME.

19             MS. MILICI:  SORRY.  I WAS HITTING THE MICROPHONE

20   THERE.  I'M REALLY SORRY.

21             THE COURT:  THERE'S THE DISADVANTAGE OF DOING THIS

22   ALL WITH NO BOOKS AND PAPERS AT COUNSEL TABLE AND IS FINE.

23        OKAY.  MOVING ON TO THE INTERROGATORIES, I NEED TO PULL UP

24   MY NOTES AWAY FROM THE CASE SCHEDULE.

25             SO SOME OF THESE SEEM TO GO VERY FAR BACK IN TIME OR ARE

1      UNRELATED TO THE CURRENT DISPUTE, SUCH AS DRAFTING ANY PORTION

2      OF THE APPLE DEVELOPMENT AGREEMENT IN PLACE DURING THAT TIME

3      AND DURING THE TIME THAT THE MUSI APP WAS AVAILABLE THROUGH THE

4      APPLE APP STORE.  SO YOU'RE BASICALLY TALKING ABOUT TEN-PLUS

5      YEARS.  THAT JUST SEEMS OVERBROAD AND CAN BE MUCH MORE FOCUSSED

6      IF IT'S GOING TO BE ASKED AT ALL.

7            I SIMILARLY -- WELL, LET ME PULL UP NOTES.

8            AND LET ME TURN TO APPLE IN TERMS OF MS. MILICI -- AM I --

9      COULD YOU PRONOUNCE YOUR LAST NAME FOR ME?

10            MS. MILICI:  THAT'S CORRECT, YES, THANK YOU VERY

11      MUCH.  YES, IT'S MILICI.

12            AS TO THE INTERROGATORIES, WE DO THINK THAT INTERROGATORY

13      NUMBER 2, FOR INSTANCE, INCLUDES -- IS OVERBROAD.  IT REFERS TO

14      STEPS TAKEN PRIOR TO REMOVING THE APP FROM THE APP STORE, WHICH

15      APPEARS TO APPLY TO ANY DECISION TO REMOVE AN APP FROM THE APP

16      STORE, AND APPS MIGHT BE REVIEWED FOR -- REMOVED FOR ANY NUMBER

17      OF REASONS THAT HAVE NOTHING TO DO WITH THE ISSUES IN THIS

18      CASE.

19            SAME THING WITH NUMBER 3.

20            THE COURT:  UM-HUM.

21            MS. MILICI:  IT'S ASKING FOR PROCESSES THAT MIGHT

22      HAVE NOTHING WHATSOEVER TO DO WITH THIS CASE.

23            AND I WILL JUST SAY THAT AS TO A LOT OF THIS DISCOVERY,

24      INCLUDING THE REQUESTS FOR PRODUCTION, THIS IS NOT, LIKE, AS

25      SIMPLE AS IT MIGHT APPEAR.  THERE'S A LOT OF PRIVILEGED

```
1      INFORMATION THAT'S BEING ASKED FOR IN THE RFP'S.  IT'S GOING TO
2      BE A DIFFICULT PROCESS.
3            AND FOR THIS, THERE MIGHT BE DIFFERENT TEAMS THAT HANDLE
4      DIFFERENT KINDS OF COMPLAINTS ABOUT APPS, AND THIS IS -- LIKE,
5      TRYING TO ANSWER HOW EVERY TEAM RESOLVES ANY COMPLAINT IS GOING
6      TO BE LONG AND BURDENSOME AND NOT RELEVANT TO THE ISSUES HERE.
7            THE COURT:  I MEAN, MY INITIAL THOUGHTS, WHEN I WAS
8      LOOKING AT THEM, WAS WHETHER OR NOT THOSE COULD HAVE -- WHETHER
9      OR NOT 2 OR 3 COULD BE LIMITED IN TERMS OF PERHAPS INTELLECTUAL
10     PROPERTY DISPUTES OR SOMETHING ALONG THOSE LINES.  I THINK IT
11     CAN BE NARROWED ALONG SEVERAL SCOPES BECAUSE IT COULD BE VERY
12     BROAD.
13           AND ALSO, YOU ALL WILL NEED TO MEET AND CONFER ABOUT WHAT
14     DOES THIS LOOK LIKE, WHAT STEPS -- I MEAN, JUST IN TERMS OF
15     HAVING MEANINGFUL RESPONSES.
16           BUT I THOUGHT THE BREADTH OF THOSE WAS WORRISOME IN TERMS
17     OF SOMEONE TAKING AN APP DOWN.
18           INTERROGATORY NUMBER 5 I THINK I SHARED MY CONCERNS ABOUT.
19           INTERROGATORY NUMBER 6, I WASN'T SURE IN TERMS OF ANY --
20     ANY MEETINGS AND WITH WHOM, JUST SORT OF THE SCOPE OF -- THE
21     SCOPE OF THAT.  THERE'S NO PLACE HOLDER OF TIME PERIOD.  YOU
22     KNOW, ANY MEETINGS COULD BE BACK WHEN MUSI FIRST JOINED.
23     APPLIED, I MEAN, IT'S VERY BROAD.
24           MS. MILICI:  YOUR HONOR, OBVIOUSLY WE AGREE THAT
25     THAT'S EXCEPTIONALLY BROAD AND THAT, YOU KNOW, THERE COULD
```

1    BE -- I HAVE NO IDEA WHETHER THERE ARE, BUT THE MUSI APP HAS

2    BEEN THERE AND THERE COULD BE COMMUNICATIONS ABOUT ANY NUMBER

3    OF THINGS ABOUT THE MUSI APP THAT HAVE NOTHING TO DO WITH

4    INTELLECTUAL PROPERTY INFRINGEMENT OR THE REMOVAL DECISION.

5              THE COURT:  I AGREE.

6         SO TRYING TO FOCUS THAT DOWN WITH ALL OF THESE.

7              INTERROGATORY NUMBER 7, THE MUSIC INDUSTRY, WHAT IS THE

8    MUSIC INDUSTRY?  SO WITH MUSIC INDUSTRY ENTITIES, LIKE, I

9    WASN'T SURE IF YOU'RE TALKING ABOUT THE NATIONAL PHONOGRAPHIC

10   ASSOCIATION AND THOSE TYPE OF -- BUT DEFINING THAT TERM.

11        AND THIS -- AND THINKING THROUGH WHAT YOU'RE REALLY TRYING

12   TO GET WITH THAT.

13             MS. MILICI:  AGAIN, YOUR HONOR, WE AGREE THAT THEY'RE

14   REALLY BROAD.

15        BUT I'M ALSO NOT SURE WHAT THAT WOULD BE RELEVANT TO.

16   APPLE REMOVED THIS APP BECAUSE -- UNDER THE FIRST SECTION OF

17   6.3, AND I DON'T KNOW WHAT ITS AGREEMENTS WITH WHATEVER THE

18   MUSIC INDUSTRY REFERS TO HAS ANYTHING TO DO WITH THAT REMOVAL,

19   OR EVEN WITH THE CLAIM THAT SOMEHOW THE DUTY OF GOOD FAITH

20   APPLIED.

21             THE COURT:  SO, MS. GOLINVEAUX?

22             MS. GOLINVEAUX:  YOUR HONOR, WE'LL CERTAINLY LOOK AT

23   THE COURT'S CONCERNS ABOUT OVERBREADTH AND TRY TO BRING IT IN.

24        BUT I THINK THE RELEVANCE IS THAT IF THERE WERE AGREEMENTS

25   AND CONTRACTS ENTERED INTO WITH MUSIC INDUSTRY ENTITIES ABOUT

1    WHICH -- ABOUT REMOVAL OF APPS IN THE APP STORE, THAT'S GOING

2    TO GO DIRECTLY TO OUR CLAIMS OF THE BACKROOM DISCUSSIONS THAT,

3    FROM WHAT WE HEARD TODAY FROM APPLE'S COUNSEL, IT SOUNDS LIKE

4    APPLE ACTUALLY SOLICITED THAT MEETING WITH YOUTUBE IN JULY OF

5    2024 TO INVITE THE COMPLAINT, AND DISCUSSIONS WITH MAJOR

6    PLAYERS IN THE MUSIC INDUSTRY ABOUT TAKING DOWN SMALLER APPS

7    COULD BE VERY CONCERNING, YOUR HONOR.

8         BUT I TAKE THE COURT'S POINT ON OVERBREADTH AND DEFINING

9    THE TERMS TO MAKE THIS MORE MANAGEABLE, WE CAN CERTAINLY WORK

10   ON THAT.

11         MS. MILICI:  YOUR HONOR, IF I CAN JUST RESPOND TO

12   THAT POINT, BECAUSE THAT IS CERTAINLY NOT WHAT I SAID.

13         YOUTUBE HAD A PREEXISTING COMPLAINT FROM 2023, AND THE

14   QUESTION POSED TO IT IS, IS THAT COMPLAINT STILL OPEN?  THAT'S

15   THE QUESTION THAT WAS POSED.

16         AGAIN, I THINK THE SUGGESTION OF SOME SHADOWY CONSPIRACY

17   HAS NO SUPPORT AND THAT THIS IS JUST A FISHING EXPEDITION.

18   THERE'S NO INDICATION THAT THERE'S ANY AGREEMENTS THAT ARE

19   RELEVANT HERE, AND THIS IS JUST OVERLY BURDENSOME WITHOUT ANY

20   PURPOSE.

21         MS. GOLINVEAUX:  IF THERE ARE NO AGREEMENTS, I THINK

22   IT'S AN EASY INTERROGATORY TO RESPOND TO.

23         THE COURT:  I'M CONCERNED THAT THIS HAS BEEN -- THE

24   QUESTION -- I'D ENCOURAGE, LIKE -- BECAUSE TO SHAPE THIS AND

25   WHETHER -- THE LINE BETWEEN IS THIS A FISHING EXPEDITION VERSUS

```
 1    WHETHER OR NOT THIS IS LIKELY TO LEAD TO THE DISCOVERY OF

 2    RELEVANT EVIDENCE IS, IT'S -- WITH THIS ONE IS A TOUGH ONE.  I

 3    MEAN, IT'S JUST -- GIVEN WHERE PLAINTIFF'S THEORY IS SHIFTING,

 4    THIS SHOULD LIKELY NOT BE IN THE FIRST TRANCHE, OR THE FIRST

 5    STAGE, AND SHOULD BE NARROWED.  SO --

 6         MS. GOLINVEAUX:  WE'LL TAKE THAT TO HEART, YOUR

 7    HONOR, AND TAKE A LOOK AT THAT ONE.

 8         THE COURT:  ANYTHING ELSE REGARDING THE

 9    INTERROGATORIES?  THOSE ARE JUST MY NOTES.

10       ANYTHING ELSE REGARDING THE INTERROGATORIES?

11         MS. MILICI:  YOUR HONOR, WE LOOK FORWARD TO SEEING

12    MUSI'S REVISION.  OUR POSITION IS THAT THESE ARE OVERLY BROAD,

13    BUT WE'LL LOOK AT THE NEW ONES THAT THEY DRAFT AND RESPOND TO

14    THOSE.

15         THE COURT:  OR COUNSEL CAN MEET AND CONFER AND DECIDE

16    WHAT THEY'RE GOING TO AGREE TO IN THIS FIRST STAGE, THIS

17    TARGETED STAGE OF DISCOVERY.

18         MS. MILICI:  ABSOLUTELY, YOUR HONOR.  WE'RE HAPPY TO

19    DO THAT.

20         THE COURT:  MOVING TO THE REQUEST FOR PRODUCTION --

21         MS. MILICI:  YOUR HONOR, I WAS GOING TO SAY, I'LL

22    OFFER ONE POINT ON RFP NUMBER 1.  CERTAINLY WE'RE -- THIS WAS

23    PART OF OUR PROPOSAL FOR TARGETED DISCOVERY, BUT I WILL NOTE

24    THAT COMMUNICATIONS REGARDING THE MUSI APP INCLUDE

25    COMMUNICATIONS RELATING TO ITS SUBMISSION OF APPS FOR REVIEW,
```

1    OR -- AND EVERY TIME IT UPDATES APPS, IT HAS TO MAKE NEW

2    SUBMISSIONS.  SO THERE'S A LOT OF COMMUNICATIONS THAT MIGHT

3    HAVE LITERALLY NOTHING TO DO WITH THE ISSUES IN THIS CASE.

4         YOU KNOW, IT'S PART OF OUR PROPOSAL THAT WE DO A NARROW

5    SEARCH FOR THINGS THAT ARE ABOUT INTELLECTUAL PROPERTY AND

6    MUSI, BUT I DO WANT TO SAY THAT -- TO FLAG THAT, AS DRAFTED,

7    THIS IS GOING TO COVER A LOT OF THINGS THAT JUST HAVE NOTHING

8    TO DO WITH THIS CASE.

9              THE COURT:  I HAVE THE SAME CONCERN.

10             MS. GOLINVEAUX:  WE'LL TAKE A LOOK AT THAT, YOUR

11   HONOR.

12             THE COURT:  SO, I MEAN, CONCERNING MUSI AND/OR THE

13   MUSI APP, INCLUDING BUT NOT LIMITED TO LANGUAGE IS JUST REALLY

14   BROAD AND, AGAIN, IT'S A TEN YEAR TIME PERIOD AND THINGS WHICH

15   DO NOT INVOLVE ISSUES THAT -- THE ISSUES THAT ARE PRESENTED IN

16   THIS CASE.

17        SO I THINK THAT'S THE SAME WITH 1, 2, AND 3.

18             MS. MILICI:  AND, YOUR HONOR, AGAIN, ON NUMBER 3, YOU

19   KNOW, IT'S ALL DOCUMENTS AND COMMUNICATIONS, WHICH IS

20   EXCESSIVELY BROAD IF YOU'RE ASKING ABOUT POLICIES, PRACTICES,

21   AND PROCEDURES.

22        BUT ALSO RELATED TO THE REMOVAL OF APPS FROM THE APP

23   STORE, AS I JUST MENTIONED, THERE ARE MILLIONS OF APPS ON THE

24   APP STORE AND THERE CAN BE MANY REASONS THAT ARE ADDRESSED BY

25   DIFFERENT TEAMS FOR REMOVING AN APP.

1          THE COURT:  UM-HUM.

2          MS. MILICI:  SO THIS IS NOT LIMITED TO INTELLECTUAL

3      PROPERTY AND IS OVER -- IT IS OVERLY BROAD.

4          THE COURT:  YEAH, I AGREE WITH BOTH THOSE, BECAUSE

5      PART OF IT ALSO IS AT A CERTAIN POINT, YOU'RE GOING TO START

6      HITTING A WALL WITH POSSIBLY SENSITIVE INFORMATION IN TERMS OF

7      OTHER THIRD PARTY ENTITIES AS WELL.

8          SO THEN YOU'RE LOOKING AT -- I WOULD HATE FOR DISCOVERY TO

9      GET COMPLETELY BOGGED DOWN BECAUSE -- NOW MY TURN -- BECAUSE

10     THE BREADTH OF THIS IS GOING TO BE -- TO INCLUDE TONS OF OTHER

11     APPS, UNRELATED SUBJECT MATTERS, AND THEN ALSO IF YOU INCLUDE

12     THIRD PARTY AND CONFIDENTIAL AND PROPRIETARY INFORMATION.

13         SO I WOULD NARROW IT.

14         SO 4 AND 5, YOU KNOW, I REALLY QUESTION, AGAIN, IN TERMS

15     OF YOUR -- IT'S GETTING REALLY INTO THE WEEDS OF APPLE SPENDING

16     A LOT OF TIME LOOKING FOR CIRCUMSTANCES WHICH MAY OR MAY NOT BE

17     SIMILAR, WHICH MAY OR MAY NOT BE RELEVANT, PARTICULARLY ON

18     SUBJECT MATTERS WHICH IT'S -- AND THERE'S NO TIME LIMITATION

19     EITHER.

20         MS. GOLINVEAUX:  OKAY, YOUR HONOR.

21         THE COURT:  SO, I MEAN, STAGING DISCOVERY OF, LIKE,

22     IF THERE'S SOMETHING WHICH ENDS UP BEING SOMEWHAT COMPARABLE OR

23     SIMILAR, THEN DEAL WITH THAT.  YOU MIGHT WANT MORE DOCUMENTS OR

24     COMMUNICATIONS.

25         BUT RIGHT NOW YOU HAVE ALL DOCUMENTS AND COMMUNICATIONS

```
 1        RELATING TO THINGS WHICH DON'T EVEN SEEM TO BE -- WHICH MAY NOT
 2        BE RELATED TO INTELLECTUAL PROPERTY AND ARE IRRELEVANT FOR
 3        THOSE REASONS.
 4              REQUEST NUMBER 6, SIMILAR ISSUES, AND THEN THERE'S THE
 5        MUSIC INDUSTRY ENTITIES, THE QUESTION WHICH WAS RAISED EARLIER.
 6              AND I JUST REALIZED I HADN'T GIVEN A CHANCE TO APPLE TO
 7        RESPOND TO 4 AND 5, WHICH I WILL SAY I HAD SIMILAR CONCERNS
 8        REGARDING 7, 8, AND 9, I BELIEVE, JUST BECAUSE I WANT TO MOVE
 9        US ALONG A LITTLE BIT.  BUT --
10              MS. MILICI:  YEAH.  AGAIN, YOUR HONOR, WE AGREE THAT
11        THESE ARE REALLY OVERBROAD.  IT'S ALL DOCUMENTS AND
12        COMMUNICATIONS.
13              AND WHILE, AGAIN, WE THINK THAT THE GOOD FAITH AND FAIR
14        DEALING CLAIM FAILS AS A MATTER OF LAW, EVEN IF ONE IS TO MOVE
15        THAT POINT FORWARD, THERE'S -- NONE OF THIS APPEARS RELEVANT TO
16        THAT AT ALL.
17              SO I QUESTION WHETHER EVEN A NARROWED VERSION OF THESE
18        WOULD BE APPROPRIATE GIVEN THE ALLEGATIONS IN THE CASE AND THE
19        CLAIMS.
20              BUT WE'D BE HAPPY TO REVIEW A NARROWED VERSION OF THESE,
21        BUT ALL DOCUMENTS AND COMMUNICATIONS RELATING TO APP
22        DISPUTES --
23              THE COURT:  RIGHT.
24              MS. MILICI:  -- IS VERY BROAD.
25              AND, YOU KNOW, HERE THERE'S REFERENCES TO INTELLECTUAL
```

1    PROPERTY INFRINGEMENT COMMITTED BY YOUTUBE, AND I JUST HAVE --

2    IT'S VERY DIFFICULT TO SEE WHAT THAT HAS TO DO WITH ANYTHING.

3         SO --

4              THE COURT:  OH, RIGHT.  I FORGOT ABOUT THAT ONE.

5         YES, SO I HAD THE SAME CONCERN REGARDING RELEVANCY

6    REGARDING 8 AT ALL.  I MEAN, 4, 5, 7, AND 8, I WOULD SUGGEST

7    THAT THEY MIGHT MAKE MORE SENSE TO PUT TO THE SIDE FULLY AT

8    THIS POINT.

9              MS. GOLINVEAUX:  SORRY, YOUR HONOR, TO PUT WHAT?

10             THE COURT:  TO PUT THEM ASIDE FULLY.

11             MS. MILICI:  AND, YOUR HONOR, I WOULD SUGGEST THAT

12   NUMBER 9 GOES IN THAT BUCKET AS WELL OF ALL DOCUMENTS AND

13   COMMUNICATIONS RELATED TO ANY PAST DECISION TO REMOVE OR NOT

14   REMOVE THE YOUTUBE APP FROM THE APP STORE.

15        I'M NOT SURE WHAT THAT WOULD HAVE TO DO WITH ANY CLAIM IN

16   THIS CASE, AND I DON'T KNOW WHAT IT MEANS TO LOOK FOR DOCUMENTS

17   ABOUT NOT REMOVING YOUTUBE.  I THINK THAT'S OVERLY BROAD AND

18   NOT RELEVANT TO THE ISSUES HERE.

19             THE COURT:  MS. GOLINVEAUX?

20             MS. GOLINVEAUX:  WELL, YOUR HONOR, WE HAVE A

21   SITUATION WHERE APPLE DECIDED TO TAKE MUSI DOWN BASED ON

22   UNSUBSTANTIATED COMPLAINTS, EVEN THOUGH NO ONE HAD EVER FILED A

23   CLAIM AGAINST THE APP, AND HAD THESE BACKROOM CONVERSATIONS

24   WITH YOUTUBE.

25             THE COURT:  THESE ARE YOUR ALLEGATIONS AND MANY OF

1        THESE HAVE NOT -- YOU HAVE VERY LITTLE TO SUPPORT THESE

2        ALLEGATIONS AT THIS POINT.  YOU'RE IN DISCOVERY AND SO FORTH.

3             BUT, I MEAN, THIS IS ABOUT THE REMOVAL OF THE YOUTUBE APP,

4        SO TIE THAT IN.

5             MS. GOLINVEAUX:  WELL, THE FACT THAT -- THE FACT IS

6        THAT YOUTUBE WAS SUED FOR COPYRIGHT INFRINGEMENT MULTIPLE TIMES

7        AND THE APP STAYED UP.

8             MUSI HAS NEVER BEEN SUED FOR COPYRIGHT INFRINGEMENT AND

9        THE APP COMES DOWN.

10            AND THE COMPLAINT'S ALREADY BEEN SHARED WITH US.

11            SO IT SEEMS TO ME THAT THERE IS A MISMATCH IN TERMS OF HOW

12       THE PROCESS IS IMPLEMENTED.

13            MS. MILICI:  YOUR HONOR, IF I CAN RESPOND?

14            THERE CONTINUES TO BE, LIKE, A FACTUAL MISREPRESENTATION.

15       THE COMPLAINT THAT APPLE RECEIVED WAS SHARED WITH MUSI.  MUSI

16       IS COMPLAINING THAT YOUTUBE DIDN'T GIVE IT MORE INFORMATION.

17       BUT APPLE SHARED THE COMPLAINT THAT IT RECEIVED WITH MUSI FROM

18       YOUTUBE, AND MUSI BELIEVED THAT WAS THE SAME COMPLAINT AS IN

19       2021, WHICH EXPLAINS ITS CORRESPONDENCE OF WE'VE ALREADY BEEN

20       IN TOUCH WITH YOUTUBE ABOUT THIS.  SO I THINK THAT THAT'S JUST

21       NOT TRUE.

22            BUT ALSO, THESE ARE APPLES AND ORANGES, RIGHT?  THAT

23       SOMEBODY MIGHT SUE YOUTUBE BECAUSE OF -- FOR CONTRIBUTORY

24       INFRINGEMENT BECAUSE THERE'S SOME VIDEO ON THE WEBSITE THAT

25       SOMEBODY SHOULDN'T HAVE POSTED THERE IS VERY DIFFERENT FROM THE

1    ALLEGATION, OR A COMPLAINT THAT THIS ENTIRE APP INFRINGES

2    YOUTUBE'S RIGHTS.

3        SO I THINK THAT THESE ARE NOT EQUIVALENT AND I THINK THAT,

4    YOU KNOW, THIS IS, AGAIN, A FISHING EXPEDITION FOR THINGS THAT

5    WOULDN'T BE RELEVANT IF THEY -- EVEN IF THEY EXISTED, WHICH I

6    WOULD SAY THEY LIKELY DON'T.

7        MS. GOLINVEAUX:  YOUR HONOR, NUMBER ONE, WE'RE

8    ABSOLUTELY WILLING TO LOOK AT EVERY REQUEST THAT THE COURT'S

9    INDICATED WE SHOULD LOOK AT AND SEE ABOUT EITHER NARROWING IT

10    OR PUSHING IT, SO I JUST WANT TO MAKE THAT CLEAR.

11        THE COURT:  UM-HUM.

12        MS. GOLINVEAUX:  IN TERMS OF WHAT OPPOSING COUNSEL

13    JUST MENTIONED, I DIDN'T SAY THEY HADN'T SHARED ANY

14    COMMUNICATIONS.  WHAT THEY SHARED WAS THE FIVE WORD ONE WITH NO

15    SUBSTANCE.

16        WHAT THEY KEPT FROM US WAS ANYTHING OF SUBSTANCE, LIKE THE

17    NMPA LETTER AND WHAT WAS DISCUSSED IN THE PHONE CALL.

18        SO I JUST -- IT SEEMS THAT THERE'S A MISMATCH IN TERMS OF

19    HOW DIFFERENT PARTIES ARE BEING TREATED HERE.

20        BUT I'M HAPPY TO TAKE A LOOK AT THESE AND TAKE THE COURT'S

21    ADMONITIONS TO HEART.

22        THE COURT:  OKAY.  BECAUSE, I MEAN, SAYING -- I TEND

23    TO AGREE THAT THIS IS AN APPLES AND -- AN APPLES AND ORANGES

24    COMPARISON IN TERMS OF THE PARALLELS YOU'RE TRYING TO DRAW

25    HERE.  IT'S ALMOST -- YOU KNOW, IT ALMOST FEELS LIKE AN EQUAL

1    PROTECTION ARGUMENT, LIKE, WE'RE TREATED DIFFERENTLY THAN

2    YOUTUBE WAS TREATED.

3         THE COMPARISON DOESN'T REALLY WORK WITH THIS

4    INTERROGATORY, AND MY CONCERN IS THESE ARE A LOT OF DIFFERENT

5    ONES WE'RE TALKING ABOUT.

6         AND IN TERMS OF MUSI WANTING TO HAVE SOME OF THIS

7    INFORMATION BEFORE THE AMENDED COMPLAINT DEADLINE, IF IT'S

8    DRAWN THIS BROADLY, YOU'RE GOING TO END UP JUST IN DISCOVERY

9    FIGHTS THE WHOLE TIME BECAUSE WE'RE NOT MAKING ANY DEFINITE

10   DETERMINATIONS TODAY.  I'M JUST GIVING YOU A SENSE OF WHAT MY

11   CONCERNS WOULD BE IF I WERE LOOKING AT THESE.  RIGHT?  SO I

12   WOULD STRONGLY ENCOURAGE YOU TO HAVE FOCUS IN TERMS OF YOUR

13   ALLEGATIONS HERE.

14        OKAY.  AND THEN I THINK -- SO THEN WE HAVE -- AND YOU ALL

15   CONTINUE TO DISCUSS -- I MEAN, REQUESTS 11 THROUGH 15 JUST SEEM

16   LIKE THEY WERE -- THIS SEEMS LIKE THEY WERE PROBABLY MEANT FOR

17   LATER ON IN THE PROCESS.  YOU ALL WILL TALK ABOUT THOSE AND

18   WHEN IT MAKES SENSE IN TERMS OF ORDER.  AND THEY'RE STANDARD

19   REQUESTS, BUT JUST WHETHER OR NOT THOSE ARE THE ONES YOU WANT

20   TO DO IN THE NEXT 60 DAYS MAY NOT MAKE SO MUCH SENSE.

21        REQUEST FOR PRODUCTION NUMBER 10, I THINK THAT PROBABLY --

22   I DIDN'T SEE ANYTHING PARTICULARLY OBJECTIONABLE IN THAT ONE.

23            MS. MILICI:  YOUR HONOR, WE'RE HAPPY TO TAKE THAT

24   BACK.  I -- ON ITS FACE, I THINK IT'S PROBABLY FINE.

25            THE COURT:  AND THAT ACTUALLY GOES TO SORT OF THE

1      HEART OF WHAT YOU -- OF THIS CASE IN TERMS OF WHAT COMPLAINTS

2      WERE MADE AND SO FORTH.

3           YOU ALL WILL WORK OUT YOUR DIFFERENCES WITH THE REST OF

4      THESE, BUT I WOULD LIKE TO HAVE A FULSOME -- FOR YOUR AMENDED

5      COMPLAINT, THOUGH, YOU'VE GOTTEN WHAT YOU NEEDED TO AND

6      TARGETING IT ACCORDINGLY.

7                MS. GOLINVEAUX:  UNDERSTOOD, YOUR HONOR.

8                THE COURT:  ALL RIGHT.

9           ANYTHING ELSE REGARDING THE INFORMAL DISCOVERY CONFERENCE?

10               MS. MILICI:  NOT FROM APPLE, YOUR HONOR.

11               MS. GOLINVEAUX:  YOUR HONOR, IS THE PROCESS THAT YOU

12     CONTEMPLATE THAT AFTER WE HAVE AN OPPORTUNITY TO MEET AND

13     CONFER AND TRY TO RESOLVE THIS BASED ON YOUR GUIDANCE, THAT WE

14     WOULD GO TO JUDGE COUSINS FOR THE NEXT -- IF THERE'S ADDITIONAL

15     DISPUTES THAT NEED RESOLUTION?

16               THE COURT:  YES.  AND IF YOU DECIDE TO TRY TO STAGE

17     THINGS, YOU CAN TALK TO JUDGE COUSINS ABOUT CREATING A

18     DISCOVERY PLAN.  IF YOU WANT ANYTHING -- IF YOU'RE GOING TO

19     STIPULATE OR NEED HELP TO PUT ANYTHING IN WRITING ALONG THOSE

20     LINES, FEEL FREE TO REACH OUT TO HIM.

21          BUT I MORE WANTED TO RAISE THE CONCERNS THAT I HAD WHEN I

22     LOOKED THROUGH THESE SINCE YOU ATTACHED THEM TO YOUR CMC

23     STATEMENT AND IN LIGHT OF THE P.I. TODAY, SO THE DISCUSSION

24     WE'RE HAVING IS WITHOUT PREJUDICE IN TERMS OF WHAT

25     JUDGE COUSINS DECIDES IN HIS ULTIMATE -- AND I COMPLETELY DEFER

1    TO HIM.  SO IT'S WITHOUT PREJUDICE IN TERMS OF BRINGING A

2    DISCOVERY MOTION IF NEEDED, OR REVISITING THESE REQUESTS WITH

3    HIM.

4              MS. MILICI:  UNDERSTOOD.  THANK YOU, YOUR HONOR.

5              THE COURT:  ANYTHING FURTHER?  WE'VE HAD A LONG

6    AFTERNOON.

7              MS. GOLINVEAUX:  NOT FROM MUSI, YOUR HONOR.

8              MS. MILICI:  NOT FROM APPLE, YOUR HONOR.  THANK YOU

9    FOR YOUR TIME TODAY.

10             THE COURT:  OKAY.  THANK YOU VERY MUCH, COUNSEL.  IT

11   SOUNDS LIKE I WILL BE SEEING YOU SHORTLY.  SO WE ARE NOW

12   ADJOURNED.

13             (THE PROCEEDINGS WERE CONCLUDED AT 4:22 P.M.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18              DATED:  JANUARY 16, 2025

19

20

21

22

23

24

25