1  Jennifer A. Golinveaux (SBN: 203056)
   JGolinveaux@winston.com
2  Samantha K. Looker (SBN: 340564)
   SLooker@winston.com
3  ~~Winston & Strawn~~WINSTON & STRAWN LLP
4  101 California Street, 35th Floor
   San Francisco, CA 94111-5840
5  Telephone:~~——~~ (415) 591-1000

6  Jeff Wilkerson (SBN: 284044)
   JWilkerson@winston.com
7  WINSTON & STRAWN LLP
   300 South Tryon Street, 16th Floor
8  Charlotte, NC 28202
   Telephone: (704) 350-7700
9
   Attorneys for Plaintiff
10 MUSI INC.

11

12                    **UNITED STATES DISTRICT COURT**
13                   **NORTHERN DISTRICT OF CALIFORNIA**
                             **SAN JOSE DIVISION**
14

15 | MUSI INC.,                          | **Case No. 5:24-cv-06920-EKL**                                                                                                                                     |
   |-------------------------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------|
   | Plaintiff,                          | **FIRST AMENDED COMPLAINT FOR BREACH OF ~~CONTRACT AND BREACH OF~~ THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND BREACH OF CONTRACT**                     |
   | v.                                  |                                                                                                                                                                    |
   | APPLE INC.,                         |                                                                                                                                                                    |
   | Defendant.                          | **JURY TRIAL DEMANDED**                                                                                                                                            |
   |                                     | **UNREDACTED**                                                                                                                                                     |

---

**FIRST AMENDED** COMPLAINT
CASE NO. 5:24-CV-06920-EKL

Plaintiff Musi Inc. ("Musi"), through its undersigned counsel, hereby brings this civil action against Defendant Apple Inc. ("Apple") for breach of contract and breach of the implied covenant of good faith and fair dealing, and alleges as follows:

## I. NATURE OF THE ACTION

1. This case arises from Apple's abrupt removal of Musi's mobile software application (the "Musi app") from the Apple App Store ~~("the App Store"), based upon an unsubstantiated third-party complaint, and in violation of the parties' contractual agreements. Despite its obligations to investigate complaints in good faith, Apple removed the Musi app based upon unsupported accusations from a third party who has failed to respond to Musi's communications. Worse, Apple was fully aware that the third party had failed to substantiate its claims to Musi.~~ (the "App Store"), the only commercially viable marketplace for applications for Apple devices. Apple removed the Musi app at the behest of several key players in the music industry, but told Musi it was acting on the basis of a complaint by third-party YouTube (a complaint Apple had purposefully cooked up by proactively seeking to revive a 14-month-old complaint from YouTube that had previously been closed because YouTube had stopped responding). In truth, Apple was acting to appease music-industry players with whom Apple had other commercial dealings. Indeed, Apple later stated that it relied on "evidence" provided by the National Music Publishers Association ("NMPA")—*not* by YouTube—that Musi was violating YouTube's Terms of Service. But Apple *knew* that this "evidence" was false, as it has since admitted, and it did not disclose this so-called "evidence" to Musi until this litigation. Specifically, Apple's post hoc justification for removing the Musi app—that Musi was violating YouTube's Terms of Service with regard to its use of YouTube's Data/iFrame Application Programming Interface (hereafter, "API")—was something that Apple *knew* to be false. Indeed, Apple knew months before the removal—it had learned from the very music-industry players it was acting to appease—that Musi was *not* using YouTube's API. Apple's improper removal of the Musi app has caused—and continues to cause—substantial harm to Musi's business and reputation.

2. Plaintiff Musi is a mobile computing software company and the developer, owner, and operator of the Musi app, which provides users with enhanced functionality to interact with publicly available content on YouTube's website through an augmentative interface. Since its inception, and

1

1  until September 24, 2024, when it was removed by Apple, the Musi app has ~~only~~ been available for
2  download <ins>only</ins> on the Apple App Store—an online marketplace for apps that is pre-installed on Apple
3  smartphones~~. On September 24, 2024, Apple abruptly removed the Musi app from the App Store on~~
4  ~~the basis of a five-word complaint dated July 29, 2024 from a complainant identified as "YouTube~~
5  ~~Legal" ("Complainant"), with no supporting evidence or documentation. Despite Musi's efforts to~~
6  ~~contact Complainant to understand the nature~~, and ~~basis of its concerns, Complainant failed to either~~
7  ~~respond to Musi or to substantiate its accusations. Musi, on the other hand, has promptly responded to~~
8  ~~all of Apple's communications regarding the complaint~~<ins>the only commercially viable marketplace for</ins>
9  <ins>such apps</ins>.

10      3.    ~~Even more concerning, in~~<ins>On September 24, 2024, Apple abruptly removed the Musi</ins>
11  <ins>app from the App Store.  At the time, Apple told Musi it was removing the app on the basis of a five-</ins>
12  <ins>word complaint dated July 29, 2024, from a complainant identified as "YouTube Legal" (or</ins>
13  <ins>"YouTube"), which included no supporting evidence or documentation. Despite Musi's efforts to</ins>
14  <ins>contact YouTube to understand the nature and basis of its concerns, YouTube failed to either respond</ins>
15  <ins>to Musi or to substantiate its accusations. Musi, on the other hand, promptly responded to all of Apple's</ins>
16  <ins>communications regarding the complaint.</ins>

17      4.    <ins>This was not the first time that Musi had heard that YouTube had questions or concerns</ins>
18  <ins>about the Musi app. In</ins> April and May of 2021, Musi engaged with outside counsel for YouTube
19  (apparently the same ~~Complainant~~<ins>complainant</ins>) to address several questions YouTube had about the
20  functionality of the Musi app and compliance with the YouTube Terms of Service. <ins>In a detailed letter,</ins>
21  Musi substantively addressed YouTube's concerns ~~but~~<ins>. YouTube's counsel did not respond.</ins>

22      ~~3.~~<ins>5.</ins>    <ins>Musi</ins> heard nothing further from YouTube until several years later<ins>,</ins> in March 2023, ~~and~~
23  ~~July 2024~~ when YouTube sent a standard notice to Apple stating that the Musi app violated its
24  intellectual property rights without any explanation~~. Musi again contacted YouTube to address its~~
25  ~~concerns without receiving any response. During that time~~ <ins>(other than a three-word reference to</ins>
26  <ins>"YouTube TOS Violations"). Musi, referencing its previous detailed letter from 2021 rebutting any</ins>
27  <ins>claim of violating YouTube's Terms of Service, noted it had previously been in contact with YouTube</ins>
28  <ins>to address its concerns. But YouTube again failed to respond to its own complaint, and Apple, as was</ins>

1   its standard practice, ultimately closed this March 2023 complaint from YouTube because YouTube
2   was not responding. From the time of the 2021 communication through Apple's removal of the Musi
3   app in September 2024, Musi continued to offer the Musi app on the App Store, operating in
4   substantially the same manner, without incident.

5       6.      In the meantime, Apple ~~nonetheless suddenly and~~was facing mounting pressure from
6   the music industry, which had launched sporadic, but ultimately unsuccessful attempts to remove the
7   Musi app from the App Store.

8       7.      Specifically, several music-industry entities had filed complaints with Apple regarding
9   the Musi app, but those complaints were ultimately closed when Musi substantively responded, either
10  by making changes to the Musi app or by showing that these complaints were without factual or legal
11  basis. These music-industry complaints were meritless, and it is no wonder they did not result in the
12  Musi app's removal. The complainants did not have a legitimate basis to claim that Musi was violating
13  their rights.  Indeed, such complainants often failed to substantively engage with—and in some cases
14  did not even respond to—Musi's responses to their complaints, which provided explanations of the
15  Musi app's functionality and why it did not violate any intellectual property rights.

16      8.      In or around April 2024, however, several music-industry players took a different
17  approach. Rather than filing formal complaints through Apple's App Store Notices programs—which
18  following Apple's normal processes would have provided Musi with an opportunity to respond—these
19  entities instead came directly to Apple to demand Musi's removal. Apple ultimately agreed but
20  because of the legal risk posed by removing a popular app without providing a basis, Apple instead
21  began a backchannel scheme to cook up a supposed reason to remove the Musi app. Specifically, and
22  in an effort to appease its friends in the music industry, Apple proactively reached out to YouTube
23  and, in a series of phone calls in June and July 2024, solicited YouTube to resurrect its 14-month-old
24  (and completely lacking in detail) complaint against Musi, even though that complaint had already
25  (and justifiably) been closed for YouTube's total unresponsiveness.

26      9.      Apple also solicited a letter of support for YouTube's supposed complaint from the
27  NMPA (purporting to provide "evidence" that the Musi app was violating YouTube's API Terms of
28  Service). Putting aside why a music-industry trade association would be providing evidence of

violations of *YouTube*'s Terms of Service rather than YouTube itself, the NMPA's letter, which Apple did not share with Musi until this litigation, was littered with falsehoods, including factual claims that Apple *knew* to be false.

4.10. With YouTube's cooked-up complaint and the NMPA's false "evidence" in hand, Apple unjustifiably removed the Musi app from the App Store on the basis of the July 2024 complaint. To date, the Musi app has not been restored. The removal was all the more galling unjustified in light of the fact that Apple threatened to remove told Musi it was removing the app if Musi did because it had not try made sufficient efforts to resolve the alleged complaint with the Complainant, and YouTube, but Apple was fully aware that the Complainant had elected not to communicate in any YouTube had not communicated the basis for its purported complaint to Musi, was fully aware that it was relying on a detailed letter from NMPA that Musi had not seen and had no way directly with Musi to know existed, and was even fully aware that the NMPA letter contained false claims, which Musi could and would have demonstrated if Apple or anyone else had told Musi about it.

11. Apple's purported reasoning for removing the Musi app—that Musi had failed to resolve allegations that it was violating the YouTube API Terms of Service—is and was a façade. In fact, Apple knew, as it had been told several months prior by music-industry players, that Musi did not and could not use YouTube's API. Thus, Apple did not and could not have reasonably believed in good faith that its basis for removing the Musi app was justified. To the contrary, Apple itself orchestrated, in bad faith and for the benefit of its friends in the music industry, a basis for removing the Musi app under false pretenses.

5.12. Apple's unjustifiable removal of the Musi app from the App Store not only violates the implied covenant of good faith and fair dealing, but also Apple's own contractual obligations to developers who make applications available on the App Store.

6.13. This civil action states claims and seeks monetary, injunctive, and other appropriate relief for Apple's breach of contract and breach of the implied covenant of good faith and fair dealing.

## II. THE PARTIES

7.14. Plaintiff Musi, Inc. is a foreign corporation with its principal place of business in Manitoba, Canada.

~~8.~~15.  Defendant Apple, Inc. is a business incorporated under the laws of the State of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

### III.     JURISDICTION AND VENUE

~~9.~~16.  This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Musi is a foreign corporation with citizenship different from Apple, an American corporation.

~~10.~~17.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Apple maintains its principal place of business in the State of California and in this District, and because a substantial part of the events or omissions giving rise to Musi's claims occurred in, were directed to, and/or emanated from this District.

~~11.~~18.  Venue is also proper because Apple has consented to the exercise of personal jurisdiction by this Court. Apple and Musi are parties to the Apple Developer Program License Agreement (~~"~~(the "Developer Agreement"). Section 14.10 of the Developer Agreement provides that "[a]ny litigation or other dispute resolution" between the parties "arising out of or relating to this Agreement, the Apple Software, or [the parties'] Relationship . . . will take place in the Northern District of California", and that the parties "consent to the personal jurisdiction of and exclusive venue in the state and federal courts within that District." ~~(~~A true and correct copy of the Developer Agreement ~~Schedule 1 § 14.10. Ex. A)~~is attached as Exhibit A. As detailed below, Musi's claims against Apple "arise[] out of or relat[e] to" the Developer Agreement and their relationship. *Id.*

### IV.     INTRADISTRICT ASSIGNMENT

~~12.~~19.  This action arises in Santa Clara County, in that a substantial part of the events which give rise to the claims asserted herein occurred there. Pursuant to Local Rule 3-2(e), for those case categories which are not district-wide, civil actions that arise in Santa Clara County shall be assigned to the San Jose Division.

## V.     GENERAL ALLEGATIONS

### A.     Apple's App Store

~~13.~~20. Apple designs, manufactures, and sells mobile computing devices, including smartphones—branded "iPhones." iPhones are portable electronic devices that connect wirelessly to the internet and have advanced computing capabilities, including internet browsing and music streaming.

~~14.~~21. To function, smartphones require a mobile operating system ("mobile OS"). A mobile OS is piece of software that manages the smartphone's hardware and allows users to run software applications developed specifically for use on the smartphone, i.e., "apps."

~~15.~~22. iPhones are sold with Apple's proprietary mobile OS pre-installed, named "iOS." iPhone users frequently rely on iOS apps developed by Apple, as well as third-party iOS apps, to fully enjoy their iPhone's capabilities. Apps must be iOS-based to operate on iPhone.

~~16.~~23. Third-party developers make their iOS apps available to iPhone users primarily through Apple's App Store. The App Store is an app marketplace developed and operated by Apple for iOS apps. As the developer, owner, and operator of the App Store, Apple contracts with all third-party iOS app developers that distribute their apps using the App Store, including Musi.

~~17.~~24. The App Store allows iPhone users to browse, search for, and download Apple-developed iOS apps, as well as third-party iOS apps—as long those third-party apps are approved by Apple. Without approval, a third-party iOS app cannot not be made available on the App Store.

### B. Apple's Developer Program License Agreement

~~18.~~25. Apple's App Store is the primary means through which iOS apps are distributed to consumers. And as the developer, owner, and operator of the App Store, Apple enjoys singular power to choose which iOS apps are made available. However, these powers are limited by the terms and conditions enumerated in the Developer Agreement. ~~Attached as Exhibit A is a true and correct copy of the Developer Agreement.~~

~~19.~~26. Apple drafted the Developer Agreement. The agreement is a contract of adhesion, because Apple requires all third-party iOS developers to enter into the Developer Agreement before they can develop apps using iOS. The Developer Agreement grants third-party developers a limited,

1  personal, non-exclusive, and revocable license to use Apple's software and services, provided the
2  third-party developer builds and operates its app in compliance with the terms and conditions
3  contained therein. (Developer AgreementEx. A §§ 1.1, 2.1, 3.2(g), Ex. A)).

4  20.27. If a third-party developer wishes to make its iOS app available for download on the
5  App Store, it must apply for distribution with Apple. (Developer AgreementId. §§ 6.1, 6.9, Ex. A). To
6  qualify, the third-party developer must show that its app complies with the "Documentation and
7  Program Requirements then in effect as well as with any additional guidelines that Apple may" place
8  in the Developer Program License Agreement. (Developer AgreementId. § 6.1, Ex. A).

9  21.28. Once the iOS app is deemed qualified for distribution by Apple (*i.e.*, a "Licensed
10 Application"), the third-party developer must agree to additional conditions enumerated in Schedule
11 1 of the Developer Agreement before the app can be distributed using the App Store. (Developer
12 Agreement,Id. Schedule 1 § 1.1, Ex. A) A true and correct copy of Schedule 1 is found in Exhibit A.

13 22.29. Schedule 1 § 1.2(b) states that the third-party developer must authorize Apple to
14 "provide hosting services[,] . . . subject to the terms of the Agreement, in order to allow for the storage
15 of, and end-user access to, the Licensed Applications" on the App Store. (Developer Agreement,Id.
16 Schedule 1 § 1.2(b), Ex. A)).

17 23.30. And Schedule 1 § 4.1(b) requires the third-party developer to guarantee to Apple that
18 "none of the Licensed Applications . . . violate or infringe any patent, copyright, trademark, trade
19 secret or other intellectual property or contractual rights of any other person, firm, corporation or other
20 entity." (Developer Agreement,Id. Schedule 1 § 4.1, Ex. A).

21 24.31. If a dispute arises over the content or use of a Licensed Application, the third-party
22 developer must permit Apple to share its contact information with the party filing the dispute and to
23 follow Apple's app dispute process "on a non-exclusive basis and without any party waiving its legal
24 rights." (Developer Agreement,Id. Schedule 1 § 4.2, Ex. A).

25 25.32. Relatedly, Schedule 1 § 6.3 states that Apple "reserves the right to cease marketing,
26 offering, and allowing download by end-users of the Licensed Applications at any time, with or
27 without good cause, by providing notice of termination to" the third-party developer. (Developer
28 Agreement,Id. Schedule 1 § 6.3, Ex. A). However, Schedule 1 § 6.3 goes on to state, in relevant part:

Without limiting the generality of this Section 6.3, [the third-party developer] acknowledge[s] that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple *reasonably believes*, based on human and/or systematic review, and, including without limitation upon notice received under applicable law, that: . . . (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . . (emphasis added).

26.33.  If the Licensed Application charges end-users a fee of any kind through its use, the third-party developer must also enter into a separate agreement with Apple, named Schedule 2, "before any such commercial distribution of [the] Licensed Application may take place via the App Store." (Developer Agreement*Id*. § 7.2, Ex. A). And if the third-party developer wishes to sell its iOS app "for a fee through Custom App Distribution," then the developer must separately agree to the terms enumerated in another agreement named Schedule 3. *Id.* Attached as Exhibit B is a true and correct copy of Schedules 2 and 3 of the Developer Agreement.

27.34.  Notably, Schedule 2 § 7.3 and Schedule 3 § 7.3 contain identical language as Schedule 1 § 6.3, stating in relevant part:

### Schedule 2
. . .
**7.3.**  Apple reserves the right to cease marketing, offering, and allowing download by End-Users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any End-User's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . .

(Developer AgreementEx. B, Schedule 2 § 7.3, Ex. B).

### Schedule 3
. . .
**7.3.**  Apple reserves the right to cease marketing, offering, and allowing purchase by Custom App Distribution Customers and download by End-Users of the Custom Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 7.3, You acknowledge that Apple may cease the marketing and allowing download by End-Users of some or all of the Custom Applications if Apple reasonably believes, based on human and/or systematic

review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Custom Applications and/or any End-User's possession and/or use of those Custom Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party . . . ."

(Developer Agreement,*Id*. Schedule 3 § 7.3, Ex. B)..

35. The above provisions create, and the common law imposes regardless, an implied covenant of good faith, including that Apple will not remove an app in bad faith and will otherwise deal with its contractual counterparties, including Musi, fairly. Thus, although the contract purports to provide that Apple may remove an app for any reason, the parties understand that the basis for removal must be still formed in good faith, and that Apple may not misrepresent or hide the nature of its concerns or of any complaints on which it purports to rely in removing an app from the App Store.

**C. The Musi App**

28.36. Musi is a mobile computing software company based in Canada that owns and operates the Musi app, an iOS-based mobile application.

29.37. The Musi app provides users with enhanced functionality to interact with publicly available content on YouTube's website through its own augmentative interface—specifically, Musi's proprietary user interface components and proprietary organizational functionality/metadata. The Musi app does not rely on YouTube's Application Programming Interface ("API"),, nor do Musi's servers store, process, or transmit YouTube videos. Instead, the Musi app plays or displays content based on the user's own interactions with YouTube and enhances the user experience via Musi's proprietary technologyinterface.

**D. Apple's Wrongful Removal of the Musi App from the App Store**

30.38. Since at least 2015, Musi has engaged in sporadic dialogue with YouTube. And throughout, Musi has repeatedly expressed its commitment to offer the Musi app in a way that fully complies with YouTube's Terms of Service.

31.39. In the past, when YouTube has raised a question concerning the Musi app's functionality, Musi has, in good faith, consistently either (a) adjusted the app's functionality, (which

included cessation of use of the API as of 2016), or (b) provided details about how the Musi app works and explained why it is fully compliant with YouTube's Terms of Service.

32.40.   In April 2021, YouTube's outside counsel raised several questions regarding the Musi app's functionality. Specifically, YouTube's counsel claimed that the Musi app violated YouTube's Terms of Service because (1) the Musi app accessed and used YouTube's non-public interfaces; (2) the Musi app used the service for a commercial use; and (3) the Musi app violated YouTube's prohibition on the sale of advertising "on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales."

33.41.   Musi addressed these concerns by explaining to YouTube's counsel, in a detailed letter with supporting facts, that (1) at no point does the Musi app access YouTube's non-public interfaces; (2) the Musi app merely allows users to access YouTube's publicly available website through a functional interface and, thus, does not use YouTube in a commercial way; and (3) the Musi app does not sell advertising on any page that only contains content from YouTube or where such content is the primary basis for such sales. Musi provided a detailed basis in support of these conclusions, and explained why YouTube's assertions were premised on a misunderstanding of the Musi app's functionality.

34.42.   YouTube never responded. Instead, in March 2023, YouTube again complained aboutlodged a three-word complaint with the Musi app's functionality, to whichApp Store, alleging unspecified violations of the YouTube Terms of Service.  Musi promptly responded.let the App Store know that the parties had been in communication on this issue. YouTube—again—failed to respond. Apple, in accordance with its past practices, closed YouTube's complaint for a failure to respond shortly thereafter.

35.43.   Since that time, Musi has continued to offer the Musi app on the App Store. Musi has conducted routine updates to the Musi app, but the Musi app has otherwise operated in a substantially similar manner since May 5, 2021.

44.     OnIn April 2024, nearly a year after YouTube's complaint was closed for failure to respond, Apple was approached by a major music company, which complained that its attempts to run Musi off the App Store via Apple's app dispute process had been repeatedly unsuccessful. The music

company also made it known to Apple that, years earlier, Musi had ceased use of YouTube's API. On information and belief, the music company pressured Apple to find a solution that would result in Musi's permanent removal from the App Store (and thus permanent destruction of the company). But, on information and belief, Apple made it known that the fastest way to permanently remove the Musi app would be if YouTube lodged a complaint that Musi would be unable to resolve. With this information, the music company refrained from lodging its own complaint and instead sat back to wait while Apple did its dirty work.

45. With the pressure mounting, Apple set out to drum up a basis to remove the Musi app for the sole benefit of the music-industry actors. Specifically, it began a months-long campaign of backchannel discussions with the goal of creating the appearance of a legitimate basis to pull the Musi app.

46. Beginning no later than May 29, 2024, Apple repeatedly reached out to YouTube to supposedly "follow up" on the closed March 2023 complaint, despite the fact that, as a general matter, Apple does not proactively seek out app disputes, nor does it arbitrate disputes between parties—to the contrary, and as evidenced by its treatment of the March 2023 YouTube complaint, its typical practice is to close app disputes when the complainant fails to respond, not make repeated efforts to goad the complainant into action. An immediate roadblock to Apple's plan became apparent—its contacts at YouTube had no idea what Apple was talking about. So Apple proactively set up a July 15, 2024 phone call with YouTube wherein Apple reminded YouTube of the prior complaint (again, without supporting details) that YouTube had lodged. It was on this call that YouTube supposedly stated to Apple that its complaint with Musi was not a violation of its user Terms of Service (which Musi had repeatedly countered with factual and legal argument), but rather an unspecified violation of YouTube's API Terms of Service. Apple did not ask YouTube to elaborate any further—and why would it? Apple knew that Musi did not (and apparently, could not) access YouTube's API. Instead, Apple simply asked YouTube to send a message reopening its prior complaint.

47. YouTube, however, apparently could not be bothered even to look up its prior complaint and respond on the thread. Instead, Apple forwarded the March 2023 complaint to YouTube and asked it to specify which of its rights were being infringed. Even then, YouTube responded but

did not state what rights, or what aspects of YouTube's user or API Terms of Service Musi had supposedly violated. Instead, it merely indicated it wanted to reopen its prior complaint.

36.48. Thus, on August 8, 2024, Apple—via representatives of its App Store—emailed Musi, stating that it had received a notice from "YouTube Legal" "that Claimant believes" that the Musi app "infringes its intellectual property rights" and directed Musi to "see their comments below." The referenced comments—unsurprisingly since YouTube had never specified what rights were being infringed, and since Apple knew that any claims based on Musi's supposed use of YouTube's API were baseless—simply stated, "violating YouTube Terms of Service." Attached as Exhibit C is a true and correct copy of the August 8, 2024 ~~Email~~email from Apple.

37.49. Apple's August 8, 2024 email did not provide any further details regarding the bases behind ~~Complainant's~~YouTube's assertions. The nature of ~~Complainant's~~YouTube's intellectual property was not described. And the specific sections of ~~Complainant's~~YouTube's Terms of Service allegedly violated by the Musi app were not named or cited. Of course, the basis (to the extent there was one) provided in the complaint was not the basis that YouTube allegedly provided to Apple on the July 15, 2024 phone call—nowhere within the complaint was it suggested that Musi was violating the requirements to use YouTube's API. Nevertheless, Musi's attorney promptly responded to Apple ~~and Complainant~~ on August 12, explaining that these accusations were "unsubstantiated," and that Musi had previously contacted ~~Complainant~~YouTube directly to resolve the dispute ~~but had received no response~~. Attached as Exhibit D is a true and correct copy of Musi's August 12, 2024 through September 6, 2024 responses.

50. ~~A month later~~As the app dispute process was ongoing, Apple took its scheme a step further. After a reach out from the NMPA, Apple's in-house counsel held a phone conference with representatives from the NMPA. On that call, on information and belief, Apple solicited a letter of support from the NMPA for YouTube's complaint.

51. The NMPA issued such letter on September 11, 2024. But the NMPA has never filed an app dispute against Musi or even contacted Musi whatsoever. And neither Apple nor the NMPA ever disclosed that letter or its contents to Musi (let alone informed Musi that it formed the basis for Apple's removal of the Musi app).

52. That letter thus could not provide any reasonable basis to remove the Musi app and, indeed, it contains several false claims, including claims that Apple knew to be untrue:

   a. The Musi app has never, as the NMPA letter claims, been removed from the Google Play Store, because it has never been offered for sale on the Google Play Store.

   b. Musi does not, as the letter claims, rely on or access the API (and therefore, Musi is not subject to the API Terms of Service).

   c. Musi does not, as the letter claims, give users the ability to "mute ads," rather video media is accessed directly from YouTube and does not interfere with any ads to the extent they are included within the publicly-available video media that is streamed by the Musi app's user.

   d. Musi does not, as the letter claims, use "multiple API-tokens" and "API-token bucketing" to avoid rate limiting because it does not access YouTube's API.

~~38.~~53. On September 6, ~~Complainant~~YouTube emailed Apple ~~again, inaccurately~~ claiming that Musi failed to initiate contact to resolve the matter. Ex. D. In doing so, ~~Complainant~~YouTube carbon copied—without explanation—several third parties that have no apparent relation to the matter. ~~Nonetheless, Musi again~~Now realizing that YouTube was seemingly unaware of Musi's substantive 2021 communication to YouTube's outside counsel, Musi promptly responded that same day to correct the record and reiterate that the Musi app did not infringe ~~Complainant's~~YouTube's intellectual property or violate ~~Complainant's terms~~YouTube's Terms of ~~service.~~Service. In this message, Musi again invited ~~Complainant~~YouTube to discuss its concerns. Attached as Exhibit E is a true and correct copy of Musi's September 6, 2024 response to ~~Complainant. But again, Musi did not receive a response from Complainant.~~YouTube. This communication was attached in a separate communication to Apple directly that explained that Musi had previously contacted YouTube's counsel on this matter, had not received a response, and had followed up with YouTube in attempt to resolve the dispute. Attached as Exhibit F is a true and correct copy of Musi's September 18, 2024 through September 24, 2024 responses. But again, Musi did not receive a response from YouTube.

~~39.~~54. Ignoring Musi's communications entirely, on September 18, 2024, Apple advised Musi that, according to its records, the matter remained unresolved. Musi responded by explaining to Apple

1  that Musi's communications to ~~Complainant~~YouTube had gone unanswered ~~and~~, including Musi's

2  most recent communication inviting YouTube to have a discussion.  It also reiterated that ~~Complainant~~

3  ~~had~~YouTube's five-word complaint failed to provide any relevant information regarding the basis for

4  its complaint. ~~Attached as Exhibit~~Ex. F ~~is a true and correct copy of Musi's September 18, 2024~~

5  ~~through September 24, 2024 responses.~~.

6       ~~40.~~55.  Having still heard nothing further from either ~~Complainant~~YouTube or Apple, Musi's

7  counsel followed up with Apple on September 24, 2024 updating Apple that:

8   > To date, we have received no communication from the Complainant in response to our September 6 correspondence, nor has the Complainant substantiated its complaint with further details.
9
10  > Musi acknowledges under the Apple Developer Program License Agreement that it has agreed to indemnify and hold Apple harmless with respect to claims against its app.
11
12  > Musi will continue to keep App Store Notices informed as to the status of this dispute.

13  Ex. F.

14       ~~41.~~56.  Apple responded by ignoring Musi's communications altogether and stating that "your

15  app will be removed from the App Store on the basis of intellectual property infringement," which it

16  did later that day. Attached as Exhibit G is a true and correct copy of the September 24, 2024 response.

17       57.    To tie up its bad-faith campaign against Musi, in-house counsel for Apple contacted

18  the very music company that had kicked off this entire series of events to let it know its mission had

19  been successful: The Musi app was removed. Apple thanked the music company for its patience,

20  noting that the removal process had been more complex than normal. Of course it was—Apple does

21  not usually proactively seek out the reinstatement of complaints, nor remove apps based on "evidence"

22  that is knows to be based on factually false premises.

23       58.    Apple's decision ~~to abruptly and~~was made in bad faith, given that it knew that there

24  was no basis for the claim that Musi was violating YouTube's API Terms of Service, both based on

25  its own knowledge and YouTube's complete failure to provide either Apple or Musi with an

26  explanation of how the Musi app violates YouTube's API Terms of Service (and despite all parties'

27  knowledge that the Musi app does not access YouTube's API).

28

1    ~~42~~59.  Apple's decision to arbitrarily remove the Musi app from the App Store ~~without any
2    indication whatsoever from the Complainant as to how Musi's app infringed Complaint's intellectual
3    property or violated its Terms of Service, and in light of the fact that Musi has continued to operate
4    the Musi app in~~ on the basis of a ~~substantially similar matter since May 2021~~knowingly false complaint
5    that Apple itself had a hand in procuring, at the behest and for the sole benefit of the music industry,
6    was unreasonable, lacked good cause, and violated Apple's Development Program License
7    Agreement's terms, including the implied covenant of good faith and fair dealing. Apple's decision
8    has caused immediate and ongoing financial and reputational harm to Musi. Without the Court's
9    immediate intervention, Musi and consumers face irreparable damage.

## FIRST CAUSE OF ACTION

**~~Breach of Contract~~**

~~30.   Musi repeats and incorporates herein by reference the allegations in the preceding paragraphs of this complaint.~~

~~31.   Apple breached several conditions contained in the Developer Program License Agreement, including Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 (the "Sections").~~

~~32.   These Sections curtail Apple's ability to remove any Licensed Applications, including the Musi app, from its App Store. Specifically, these Sections provide that Apple may only cease the download of any Licensed Application on the App Store if Apple "*reasonably believes*, based on human and/or systematic review," that the Licensed Application infringes "patent, copyright, trademark, trade secret or other intellectual property rights of any third party."~~

~~33.   Based upon the correspondence to date, Apple had no reasonable basis to believe that the Musi app infringed Complainant's intellectual property rights.~~

~~34.   Accordingly, Apple removed the Musi app from the App Store in violation of the terms of its own Developer Agreement.~~

~~35.   As a direct and proximate result of Apple's breach, Musi has suffered direct, actual, compensatory, and consequential damages in an amount to be determined at trial. Those damages include but are not limited to lost profits and other consequential damages that are not waivable by~~

1  contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive
2  relief to prevent Apple's continuing breach.

### SECOND CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

43. 60.  Musi repeats and incorporates herein by reference each and every allegation contained in the preceding paragraphs.

44. 61.  California law implies in every contract a covenant of good faith and fair dealing, such that neither party will compromise the rights of the other to receive the benefits of the contract. The covenant aims to effectuate the contract's guarantees, and to protect the parties' expectations. In doing so, the covenant requires each party to do all things reasonably contemplated by the contract's terms. For this reason, under the Development Agreement, Apple has a continuing obligation to act in good faith and deal fairly with Musi, as it does with all its partners.

45. 62.  Schedule 1 § 6.3, as well Schedules 2–3 § 7.3, provide provides that Apple may only cease marketing and/or allowing downloads by end-users of Licensed Applications on the App Store if Apple "reasonably believes, based on human and/or systemic review," that the Licensed Applications infringed a third- party's intellectual property rights. Accordingly, Apple was required to perform its contractual obligations in good faith and to avoid any acts or material omissions which unfairly interfere with the right of Musi to receive the benefits of the Developer Agreement.

46. 63.  Upon information and belief, Apple violated its covenant of good faith and fair dealing by failing to ensure that the Complainant had provided to Musi — in response to Musi's repeated requests — the bases for its complaint, so that the two parties might attempt to resolve any issues as had been the case in prior dealings with the parties, before removing the Musi app. removing the Musi app on the basis of a complaint that Apple not only proactively sought out at the behest of the music industry, but that Apple knew to be based on an allegation that was false.

47. 64.  Had Apple met its duty of good faith and fair dealing, the Musi app would never have been removed for violating Schedule 1 § 6.3, Schedules 2 § 7.3, and Schedule 3 § 7.3. Musi and the Musi app were fully compliant with the contractual obligations enumerated in Apple's Development Agreement. The Musi app did not and does not infringe any intellectual property rights held by

1  ~~Complainant, and a reasonable inquiry into the matter would have led~~YouTube—in fact Apple ~~to~~
2  ~~conclude~~knew that the basis of the ~~same.~~complaint was false. Despite this, Apple abruptly removed
3  the Musi app from its App Store without ~~conducting a reasonable inquiry. Thereby~~having a good faith
4  basis to do so, thereby, in effect, taking an affirmative step to frustrate the purpose of the Development
5  Agreement.

6  ~~48.~~65.   As a direct and proximate result of Apple's breach of the covenant of good faith and
7  fair dealing, Musi has suffered direct, actual, compensatory, and consequential damages in an amount
8  to be determined at trial, plus prejudgment interest at the maximum legal rate. Those damages include
9  but are not limited to lost profits and other consequential damages that are not waivable by contract as
10 a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive relief to
11 prevent Apple's continuing breach.

### SECOND CAUSE OF ACTION

### Breach of Contract

14  66.   Musi repeats and incorporates herein by reference the allegations in the preceding
15 paragraphs of this complaint.

16  67.   Apple breached several conditions contained in the Developer Agreement, including
17 Schedule 1 § 6.3, Schedule 2 § 7.3, and Schedule 3 § 7.3 (the "Sections").

18  68.   These Sections curtail Apple's ability to remove any Licensed Applications, including
19 the Musi app, from its App Store. Specifically, these Sections provide that Apple may only cease the
20 download of any Licensed Application on the App Store if Apple "reasonably believes, based on
21 human and/or systematic review," that the Licensed Application infringes "patent, copyright,
22 trademark, trade secret or other intellectual property rights of any third party."

23  69.   Based upon the correspondence to date, Apple had no reasonable basis to believe that
24 the Musi app infringed YouTube's intellectual property rights.

25  70.   Accordingly, Apple removed the Musi app from the App Store in violation of the terms
26 of its own Developer Agreement.

27  71.   As a direct and proximate result of Apple's breach, Musi has suffered direct, actual,
28 compensatory, and consequential damages in an amount to be determined at trial. Those damages

1  include but are not limited to lost profits and other consequential damages that are not waivable by
2  contract as a matter of law due to Apple's heightened culpability. Musi is also entitled to injunctive
3  relief to prevent Apple's continuing breach.

## PRAYER FOR RELIEF

WHEREFORE, Musi respectfully prays for judgment against Apple, and that the Court decree as follows:

a.   The conduct alleged in the First Cause of Action herein be adjudged to constitute an unjustified breach of contract under California law;

b.a.   The conduct alleged in the Second Cause of Action be adjudged to constitute a breach of the covenant of good faith and fair dealing under California law;

b.   The conduct alleged in the Second Cause of Action be adjudged to constitute an unjustified breach of contract under California law;

c.   That Musi beis entitled to a preliminary and permanentan injunction requiring Apple to haverestore the Musi app restored on the App Store platform.;

d.   That Musi shall be awarded direct, actual, compensatory, and/or consequential damages on its breach of contract and breach of the implied covenant and good faith and fair dealing claims, and that Apple be preliminarily and permanentlyshall be enjoined from continuing to engage in the underlying wrongful conduct and ordered to immediately reinstate the Musi app to the App Store.;

e.   AwardThat Musi shall be awarded prejudgment interest at the maximum legal rate; and

f.   ForThat Musi shall be entitled to such other and further relief that this Court deems just and proper.

## JURY DEMAND

Musi demands a trial by jury.

Dated: ~~October 2, 2024~~March 12, 2025        Respectfully submitted,

                                                WINSTON & STRAWN LLP


                                                By: */s/ Jennifer A. Golinveaux*
                                                    Jennifer A. Golinveaux (SBN: 203056)
                                                    JGolinveaux@winston.com
                                                    Samantha K. Looker (SBN: 340564)
                                                    SLooker@winston.com
                                                    ~~Winston & Strawn~~WINSTON & STRAWN LLP
                                                    101 California Street, 35th Floor
                                                    San Francisco, CA 94111-5840
                                                    Telephone: (415) 591-1000

                                                    Jeff Wilkerson (SBN: 284044)
                                                    JWilkerson@winston.com
                                                    WINSTON & STRAWN LLP
                                                    300 South Tryon Street, 16th Floor
                                                    Charlotte, NC 28202
                                                    Telephone: (704) 350-7700

                                                    Attorneys for Plaintiff
                                                    MUSI INC.