Chris Johnstone, SBN 242152
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
*chris.johnstone@wilmerhale.com*

Jennifer Milici (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 663-6000
*jennifer.milici@wilmerhale.com*

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
*mark.ford@wilmerhale.com*

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MUSI INC., | Case No. 5:24-cv-06920-EKL |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| APPLE INC., | Judge: The Honorable Eumi K. Lee |
| Defendant. | Hearing Date: April 30, 2025<br>Hearing Time: 10:00 a.m.<br>Courtroom: 7 |

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF ISSUES TO BE DECIDED ....................................... 2

III.  STATEMENT OF FACTS ....................................................................... 3

    A.    Musi's Contract With Apple Gives Apple Discretion To Remove Apps "With Or Without Cause" ...................................................... 3

    B.    Apple Removes The Musi App Following Multiple, Unresolved Complaints ................................................................... 4

    C.    Musi Sues Apple Instead Of Resolving Its Dispute With YouTube ..................... 6

IV.   LEGAL STANDARD ............................................................................... 7

V.    ARGUMENT ............................................................................................ 8

    A.    Apple's Exercise Of Its Contractual Discretion Cannot Support A Breach Of Contract Claim .................................... 8

    B.    Musi Cannot State A Claim For Breach Of The Implied Covenant Based On Conduct Expressly Permitted By Its Agreements With Apple ..................... 10

        1.    Apple's Discretionary Removal Rights Are Dispositive ......................... 10

        2.    Musi Does Not Plausibly Allege Bad Faith ............................. 12

VI.   CONCLUSION ......................................................................................... 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Case**

4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................7

5

6

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990) ...................................................12

7

*Carma Developers (Cal.) v. Marathon Development California, Inc.*,
   2 Cal. 4th 342 (1992) .........................................................10, 11, 12

8

9

*Coronavirus Reporter v. Apple Inc.*,
   2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ...............................11

10

11

*Ebeid v. Facebook, Inc.*,
   2019 WL 2059662 (N.D. Cal. May 9, 2019) .................................11

12

*Enhanced Athlete Inc. v. Google LLC*,
   479 F. Supp. 3d 824 (N.D. Cal. 2020) ....................................11, 12

13

14

*In re Gilead Sciences Securities Litigation*,
   536 F.3d 1049 (9th Cir. 2008) ....................................................7

15

*Intango, LTD v. Mozilla Corp.*,
   2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) .......................8, 10, 11

16

17

*Jamison v. Certain Underwriters at Lloyd's Under Policy No.*
   *B0146LDUSA0701030*,
   599 F. App'x 720 (9th Cir. 2015) ...............................................8

18

19

*Kelly v. Skytel Communications, Inc.*,
   32 F. App'x 283 (9th Cir. 2002) .................................................12

20

21

*Levy v. State Farm Mutual Automobile Insurance Co.*,
   150 Cal. App. 4th 1 (Cal. App. 2007)..........................................8

22

23

*Manzarek v. St. Paul Fire & Marine Insurance Co.*,
   519 F.3d 1025 (9th Cir. 2008) ....................................................7

24

*Prager University v. Google LLC*,
   85 Cal. App. 5th 1022 (Cal. App. 2022).......................................8

25

26

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
   732 F. Supp. 2d 952 (N.D. Cal. 2010) ........................................12

27

28

*Solomon v. North American Life and Casualty Insurance Co.*,
    151 F.3d 1132 (9th Cir. 1998) ........................................................................10

*Song fi Inc. v. Google, Inc.*,
    108 F. Supp. 3d 876, 884-85 (N.D. Cal. 2015).................................................11

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ....................................................................7, 16

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .......................................................................7

*Tritz v. United States Postal Service*,
    721 F.3d 1133 (9th Cir. 2013) ..............................................................7, 14, 16

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..........................................................13

**Statutes and Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

As this Court recognized in its order denying Musi's motion for a preliminary injunction, "[b]ased on the plain language of the [contracts], Apple had the express right to remove the Musi app from the App store '*at any time, with or without cause*' … [and t]he covenant of good faith and fair dealing cannot impose an obligation on Apple that contradicts this express term." Dkt. 44 at 14 (emphasis added).  The contracts' "clear and explicit" language, *id.* at 10, and this Court's prior decision, preclude Musi's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

Musi nonetheless filed an amended complaint that repeats its baseless contract claims, this time with allegations highlighting what both parties knew even before months of targeted discovery:  Apple removed the Musi app from the App Store after *years* of consistent, unresolved complaints from *multiple* parties against Musi, including from YouTube and from members of the music industry.  Apple's removal of the Musi app from the App Store was a legitimate business decision grounded in the terms of Apple's agreements with Musi.  FAC ¶¶ 32, 34.

The broad contractual provisions granting Apple the discretionary right to remove apps exist for good reason; Apple's ability to curate which apps are available on the App Store ensures that the App Store remains safe and trusted by its millions of users as well as the "developers and business of all sizes" that benefit from the growth of the App Store ecosystem.  Dkt. 44 at 2. Furthermore, as Musi itself acknowledges in its pleadings, "Apple does not act as arbiter for disputes amongst third parties."  FAC Ex. F at 3.  Thus, Apple was under no obligation to mire itself in what Musi described as "an active legal issue between" Musi and YouTube, *id.*, and the widespread complaints against Musi by "key players in the music industry," *id.* ¶ 1.

Musi's hyperbolic allegations about a scheme against it are as implausible as they are irrelevant.  Musi admits that YouTube had raised issues with its app as early as 2015, describes in some detail allegations made by YouTube in 2021, and admits that YouTube raised its complaint to Apple again in 2023.  Musi also admits that "members of the music industry" have repeatedly

complained to Apple, and that those complaints were "unsuccessful" in removing Musi's app. Yet, in Musi's telling, Apple suddenly decided to engage in a nefarious plot to remove the app solely for the benefit of the *same members of the music industry* that had complained about Musi in the past, and "cooked up" a new complaint from YouTube to do so. But Musi never explains why Apple would act at the "behest" of the music industry in 2024, when it admittedly did not act at their behest before. And Musi never alleges *how* any of the complainants could plausibly benefit from asserting claims against Musi's app if the app was not infringing. Nor does Musi explain why YouTube or the National Music Publishers Association ("NMPA") would submit false complaints about Musi, or why Apple would need to solicit those complaints to remove Musi's app from the App Store. Musi's misleading attempt to exploit differences in the details of various complaints to claim Apple "knew" some allegations were "false" cannot erase the admissions behind the allegations: that Apple received *many* complaints about Musi's app, which consistently accused Musi of accessing or using copyrighted materials from YouTube without permission for its own commercial gain. Apple had no need to invent reasons to remove Musi's app; it had the contractual right to remove Musi's app "at any time, with or without cause," and certainly could have removed the app in "good faith" in response to any *one* of the many complaints it received about Musi's copyright infringement and violations of YouTube's Terms of Service.

For these reasons, as detailed below, this Court should dismiss Musi's First Amended Complaint with prejudice.

## II.  STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss the First Amended Complaint with prejudice because the relevant contracts expressly permitted Apple to remove the Musi app from the App Store at Apple's discretion, foreclosing Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

### III.   STATEMENT OF FACTS

#### A.   Musi's Contract With Apple Gives Apple Discretion To Remove Apps "With Or Without Cause"

Musi is a software company based in Canada.  FAC ¶ 36.[1]  Musi owns and operates an iOS-based mobile application (or "app") that allows users "to interact with publicly available content on YouTube's website through [Musi's] own augmentative interface."  *Id.* ¶ 37.  As a third-party app developer, Musi agreed to Apple's Developer Program License Agreement ("DPLA").  *Id.* ¶ 26.  The DPLA "grants third-party developers a limited, personal, non-exclusive, and revocable license to use Apple's software and services[.]"  *Id.*  Free apps approved for distribution on the App Store are subject to the additional provisions of Schedule 1 of the DPLA. *Id.* ¶ 28.  Paid apps and apps distributed through Apple's Custom App Distribution program are subject to the additional provisions contained in Schedule 2 and Schedule 3 of the DPLA, respectively.  *Id.* ¶ 33.

The DPLA explicitly provides Apple with the discretionary right to delist third-party apps for download on the App Store, including under § 6.3 of the DPLA, Schedule 1 (for free apps); § 7.3 of the DPLA, Schedule 2 (for paid apps); and § 7.3 of the DPLA, Schedule 3 (for paid apps distributed through Custom App Distribution).  Each of these provisions states that "Apple reserves the right to cease marketing, offering, and allowing download" of covered apps "*at any time, with or without cause*, by providing notice of termination to You."  FAC Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA, Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3) (emphasis added).[2]  The DPLA, Schedule 1 goes on to state:

> ***Without limiting the generality of this Section 6.3***, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple

---

[1] Apple accepts Musi's well-pled factual allegations as true for purposes of the present motion only.  *See infra* Section IV.

[2] Musi *again* incorrectly alleges that "Schedule 1 § 6.3 states that Apple 'reserves the right to cease … allowing download … at any time, with or without *good* cause[.]'" FAC ¶ 32 (emphasis added).  As Apple pointed out months ago in its first motion to dismiss, Dkt. 33 at 2 n.2, the contract attached to Musi's complaint clearly states that Apple may exercise its right "*with or without cause*," FAC Ex. A at 84 (emphasis added).

reasonably believes, based [on] human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: . . . (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party[.]

*Id.* Ex. A at 84 (DPLA, Schedule 1 § 6.3) (emphasis added). Section 7.3 of both Schedule 2 and Schedule 3 of the DPLA include substantively similar provisions, though Schedules 2 and 3 also empower Apple to cease "the marketing" of covered apps. *Id.* Ex. B at 11, 20 (DPLA, Schedule 2, § 7.3; DPLA, Schedule 3 § 7.3).

Additionally, as a third-party app developer, Musi is also subject to the Apple Developer Agreement ("ADA"), which provides that:

Apple may terminate or suspend you as a registered Apple Developer at any time in Apple's sole discretion. If Apple terminates you as a registered Apple Developer, Apple reserves the right to deny your reapplication at any time in Apple's sole discretion. … Upon any termination or, at Apple's discretion, suspension, all rights and licenses granted to you by Apple will cease[.]

Declaration of Jennifer Milici in Support of Apple's Motion to Dismiss ("Milici Decl.") Ex. 1 at 4 (ADA § 10).[3]

### B.    Apple Removes The Musi App Following Multiple, Unresolved Complaints

Musi has been in conversation with YouTube regarding the Musi app's compliance with the YouTube Terms of Service since at least 2015. FAC ¶ 38. As Musi's own allegations make clear, YouTube repeatedly alleged that Musi violated YouTube's user Terms of Service. In April 2021, outside counsel for YouTube identified a number of specific concerns with the Musi app's functionality and violations of YouTube's user Terms of Service, including that the app "accessed and used YouTube's non-public interfaces"; "used [YouTube content] for commercial use"; and "violated YouTube's prohibition on the sale of advertising 'on any page of any website or application that only contains [YouTube content] or where [YouTube content] is the primary basis for such sales.'" *Id.* ¶ 40. In response, Musi disputed YouTube's understanding of the Musi app's

---

[3] Apple respectfully requests that the Court take judicial notice of the documents submitted as Exhibits 1 through 5 to the Declaration of Jennifer Milici, for the reasons explained in Apple's concurrently filed Request for Judicial Notice.

functionality, *id.* ¶ 41, but Musi and YouTube did not reach a resolution regarding YouTube's complaint, *id.* ¶ 42.  While Musi has made routine updates to the Musi app, the app has "operated in a substantially similar manner since May 5, 2021."  *Id.* ¶ 43.

On March 22, 2023, Apple received a complaint from YouTube that the Musi app "infringes its intellectual property rights.  In particular … its terms of use."  FAC Ex. C at 6.  Apple shared this complaint with Musi the following day, provided contact information for YouTube Legal, and directed Musi to "correspond[] directly with [YouTube]" to resolve the complaint.  *Id.* at 6-7.  Musi responded that the complaint was "unsubstantiated," but otherwise failed to resolve the complaint.  *Id.* at 2-5.

YouTube was not the only third party concerned about Musi's use of YouTube content. As Musi acknowledges, numerous organizations in the music industry submitted complaints to Apple requesting removal of the Musi app from the App Store.  *See, e.g.*, FAC ¶¶ 6 (alleging "Apple was facing mounting pressure from the music industry, which had launched sporadic, but ultimately unsuccessful attempts to remove the Musi app from the App Store"), 7 (alleging "several music-industry entities had filed complaints with Apple regarding the Musi app").  In 2024, multiple music industry organizations "came directly to Apple to demand Musi's removal[.]"  *Id.* ¶ 8.  One of those organizations, the NMPA, provided Apple with "evidence of violations of YouTube's Terms of Service," *id.* ¶ 9 (emphasis removed), that mirrored concerns raised in YouTube's April 2021 letter, *see id.* ¶ 40; Milici Decl. Ex. 4.  Separately, in April 2024, a "major music company" reached out to Apple to complain that Apple had not acted on repeated requests made through the app dispute process to remove Musi's app for intellectual property infringement.  *See* FAC ¶ 44.

Following years of complaints and repeated demands for the Musi app's removal from the App Store, Apple reached out to YouTube to follow up on the status of its 2023 complaint.  *See* FAC ¶ 46.  On July 29, 2024, YouTube reiterated its position that the Musi app violates the YouTube Terms of Service.  *Id.* Ex. C at 1.  Apple shared YouTube's July 29 message, which continued YouTube's prior complaint, with Musi on August 8, 2024, *id.*, noting that Apple

"look[ed] forward to receiving written assurance that your application does not infringe Claimant's rights," and informing Musi that failure to resolve the complaint directly with YouTube could result in the removal of the Musi app from the App Store. *Id.* at 1-2.

On August 12, 2024, Musi responded "[w]e have been in communication directly with the Complainant on this matter." FAC Ex. D at 3. On September 6, 2024, however, YouTube informed Apple that "Musi has not reached out to us … and this app continues to violate our Terms of Service." FAC Ex. F at 4. While Musi's counsel responded in a separate September 6, 2024 message that he "did not receive a response to [his] last substantive communication [with YouTube], which detailed how Musi's service works and why it is fully in compliance with YouTube's Terms in response to YouTube's questions," *id.* Ex. E at 1, that message did not specify when Musi's last substantive communication with YouTube took place. The only substantive communication between Musi and YouTube occurred in April 2021. *See id.* ¶ 40.

On September 18, 2024, Apple notified Musi that "[i]f the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store." FAC Ex. F at 3. Counsel for Musi responded on September 19, 2024, stating that they had reached out to YouTube Legal—without confirming whether the matter had been resolved—and "acknowledg[ing] that Apple does not act as arbiter for disputes amongst third parties[, and] Musi considers this matter to be an active legal issue between the parties and is treating it accordingly." *Id.* at 1-2.

Despite Apple's follow-ups, YouTube's complaint remained unresolved, and on September 24, 2024, Apple notified Musi that it would be removing the Musi app from the App Store. FAC ¶ 2; *id.* Ex. G at 1. At the time of removal, Apple explained to Musi that "Apple informed you of the claim, and of your responsibility to resolve the matter directly with the Claimant, or risk removal of your App from the App Store." *Id.*

### C.    Musi Sues Apple Instead Of Resolving Its Dispute With YouTube

On October 2, 2024, rather than resolving its dispute with YouTube, Musi sued *Apple* for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. 1. Apple moved to dismiss the complaint on December 11, 2024. Dkt. 33. Musi indicated to the Court that

1  it intended to amend its complaint in the parties' initial Joint Case Management Statement, filed

2  on January 2, 2025.  *See* Dkt. 36 at 9.  On January 9, 2025, the Court terminated Apple's motion

3  to dismiss as moot in light of Musi's forthcoming amended complaint.  Dkt. 37.

4        Musi also moved for a preliminary injunction seeking to compel Apple to reinstate the

5  Musi app on the App Store, Dkt. 10, which the Court denied on January 9, 2025, Dkt. 37.  In its

6  written order denying the motion, the Court emphasized that Musi had "fail[ed] to demonstrate

7  serious questions going to the merits of its claims, let alone a likelihood of success on the merits."

8  Dkt. 44 at 8.  The Court held that "the clause in the DPLA that Musi seeks to limit is unambiguous:

9  it provides that Apple may cease offering an application 'at any time, with or without cause.'"  *Id.*

10  at 12 (quoting DPLA, Schedule 1 § 6.3).  The Court also held that "[t]he covenant of good faith

11  and fair dealing cannot impose an obligation on Apple that contradicts this express term."  *Id.* at

12  14.  After limited discovery on an expedited basis, Musi filed its First Amended Complaint on

13  March 12, 2025.  Dkt. 63.

14  **IV.  LEGAL STANDARD**

15        While the Court must "accept factual allegations in [a] complaint as true" on a motion to

16  dismiss, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), a

17  complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege

18  "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*,

19  550 U.S. 544, 570 (2007).  Meeting *Twombly*'s plausibility standard "requires more than labels

20  and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

21  at 555.  Nor are courts "required to accept as true allegations that are merely conclusory,

22  unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*,

23  266 F.3d 979, 988 (9th Cir. 2001).  Courts also need not accept "allegations that contradict matters

24  properly subject to judicial notice or by exhibit."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

25  1055 (9th Cir. 2008) (quoting *Sprewell*, 266 F.3d at 988); *see also Tritz v. U.S. Postal Service*, 721

26  F.3d 1133, 1135 n.1 (9th Cir. 2013) (courts "need not accept as true conclusory allegations that

27  are contradicted by documents referred to in the complaint" (citing *Steckman v. Hart Brewing*,

28

*Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998)).

## V.    ARGUMENT

### A.    Apple's Exercise Of Its Contractual Discretion Cannot Support A Breach Of Contract Claim

While well-pled factual allegations are taken as true for the purpose of a motion to dismiss, a plaintiff's interpretation of a contract is not.  *See Jamison v. Certain Underwriters at Lloyd's Under Policy No. B0146LDUSA0701030*, 599 F. App'x 720, 721 (9th Cir. 2015); *Levy v. State Farm Mutual Automobile Ins. Co*, 150 Cal. App. 4th 1, 7 (Cal. App. 2007).  If the alleged conduct is expressly permitted under the contract, the conduct cannot sustain a breach of contract claim. *See, e.g.*, *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1037 (Cal. App. 2022) (affirming dismissal of breach of contract claim where "the parties 'entered into written contracts' granting defendants 'unfettered[] and unilateral discretion to remove, restrict, demonetize, or de-emphasize content as [d]efendants see fit'"); *Intango, LTD v. Mozilla Corp.*, 2020 WL 12584274, at *6 (N.D. Cal. Aug. 25, 2020) (dismissing breach of contract claim where defendant acted consistently with the contract's "plain terms").

As the Court has recognized, the very DPLA provisions Musi cites in its amended complaint "unambiguous[ly]" "provide[] that Apple may cease offering an application 'at any time, with or without cause.'"  Dkt. 44 at 12.  Each provision begins:  "Apple reserves the right to cease marketing, offering, and allowing" downloads or purchases of the developer's application "at any time, ***with or without cause***, by providing notice of termination."  FAC Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA, Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3) (emphasis added).

Ignoring this Court's holding that the provision unambiguously authorizes Apple to remove an app "without cause," Musi again alleges that Apple's removal of the Musi app somehow constitutes a breach.  *See* FAC ¶¶ 67, 70.  Musi still contends that the very same DPLA provisions cited in its original complaint "curtail Apple's ability to remove any Licensed Applications," and that Apple may not actually remove applications "at any time, with or without cause."  *Id.* ¶ 68. Deliberately misreading the terms, Musi repeats the same argument that has already been rejected

by this Court, insisting that Apple can only remove applications "if Apple 'reasonably believes, based on human and/or systematic review,' that the Licensed Application infringes 'patent, copyright, trademark, trade secret or other intellectual property rights of any third party.'"  *Id.*

As this Court has already held, however, "[t]he problem with Musi's construction of the DPLA is that the 'reasonable belief' clause ***expressly does not*** 'limit[] the generality' of Apple's right to cease offering an application "at any time, with or without cause." Dkt. 44 at 10 (quoting DPLA, Schedule 1 § 6.3) (emphasis added).  Following the clear, unambiguous grant of discretion to Apple in its very first sentence, each provision states that—"***[w]ithout limiting the generality***" of rights granted in the section—the developer "acknowledge[s] that Apple may cease allowing download" of apps "in Apple's sole discretion, if Apple reasonably believes, based on human and/or systematic review, and, including without limitation upon notice received under applicable laws," that the applications "infringe … intellectual property rights of any third party." FAC Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA, Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3) (emphasis added).   Where, as here, "a contract's plain language expressly states that a clause is not limiting, a court should not construe the clause as a limitation." Dkt. 44 at 10. And this Court has already rejected Musi's proposed construction because it "would read the 'without cause' clause, and the 'without limiting' clause, out of the DPLA entirely." *Id.* at 11. Reading the contract to give meaning to its terms, this Court held that the "DPLA provides example circumstances under which Apple may cease offering an application, and those examples ***do not limit*** the broad discretion that Apple reserved for itself." *Id.* (emphasis added).

Musi's breach of contract claim should be dismissed.  "The plain language of the DPLA governs because it is clear and explicit: [Apple] may 'cease marketing, offering, and allowing download by end-users of the [Musi app] at any time, with or without cause, by providing notice of termination.'" Dkt. 44 at 10.  Because Musi admits that it was provided notice of termination, *see* FAC ¶ 56, Ex. G, it cannot state a claim for breach of contract.

### B.    Musi Cannot State A Claim For Breach Of The Implied Covenant Based On Conduct Expressly Permitted By Its Agreements With Apple

Musi's implied covenant claim is prohibited as a matter of law.  The DPLA expressly gives Apple the right to remove Musi's app "with or without cause" and "[t]he covenant of good faith and fair dealing cannot impose an obligation on Apple that contradicts this express term."  Dkt. 44 at 14.  Even if the claim were not prohibited as a matter of law (and it is) it is inadequately pled and implausible.

### 1.    Apple's Discretionary Removal Rights Are Dispositive

Under blackletter California law, conduct "expressly permitted by" a contract "can ***never*** violate an implied covenant of good faith and fair dealing."  *Carma Developers (Cal.) v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992) (emphasis added); *see also Solomon v. North Am. Life and Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) (implied covenant claims premised on conduct expressly permitted by contract are prohibited "as a matter of law").  Conduct that might otherwise be forbidden by the implied covenant of good faith and fair dealing cannot provide the basis for a claim if the contract between the parties authorizes it.  *Id.* ("[P]arties can contract explicitly to engage in activities that might otherwise be forbidden by the implied covenant of good faith.").  For example, in *Carma* the California Supreme Court held that a plaintiff could not state a claim for breach of the implied covenant against a lessor that unilaterally terminated the plaintiff's lease, as the contract permitted.  2 Cal. 4th at 376.  And in *Solomon*, the Ninth Circuit held that a plaintiff could not state a claim for breach of the implied covenant against an insurer that unilaterally terminated a life insurance policy with a similar provision.  151 F.3d at 1137.  Because the unilateral terminations of the lease in *Carma* and the life insurance policy in *Solomon* were "[b]oth … performed pursuant to the express terms of the contract[s]" granting unilateral termination rights, "both prohibit[ed] a bad faith claim as a matter of [California] law."  *Id.* (citing *Carma*, 2 Cal. 4th at 374).

Courts in this district have routinely held the same.  For example, in *Intango*, a case previously cited by Musi, the plaintiff alleged that Mozilla breached the implied covenant by removing Intango's add-ons for Mozilla's Firefox internet browser, despite a provision of the

parties' Distribution Agreement allowed Mozilla, "in [its] sole discretion, [to] remove or revoke access to any Listed or Unlisted Add-ons." *Intango*, 2020 WL 12584274, at *6-7.  Judge Cousins rejected Intango's arguments that Mozilla's removal decision breached the implied covenant because it was "unreasonabl[e]" or otherwise "conducted in bad faith," finding such arguments irrelevant where the contract permitted "Mozilla to remove Intango's add-ons 'at any time.'"  *Id.* at *6.

Likewise, in *Song fi Inc. v. Google, Inc.*, the court dismissed an implied covenant claim challenging the removal of a music video from YouTube, where the YouTube Terms of Service authorized YouTube "to relocate or remove videos in its sole discretion" and to "discontinue any aspect of the Service at any time."  108 F. Supp. 3d 876, 884-85 (N.D. Cal. 2015).  As Judge Conti held, "Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'"  *Id.* at 885 (quoting *Carma*, 2 Cal. 4th at 374); *see also Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019) (dismissing with prejudice implied covenant claim challenging Facebook's alleged removal of plaintiff's posts and failure to "boost" posts as allegedly promised, noting that the contract "expressly permits" Facebook to decline to boost posts, and that plaintiff "conceded that Facebook had the contractual right to remove or disapprove any post or ad at Facebook's sole discretion"); *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 833 (N.D. Cal. 2020) (dismissing implied covenant claim with prejudice where the plaintiff challenged the removal of its videos from YouTube and the termination of its YouTube account, noting that the language of the parties' agreements gave YouTube "sole discretion" to discontinue services "at any time" and explaining that whether "Plaintiff … disagreed with their reasoning, or lost revenue as a result, is simply inapposite"); *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *16 (N.D. Cal. Nov. 30, 2021) (where the DPLA grants Apple the right to act at its sole discretion, the implied covenant cannot contradict that right).

The same result is required here, where Apple's discretionary removal of the Musi app was

11

"entirely consistent with the express terms" of the parties' agreements.  *Carma*, 2 Cal. 4th at 362;

*see also id.* at 374 ("We are aware of no reported case in which a court has held the covenant of

good faith may be read to prohibit a party from doing that which is expressly permitted by an

agreement.  On the contrary, as a general matter, implied terms should never be read to vary

express terms."); *Kelly v. Skytel Commc'ns, Inc.*, 32 F. App'x 283, 285 (9th Cir. 2002) ("When a

contract expressly confers unrestricted discretion on one party, courts may not imply a covenant

of good faith and fair dealing to limit that party's discretion and contradict the contract's express

terms.").  Apple had the express contractual right to remove Musi's app "without cause," and, as

a matter of law, the implied covenant cannot be invoked to limit that right.  Musi's implied

covenant claim should be dismissed with prejudice.

### 2. Musi Does Not Plausibly Allege Bad Faith

Even if Apple's wholly discretionary removal rights were subject to some implied

limitation on their exercise (which they are not), Musi has not plausibly alleged that Apple

removed Musi's app in bad faith.  Where the implied covenant applies, to state a claim, a plaintiff

must plausibly allege not only that "[the defendant] unfairly interfered with [the plaintiff's] rights

to receive the benefits of the contract," *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d

952, 968 (N.D. Cal. 2010), but that it did so "by a *conscious and deliberate act*," *Careau & Co.

v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (emphasis added).  Even with

the benefit of discovery, Musi's First Amended Complaint offers no well-pled allegations to

support the conclusion that Apple acted with the "conscious and deliberate" intention of depriving

Musi of the benefits of its agreements with Apple, and Musi's mere disagreement or dissatisfaction

with Apple's decision is insufficient to state a claim.  *See id.* at 1394 (breach of the implied

covenant "implies unfair dealing rather than mistaken judgment"); *Enhanced Athlete*, 479 F. Supp.

3d at 833 (plaintiff's disagreement with defendants' decision was "inapposite" to implied covenant

claim).

As an initial matter, Musi expressly admits that YouTube and "several key players" in the

music industry had repeatedly raised concerns about Musi's app.  *See, e.g.*, FAC ¶¶ 1, 6-8.  While

Musi contends that the allegations levied against its app were false, the documents it incorporates by reference demonstrate that the complainants vehemently disagreed. *See* Milici Decl. Exs. 2, 3, 4. As Musi further admits, Apple does not act as an arbiter of disputes between developers and rightsholders. *See* FAC Ex. F at 2. Faced with multiple complaints of violations and infringement on one hand, and Musi's denial on the other, Apple's decision to remove Musi's app from the App Store until the complaints were resolved cannot plausibly be construed as bad faith. As Musi implicitly admits, the mere fact of the repeated complaints raised legal risks for Apple. *See id.* ¶ 55 (noting in a September 24, 2024 email to Apple that "Musi acknowledges under the [DPLA] that it has agreed to indemnify and hold Apple harmless with respect to claims against its app."). *Cf. Young v. Facebook, Inc*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) (no violation of the implied covenant where Facebook reserved the right to terminate user accounts that "violate the letter or the spirit of [its Statement of Rights and Responsibilities], or otherwise create risk or possible legal exposure" and Facebook's security system had flagged plaintiff's account as "potentially abusive").

Further, Musi's allegations of bad faith are internally contradictory and implausible. Musi alleges that "Apple's decision was made in bad faith, given that it knew that there was no basis for the claim that Musi was violating YouTube's API Terms of Service." FAC ¶ 58.[4] But Musi undermines the fundamental premise of that allegation by admitting that YouTube has repeatedly asserted that Musi's app violates YouTube's *general* Terms of Service applicable to all users (which are separate from its API Terms of Service). In fact, Musi specifically alleges that it received a letter from YouTube's outside counsel in April 2021 explaining that "the Musi app violated YouTube's Terms of Service" and describing exactly how the app violates the general user Terms of Service: "(1) the Musi app accessed and used YouTube's non-public interfaces; (2) the Musi app used the service for a commercial use; and (3) the Musi app violated YouTube's prohibition on the sale of advertising 'on any page of any website or application that only contains

---

[4] According to Musi, "API" refers to "YouTube's Data/iFrame Application Programming Interface." FAC ¶ 1.

Content from the Service or where Content from the Service is the primary basis for such sales.'" *Id.* ¶ 40; *see also* Milici Decl. Ex. 5 at 5-7 (YouTube Terms of Service, Permissions and Restrictions). YouTube's complaints were, by Musi's own admission, *not* limited to an alleged misuse of API.

While Musi's own description of YouTube's April 2021 letter is damning enough, Musi has incorporated the letter by reference into the First Amended Complaint and the Court can consider its text. *See Tritz*, 721 F.3d at 1135 n.1 (courts "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint"). Among other things, Musi falsely describes the document as having merely "*raised several questions* regarding the Musi app's functionality." FAC ¶ 40 (emphasis added). In fact, YouTube did not pose any questions to Musi in the letter at all, but rather forcefully "instruct[ed] Musi … to immediately cease and desist … and to immediately remove and disable the existing version of the Musi App …." Milici Decl. Ex. 3 at 1. As YouTube explained, while it had previously raised issues relating to Musi's use of its API, upon investigation it had concluded that "the functionality of the Musi App appears to be *even more egregious than the use of YouTube API Services* originally described." *Id.* (emphasis added). YouTube specifically explained that "it appears that the Musi App is accessing and using YouTube's non-public interfaces not intended for use by third parties and is using such unauthorized interfaces to *access and display YouTube content and data* … *without YouTube's permission*." *Id.* (emphasis added). YouTube further explained that "Musi should further be aware that such streaming of content from the YouTube service *likely infringes (unless licensed) the copyrights in that content, such as the copyrights owned by the record labels and music publishers for the music streamed by Musi*." *Id.* at 2 (emphasis added).

YouTube continued to assert that Musi's app violates YouTube's Terms of Service after sending the April 2021 letter. According to Musi, its next communication from YouTube was a complaint in March 2023 that again stated that Musi's app violates "the YouTube Terms of Service." FAC ¶ 42. And Musi admits that YouTube complained again in July 2024 that Musi's app was "violating YouTube's Terms of Service." *Id.* ¶ 48, Ex. C. Musi even attaches to its First

Amended Complaint a September 6, 2024 email from YouTube's counsel that states: "[T]his app continues to violate our Terms of Service. We request that you please proceed with removing this app from the App Store." *Id.* Ex. D at 2.

Despite admitting that it *knew* that YouTube had repeatedly complained that the Musi App violates YouTube's *general* Terms of Service applicable to all users, Musi alleges that Apple acted in bad faith because YouTube allegedly raised a violation of the API Terms of Service during a July 15, 2024 call with Apple. FAC ¶¶ 46, 48. According to Musi, it does not use YouTube's API to access YouTube content and so is not subject to the API Terms of Service. *See, e.g.*, FAC ¶ 11. But Musi is grasping at straws. As Musi admits, Apple received complaints that Musi's commercial use of YouTube content was not authorized by YouTube under its general Terms of Service for all users and Musi itself now argues that it was also not authorized to access or use YouTube content under the API Terms of Service. Thus, whether it uses YouTube's API or not, Musi is accused by YouTube and others of accessing YouTube content without authorization and in violation of YouTube's terms. Continuing to offer Musi's app on the App Store exposed Apple to legal risks, including from the many artists whose copyrighted material Musi accessed and used for its own commercial gain without authorization.

In any event, the duty of good faith and fair dealing does not require Apple to weigh evidence or assign credibility to the parties to the dispute. Musi contends that Apple acted in bad faith because Apple "knew" that Musi was not subject to YouTube's API Terms of Service, relying wholly on an April 2024 communication in which a "music company" allegedly "made it known to Apple that, years earlier, Musi had ceased use of YouTube's API." FAC ¶ 44. But, according to Musi, YouTube said in a subsequent phone call that Musi violates YouTube's API Terms of Service, and the NMPA said the same. *Id.* ¶¶ 44, 46, 52. Apple was under no obligation to resolve disagreements about which set of YouTube's terms Musi was violating because, as Musi admits, Apple never agreed to act as an arbiter of disputes between Musi and the many entities that complained about Musi's app, *see id.* Ex. F at 3, and the implied covenant of good faith and fair dealing does not create such an obligation.

Musi's allegations are implausible and contradictory in other ways that further fatally undermine its good faith and fair dealing claim. First, Musi alleges that Apple improperly acted "at the behest of" and "to appease" "key players in the music industry" when it removed Musi's app from the App Store. *See* FAC ¶¶ 1, 8, 59, 63. Yet Musi *also* alleges that the "major music company" that approached Apple in April 2024 allegedly "complained that its attempts to run Musi off the App Store via Apple's app dispute process had been *repeatedly* unsuccessful." *Id.* ¶ 44 (emphasis added). Musi's claim is therefore that Apple engaged in a months-long scheme, which included recruiting multiple companies to submit allegedly false complaints, all at the behest of a "major music company," when Apple had declined to exercise its discretionary removal authority in response to that *same company's* complaints in the past. Musi's story is, at the very least, facially implausible. *See Sprewell*, 266 F.3d at 988 (courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

Second, while the implausibility of Musi's allegations is sufficient to defeat its claims, Musi has incorporated the April 2024 communication by reference and that document directly contradicts Musi's allegations and deals a fatal blow to Musi's credibility. *See Tritz*, 721 F.3d at 1135 n.1. Rather than demonstrating that Apple acted in bad faith, the document shows that in April 2024, Sony Music Entertainment (the "major music company") wrote to Apple complaining that (1) the Musi app circumvented YouTube's technical protection measures to access Sony copyrighted materials without authorization, (2) Sony worked with YouTube to remove its API access and prevent Musi from accessing Sony copyrighted materials, but Musi was able to evade protections, (3) Musi does not pay any of the creators or rightsholders whose music it makes available through its app, (4) an international trade association (the International Federation of the Phonographic Industry, or "IFPI") had participated in Apple's mitigation process *with Musi* for several years, and the conversations had not been productive, and (5) Sony was considering enforcement options. *See* Milici Decl. Ex. 2. Musi cannot possibly spin this straightforward communication, in which Sony raised the *same* infringement complaints that had been raised by

the IFPI and communicated to Musi, and which Musi *wholly omits* from its First Amended Complaint, into a plausible claim that Apple acted with an improper motive in removing Musi's app from the App Store.

Finally, the Court need not consider the text of that communication, nor any other document incorporated by reference into Musi's complaint, to find that Musi's bad faith claim is inadequately pled and wholly implausible.  For all the hyperbole in Musi's First Amended Complaint, the facts alleged even after the benefit of discovery fail to tell any coherent story at all. If the Musi app does not infringe copyrights, then why would major players in "the music industry" repeatedly tell Apple that it does and demand the removal of the app from the App Store?  While Musi alleges that Apple removed Musi's app for the "sole benefit of [] music industry actors," FAC ¶ 45, it never alleges *how* these music-industry actors could possibly benefit from the removal of Musi's app (other than by stopping its infringement).  What would motivate so many different entities to repeatedly raise false claims of copyright infringement against Musi's app?  Musi never says.  Nor does Musi explain the benefit to *Apple* of removing an allegedly popular app from the App Store based on false complaints.  *See* FAC ¶ 8.  Likewise, if Apple "knew" that Musi did not use YouTube's API, then why would it "solicit[]" a complaint from NMPA about Musi's violation of the API Terms of Service?  *Id.* ¶ 9.  Fundamentally, why would Apple engage in a complex "backchannel scheme," *id.* ¶ 8, including allegedly soliciting false letters of support for YouTube's complaint, *id.* ¶¶ 9, 50, 52, when it had the unambiguous contractual right to remove the Musi app "at any time, with or without cause," *id.* Ex. A at 84 (DPLA, Schedule 1, § 6.3); *id.* Ex. B. at 11 (DPLA, Schedule 2, § 7.3), 20 (DPLA, Schedule 3, § 7.3)?

Musi's theory simply makes no sense.  The only plausible conclusion to draw from the facts alleged by Musi is that Apple removed Musi's app after receiving many complaints that Musi accesses and uses YouTube content for commercial gain without authorization from YouTube and without authorization from the artists and publishers who own the rights to that content. Accordingly, even if Musi's implied covenant claim were not foreclosed as a matter of law based on the express terms of the DPLA (and it is) Musi's allegations in support of this claim are wholly

1  implausible and contradictory on their face.  The Court should dismiss Musi's implied covenant

2  claim with prejudice.

3  **VI.    CONCLUSION**

4        For the foregoing reasons, Musi's First Amended Complaint fails to state a claim, and the

5  significant deficiencies in its theory of harm cannot be remedied through further amendment.  No

6  amendment can cure the fundamental defect at the heart of both Musi's claims, which is that Apple

7  acted within its express contractual rights in removing the Musi app from the App Store.

8  Accordingly, the Court should dismiss Musi's First Amended Complaint with prejudice.

9

10

11   Dated:  March 25, 2025                              WILMER CUTLER PICKERING
                                                          HALE AND DORR LLP
12
                                                   By: */s/ Jennifer Milici*
13                                                   Jennifer Milici (*pro hac vice*)
                                                     WILMER CUTLER PICKERING
14                                                     HALE AND DORR LLP
                                                     2100 Pennsylvania Avenue, NW
15                                                   Washington, DC 20037
                                                     Telephone: (202) 663-6000
16                                                   *jennifer.milici@wilmerhale.com*

17                                                   Chris Johnstone, SBN 242152
                                                     WILMER CUTLER PICKERING
18                                                     HALE AND DORR LLP
                                                     2600 El Camino Real, Suite 400
19                                                   Palo Alto, CA 94306
                                                     Telephone: (650) 858-6000
20                                                   *chris.johnstone@wilmerhale.com*

21                                                   Mark A. Ford (*pro hac vice*)
                                                     WILMER CUTLER PICKERING
22                                                     HALE AND DORR LLP
                                                     60 State Street
23                                                   Boston, MA 02109
                                                     Telephone: (617) 526-6000
24                                                   *mark.ford@wilmerhale.com*

25                                                   *Attorneys for Defendant Apple Inc.*

26

27

28