Jennifer A. Golinveaux (SBN: 203056)
JGolinveaux@winston.com
Samantha K. Looker (SBN: 340564)
SLooker@winston.com
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111-5891
Telephone: (415) 591-1000

Jeff Wilkerson (SBN: 284044)
JWilkerson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
Telephone: (704) 350-7700

Attorneys for Plaintiff
MUSI INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| MUSI INC., | Case No. 5:24-cv-06920-EKL |
| Plaintiff, | **PLAINTIFF MUSI INC.'S OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS** |
| v. | |
| APPLE INC., | Judge: Hon. Eumi K. Lee |
| Defendant. | Hearing Date: April 30, 2025 |
|  | Hearing Time: 10:00 a.m. |
|  | Courtroom: 7 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 1

    A.    The Apple App Store and the Musi App. ........................................................ 1

    B.    Apple's Developer Program License Agreement. ........................................... 2

    C.    Apple's Wrongful Removal of the Musi App from the App Store................... 3

III.  LEGAL STANDARD ................................................................................................. 6

IV.   ARGUMENT .............................................................................................................. 6

    A.    Musi Sufficiently Alleged Breach of Contract. .............................................. 6

        1.    Section 6.3 of the DPLA Limits Apple's Discretionary Power...................... 6

        2.    At minimum, Musi has sufficiently alleged that the DPLA is ambiguous. .......... 8

    B.    Musi Sufficiently Alleges Breach of the Implied Covenant of Good Faith and Fair Dealing. ................................................................................................... 9

        1.    Apple's argument that the implied covenant cannot constrain contractual discretion is legally wrong and would render the DPLA illusory. ...................... 9

        2.    Musi has plausibly alleged that Apple exercised its discretion in bad faith. ...... 14

V.    CONCLUSION.......................................................................................................... 18

MUSI INC.'S OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-06920-EKL

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alameda Health Sys. v. Alameda Cnty. Emps.' Ret. Ass'n,*
  100 Cal. App. 5th 1159 (2024) ...................................................................................9

*Asmus v. Pac. Bell,*
  23 Cal. 4th 1 (2000) ...............................................................................................10

*Automatic Vending Co. v. Wisdom,*
  182 Cal. App. 2d 354 (1960) ...................................................................................10

*Bleecher v. Conte,*
  29 Cal. 3d 345 (1981) .............................................................................................10

*Brehm v. 21st Century Ins.,*
  166 Cal. App. 4th 1225 (2008) ..................................................................................9

*Cal. Lettuce Growers v. Union Sugar Co.,*
  45 Cal. 2d 474 (1955) ...............................................................................................8

*Campbell v. eBay, Inc.,*
  2014 WL 3950671 (N.D. Cal. Aug. 11, 2014) ........................................11, 12, 16

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.,*
  2 Cal 4th 342 (1992) .....................................................................................9, 11, 12

*Chodos v. W. Publ'g Co.,*
  292 F.3d 992 (9th Cir. 2002) ...................................................................................10

*Coral Farms, L.P. v. Mahony,*
  63 Cal. App. 5th 719 (2021) ......................................................................................7

*Coronavirus Rep. v. Apple Inc.,*
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ........................................................13

*Ebeid v. Facebook, Inc.,*
  2019 WL 2059662 (N.D. Cal. May 9, 2019) ...........................................................13

*Enhanced Athlete Inc. v. Google LLC,*
  479 F. Supp. 3d 824 (N.D. Cal. 2020) .....................................................................13

*Hartmann v. Cal. Dep't of Corr. & Rehab.,*
  707 F.3d 1114 (9th Cir. 2013) ....................................................................................6

*Howard Ent., Inc. v. Kudrow,*
  208 Cal. App. 4th 1102 (2012) ...................................................................................8

iii

*InfoStream Grp., Inc. v. PayPal, Inc.*,
   2012 WL 3731517 (N.D. Cal. Aug. 28, 2012) .......................................6, 11, 12, 16

*Intango, LTD v. Mozilla Corp.*,
   2020 WL 12584274 (N.D. Cal. Aug. 25, 2020) ............................................7

*Kelly v. Skytel Commc'ns, Inc.*,
   32 F. App'x 283 (9th Cir. 2002) ..........................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..........................................................6, 14

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir.2000) ..........................................................6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ..........................................................6

*Musi Inc. v. Apple Inc.*,
   No. 5:24-cv-06920-EKL (Feb. 26, 2025) ................................................14

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ..........................................................7

*Peleg v. Neiman Marcus Grp., Inc.*,
   204 Cal. App. 4th 1425 (2012) ..........................................................8

*Prager Univ. v. Google LLC*,
   85 Cal. App. 5th 1022 (2022) ..........................................................8

*Reyes v. Wells Fargo Bank, N.A.*,
   2011 WL 30759 (N.D. Cal. Jan. 3, 2011) ................................................10

*Serafin v. Balco Props. Ltd., LLC*,
   235 Cal. App. 4th 165 (2015) ..........................................................10

*Sharma v. Barnhart*,
   32 F. App'x 236 (9th Cir. 2002) ..................................................10, 13, 14

*Solomon v. N. Am. Life &Cas. Ins.*,
   151 F.3d 1132 (9th Cir. 1998) ..........................................................13

*Song Fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) ..................................................8

*Standard Operations, Inc. v. Montague*,
   758 S.W.2d 442 (Mo. 1988) ..........................................................7

*Victoria v. Super. Ct.*,
   40 Cal. 3d 734 (1985) ..........................................................8

iv

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................................18

**Other Authorities**

14A Cal. Jur. 3d Contracts § 215 ...........................................................................7

Fed. R. Civ. P. 12(b)(6)................................................................................6

Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good
    Faith*, 94 Harv. L. Rev. (1980) ........................................................................11

## I.     INTRODUCTION

Apple's motion to dismiss ("Motion") asks this Court to ignore Musi's allegations and instead accept Apple's spin on the facts. But the facts pleaded in Musi's Amended Complaint must be accepted as true at this stage, and they show that Apple's targeted and unfair removal of the Musi app from the Apple App Store breached the Developer Program License Agreement ("DPLA"), including the implied covenant of good faith and fair dealing inherent therein. The Amended Complaint shows that, to appease major music-industry players that sought Musi's destruction, Apple *solicited* a "complaint" from YouTube that it told Musi was the basis for its removal. This complaint, as Apple communicated it to Musi, was five words in length and simply stated, "violating YouTube Terms of Service." But YouTube in fact told Apple in backroom discussions that its concern was not its Terms of Service, but rather, that Musi was violating its separate API Terms of Service—a concern that Apple knew to be false, because it knew (including from the very same industry players it was seeking to appease) that Musi was not using YouTube's API. Apple then removed the Musi app on the purported basis that Musi had not "resolved" YouTube's complaint, despite knowing that the basis for the complaint both was false and had never been shared with Musi, and despite knowing that YouTube had ignored invitations from Musi to discuss the matter further.

In short, the facts alleged in the Amended Complaint show that Apple removed the Musi app from the App Store in bad faith and did not deal fairly with Musi. Apple's attempt to construct a different narrative is both meritless and, more important, inappropriate at the motion-to-dismiss stage. And Apple's contention that its asserted contractual discretion to remove apps renders its bad faith and unfair dealing irrelevant is legally incorrect. The Court should deny the Motion.

## II.     FACTUAL BACKGROUND

### A.     The Apple App Store and the Musi App.

Apple designs, manufactures, and sells mobile computing devices called iPhones. Dkt. 67 ("Amended Complaint" or "AC") ¶ 20. iPhones rely on Apple's pre-installed, proprietary mobile operating system software, "iOS," to function. *Id.* ¶¶ 21–22. iOS manages the iPhone's hardware and allows users to run iOS-based mobile software applications ("apps"). *Id.* iOS apps are often developed by third-party developers, which distribute their apps using App Store—an iOS app marketplace

1

developed, owned, and operated by Apple, and the only commercially viable marketplace for applications for Apple devices. *Id.* ¶¶ 1, 22–23. Without Apple's approval, iOS apps cannot be distributed on App Store. *Id.* ¶ 24.

Musi is a mobile computing software company that owns and operates the iOS-based Musi app. *Id.* ¶ 36. The Musi app provides users with enhanced functionality to interact with publicly available content on YouTube's website through its own augmentative interface—specifically, Musi's proprietary user interface components and organizational functionality/metadata. *Id.* ¶ 37. The Musi app does not rely on YouTube's Data/iFrame Application Programming Interface ("API") to function, nor do Musi's servers store, process, or transmit YouTube videos. *Id.* Instead, the Musi app displays content based on user interactions with YouTube and enhances that experience via Musi's proprietary interface. *Id.* ¶¶ 1, 37.

### B.     Apple's Developer Program License Agreement.

For a developer to make its iOS app available on App Store, it must apply for distribution with Apple. AC ¶ 27. Once accepted, the app is subject to the DPLA. *Id.* ¶¶ 26–29. The DPLA grants developers a limited, personal, nonexclusive, and revocable license to use Apple's software and services, provided the developer builds and operates its app in compliance with the DPLA's terms and conditions. *Id.*

Schedule 1 § 4.1(b) requires developers to guarantee that "none of the Licensed Applications … violate or infringe any … intellectual property or contractual rights of any other person, firm, corporation or other entity." *Id.* ¶ 30. If disputes arise over the content or use of a Licensed Application, the developer must permit Apple to share its contact information with the party filing the dispute and follow Apple's app-dispute process. *Id.* ¶ 31. Schedule 1 § 6.3 states that Apple "reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to" the third-party developer. *Id.* ¶ 32. But it goes on to state:

> Without limiting the generality of this Section 6.3, [the third-party developer] acknowledge[s] that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple **reasonably believes, based on human and/or systematic review**, and, including without limitation upon notice received under applicable law, that: … (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications,

2

infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party[.]

*Id.* (emphasis added). DPLA Schedule 2 § 7.3 and Schedule 3 § 7.3 include materially identical language. *Id.* ¶ 34.[1]

### C.    Apple's Wrongful Removal of the Musi App from the App Store.

Since at least 2015, Musi has engaged in sporadic dialogue with YouTube, and Musi has repeatedly expressed its commitment to offer the Musi app in a way that complies with YouTube's Terms of Service. AC ¶ 38. Musi has always responded to concerns from YouTube by either adjusting the app's functionality or explaining why the app complies. *Id.* ¶ 39. This included Musi stopping use of YouTube's API in 2016—many years before the events that gave rise to this case. *Id.* It also included a 2021 exchange, during which Musi substantively explained to YouTube why assertions it made in April 2021 that the Musi app violated YouTube's Terms of Service were based on a misunderstanding of the Musi app's functionality. *Id.* ¶ 41. YouTube never responded to that explanation. *Id.* ¶ 42.

In March 2023, YouTube again submitted an app dispute asserting violations by Musi of its Terms of Service, but it never specified the violations and, indeed, provided only a three-word "complaint." AC ¶ 42. After Musi promptly responded, YouTube—once again—did not reply. Apple, in accordance with its past practices, then closed YouTube's March 2023 complaint for failure to respond. *Id.* And Musi has offered its app in substantially the same manner ever since. *Id.* ¶ 43.

About a year later, a major music company (and commercial partner of Apple's) complained to Apple privately—outside the established app-dispute process—that its prior attempts to run Musi off the App Store using the app-dispute process had failed. AC ¶ 44. In doing so, the music company noted that Musi had ceased use of YouTube's API. *Id.* Even so, Apple—on information and belief—informed the music company that the fastest way to permanently remove the Musi app would be if YouTube renewed its complaint. *Id.*

In response to this music-industry complaint (again, made outside the app-dispute process), Apple began a monthslong campaign aimed at creating the appearance of a purported, legitimate basis for

---

[1] Apple's citation to, and request for judicial notice of, the separate Apple Developer Agreement is a red herring. *See* Mot. at 4, Declaration of Jennifer Milici, Dkt. 68-4 ("Milici Decl.") Ex. 1. The Apple Developer Agreement is not the basis for Musi's claims and is not even cited in the Amended Complaint.

3

removing the Musi app from its App Store. AC ¶ 45. Beginning no later than May 29, 2024, Apple repeatedly reached out to YouTube to "follow up" on the closed March 2023 complaint—contrary to its customary practice of not seeking out app disputes, and even though its typical practice is to *close* app disputes when the complainant fails to respond to follow-up from the app developer. *Id.* ¶ 46. Worse, when it quickly became evident that Apple's contacts at YouTube did not even recall the 2023 exchange, Apple set up a July 15, 2024 phone call to remind YouTube of its prior complaint and invite YouTube to reopen it. *Id.* During that call, however, YouTube stated to Apple that its complaint with Musi was an unspecified violation of YouTube's API Terms of Service. *Id.* YouTube did not describe the nature of the alleged violation of the API Terms of Service. *Id.*

Despite knowing that Musi did not (and apparently, could not) access YouTube's API, Apple did not inquire further on that call regarding any supposed violation of YouTube's API Terms of Service. Instead, Apple asked YouTube to reopen its dormant complaint. AC ¶ 46. Apple then forwarded YouTube's own prior March 2023 complaint to YouTube and only then (when the conversation was now in writing) asked YouTube to specify which of its rights were being infringed. *Id.* ¶ 47. But YouTube *still* did not do so. Instead, YouTube simply stated (as discussed on the call that Apple had arranged) that it wanted the complaint reopened. *Id.*

Apple then notified Musi of YouTube's "complaint" on August 8, 2024, but did not inform Musi either that it had solicited the complaint or that YouTube was asserting violations of its API Terms of Service—indeed, there was no information on the substantive basis for YouTube's complaint. AC ¶ 48. Instead, Apple told Musi only that it had received a notice from "YouTube Legal" that "Claimant believe[d]" the Musi app "infringe[d] its intellectual property rights" and directed Musi to "see their comments below"—comments that comprised only five words: "violating YouTube Terms of Service." *Id.* Neither Apple nor YouTube provided any further information—the nature of YouTube's "intellectual property rights" was not described, nor were any particular sections or aspects of YouTube's Terms of Service or API Terms of Service cited or mentioned. *Id.* Indeed, *nowhere* did the email even suggest that Musi was being accused of violating YouTube's API Terms of Service, even though YouTube told Apple that in July (and even though Apple knew that any claims based on Musi's supposed use of YouTube's API were baseless). *Id.* ¶¶ 48–49. Faced with this complete lack of any substantive basis for the

complaint, Musi did what it could: assured Apple and YouTube via email that any claims that it was violating YouTube's rights were unsubstantiated and explained that Musi had previously substantively communicated with YouTube about alleged violations of YouTube's Terms of Service but received no response. *Id.* ¶ 49.

Meanwhile, Apple took its scheme further. After the National Music Publishers Association ("NMPA") reached out, Apple's in-house counsel held a private phone conference with NMPA representatives. On that call, on information and belief, Apple solicited a letter of support from the NMPA for YouTube's resuscitated complaint. AC ¶ 50. The NMPA issued such letter on September 11, 2024, but did not file a separate app dispute against Musi. *Id.* ¶ 51. The existence of that letter was not known to Musi until this litigation, and it contains several verifiably false claims—including, again, claims that the Musi app was inappropriately using YouTube's API, which Apple knew to be untrue. *Id.* ¶ 52.

On September 6, 2024, and despite YouTube's failure to respond to Musi's detailed explanation years earlier, or to provide anything beyond a conclusory, five-word assertion of "violating YouTube Terms of Service," YouTube wrote to Apple again, stating that Musi failed to contact YouTube to discuss its complaint. AC ¶ 53, Ex. D. Musi promptly responded that same day, in an email that Musi also promptly sent to Apple, to correct the record and reiterate that the Musi app did not infringe YouTube's intellectual property or violate its terms of service. *Id.* Then, again copying Apple, Musi expressly invited YouTube to discuss its concerns. Yet again, Musi's invitation went unanswered. *Id.*

With its scheme now in place, Apple advised Musi on September 18, 2024, that the matter remained unresolved, despite Musi having made clear, repeatedly, that YouTube was failing to engage in the app-dispute process. *Id.* ¶ 54. Musi reiterated to Apple that YouTube was unresponsive, but that fell on deaf ears. *Id.* ¶¶ 54–55. Musi then followed up with Apple on September 24, noting *again* that it had reached out to YouTube in an attempt to resolve the issue but received no response. That same day, Apple removed the Musi app, purportedly for failing to resolve the 2024 YouTube complaint (*not* any other complaint by YouTube or anyone else)—the complaint that Apple itself cooked up. *Id.* ¶ 56. In-house counsel for Apple then informed the major music company that the mission was successful. *Id.* ¶ 57.

To date, the Musi app remains unavailable on the Apple App Store.

### III.    LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; that is, plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (cleaned up). "The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim." *InfoStream Grp., Inc. v. PayPal, Inc.*, 2012 WL 3731517, at *3 (N.D. Cal. Aug. 28, 2012) (citation omitted).

If the Court dismisses a complaint, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (citation and internal quotation marks omitted).

### IV.    ARGUMENT

#### A.    Musi Sufficiently Alleged Breach of Contract.

Musi recognizes that this Court previously found that Musi's claim for breach of the express terms of the DPLA was not cognizable because the DPLA includes language that the Court interpreted as allowing Apple "to cease offering the Musi app without cause if Apple provided notice of termination to Musi." Dkt. 44 at 10. With due respect to the Court, and for purposes of preservation, Musi maintains its position that Apple's conduct breached the DPLA's express terms, and that the DPLA's inherent ambiguity must be construed in Musi's favor. This section IV.A. will explain why. The next section, Section IV.B, will show that, even if Apple's bad-faith actions did not violate the DPLA's express terms, they breached the implied covenant of good faith and fair dealing.

##### 1.    Section 6.3 of the DPLA limits Apple's discretionary power.

Apple argues that the DPLA gives it complete, unfettered discretion to remove an app from the App Store, and thus its conduct was expressly permitted under the parties' contract. Mot. at 9. Not so.

6

Section 6.3 contains limiting language that sets out the parameters under which Apple can remove an app accused of intellectual property infringement. AC ¶ 32 (citing Dkt. 67-2 at 85). Identical language is contained in Schedule 2 § 7.3 and Schedule 3 § 7.3. *Id.* ¶ 34 (citing Dkt. 67-3).

The first sentence allows Apple to "cease marketing, offering, and allowing download" of applications from the App Store "with or without cause" via termination notice. Dkt. 67-2 at 85. But the second sentence sets forth procedures Apple must follow before making a removal decision; specifically, it must conduct a "human and/or systematic review" based upon which it has a "reasonabl[e] belie[f]" that the Licensed Application violates the DPLA's terms, including (as relevant here) intellectual property infringement. *Id.* And Section 4.1(g) of the DPLA goes on to establish what occurs "in the event a dispute arises over the content of Your Licensed Applications or use of Your intellectual property on the App Store": "You agree to permit Apple to share Your contact information *with the party filing such dispute* and to follow Apple's *app dispute process* on a non-exclusive basis and without any party waiving its legal rights." *Id.* at 84 (emphases added).

Apple's argument that the contractual language grants it unfettered discretion fails for two reasons. First, Apple's reading of Section 6.3 would render the second sentence superfluous, and would render Section 4.1(g) redundant, violating the fundamental principle that a contract must be "read as a whole, so as to give effect to every part, if reasonably practicable," in order to "avoid rendering terms surplusage." *E.g.*, *Coral Farms, L.P. v. Mahony*, 63 Cal. App. 5th 719, 732 (2021) (citations omitted); 14A Cal. Jur. 3d Contracts § 215 (collecting cases).

Second, Section 6.3's use of the phrase "[w]ithout limiting the generality" does not forbid any and all limiting constructions. Mot. at 9. Courts have applied limiting constructions to contractual provisions containing that same phrase where the provision was susceptible to further interpretation. *See, e.g.*, *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008); *see also Standard Operations, Inc. v. Montague*, 758 S.W.2d 442 (Mo. 1988).

Apple's cited cases do not warrant a different outcome. *Intango* simply did not address what effect the "reasonable opinion" language had on Mozilla's discretionary powers and thus is not instructive here. *See Intango, LTD v. Mozilla Corp.*, 2020 WL 12584274 (N.D. Cal. Aug. 25, 2020). And the plaintiff in *Intango* admitted that the defendant had found that the plaintiff violated its policies. *Id.* at *6. Musi, in

contrast, alleges that Apple did not conclude and could not have concluded that the Musi app was infringing on YouTube's intellectual property rights with respect to YouTube's complaint (which Apple procured), given Apple's knowledge at the time regarding Musi's functionality. AC ¶ 54–59. In *Prager University*, the terms of use contained no language similar to Section 6.3's "reasonable belief" provision, and the plaintiff failed to "identify any term in either TOS that would restrict how defendants choose to moderate the content uploaded to YouTube." *Prager Univ. v. Google LLC*, 85 Cal. App. 5th 1022, 1037 (2022). Musi has identified such terms. AC ¶¶ 32, 34. And *Song Fi* is not instructive for the same reason: The terms of service at issue there contained no similar language requiring the defendant to form a reasonable belief of infringement before removal. *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015).

### 2. At minimum, Musi has sufficiently alleged that the DPLA is ambiguous.

At minimum, the language of Section 6.3 is ambiguous, and thus must be construed against Apple as the drafter of the DPLA. *Victoria v. Super. Ct.*, 40 Cal. 3d 734, 739 (1985) ("[A]mbiguities in standard form contracts are to be construed against the drafter.") (citations omitted); *accord Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1445 (2012). Accordingly, the parties' past behavior is relevant in determining the meaning of the contract. *See, e.g.*, *Howard Ent., Inc. v. Kudrow*, 208 Cal. App. 4th 1102, 1114 (2012); *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 482 (1955). And the facts alleged show that Apple, and Musi, expected that any app dispute would follow a neutral process, set out in Section 4.1(g), under which Musi could resolve any alleged issues by engaging directly with the complainant or providing written assurances to Apple, as Musi previously did. Indeed, if Section 6.3's "reasonable belief" language was insignificant, why would Apple have gone to the trouble of crafting and overseeing the app-dispute process, and why did both parties follow that process in the past? And why did Apple go to the trouble of proactively soliciting a complaint from YouTube in 2024 as a basis to remove the Musi app? Apple's suggested reading of the contract contradicts the parties' longstanding actions and thus must be rejected.

MUSI INC.'S OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-06920-EKL

**B. Musi Sufficiently Alleges Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Even if the DPLA's express terms did not constrain Apple's discretion to remove apps from the App Store in bad faith, that discretion is nonetheless constrained by the implied covenant of good faith and fair dealing. And as the Amended Complaint shows, Apple breached that implied covenant by removing the Musi app in bad faith, based on complaints it knew to be false and had itself procured in order to appease a major music company partner. That constituted both subjective bad faith by Apple and a violation of the parties' reasonable expectations—which surely did not include that Apple would proactively seek to cook up complaints against apps on its own platform, fail to share the true basis of such complaints with Musi, or take action when it *knew* allegations about Musi were false.

Apple's arguments to the contrary turn on two primary contentions: (1) that the implied covenant of good faith and fair dealing cannot, as a matter of law, constrain a party's contractual discretion to terminate; and (2) that "Musi has not plausibly alleged that Apple removed Musi's app in bad faith." Mot. at 10–18. Both contentions lack merit.

**1. Apple's argument that the implied covenant cannot constrain contractual discretion is legally wrong and would render the DPLA illusory.**

Apple's argument that it was not required to act reasonably or in good faith because the DPLA terms it drafted allowed it discretion to remove an app from the App Store "with or without cause" (Mot. at 10–12) runs headlong into established California law. California law implies in "*every* contract" a covenant of good faith and fair dealing. *Alameda Health Sys. v. Alameda Cnty. Emps.' Ret. Ass'n*, 100 Cal. App. 5th 1159, 1190 (2024) (emphasis added). Thus, a claim for breach of the implied covenant does *not* require a separate showing of breach of an express term of an agreement. *See, e.g.*, *Brehm v. 21st Century Ins.*, 166 Cal. App. 4th 1225, 1235–36 (2008). Indeed, the California Supreme Court has noted that the implied covenant "finds *particular* application in situations where one party is invested with discretionary power affecting the rights of another." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal 4th 342, 372 (1992) (holding that "[s]uch [discretionary] power must be exercised in good faith," which requires both "subjective good faith and objective fair dealing").

Unsurprisingly, then, courts applying California law routinely hold that the implied covenant of good faith and fair dealing constrains otherwise unbounded contractual grants of discretion, noting that any other outcome would render a contract illusory. *See, e.g.*, *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 997 (9th Cir. 2002) (contract giving a book publisher the right to terminate publishing relationship with an author was not illusory because the publisher's "duty to exercise its discretion is limited by its duty of good faith and fair dealing"); *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *16 (N.D. Cal. Jan. 3, 2011) (contract's term that Wells Fargo could terminate a forbearance agreement at its sole discretion would be illusory unless the Court "implies a covenant of good faith and fair dealing into it") (citation omitted); *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015) ("Because California law prevents a party from exercising a discretionary power … in bad faith or in a way that deprives the other party of the benefits of the agreement, Balco's right to modify its 'policies or practices at any time' does not render the arbitration agreement illusory.").

This line of authority grows out of California's well-established tenet that contracts must involve "mutuality of obligation." *Bleecher v. Conte*, 29 Cal. 3d 345, 350 (1981). A contract that allowed one party unbounded discretion to terminate their performance—even when that discretion was exercised both with subjective bad faith and contrary to reasonable expectations—would lack mutuality of obligation and be illusory by nature. *See id.*; *see also Asmus v. Pac. Bell*, 23 Cal. 4th 1, 15 (2000) (contract is illusory if performance is "conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion"); *Sharma v. Barnhart*, 32 F. App'x 236, 239 (9th Cir. 2002) (an illusory contract "commits performance … to the *unfettered discretion* of one of the parties" (emphasis added)) (citing *Automatic Vending Co. v. Wisdom*, 182 Cal. App. 2d 354, 357 (1960)). Apple's argument that its discretion was unbounded *regardless* of whether it acted in bad faith or dealt unfairly with Musi is precisely the kind of unlimited discretionary grant that would render such a contract illusory, making Apple's performance completely optional. Under California law, then, the DPLA must be subject to the implied covenant of good faith and fair dealing.

To be sure, that does not mean that *any* removal by Apple would allow a claim for violation of the implied covenant. As Apple's authority notes, stating a claim for violation of the implied covenant requires showing that the defendant "subjectively lacks belief in the validity of its act" or acts in a way

MUSI INC.'S OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-06920-EKL

that is "objectively unreasonable." *Carma*, 2 Cal. 4th at 372. And a party with discretion is of course permitted to exercise that discretion for purposes "within the reasonable contemplation of the parties at the time of formation." *Id.* (quoting Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv. L. Rev. 369, 373 (1980)). But an implied covenant claim will persist for a bad-faith exercise of discretion, even if "not prohibited" by the contract, when it is "nevertheless contrary to the contract's purposes and the parties' legitimate expectations." *Carma*, 2 Cal. 4th at 373. In some cases, determining whether this sort of bad-faith abuse of discretion is outside the parties' reasonable expectations is where the "difficulty arises." *Id.* But here, it is simple—as the Amended Complaint shows, Apple solicited a complaint against Musi that it knew to be false to fabricate a reason to remove the Musi app from the App Store at the behest of a major music company partner. AC ¶¶ 46, 57–59. That is more than sufficient to plead conduct that was in bad faith and contrary to the parties' legitimate expectations and thus violated the implied covenant regardless of Apple's discretion.

    *InfoStream* is illustrative. There, the plaintiff—an owner and operator of nontraditional dating websites—held multiple PayPal accounts subject to the terms and conditions found in PayPal's Acceptable Use Policy ("AUP"). 2012 WL 3731517, at *1–2. The AUP prohibited using PayPal's services for "sexually oriented" activities and allowed PayPal "in its *sole discretion* … to terminate … access to PayPal services *for any reason and at any time.*" *Id.* *1–2, *8 (emphases added). After PayPal terminated InfoStream Group's accounts for violating the AUP, InfoStream sued for breach of the implied covenant of good faith and fair dealing, alleging that PayPal's decision was pretextual because PayPal wanted to "bestow an unfair competitive advantage on certain dating websites and not others." *Id.* at *2. PayPal moved to dismiss the claim, arguing—like Apple does here—that the parties contracted out of the implied covenant via the AUP. *See id.* at *8. But the court rejected that argument, holding that "while the contract allowed PayPal to act at its sole discretion, that discretion *must be exercised in good faith,*" and noting that "outside of the at-will employment context," California courts "disfavor such provisions as rendering the parties' obligations illusory." *Id.* (compiling cases); *see also Campbell v. eBay, Inc.*, 2014 WL 3950671, at *3 (N.D. Cal. Aug. 11, 2014) ("While the Court agrees that the implied covenant of good faith and fair dealing does not prohibit a party from doing that which is expressly permitted by an agreement, it does prohibit a party vested with discretion from exercising that discretion

MUSI INC.'S OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-06920-EKL

1  in a manner that is contrary to the contract's purposes and the parties' legitimate expectations." (cleaned

2  up)).

3      The similarities with this case are plain as day. Like InfoStream, Musi depends on a digital

4  platform for its services. Like InfoStream, Musi is bound by certain terms and conditions governing the

5  use of those services, including a provision that purportedly provides the digital platform with discretion

6  in making termination decisions—Schedule 1 § 6.3. Like InfoStream, Musi alleges that the digital

7  platform pretextually terminated its services for the benefit of third parties, rather than any violation of

8  its terms and conditions. And like InfoStream, Musi asks this Court to allow a claim of breach of the

9  implied covenant of good faith and fair dealing to go forward, as to avoid the outcome of rendering the

10 DPLA illusory. Thus, the same outcome should be reached here. Regardless of any discretionary power

11 granted to Apple by the DPLA's language, that language must be tethered to the implied covenant of

12 good faith and fair dealing.

13     Apple's cases do not change the outcome. Apple cites *Carma* for the proposition that "conduct

14 expressly permitted by a contract can never violate an implied covenant of good faith and fair dealing."

15 Mot. at 10 (citing *Carma*, 2 Cal. 4th at 376). But *Carma* in fact recognized that the implied covenant

16 "finds particular application in situations where one party is invested with a discretionary power affecting

17 the rights of the other," and that "[s]uch power *must be exercised in good faith*." *Carma*, 2 Cal. 4th at 372

18 (emphasis added) (citations omitted). Indeed, both *InfoStream* and *Campbell* relied on *Carma* in

19 explaining that such discretionary rights are subject to the implied covenant. *InfoStream*, 2012 WL

20 3731517, at *8; *Campbell*, 2014 WL 3950671, at *3. And while *Carma* rejected the plaintiffs' argument

21 that a lessor breached the implied covenant by terminating his lease for the sole purpose of earning a

22 higher profit, that was because such termination was not only permitted by the contract but "clearly within

23 the parties' reasonable expectations." 2 Cal. 4th at 376. That is not the case here—Musi alleges that Apple

24 engaged in a backchannel scheme to remove the Musi app at the behest of a third party, based on claims

25 it knew to be false, without sharing the true nature of the claims with Musi, and without providing Musi

26 any opportunity to meaningfully respond. Apple's termination decision was made in bad faith and was

27 not within the parties' reasonable expectations under the DPLA.

28

MUSI INC.'S OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-06920-EKL

Apple's other authorities are equally distinguishable. Unlike in *Enhanced Athlete Inc. v. Google LLC*, Musi does not merely "disagree" with Apple's reasoning for removing the Musi app. *See* 479 F. Supp. 3d 824, 827, 832–33 (N.D. Cal. 2020). Instead, Musi alleges that Apple acted with demonstrated bad faith, removing the Musi app under knowingly false pretenses, contrary to its typical practices, and at the behest of a third party. And unlike in *Ebeid v. Facebook, Inc.*, where the plaintiff failed to adequately plead facts showing that Facebook's failure to "boost" Plaintiff's social media posts and removing the same were discriminatory (2019 WL 2059662, at *8 (N.D. Cal. May 9, 2019)), Musi has alleged facts detailing how Apple orchestrated a bad-faith scheme to remove the Musi app at the behest of a third party based on a false-flag complaint. AC ¶¶ 46, 48–49, 51–52, 57–59. Further, the plaintiff in *Ebeid* did not allege that Facebook abused its discretion for the financial benefit of a third party, as Musi does here. 2019 WL 2059662, at *8. *Coronavirus Reporter v. Apple Inc.* is similarly inapposite because, there, the plaintiffs' allegations did not "go beyond the statement of a mere contract breach" nor "allege that Apple frustrated any specific contractual term." 2021 WL 5936910, at *2 (N.D. Cal. Nov. 30, 2021) (citation omitted). Here, of course, Musi alleges bad-faith conduct beyond any mere contract breach, including intentional efforts to cook up a complaint by YouTube, and the knowing failure to provide Musi with any opportunity to respond to actual claims of violating the API Terms of Service that Apple knew were false all along.[2] AC ¶¶ 46, 48–49, 51–52, 57–59.

Apple also wrongly cites *Kelly v. Skytel Communications, Inc.* for the proposition the implied covenant of good faith and fair dealing has no application "[w]hen a contract expressly confers unrestricted discretion on one party." Mot. at 12 (citing *Kelly* 32 F. App'x 283, 285 (9th Cir. 2002)). Apple ignores the actual holding of *Kelly*—namely, that the contract did not allow the employer "unlimited discretion" in awarding commissions, despite terms reserving to the employer the right to determine how to calculate commissions, because this went against the legitimate expectations of the plaintiff that she would be given a fair chance at realizing appropriate commissions. *Kelly*, 32 F. App'x at 286. Thus, just as Musi argues is appropriate here, the court read in an implied covenant of good faith

---

[2] Apple's reliance on *Solomon v. North American Life and Casualty Insurance* is misplaced because the court granted *summary judgment* on the plaintiff's implied-covenant claim because, in part, it "failed to put forth any evidence to support his allegations of bad faith." 151 F.3d 1132, 1137 (9th Cir. 1998) (citation omitted). Musi, of course, is not required to put forward evidence to survive a motion to dismiss.

and fair dealing to protect the parties' legitimate expectations. *Id*. at 287. Here, Musi had reasonable and legitimate expectations that it would be informed (and certainly not misled) about the nature of complaints about its app, and that Apple would not remove the Musi app based on information that Apple knew to be false. The parties did not agree to waive the implied covenant. Apple's deception with respect to the actual complaint made by YouTube, which it knew to be false, and Apple's willful removal of the Musi app despite that knowledge, contravene the parties' reasonable expectations about how Apple would use its discretion and therefore violate the implied covenant.

Finally, the Court should reject Apple's preposterous claim that it *must* enjoy unfettered discretion in the management of the App Store (even actions in bad faith) so that the platform "remains safe and trusted by its millions of users as well as the developers and business of all sizes that benefit from the App Store ecosystem." Mot. at 1. Apple never explains why the freedom to make *bad-faith termination decisions* is necessary for the survival of the App Store's ecosystem. Nor does it explain why *bad-faith termination decisions* further the safety and trust of Apple's user base. To the contrary, gifting Apple with unfettered discretion, even the discretion to operate in bad faith, transforms the DPLA into an unimportant "parchment guarantee," an illusory legal instrument where Apple lacks any legal duty to anyone. California contract law does not tolerate that outcome.

### 2.    Musi has plausibly alleged that Apple exercised its discretion in bad faith.

Apple's argument that Musi has failed to plausibly allege that Apple terminated the Musi app in bad faith is wrong. Apple's revisionist account for why it removed the Musi app conflicts with (1) Apple's own representations to Musi; (2) the documents and testimony already obtained via narrow, targeted discovery;[3] and (3) most importantly, with the Amended Complaint's allegations, which must be accepted as true at this stage. *See Khoja*, 899 F.3d at 1008.

---

[3] This discovery was narrowed even further than it should have been because Apple was not forthcoming with information. For example, Musi had to move to compel the production of additional documents by Apple, including those of Elizabeth Miles, who Apple represented at the hearing on that motion had only limited involvement: "really like somebody who she knows because of other work that she did said, What about this [Musi] app, and sent -- sent the letter that she forwarded, and we're producing it." Hr'g Tr. at 20, *Musi Inc. v. Apple Inc.*, No. 5:24-cv-06920-EKL (Feb. 26, 2025). But when Judge Cousins ordered Apple to produce documents from Miles's files (late in the short discovery period before Musi's amended complaint was due), the documents showed that Miles was involved in several important aspects of this case, including receiving the April 2024 complaint from a major music company that kicked off Apple's efforts to remove the Musi app, involvement in numerous internal communications at Apple regarding Musi thereafter, attendance at the July 2015 call where YouTube claimed Musi was violating the API

14

1    The Amended Complaint describes the events leading to the Musi app's removal—Apple's

2  extended effort to fabricate a pretext to remove the Musi app from the App Store to appease music-

3  industry players who had been unable to secure Musi's removal through above-board complaints. AC

4  ¶¶ 44–45. As detailed in the Amended Complaint, in April 2024, Apple was confronted by a major music-

5  company partner that complained—outside the app-dispute process and in a communication that was not

6  shared with Musi until discovery in this litigation—that its efforts to remove Musi from the App Store

7  had failed.[4] *Id.* ¶ 44. The music company expressly asked Apple to "help us identify a path forward in

8  our efforts to have the Musi app removed from the Apple app store" and "what Apple may need to make

9  a decision to remove the app from the storefront." Milici Decl., Ex. 2. In response, Apple did *not* direct

10  the music company to file its own complaint which Musi could address. Instead, Apple broke with its

11  long-established practice by repeatedly following up with *YouTube* regarding a closed 2023 App Store

12  complaint that consisted of *three words* and was abandoned for over a year. *Id.* ¶¶ 42, 46. Then, on a

13  July 15, 2024 phone call that Apple arranged, YouTube ultimately told Apple that it believed there to be

14  some violations of YouTube's API Terms of Service but did not elaborate further—yet Apple *knew* that

15  was false, including (but not limited to) because of the very same music-industry complaint that had

16  kicked off Apple's effort in the first place. *Id.* ¶ 44.

17    Musi had previously sent a substantive letter to YouTube about a complaint sent through

18  YouTube's outside counsel in 2021. AC ¶¶ 38–42. (Apple, remarkably, asks this Court to take judicial

19  notice of YouTube's complaint from that time period, but *not* Musi's response. *See* Dkt. 68-3.) But as

20  the Amended Complaint explains, after that complaint, Musi's outside counsel responded to YouTube's

21  counsel with a detailed letter explaining that YouTube misunderstood the Musi app's functionality and

22  that, in fact, the Musi app complied with YouTube's Terms of Service—and *YouTube never responded*.

23  AC ¶¶ 38–42. Instead, nearly two years later, YouTube filed a three-word complaint, which Apple then

24  *closed* because, once again, YouTube stopped any further communication. *Id*. ¶ 42. And it was more than

25

26  Terms of Service, attending a call with NMPA that led to its false "evidence" against Musi, and ultimately
     reporting to Apple's music-industry partner the successful removal of the Musi app from the Apple App
27  Store in September 2024. *E.g.*, Milici Decl., Exs. 2 & 4.
     [4] Those efforts had failed because Musi had engaged with the music company's international trade
28  association through outside counsel in a multi-month discussion, and the trade association disavowed its
     claims under U.S. copyright law. Dkt. 31-15.

15

a year after that, on the prompting of a third party, when Apple affirmatively solicited a further complaint from YouTube, now providing only a five-word description to Musi, the whole time knowing that the underlying basis for YouTube's sham complaint—that the Musi app accesses YouTube's API—was false. *Id.* ¶ 46. Yet Apple removed the Musi app on September 24, 2024, citing what it framed as Musi's failure to resolve the 2024 complaint, despite having received communications from Musi, including a communication that same day, noting that YouTube had not been in contact to discuss or otherwise substantiate its allegations.[5] *Id.* ¶¶ 55–56; Dkt. 1-7.

These facts are more than sufficient to constitute a plausible allegation that Apple acted in bad faith. *See, e.g.*, *InfoStream*, 2012 WL 3731517, at *8 (denying motion to dismiss implied covenant claim where allegation that "PayPal acted in bad faith by terminating the agreement for the sole purpose of benefitting plaintiffs' competitors" was "sufficiently alleged"); *Campbell*, 2014 WL 3950671, at *2 (denying motion to dismiss based on allegation that eBay violated the implied covenant by "failing to investigate the facts of the disputes/claims and has decided in favor of dishonest, deceptive buyers"). Apple's arguments to the contrary are little more than requests that this Court accept Apple's version of the facts, which it cannot do at the motion-to-dismiss stage.

First, Apple says that it is implausible that it acted in bad faith because *other* complaints had been made about the Musi app in the past and "the mere fact of repeated complaints raised legal risks for Apple." Mot. at 13. But the Amended Complaint alleges, and Apple told Musi at the time, that Apple removed the Musi app *not* based on other complaints—whether from the music industry or YouTube— but based on a specific, 2024 complaint from YouTube (which, it turns out, Apple itself solicited and knew was based on incorrect information). AC ¶¶ 46, 48, 56. Indeed, as Musi alleges, it was precisely these unsuccessful attempts to remove the Musi app through legitimate means that prompted the music company to confront Apple behind closed doors and demand the app's removal. *Id.* ¶ 44. If Apple already had a basis to remove the app based on prior complaints, it makes no sense why it sought to revive a dormant complaint by YouTube. *Id.* ¶ 46. And it fails to explain why Apple relied on (but never provided to Musi) a letter from the NMPA making unfounded allegations (including allegations Apple knew to be

---

[5] Moreover, Musi alleges that Apple solicited a letter from the NMPA that made knowingly false allegations against the Musi app, including the baseless claim that the Musi app accesses YouTube's API. AC ¶¶ 50–51.

false). *Id.* ¶¶ 50–52. At this stage, it is Musi's factual allegations that must be accepted as true, and they plausibly show bad faith by Apple, regardless of Apple's attempt to tell an alternative story.

Second, and for a similar reason, Apple's argument that Musi's Amended Complaint is "internally contradictory" because it refers to an April 2021 letter from YouTube in which YouTube claimed that the Musi app "violates [YouTube's] general user Terms of Service" makes no sense. Mot. at 13. Again, Apple did not purport to remove the Musi app on the basis of the 2021 complaint, but on the basis of a five-word complaint from 2024 that Apple itself solicited. AC ¶¶ 46, 48, 56. That makes sense because, as Apple well knew, Musi had already responded substantively to the 2021 complaint, and YouTube had never offered any substantive response—not for *years*. Indeed, Apple *itself* had closed a subsequent complaint by YouTube precisely for its complete failure to respond. *Id.* ¶ 42. That YouTube had complained years earlier of violations of the "general" Terms of Service is neither here nor there, particularly since Apple knew from backroom conversations with YouTube that its position *in 2024* was that Musi was violating the API Terms of Service—which Apple knew was wrong. *Id.* ¶ 46. Indeed, it was only Musi that was left to speculate about whether the basis for the 2024 complaint was the same as previously raised, because Apple only provided a five-word description and, as Apple knew, YouTube did not respond to Apple's requests to discuss further. *Id.* ¶¶ 48, 55.

Third, Apple's suggestion that it was not under any "obligation to resolve disagreements" about whether Musi was using YouTube's API is obfuscation. Mot. at 15. Musi specifically alleges that Apple knew Musi was not using the API. AC ¶¶ 46, 48, 52. Apple thus was not required to "resolve" disagreements or act as an "arbiter" of any dispute. *See* Mot. at 15. Rather, it knew that any claim that Musi was using the API, let alone violating the API Terms of Service, was false, and it was thus acting in subjective bad faith when it removed the Musi app based on a complaint premised on that claim.

Fourth, Apple's argument that it is implausible that music-industry complainants would "benefit" from the Musi app's removal "other than by stopping [copyright] infringement" (Mot. at 17) cannot withstand even cursory scrutiny. Of course, it is in a copyright holder's interests to maximize profits earned from licensing their works, and by extension to seek to force as many applications as possible to separately license and pay royalties to the copyright holder. But that does not mean that the disfavored app is committing copyright infringement—and indeed, the music company at issue here has never

17

asserted copyright infringement through the courts. In the absence of infringement, copyright holders' desire to extract rents, while certainly plausible, is nonetheless illegitimate. Thus, it makes perfect sense why a music company would go to extreme lengths to destroy Musi, including by submitting baseless complaints of infringement.

Finally, Apple's reliance on *Young v. Facebook, Inc.* is misplaced. *See* 790 F. Supp. 2d 1110 (N.D. Cal. 2011). In that case, Facebook's security system had flagged the plaintiff's account as exhibiting unusual behavior, which prompted Facebook to permanently disable her account after a warning and continued problematic conduct on the site. *Id.* at *1114. Here, however, Musi alleges that Apple removed the Musi app based on backchannel discussions with a third party and resurrected a dormant complaint to build a sham case to remove the app. AC ¶¶ 44–47. Contrary to Apple's spin on the facts, this was not business as usual. It was a coordinated takedown of a perceived threat to the music industry done in bad faith and under false pretenses.

## V.    CONCLUSION

For these reasons, Apple's Motion to Dismiss should be denied.[6]

Dated: April 7, 2025

WINSTON & STRAWN LLP

By: */s/ Jennifer A. Golinveaux*
    Jennifer A. Golinveaux
    Samantha K. Looker
    Jeff Wilkerson

    Attorneys for Plaintiff
    MUSI INC.

---

[6] If the Court determines, and it should not, that Musi has not alleged facts sufficient to plausibly show that Apple acted in bad faith and/or failed to deal fairly with Musi, Musi respectfully requests that dismissal be without prejudice and that Musi be afforded an opportunity to amend its complaint to allege additional facts, including testimony from Apple's witnesses at deposition, to further support its claims.

MUSI INC.'S OPPOSITION TO APPLE INC.'S MOTION TO DISMISS
CASE NO. 5:24-cv-06920-EKL