# EXHIBIT 8

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                  SAN JOSE DIVISION
4    MUSI INC.,
5         Plaintiff,
6              vs.              Case No. 5:24-cv-06920
                                           EKL
7    APPLE INC.,
8         Defendant.
     _____
9
10
11
12
13
14        **CONFIDENTIAL - ATTORNEYS' EYES ONLY**
15            VIDEO DEPOSITION OF ARUN SINGH
16               Redwood City, California
17                Friday, March 7, 2025
18                      Volume 1
19
20
     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 7226014
25   PAGES 1 - 120
```

                                              Page 1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                   SAN JOSE DIVISION

4    MUSI INC.,

5          Plaintiff,

6              vs.              Case No. 5:24-cv-06920

                                      EKL

7    APPLE INC.,

8          Defendant.

     _____

9

10

11

12

13

14              DEPOSITION OF ARUN SINGH, taken on behalf

15    of the Plaintiff, at 255 Shoreline Drive, #520,

16    Redwood City, California, commencing at 9:01 a.m.,

17    Friday, Friday, March 7, 2025 before

18    REBECCA L. ROMANO, a Registered Professional

19    Reporter, Certified Shorthand Reporter, Certified

20    Court Reporter.

21

22

23

24

25

                                        Page  2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              A P P E A R A N C E S   O F   C O U N S E L

2

3    For the Plaintiff:

4         WINSTON & STRAWN LLP

5         BY:   JENNIFER A. GOLINVEAUX

6         BY:   SAMANTHA K. LOOKER

7         Attorneys at Law

8         101 California Street

9         21st Floor

10        San Francisco, California 94111-5891

11        (415) 591-1000

12        jgolinveaux@winston.com

13        slooker@winston.com

14

15

16

17

18

19

20

21

22

23

24

25   /////

                                              Page  3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              APPEARANCES OF COUNSEL(cont'd)

 2

 3   For the Defendant:

 4        WILMER CUTLER PICKERING HALE AND DORR LLP

 5        BY:  MARK A. FORD

 6        Attorney at Law

 7        60 State Street

 8        Boston, Massachusetts 02109

 9        (617) 526-6423

10        mark.ford@wilmerhale.com

11

12

13

14

15   ALSO PRESENT:

16        Colleen Powers, In-House Counsel at Apple Inc.

17        Cameron Tuttle, Videographer

18

19

20

21

22

23

24

25   /////
```

Page  4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                      I N D E X
 2   DEPONENT                            EXAMINATION
 3   ARUN SINGH                               PAGE
     VOLUME 1
 4
 5   BY MS. GOLINVEAUX                          10
 6
 7
 8                    E X H I B I T S
 9   NUMBER                                   PAGE
10                  DESCRIPTION
11   Exhibit 22    Plaintiff Musi Inc.'s Notice of    14
12                 Deposition of Arun Singh;
13
14   Exhibit 23    LinkedIn Profile;                  20
15
16   Exhibit 24    Email String Subject:  Re:         73
17                 Musi - complaint,
18                 APL-MUSI_00017875 -
19                 APL-MUSI_0017880;
20
21   Exhibit 25    7/15/24:  Musi:  Kelvin, Leo       97
22                 (VP Counsel -YT) Notes,
23                 APL-MUSI_00036854;
24
25   /////
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1           E X H I B I T S(cont'd)

2    NUMBER                                    PAGE

3                    DESCRIPTION

4    Exhibit 26     Email String Subject Fwd:    103

5                   Apple Inc, APL-MUSI_00017794 -

6                   APL-MUSI_00017800;

7

8    Exhibit 27     Defendant's First Supplemental  106

9                   response to Plaintiff's First

10                  Set of Interrogatories.

11

12

13            PREVIOUSLY MARKED EXHIBITS

14   NUMBER                                    PAGE

15   Exhibit 9                                  88

16

17

18

19

20

21

22

23

24

25   /////

                                         Page  6

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          Redwood City, California; March 7, 2025

2                    9:01 a.m.

3                    ---oOo---

4

5          THE VIDEOGRAPHER:  Good morning.  We are       09:00:48

6     going on the record.  The time is 9:01 a.m. on

7     March 7th, 2025.

8               Please note that the microphones are

9     sensitive and may pick up whispering and private

10    conversations.  Please mute your phones at this      09:01:04

11    time.  Audio and video recording will continue to

12    take place unless all parties agree to go off the

13    record.

14               This is Media Unit 1 of the

15    video-recorded deposition of Arun Singh taken by     09:01:16

16    counsel for plaintiff in the matter of Musi Inc.

17    verse [sic] Apple Inc. filed in the United States

18    District Court, Northern District of California,

19    San Jose Division.

20               The case number is 5:24-cv-06920-EKL.     09:01:35

21    The location of the deposition is 255 Shoreline

22    Drive, No. 520, Redwood City, California 94065.

23               My name is Cameron Tuttle representing

24    Veritext, and I'm the videographer.  I am not

25    authorized to administer an oath.  I am not related  09:02:05

Page 7

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    to any party in this action, nor I am financially          09:02:07

2    interested in the outcome.

3              If there are any objections to

4    proceeding, please state them at the time of your

5    appearance.                                                 09:02:16

6              Counsel will now state their appearances

7    and affiliations for the record beginning with the

8    noticing attorney.

9              MS. GOLINVEAUX:  Good morning.  Jennifer

10   Golinveaux of Winston & Strawn on behalf of               09:02:26

11   plaintiff Musi.

12             MS. LOOKER:  Samantha Looker, also with

13   Winston & Strawn on behalf of the plaintiff.

14             MR. FORD:  I'm Mark Ford of WilmerHale on

15   behalf of Apple Inc. and the witness.  And with me       09:02:37

16   is Colleen Powers, in-house counsel for Apple.

17             THE VIDEOGRAPHER:  Will the

18   court reporter please introduce herself and

19   administer the oath.

20             THE COURT REPORTER:  My name is              09:02:51

21   Rebecca Romano.  I'm a California Certified Court

22   Reporter, No. 12546.  I will be producing a

23   transcript of this proceeding that is automatically

24   admissible in court.

25             If you could raise your right hand for       09:02:52

Page 8

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    me, please.                                              09:02:52

2            THE DEPONENT:  (Complies.)

3            THE COURT REPORTER:  You do solemnly

4    state, under penalty of perjury, that the testimony

5    you are about to give in this deposition shall be        09:02:52

6    the truth, the whole truth and nothing but the

7    truth?

8            THE DEPONENT:  I do.

9

10                                                            09:02:52

11

12

13

14

15                                                           09:02:52

16

17

18

19

20                                                           09:02:53

21

22

23

24

25   /////                                                   09:02:53

                                                        Page 9

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    complaints in connection with YouTube app?                09:38:43

2           MR. FORD:  So I object that it's vague.

3           I also caution you in your answer not to

4    reveal the substance of any attorney-client

5    communications.                                           09:38:52

6           But to the extent you can answer

7    otherwise, go ahead.

8       Q.   (By Ms. Golinveaux)  I'm not asking for

9    anything that your lawyers told you.

10      A.   Sorry, if you could just repeat the             09:39:01

11   question once more.

12      Q.   Oh, of course, yeah.

13      A.   Just so I am accurate in my response.

14      Q.   Yes; no, I appreciate that.

15           In connection with your work with YouTube        09:39:13

16   for Apple, does the issue ever arise about

17   complaints that Apple has received in connection

18   with the YouTube app?

19      A.   No.

20      Q.   Okay.  Never come up?                            09:39:27

21      A.   With my work with YouTube, no.

22      Q.   Thank you for the clarification, and

23   thank you for precision.

24           It's very helpful.

25           In your role at Apple -- and, again, I'm        09:39:42

                                                     Page 43

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    not asking about attorney-client communications.          09:39:44

2            Apart from attorney-client

3    communications, have you ever dealt with issues in

4    connection with the YouTube app?

5            MR. FORD:  Objection.  Vague.                      09:40:02

6            THE DEPONENT:  Yeah, if you can clarify a

7    little bit more.

8        Q.  (By Ms. Golinveaux)  Sure.

9            Have you ever been read in about

10   complaints Apple has received about the YouTube        09:40:11

11   app?

12       A.  No.

13           MR. FORD:  You mooted my instruction.

14           THE DEPONENT:  Sorry.

15           MR. FORD:  But do give me a second to          09:40:23

16   interpose an objection or an instruction.

17       Q.  (By Ms. Golinveaux)  Particularly when we

18   get around issues of attorney-client privilege,

19   your lawyers are going to want to be able to assess

20   the question.                                          09:40:33

21           Without revealing the contents of

22   attorney-client communications, is this a topic

23   that has come up for you in any respect in your

24   role at Apple, issues, complaints coming in with

25   respect to the YouTube app?                            09:41:03
```

Page 44

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            MR. FORD:  Objection.  Vague.              09:41:05

 2            THE DEPONENT:  Yeah, if you could just

 3     please clarify a little bit more.

 4        Q.   (By Ms. Golinveaux)  Yes.

 5            Have you ever had to deal with issues in    09:41:11

 6     connection with complaints that Apple has received

 7     about the YouTube app?

 8            MR. FORD:  Again, I continue to object

 9     and also remind you of the instruction not to

10     reveal the substance of any attorney-client        09:41:25

11     communications.

12            But to the extent you can answer that

13     without doing so, you may.

14        Q.   (By Ms. Golinveaux)  And to be clear, I

15     don't want the substance of any attorney-client    09:41:34

16     communications.  But if there's -- it's a yes or

17     no.

18            If you can answer the question yes or no

19     if you've had communications, but you can't reveal

20     the disclosure, you can identify that the -- the    09:41:43

21     communications existed.  That's -- the fact that

22     they existed is not protected.

23        A.   Then yes.

24        Q.   Okay.  How recently?

25            Being cautious not to disclose the          09:42:04
```

Page 45

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    substance of any communications.                    09:42:07

2        A.   Last year.

3        Q.   Okay.  Do you remember approximately the

4    month last year?

5        A.   May.                                        09:42:16

6        Q.   So that would be May 2024?

7        A.   Correct.

8        Q.   And, again, without revealing the

9    substance, with whom, just identifying the

10   individuals, did you have those communications?      09:42:29

11       A.   Sean Cameron.

12       Q.   And Mr. Cameron is a lawyer?

13       A.   Correct.

14       Q.   Was that a series of communications or a

15   single communication?                                09:42:46

16            MR. FORD:  You can answer that yes or no

17   without revealing the substance.

18            THE DEPONENT:  It was one initial

19   conversation followed by a phone call, broader

20   phone call.                                          09:43:02

21       Q.   (By Ms. Golinveaux)  With Mr. Cameron and

22   other lawyers?

23       A.   The first conversation was just with

24   Mr. Cameron.

25       Q.   Yes.                                        09:43:11

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.   And it was followed by a conversation      09:43:12

 2   between Mr. Cameron and others from Apple and

 3   YouTube.

 4        Q.   I see.

 5             Approximately how many -- how many          09:43:35

 6   communications, if you recall?

 7        A.   Three to five.  Three to five.

 8        Q.   Three phone calls?

 9        A.   No, you said communications.

10        Q.   Yes, correct.  So three communications.     09:43:52

11             Okay.  So you had the initial phone call

12   with Mr. Cameron and then emails; is that true?

13        A.   Not with Mr. Cameron.

14        Q.   Okay.  I'm trying to get at what the

15   three communications were.  Could you just tell me,   09:44:04

16   again without the substance, the -- the nature of

17   the communication, whether it was email or text or

18   phone.

19        A.   The first communication was a phone call.

20   The second communication was a video call.  And the  09:44:16

21   third communication was email.

22        Q.   Your testimony is very precise, thank

23   you.

24             Okay.  So the one -- in addition to

25   Mr. Cameron, the others from Apple who you           09:44:32
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    mentioned were on the video call and the email; is          09:44:34

2    that true, but not the initial phone call with

3    Mr. Cameron?

4         A.   The initial phone call was just with

5    Mr. Cameron.  There was one other person on the             09:44:47

6    videoconference, and -- as I recall, and the third

7    communication had one other person.

8         Q.   And who was the other person on the video

9    call?

10        A.   Violet.                                            09:45:02

11        Q.   Okay.  And, to your knowledge, Violet is

12   a lawyer?

13        A.   Yes.

14        Q.   Okay.  So it was just you and Violet on

15   that video call?                                             09:45:11

16        A.   As I recall.

17        Q.   Sure.

18             I understand this was close to a year

19   ago, so I appreciate the qualification.

20             And then you mentioned others from Apple          09:45:21

21   and YouTube.

22             Who from YouTube was involved?  And was

23   that on the email?

24        A.   There was -- this was the video call.

25        Q.   Okay.                                              09:45:32

Page 48

| | | |
|---|---|---|
| 1 | A.    That was between Apple and YouTube. | 09:45:32 |
| 2 | Q.    Got it. | |
| 3 | A.    So Sean and Violet and myself from the | |
| 4 | Apple side.  Kelvin and two lawyers from the | |
| 5 | YouTube side. | 09:45:42 |
| 6 | Q.    I see. | |
| 7 | And was this the video call about Musi? | |
| 8 | A.    Correct. | |
| 9 | Q.    Okay.  Do you remember approximately the | |
| 10 | date of that video call? | 09:45:53 |
| 11 | A.    July 15th. | |
| 12 | Q.    That's the July 15th call. | |
| 13 | What was discussed on that video call? | |
| 14 | A.    Sean started by basically giving an | |
| 15 | overview of what had happened which was that | 09:46:10 |
| 16 | YouTube had filed a complaint against Musi.  It -- | |
| 17 | the communication began between Musi and YouTube. | |
| 18 | And at a certain point, YouTube stopped responding. | |
| 19 | We -- Apple legal checked in with them | |
| 20 | and didn't get a response and so believed that the | 09:46:32 |
| 21 | issue had been resolved. | |
| 22 | And so when the complaint was filed, I | |
| 23 | believe, if I recall correctly, the Musi app had | |
| 24 | been taken down from the App Store. | |
| 25 | When YouTube did not respond and Apple | 09:46:49 |

Page 49

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | legal believed the issue had been resolved, it was | 09:46:51 |
| 2 | reinstated to the App Store. | |
| 3 | Q.   I see. | |
| 4 | So that was Mr. Cameron's setting the | |
| 5 | table, so to speak, for the call with YouTube? | 09:47:07 |
| 6 | A.   That's correct. | |
| 7 | Q.   Okay.  And what precipitated the -- the | |
| 8 | video -- the July 15th video call between Apple and | |
| 9 | YouTube? | |
| 10 | MR. FORD:  Because that's implicating the | 09:47:20 |
| 11 | attorney-client communication, I can -- I'll | |
| 12 | instruct you that you can identify the person who | |
| 13 | asked you to set up the call and the fact of the | |
| 14 | ask, but don't reveal the substance of any | |
| 15 | attorney-client communication beyond that. | 09:47:31 |
| 16 | THE DEPONENT:  So that was the first | |
| 17 | phone call I had with Sean Cameron. | |
| 18 | Q.   (By Ms. Golinveaux)  I see. | |
| 19 | It's all making sense. | |
| 20 | Okay.  So after Mr. Cameron set the table | 09:47:46 |
| 21 | at that July 15th video call by giving an overview | |
| 22 | and the history and why Apple put the Musi app back | |
| 23 | up, what was said next? | |
| 24 | A.   He said that we -- Apple had been | |
| 25 | receiving complaints about the Musi app and asked | 09:48:06 |

Page 50

```
 1    YouTube if they wanted to continue with the          09:48:09

 2    complaint.

 3         Q.   Okay.  And did Mr. Cameron mention from

 4    whom Apple had been receiving complaints about the

 5    Musi app?                                              09:48:26

 6         A.   No specifics.  I believe he said the

 7    music industry.

 8         Q.   Okay.  Fair enough.

 9              I'm looking at this because the

10    court reporter didn't get your full answer.           09:48:58

11              Your answer was, "He said that we, Apple,

12    had been receiving complaints about the Musi app

13    and asked YouTube if they wanted to continue with

14    the" -- and then it drops off.

15              Do you recall how you finished that         09:49:13

16    sentence?

17         A.   Complaint.

18         Q.   Okay.

19         A.   And I think I said Apple legal not just

20    "we," Apple.  I said, I think, "we," Apple legal.     09:49:17

21         Q.   Okay.  Did Mr. Cameron describe the

22    nature of the complaints from the music industry?

23         A.   No.

24         Q.   Did he describe --

25         A.   Sorry.                                      09:49:43
```

Page 51

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.   Sure.                                    09:49:44

 2        A.   He said that there were API guideline

 3   violations, YouTube API guideline violations.

 4        Q.   Okay.   He said that those were the nature

 5   of the complaints --

 6        A.   Sorry.

 7        Q.   -- with Musi?

 8        A.   Yeah.   That was not the nature of the

 9   complaint from the music industry.   That was what

10   YouTube said was the original reason for the         09:50:13

11   complaint that YouTube had filed.

12        Q.   I see.

13             So Mr. Cameron reminded YouTube that that

14   was the nature of the original complaint?

15        A.   Sorry.   I'm mixing it up now.            09:50:28

16        Q.   No, that's okay.

17        A.   It's been a bit of time.

18             So from the music industry, Mr. Cameron

19   didn't specify what the -- what the exact

20   complaints were and asked YouTube why they had       09:50:39

21   filed the complaint.

22             And they -- YouTube said it was because

23   of API issues.

24        Q.   I see.

25        A.   Sorry.                                     09:50:52
```

Page 52

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.    Thank you for that clarification. | 09:50:53 |
| 2 | Did YouTube say whether or not the API | |
| 3 | issues continued? | |
| 4 | A.    They did not say the -- that didn't come | |
| 5 | up. | 09:51:19 |
| 6 | Q.    Okay.  Did Apple ask YouTube whether the | |
| 7 | API issues that they had complained about earlier | |
| 8 | were ongoing? | |
| 9 | A.    Sorry, can you repeat the question. | |
| 10 | Q.    Certainly. | 09:51:39 |
| 11 | Did Apple ask you to, during that | |
| 12 | July 15th meeting, whether the API issues in | |
| 13 | connection with Musi that they had earlier | |
| 14 | complained about were ongoing? | |
| 15 | A.    I believe something to that effect. | 09:51:55 |
| 16 | Maybe not those exact words. | |
| 17 | Q.    Sure. | |
| 18 | A.    But -- | |
| 19 | Q.    Okay. | |
| 20 | A.    -- I believe so. | 09:52:00 |
| 21 | Q.    And what did YouTube say? | |
| 22 | A.    As I recall, YouTube said that the issues | |
| 23 | were still there. | |
| 24 | Q.    Said the API issues were ongoing? | |
| 25 | A.    Yes. | 09:52:20 |

Page 53

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          Q.   Okay.  Ms. Singh, did you or anyone else,      09:52:20

 2    to your knowledge, take notes at that meeting by

 3    chance?

 4          A.   I took notes.

 5          Q.   Okay.  Is that normal course of business       09:52:28

 6    for you in meetings with the partners, to take

 7    notes?

 8          A.   I have a separate Page -- Pages doc for

 9    every developer I manage.

10          Q.   Okay.                                           09:52:42

11          A.   And I make notes on every substantive

12    conversation I have with every developer.

13          Q.   That's pretty impressive considering you

14    have more than 100 relationships.

15               Okay.  Are you aware of whether anyone         09:52:53

16    else at Apple took any notes during that meeting?

17          A.   I don't know.

18          Q.   Okay.  Were there any communications that

19    you had with anyone at Apple or elsewhere about

20    that meeting after that meeting?                          09:53:12

21               MR. FORD:  Sorry.  Hold on.

22               You can answer the question yes or no.

23               (Discussion off the stenographic record.)

24               THE DEPONENT:  Specifically with respect

25    to the portion of whether you had any conversations      09:53:35
```

Page 54

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | with anyone at Apple, you can answer yes or no for | 09:53:37 |
| 2 | now. | |
| 3 |     Q.  (By Ms. Golinveaux)  In the first | |
| 4 | instance, and then we will see where we go from | |
| 5 | there. | 09:53:46 |
| 6 |     A.  Yes. | |
| 7 |     Q.  Okay.  I'll do your lawyer a favor and | |
| 8 | take this slowly step-by-step. | |
| 9 |     With whom? | |
| 10 |     A.  Sean Cameron and Violet. | 09:53:57 |
| 11 |     Q.  Approximately how many? | |
| 12 |     A.  One. | |
| 13 |     Q.  Was this an email or a phone call or text | |
| 14 | or... | |
| 15 |     A.  Email. | 09:54:09 |
| 16 |     Q.  Email. | |
| 17 |     And did you discuss in that email what | |
| 18 | YouTube had said during the meeting? | |
| 19 |     MR. FORD:  I instruct you not to answer | |
| 20 | that question on grounds of the attorney-client | 09:54:27 |
| 21 | communication. | |
| 22 |     Q.  (By Ms. Golinveaux)  So I want to know if | |
| 23 | there was discussion of the facts of what YouTube | |
| 24 | said, yes or no, in that meeting without divulging | |
| 25 | the contents of that discussion. | 09:54:44 |

Page 55

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MR. FORD:  You can answer the -- as to        09:54:46

 2    whether there was a discussion of facts that

 3    YouTube set.

 4              THE DEPONENT:  There were not.

 5        Q.   (By Ms. Golinveaux)  Okay.               09:54:52

 6              So your recollection from the July 15

 7    meeting is that YouTube said that the API issues in

 8    connection with Musi were ongoing at that point in

 9    time in July 15th, 2024, correct?

10        A.   Correct.                                 09:55:15

11        Q.   Okay.  The meeting with YouTube he's not

12    objecting to because that's not a privileged

13    communication.  You had a --

14        A.   I just wanted to give --

15        Q.   -- party present.                        09:55:21

16              No, I appreciate.  She's looking at you,

17    so...

18              MR. FORD:  Oh.  As to any communications

19    to which YouTube was a party, you can provide full

20    answers.                                          09:55:32

21              MS. GOLINVEAUX:  Yeah.

22              THE DEPONENT:  I just wanted to give

23    you --

24              MR. FORD:  I appreciate that.

25              THE DEPONENT:  -- space.                09:55:36
```

Page 56

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        Q.    (By Ms. Golinveaux)  That's good.          09:55:37

2              You got the knack of this deposition

3    thing down.

4              So what was said after that during this

5    meeting?                                              09:55:45

6        A.    After what, sorry?

7        Q.    After Mr. Cameron set the table and then

8    told Apple that -- or told YouTube that Apple had

9    been receiving complaints from the music industry

10   about the Musi app and reminded YouTube that it had   09:55:59

11   had earlier sent a complaint, what was -- what was

12   discussed next?

13       A.    So he also mentioned that there was some

14   communication back and forth between Musi and

15   YouTube following the complaint filed by YouTube      09:56:20

16   and that at a certain point YouTube stopped

17   responding.  YouTube lawyers on the call seemed to

18   be unaware of that fact.

19             And Violet shared that we had sent --

20   "we," Apple legal, had sent a response to YouTube,    09:56:40

21   an email to YouTube, to which they did not respond,

22   which is the email communication the two lawyers --

23   two YouTube lawyers were unaware of asking them if

24   they wanted to pursue the complaint.

25       Q.    Why did Apple want to know whether Google    09:57:05
```

Page 57

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    or YouTube wanted to pursue the complaint?            09:57:09

 2             MR. FORD:  I instruct you not to answer

 3    the question to the extent it gets into any

 4    attorney-client communications.  But to the extent

 5    anyone at -- on the -- on the videoconference with   09:57:20

 6    YouTube articulated to YouTube why, you may answer.

 7             THE DEPONENT:  The complaints from the

 8    music industry.

 9        Q.   (By Ms. Golinveaux)  Sure.

10             And I believe, but correct me if I'm        09:57:34

11    wrong, I believe you testified earlier that

12    Mr. Cameron did not mention particular players in

13    the music industry; is that true?

14        A.   That's correct.

15        Q.   Okay.                                        09:57:45

16        A.   As far as I recall.

17        Q.   Sure.

18             Did you YouTube ask about who in the

19    music industry?

20        A.   I don't recall.                              09:57:52

21        Q.   Okay.  And so after Mr. Cameron took you

22    to -- through the fact that they had stopped

23    responding, what happened next?

24        A.   Violet outlined the date on which that

25    communication had been sent to YouTube, that email,  09:58:13
```

Page 58

1    to which they had not responded.  And YouTube asked        09:58:16

2    which -- where it had been sent, which email ID

3    alias.

4        Q.    Yeah.

5        A.    Violet shared that.  And YouTube asked          09:58:26

6    for Violet to resend it.

7        Q.    Why did she ask Violet to resend it?  Did

8    they say?

9            MR. FORD:  Objection.  Calls for

10    speculation as to the first part, but to the extent      09:58:42

11    they articulated why they asked Violet to resend --

12        Q.    (By Ms. Golinveaux) That's why I

13    finished my sentence "Did they say?"  I'm not

14    asking you to speculate.  I'm asking whether they

15    said why.                                                09:58:53

16        A.    The two lawyers on the call from YouTube

17    had not seen the communication.

18        Q.    Okay.  So they wanted to take a look at

19    it?

20        A.    Correct.                                       09:59:05

21        Q.    Understood.

22            What is GPlay?

23        A.    Google Play Store.

24        Q.    Okay.  Do you know whether or not Musi

25    has ever been offered on the Google Play Store?          09:59:15

                                                            Page 59

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        A.   I have no knowledge.                    09:59:19

2        Q.   Okay.  So if your notes from that meeting

3   say, "It is indeed down from GPlay," what does that

4   refer to you, do you recall?

5            MR. FORD:  Objection.                    09:59:35

6            MS. GOLINVEAUX:  These are her notes from

7   the meeting with YouTube, Counsel.

8            MR. FORD:  I know.  You can show her the

9   notes.

10           MS. GOLINVEAUX:  I will.                  09:59:43

11           MR. FORD:  But, like, the hypothetical.

12  You can answer the hypothetical to the best you

13  can.

14           THE DEPONENT:  Could you repeat what I --

15       Q.   (By Ms. Golinveaux)  Of course.         09:59:50

16       A.   -- the notes I wrote.

17       Q.   Yes, of course.

18           There's -- you make your points in very

19  organized separate points.

20           And one of them says, "They can't speak   10:00:03

21  to GPlay's decision but it is indeed down from

22  GPlay."

23           Do you know what you were referring to?

24           MR. FORD:  Objection.  Calls for

25  speculation.                                      10:00:14
```

Page 60

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              But you can answer the extent you        10:00:15

 2    remember.

 3         Q.   (By Ms. Golinveaux)  It's her note.  I'm

 4    asking what she meant.

 5              MR. FORD:  Well, you're making a          10:00:19

 6    representation as to what the notes say that she

 7    can't confirm.

 8              MS. GOLINVEAUX:  Okay.  Fair enough,

 9    Counsel.

10              MR. FORD:  Let's -- with respect to that, 10:00:24

11    that calls for speculation unless you specifically

12    the notes.  But given her question, what that might

13    mean, you can answer to the extent you know.

14         Q.   (By Ms. Golinveaux)  Does that make

15    sense?                                             10:00:35

16         A.   Apple legal had noticed that it was not

17    on the Google Play Store which is what they pointed

18    out during the call.

19         Q.   And what did Google say when -- pardon

20    me.                                                10:00:51

21              What did YouTube say when Apple legal

22    pointed that fact out?

23         A.   I think my notes say that they didn't

24    comment on it.

25         Q.   Okay.  But you don't have any knowledge,  10:00:58
```

Page 61

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    sitting here today, whether or not Musi was ever up        10:01:02

2    on the Google Play Store?

3        A.   I have no knowledge.

4        Q.   Okay.  Fair enough.

5            So after YouTube asked Violet to send            10:01:11

6    over that communication that they hadn't responded

7    to and perhaps the lawyers on that meeting were not

8    aware of, what happened next?

9            MR. FORD:  On the call?

10           MS. GOLINVEAUX:  Correct.  Thank you for        10:01:27

11   the clarification.

12           THE DEPONENT:  The call ended.

13       Q.   (By Ms. Golinveaux)  That was the end?

14       A.   They -- they -- YouTube legal asked

15   Violet to resend the communication.                     10:01:34

16       Q.   Okay.

17       A.   And that was the end of the call.

18       Q.   Okay.  Have you ever heard of an

19   organization called the NMPA?

20       A.   No.                                            10:01:47

21       Q.   Never heard of it, the National Music

22   Publishers' Association?

23       A.   Never heard of it.

24       Q.   Okay.  Are you personally aware of who

25   the music industry players were that were               10:01:56

Page 62

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    complaining about Musi that you just testified          10:02:00

 2    about this -- in connection with this meeting?

 3              MR. FORD:  I instruct you not to answer

 4    to the extent your knowledge is exclusively based

 5    on attorney-client communications.  But to the          10:02:11

 6    extent you have knowledge otherwise, you can

 7    answer.

 8              MS. GOLINVEAUX:  Well, and, Counsel,

 9    respectfully, I think it's a yes-or-no question,

10    the first instance.                                     10:02:19

11              Are you instructing her not to answer yes

12    or no.

13              MR. FORD:  You can answer yes or no

14    whether you know, but don't provide any substance.

15         Q.   (By Ms. Golinveaux)  Okay.  Shall I           10:02:29

16    repeat the question?

17         A.   Yes, please.

18         Q.   Okay.  Are you personally aware of who

19    the music industry players were that were

20    complaining about Musi that you just testified          10:02:37

21    about in connection with this July 15th meeting?

22         A.   Due to attorney-client privilege, I pass

23    on the answer.

24         Q.   So you get to -- you're allowed to say,

25    unless your counsel --                                  10:02:51
```

Page 63

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              MR. FORD:  You can -- you can answer yes        10:02:53

 2     or no whether you know, and then we'll go from

 3     there.

 4              MS. GOLINVEAUX:  Yeah.

 5              MR. FORD:  Do you know the identity of          10:02:59

 6     the complainants.

 7              THE DEPONENT:  I do not.

 8         Q.   (By Ms. Golinveaux)  You do not know --

 9         A.   No.

10         Q.   -- the identity?                               10:03:03

11         A.   No.

12         Q.   Okay.  Were you privy to any

13     communications between Apple and Sony Music

14     Entertainment about Musi?

15              MR. FORD:  Object.  "Privy," you mean a        10:03:17

16     party to?

17         Q.   (By Ms. Golinveaux)  Are you aware of any

18     communications between Apple and Sony Music

19     Entertainment about Musi, yes or no?

20              MR. FORD:  You can answer that question        10:03:26

21     yes or no.

22              THE DEPONENT:  No.

23         Q.   (By Ms. Golinveaux)  Okay.

24              Do you interface with Violet regularly in

25     your role at Apple?                                     10:03:50
```

                                                    Page 64

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1            MR. FORD:  You can answer that question          10:03:53

2    without divulging the substance of anything you

3    interface about.

4         Q.   (By Ms. Golinveaux)  Okay.

5         A.   Yes.                                           10:04:00

6         Q.   Okay.  Have often do you think?

7         A.   It varies a lot.  Sometimes I'll hear

8    from her twice a month, and sometimes I won't hear

9    from her from a couple of months.

10        Q.   Okay.  And without divulging the specific      10:04:10

11   communications, do you hear from her in connection

12   with complaints about apps on the App Store or some

13   other subject matter?

14           MR. FORD:  You can answer that question

15   without revealing the subject matter.                   10:04:43

16           THE DEPONENT:  Both.

17        Q.   (By Ms. Golinveaux)  And when you say

18   "both," both what and what?

19        A.   You said complaints about the apps on the

20   store or other.                                         10:04:55

21        Q.   I see.  Thank you.

22        A.   Uh-huh.

23        Q.   And, again, strictly related to subject

24   matter, without divulging any specific content, in

25   addition to complaints about apps on the App Store,     10:05:08

                                                    Page 65

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    what other subject matter do you communicate with        10:05:10

2    her about?

3              MR. FORD:  We're going to have to confer

4    about that because I don't what the answer is going

5    to be, so let's go off the record.                       10:05:17

6              MS. GOLINVEAUX:  Let's go off the record.

7              THE VIDEOGRAPHER:  We're going off the

8    record.  The time is 10:05 a.m.

9              (Recess taken.)

10             THE VIDEOGRAPHER:  We are back on the            10:12:00

11   record.  The time is 10:12 a.m.

12             MR. FORD:  So after consultation, the

13   subject matter of any communication that doesn't

14   relate to App Store complaints, I'm going to assert

15   privilege over.                                           10:12:16

16             So I instruct you not to answer as to

17   anything other than App Store complaints.

18             MS. GOLINVEAUX:  So you don't want her to

19   testify about the categories of other topics she

20   discusses with --                                         10:12:38

21             MR. FORD:  In consultation, the other

22   subject matter is entirely privileged and I can

23   represent has nothing to do with Musi.

24             MS. GOLINVEAUX:  Okay.  Fair enough.

25        Q.   (By Ms. Golinveaux)  So focusing on your        10:12:49
```

Page 66

1    communications with Violet about complaints on the      10:12:50

2    App Store, about apps on the App Store, have you

3    communicated with her about complaints about Musi?

4            MR. FORD:  You can answer that question

5    yes or no.                                              10:13:15

6            THE DEPONENT:  Yes.

7        Q.  (By Ms. Golinveaux)  Okay.  How many

8    times, approximately?

9        A.  Once.

10       Q.  Okay.  And do you recall approximately         10:13:22

11   when that was?

12       A.  Right after -- a day or two after the

13   July 15th call.

14       Q.  Okay.  Following that July 15th call, did

15   you have any other communications with YouTube          10:13:38

16   about Musi?

17       A.  Kelvin reached out asking for the email

18   that we had discussed during the videoconference

19   that YouTube lawyers had not received and asked me

20   to resend it.                                           10:13:56

21       Q.  And did he reach out directly to you?

22       A.  He did.

23       Q.  Okay.  And was anyone else copied on

24   that -- I assume it was an email, but please

25   correct me if it wasn't?                                10:14:08

                                                    Page 67

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        A.    I believe it was an email, and no one        10:14:10

2    else was copied.

3        Q.    Okay.  And what did you do after he

4    reached out?

5             MR. FORD:  Don't reveal the substance of       10:14:23

6    any attorney-client communications you might have

7    had, but other than that, you can answer what you

8    did.

9        Q.    (By Ms. Golinveaux)  Did you reach out to

10   Violet after that?  I mean --                          10:14:31

11            MR. FORD:  You can answer that question

12   yes or no.

13            THE DEPONENT:  Yes.

14       Q.    (By Ms. Golinveaux)  Okay.  I just want

15   to cut to the chase.  I don't want to -- I don't       10:14:36

16   want to know what you asked her or she asked you.

17            And then is it your understanding that

18   Apple sent Kelvin the email chain?

19       A.    I sent it.

20       Q.    Oh, you sent it.                             10:14:50

21            Thank you, you said that.

22            Did you have any other communications

23   with YouTube about Musi --

24       A.    No.

25       Q.    -- other than the July 15 email and         10:15:00

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    sending out --                                    10:15:01

 2             MR. FORD:  Let her finish that question.

 3             THE DEPONENT:  Yeah, sorry.

 4             MR. FORD:  And then answer it so the

 5    record captures it.                               10:15:04

 6             THE DEPONENT:  Yeah, yeah.

 7             Do you want to repeat the question?

 8             MR. FORD:  Just so its clear, your answer

 9    to that last question as to whether you've had any

10    other communications with YouTube about the Musi  10:15:16

11    app, your answer is no?

12             THE DEPONENT:  I think it was following

13    the July 15th.

14        Q.   (By Ms. Golinveaux)  Let me -- the --

15    understandably -- here.                           10:15:24

16             Understandably, the record's a little

17    muddled here, so let me just reask the question.

18             Other than the July 15th meeting that

19    you've testified about, and the email from the

20    Kelvin to you asking about the email from the chain  10:15:41

21    about Musi that you responded to, have you had any

22    other communications with anyone at Google or

23    YouTube about Musi?

24        A.   No.

25        Q.   Okay.  Have you had any other            10:15:53
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | communications about Musi with anyone outside of | 10:15:58 |
| 2 | Apple? | |
| 3 |     A.   No. | |
| 4 |     Q.   Do any of the accounts you manage fall | |
| 5 | within the music industry? | 10:16:11 |
| 6 |     A.   No. | |
| 7 |     Q.   Have you had any communications about | |
| 8 | Musi with anyone at Apple other than the lawyers? | |
| 9 |     A.   No. | |
| 10 |     Q.   Okay.  So clearly, you are familiar with | 10:16:23 |
| 11 | an app called the Musi app, correct? | |
| 12 |     A.   Only after I was contacted by | |
| 13 | Sean Cameron to set up a call. | |
| 14 |     Q.   You anticipated my next question, which | |
| 15 | is, how did you become aware of Musi? | 10:16:54 |
| 16 |         And that was through Mr. Cameron reaching | |
| 17 | out to you to set up a call? | |
| 18 |     A.   That's correct. | |
| 19 |     Q.   Understood. | |
| 20 |         Were you aware that YouTube, through the | 10:17:15 |
| 21 | law firm of Wilson Sonsini Goodrich & Rosati, had | |
| 22 | sent Musi a detailed letter in April of 2021? | |
| 23 |         Were you aware of that? | |
| 24 |     A.   I was not. | |
| 25 |     Q.   Okay.  So you probably weren't aware that | 10:17:29 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    Musi, through outside counsel, sent a detailed        10:17:32

 2    response to that letter from YouTube in 2021?

 3             MR. FORD:  Objection.

 4        Q.   (By Ms. Golinveaux)  Is that correct?

 5             MR. FORD:  You can answer --                  10:17:42

 6             THE DEPONENT:  I was not aware.

 7             MR. FORD:  -- to the extent you know.

 8             THE DEPONENT:  I was not aware.

 9        Q.   (By Ms. Golinveaux)  Were you aware --

10    well, strike that.                                    10:17:51

11             I assume you were not aware, since you

12    weren't aware of Musi's outside counsel's letter to

13    YouTube in 2021, that YouTube never responded to

14    that letter?

15             MR. FORD:  Objection.  Calls for             10:18:04

16    speculation.

17             MS. GOLINVEAUX:  I'm asking if she was

18    aware.

19             THE DEPONENT:  I was not aware.

20        Q.   (By Ms. Golinveaux)  Okay.  And that         10:18:08

21    YouTube never, over the subsequent four years, has

22    ever responded to that letter; you weren't aware of

23    that either, were you?

24             MR. FORD:  Objection.  Calls for

25    speculation.                                          10:18:20
```

Page 71

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          Q.    (By Ms. Golinveaux)  I'm asking whether        10:18:22

 2     you are aware.

 3               MR. FORD:  Are you...

 4          Q.    (By Ms. Golinveaux)  You weren't --

 5               MR. FORD:  You're representing a fact           10:18:27

 6     that calls for speculation.  So it's a misleading

 7     question.

 8               You can answer to the extent you know.

 9               THE DEPONENT:  I was not aware.

10          Q.    (By Ms. Golinveaux)  Okay.                    10:18:36

11          A.    I have no knowledge.

12          Q.    Okay.

13          A.    Not my department, so -- I'm not a

14     lawyer.

15          Q.    Fair enough.                                  10:18:41

16               After this deposition, you'll be glad

17     you're not a lawyer.

18               MS. GOLINVEAUX:  Sam, can we have --

19               MR. FORD:  If you're going to mark, why

20     don't we now take a five-minute break, just to          10:19:11

21     break.

22               MS. GOLINVEAUX:  Yeah, absolutely, of

23     course.

24               Good timing.

25               THE VIDEOGRAPHER:  Okay.  We're going off      10:19:16
```

Page 72

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    the record.  The time is 10:19 a.m.                  10:19:17

2            (Recess taken.)

3            (Exhibit 24 was marked for identification

4    by the Court Reporter and is attached hereto.)

5            THE VIDEOGRAPHER:  We are back on the         10:31:39

6    record.  The time is 10:31 a.m.

7        Q.   (By Ms. Golinveaux)  Ms. Singh, you

8    realize you're still under oath, correct?

9        A.   Yes.

10       Q.   Thank you.                                    10:31:46

11            The court reporter has handed you what's

12   been marked as Plaintiff's Exhibit 24.

13            Do you have that document?

14       A.   I do.

15       Q.   Okay.  Can you please tell me what --         10:31:53

16   once you've had an opportunity to take a look at

17   it, what Exhibit 24 is, please.

18       A.   Exhibit 24 is an email exchange between

19   myself and Kelvin following my outreach to him to

20   set up a call between our two legal folks.            10:32:21

21       Q.   This is what you were describing earlier

22   in your testimony when you reached out to him to

23   try to initiate a call between YouTube and Apple;

24   is that right?

25       A.   That's -- that's correct.                    10:32:39
```

Page 73

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.   And then going back to the very first        10:32:40

 2   email in the chain, which is on the page that's

 3   marked down in that right-hand corner -- you see

 4   where it says APL-MUSI, and then there's a number,

 5   -17878?  That's called a Bates number.             10:32:51

 6            So are you with me on that page?

 7        A.   Yes.

 8        Q.   Okay.  And here we have the initiation of

 9   the email chain, which is an email from you to

10   Kelvin, correct?                                   10:33:05

11        A.   Yes.

12        Q.   Dated June 12th, 2024?

13        A.   Correct.

14        Q.   Okay.  You say, "Hope you're well and

15   enjoyed WWDC."                                     10:33:12

16            Is that the Worldwide Developers

17   Conference?

18        A.   That's correct.

19        Q.   Okay.  Do you remember where it was held

20   last year?                                         10:33:19

21        A.   At Apple Park in Cupertino.

22        Q.   At Apple Park.

23            Is it always held at Apple Park?

24        A.   Since the pandemic.

25        Q.   Okay.  Did you see Kelvin at WWDC?        10:33:29
```

Page 74

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.   I don't believe he attended.              10:33:34

 2        Q.   Okay.  Why were you asking him if he

 3   enjoyed it then?

 4        A.   Because it's all online.

 5        Q.   Got it.                                    10:33:44

 6             You then say, "I was wondering if you

 7   were able to look into the Musi issue that we

 8   discussed a couple of weeks ago.  Any updates?"

 9             Do you see that?

10        A.   I do.                                      10:33:52

11        Q.   What discussion are you referencing

12   there?

13        A.   The call that I made to him requesting

14   setting up a call.

15        Q.   So do you remember when that call was     10:34:08

16   made that you're referring to here?

17        A.   I'm guessing it was a couple of weeks

18   ago.

19        Q.   Okay.

20        A.   Prior to June 12th.                        10:34:15

21        Q.   Okay.  And how long did that call last,

22   approximately, if you recall?

23        A.   When I was asking him to set up a call?

24        Q.   Yes.

25        A.   A couple of minutes, max.                  10:34:27
```

Page 75

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.   And when you called him up, what did you          10:34:30

2   say?

3           MR. FORD:  You can totally divulge -- you

4   can testify as to your memory of the phone call

5   between you and Mr. Paulino.                               10:34:38

6           You can do that.

7           THE DEPONENT:  I told him that Apple

8   legal wanted a conversation with YouTube legal

9   regarding Musi and a complaint that YouTube had

10  filed.                                                     10:34:51

11     Q.   (By Ms. Golinveaux)  Okay.  Did he know

12  what you were talking about?

13          Had he heard of Musi before?

14     A.   He did not --

15          MR. FORD:  Objection.  Calls for            10:34:57

16  speculation.

17     Q.   (By Ms. Golinveaux)  Based on your

18  conversation with him and his reaction to your

19  question asking for a call, did he indicate whether

20  or not he was familiar with Musi?                          10:35:06

21     A.   He did not indicate he was familiar with

22  Musi.

23     Q.   Okay.  What did you say -- how did you

24  set the table for him on that call about what this

25  was about?                                                 10:35:21

Page 76

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              What did you say?                    10:35:22

 2       A.   That was the extent of it.

 3       Q.   Okay.  Apple legal wants to have a call

 4  with YouTube legal about this app called Musi?

 5       A.   Yes.                                   10:35:30

 6       Q.   Did you say what the -- what they --

 7  Apple legal wanted to discuss?

 8       A.   No, I did not, because I was not aware.

 9       Q.   Okay.  Did he say, Well, what do they

10  want to talk about?                              10:35:44

11       A.   He did ask me, and I told him that I told

12  him as much as I know.

13       Q.   Okay.  Which was basically, Apple wants

14  to talk about this app called Musi?

15       A.   And that YouTube had filed a complaint.  10:35:55

16  I think --

17       Q.   Okay.

18       A.   -- I said that just a minute ago.

19       Q.   Okay.  Did you mention that YouTube had

20  never responded to the complaint?                10:36:02

21          MR. FORD:  Objection.  Calls for

22  speculation.  And compound.

23       Q.   (By Ms. Golinveaux)  Well, let me -- let

24  me rephrase it.

25              When you mentioned to him the earlier  10:36:12
```

Page 77

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    complaint, are you referring to a complaint in          10:36:13

 2    2023, if you recall?

 3            MR. FORD:  You can -- you can describe

 4    the substance of what you told YouTube.

 5            You cannot divulge anything you learned         10:36:33

 6    from counsel, based on your conversation with

 7    counsel, except to the extent you told Mr. Paulino.

 8        Q.   (By Ms. Golinveaux)  And to put a point

 9    on that -- and your counsel is, of course, free to

10    expand if he disagrees with me -- but any             10:36:45

11    communications you had with Kelvin are not

12    privileged, and I can ask you about the full extent

13    of those communications.

14            Does that make sense?

15        A.   Understood.                                    10:36:59

16        Q.   Okay.  So when you called him and said,

17    Apple wants to talk with YouTube about Musi, you

18    didn't say what it was about other than this --

19    this prior complaint that YouTube had submitted; is

20    that correct?                                           10:37:19

21        A.   I didn't mention the word "prior."

22        Q.   Okay.

23        A.   I just said that YouTube had filed a

24    complaint apparently, and Apple legal wanted to

25    talk to YouTube legal about it.  There were no         10:37:30
```

Page 78

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    dates mentioned.                                    10:37:32

2        Q.   Okay.  And what did he say?

3        A.   He let me go back and talk to -- he said

4    he would go back, basically, to his legal folks and

5    get back to me.                                     10:37:46

6        Q.   Okay.  Did you provide him any additional

7    information, for example, that Apple had heard from

8    individuals in the music industry about Musi?

9            MR. FORD:  You can answer to the extent

10   you -- about what you told Mr. Paulino.             10:37:59

11           THE DEPONENT:  I did not.

12       Q.   (By Ms. Golinveaux)  Okay.  Was anything

13   else discussed on this phone call?

14       A.   No.

15       Q.   Okay.  How long did it last,               10:38:11

16   approximately?

17       A.   I think you just asked me that.

18       Q.   I'm sorry.

19       A.   It was a few minutes.

20       Q.   Okay.  And then the next email in the      10:38:20

21   chain is on Wednesday, June 12th, where Mr. Paulino

22   emails you, says, "Hi Arun, thanks for checking in.

23   We're still gathering information on our end

24   regarding Musi.  I'll share an update as soon as

25   possible."                                          10:38:36

Page 79

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1            Do you see that?                          10:38:36

2       A.   Yes.

3       Q.   Okay.  And then it looks like the next

4   day, on June 13, he says "Hi Arun, do you have time

5   to chat about this?"                               10:38:46

6            And you respond, it looks like, maybe

7   five days later; is that true?

8       A.   Yeah.

9       Q.   June 18th.

10           "Hey Kelvin, Want to chat tomorrow         10:38:56

11  (Tuesday)?"

12           Right?

13      A.   Yes.

14      Q.   And he responds that same day and says,

15  "Sure.  Would you be available at 10:30 or 11:30?"  10:39:03

16           And you respond, Well, can we do noon?

17           "Sure, I can do noon."

18           Great, I'll call you.

19           You see that.

20           Did that call take place?                  10:39:14

21      A.   It did.

22      Q.   And what was discussed on that call?

23      A.   Kelvin asked me if I could share any more

24  information.

25      Q.   Okay.  About what -- about what?           10:39:21
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1        A.   About what Apple legal wanted to talk to      10:39:25

 2   YouTube legal about.

 3        Q.   And what did you say?

 4        A.   I said I had already shared with him

 5   everything I knew.                                       10:39:33

 6        Q.   And the extent of what you had shared

 7   with him is that you understood that YouTube had

 8   sent a prior complaint about Musi; is that true?

 9        A.   Again, you used --

10             MR. FORD:  Objection.  Mischaracterizes        10:39:44

11   testimony.

12        Q.   (By Ms. Golinveaux)  Can you please --

13   correct me, please.

14        A.   Yeah, I think you used the word "prior"

15   again.                                                   10:39:49

16        Q.   Okay.

17        A.   "Prior complaint."

18             I just said that YouTube had filed a

19   complaint about Musi with Apple legal.

20        Q.   Okay.  And what did Kelvin say then?           10:39:58

21        A.   Okay.  Let me go back and talk to the

22   team.

23        Q.   So you weren't able to share any

24   additional information with him?

25             MR. FORD:  I just -- let me interject --       10:40:14
```

                                                        Page 81

```
 1   because I think you may be misunderstanding her       10:40:15

 2   question.

 3           Her question was about the second

 4   telephone conversation, I think, right?

 5           THE DEPONENT:  Uh-huh.                         10:40:22

 6           MR. FORD:  Okay.  But go ahead.

 7           Sorry, I just wanted to make sure that

 8   the record's clear.

 9           MS. GOLINVEAUX:  Yeah.

10           THE DEPONENT:  This is while I was at the      10:40:28

11   conference in Long Beach.

12       Q.  (By Ms. Golinveaux)  This is on June 18th

13   at noon --

14       A.  Uh-huh.

15       Q.  -- Pacific time?                              10:40:34

16       A.  Uh-huh.

17       Q.  Okay.  How long did that conversation

18   last, to your recollection?

19       A.  A couple of minutes.

20       Q.  A couple minutes.                             10:40:39

21           And Kelvin said, Do you have any more

22   information you can share with me about the nature

23   of what they want to talk about Musi about?

24       A.  That's correct.

25       Q.  Okay.  And you said, No?                      10:40:46
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   Correct.                                      10:40:49

2      Q.   Did he ask any specific questions?

3      A.   Just that one.

4      Q.   Okay.  Did he ask why Apple was following

5  up about this -- this Musi complaint?               10:40:56

6      A.   He didn't ask that question because I

7  don't think he was aware that we were following up.

8      Q.   Okay.

9      A.   Again, I'm just -- I don't know if that's

10  speculation but...                                  10:41:09

11      Q.   Okay.

12      A.   He wasn't aware of a complaint --

13      Q.   Okay.

14      A.   -- prior, previous, following up.

15      Q.   I'm not trying to build anything into the  10:41:17

16  term "prior."  I just --

17      A.   Uh-huh.

18      Q.   -- before the call.

19           But he knew about the complaint at this

20  point because you told him about it in the initial  10:41:25

21  call that we looked at in this, right?

22      A.   That's correct.

23      Q.   So he was asking, do you have any

24  additional information about what the call is going

25  to be about, in addition to the fact that we had    10:41:33

                                             Page 83

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    sent this earlier complaint; is that fair?              10:41:37

 2         A.   That last part, "in addition to the fact

 3    that we had sent this earlier complaint" --

 4         Q.   Okay.

 5         A.   -- I don't know where that's coming from.     10:41:44

 6         Q.   So you said during your initial call

 7    that's reflected, that's mentioned in the first

 8    email in this chain, you made a call to him and

 9    said Apple wanted to talk about Musi and the fact

10    that YouTube had sent a complaint that they hadn't    10:42:04

11    followed up on.

12              Do I understand that correctly?

13         A.   That's --

14              MR. FORD:  Objection.

15         Q.   (By Ms. Golinveaux)  Okay.  Please          10:42:11

16    correct me.

17         A.   Yeah, that's incorrect.

18         Q.   Okay.

19         A.   The initial phone call, I reached out to

20    Kelvin and said that Apple legal wanted a            10:42:15

21    conversation with YouTube legal regarding a

22    complaint that YouTube had filed against Musi.

23         Q.   Okay.  That's what I was trying to say,

24    but you said it much more clearly.  So that's

25    helpful, thank you.                                 10:42:30
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              And so when Kelvin was following up and        10:42:30

2    you were having this additional conversation on

3    June 18th, he's saying, Are there any other details

4    that you can share with me about what this call is

5    about; is that fair?                                  10:42:38

6        A.   That's fair.

7        Q.   Okay.  Why did you reach out to Kelvin to

8    set up this meeting about Musi?

9              MR. FORD:  Again, because this implicates

10   the attorney-client privilege, you can answer --      10:42:53

11   you can identify the person who requested you reach

12   out and the fact of the request but not divulge the

13   substance of attorney-client communication.

14             THE DEPONENT:  Sean Cameron had reached

15   out to me asking me to set up this call.              10:43:05

16       Q.   (By Ms. Golinveaux)  Okay.  Okay.  So

17   continuing with the chain.

18             You have the call with Kelvin on

19   June 18th.

20             And then the next email in this chain,      10:43:21

21   you get an email from Kelvin on June 24th, "Hi

22   Arun, do you have a few minutes to catch up on

23   this?  Thanks."

24             Do you see that?

25       A.   Yes.                                         10:43:31
```

Page 85

 1          Q.   And you respond, "Hi Kelvin, About to          10:43:31

 2    jump on a couple of calls." Can I talk -- "but can

 3    talk around 1:00 p.m. Pacific - does that work?"

 4               He says, "Yes, please feel free to call

 5    me."                                                      10:43:42

 6               And you say, "Will do."

 7               Was there a conversation between you and

 8    Kelvin on June 14th?

 9          A.   I have no recollection.

10          Q.   Okay.  Looking at this email chain, where      10:43:50

11    he says, "Please feel free to call me at 1:00," and

12    you say, "Will do," does that refresh your

13    recollection as to whether there was a conversation

14    between you and Kelvin on June 24th?

15          A.   It does not.                                   10:44:13

16          Q.   Okay.  Other than the email chain we are

17    looking at, and the email that you testified

18    earlier that you forwarded to Kelvin after the

19    July 15th meeting -- are you with me?

20          A.   Yes.                                           10:44:27

21          Q.   -- have you had any communications with

22    Kelvin or anyone else at Google or YouTube about

23    Musi?

24          A.   No.

25          Q.   Okay.  So you don't recall whether or not      10:44:35

                                                               Page 86

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    a call took place on June 24th.                    10:44:38

 2          The next email is June 28th, where Kelvin

 3    says, "Hi Arun, Could you please share some avails

 4    on your side for the week of July 8th or 15th for a

 5    30 minute call between our respective legal teams?  10:44:50

 6    Happy to chat live should you have any questions."

 7          Did you and Kelvin chat live after he

 8    sent that email?

 9       A.   No.

10       Q.   Okay.  You merely responded later that      10:45:03

11    day to provide him with some available dates; is

12    that right?

13       A.   That's correct.

14       Q.   Okay.  And then he says, "please hold

15    July 15th." [as read]                               10:45:16

16          And that turned into the call we talked

17    about before?

18       A.   That's correct.

19       Q.   Okay.  And I think I asked you this, but

20    no other phone calls that you can recall between    10:45:37

21    yourself and Kelvin in advance of that July 15

22    meeting?

23       A.   None.

24       Q.   Okay.  At any point prior to that

25    July 15th meeting, did Mr. Paulino share with you   10:45:59
```

Page 87

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    any additional details he had gleaned from his          10:46:05

 2    looking into the Musi issue?

 3        A.   Nothing.  No.  This is the extent of the

 4    communication.

 5        Q.   Okay.                                           10:46:16

 6             MS. GOLINVEAUX:  Was there a supplement

 7    to Interrogatory No. 1?

 8             MS. LOOKER:  No.

 9             MS. GOLINVEAUX:  Okay.  Could I have

10    tab 3.  Thank you.                                       10:46:36

11             MS. LOOKER:  And s was marked as

12    Exhibit 9 yesterday.

13             MS. GOLINVEAUX:  Okay.  This was marked

14    as Exhibit 9 yesterday.

15        Q.   (By Ms. Golinveaux)  Ms. Singh, the            10:47:07

16    court reporter has handed you what's been marked at

17    a prior deposition as Plaintiff's Exhibit 9.

18             Do you have that document in front of

19    you?

20        A.   I do.                                           10:47:17

21        Q.   Okay.  And it's a document entitled,

22    "Defendant's Responses and Objections to

23    Plaintiff's First Set of Interrogatories."

24             Do you see that?

25        A.   Yes.                                            10:47:24
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1         Q.   Do you understand generally that        10:47:25

 2    interrogatories are formal questions that parties

 3    ask themselves -- ask each other during litigation?

 4         A.   I didn't know that, no.

 5         Q.   Okay.  Have you seen this document        10:47:34

 6    before?

 7         A.   I don't think so.

 8              MR. FORD:  You can answer yes or no.

 9              THE DEPONENT:  Yes.

10         Q.   (By Ms. Golinveaux)  Okay.  If you saw --  10:47:47

11    it gets tricky, you're right, you're good to be

12    careful when it implicates lawyers, but -- well,

13    I'll just leave it at that.

14              So if you could flip to page 4, please.

15              Just because my voice is giving out a      10:48:06

16    little bit, would you mind reading Interrogatory

17    No. 1 what comes after the colon there?

18         A.   "Describe in detail your July 15th, 2024

19    meeting with representatives from YouTube,

20    including the identities of the attendees, the       10:48:18

21    topics and nature of the discussions, and any

22    related follow-up communications you had with

23    YouTube."

24         Q.   Okay.  Thank you.

25              And then you see where it says, "Response  10:48:30
```

Page 89

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    to Interrogatory No. 1"?                            10:48:31

2        A.   Yes.

3        Q.   I'm not going to make you read it aloud,

4    but if you don't mind reading that carefully now.

5        A.   Okay.                                      10:49:58

6        Q.   Okay.  You had a chance to read the

7    complete response?

8        A.   Yes.

9        Q.   Okay.  Had you read that response prior

10   to just reading it just now?                        10:50:04

11       A.   Not in its entirety, no.

12       Q.   Okay.  You had read portions of it?

13       A.   Up to, I think, my -- regarding the phone

14   call.

15            I don't recall "YouTube then emailed       10:50:27

16   Apple on July 29th, 2024."  I don't recall that.

17       Q.   I'm sorry, which line are you on?

18       A.   This is line 14.

19       Q.   Okay.

20            MR. FORD:  Page 5.                          10:50:38

21            THE DEPONENT:  Page 5.

22       Q.   (By Ms. Golinveaux)  I see, the sentence

23   that says, "YouTube then emailed Apple on July 29,

24   'to confirm that this matter should remain open.'"

25            You don't remember that happening?          10:50:47

                                                Page 90

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.   I was no longer involved in the         10:50:49

 2   communications at that point because that's -- I'm

 3   not a lawyer so --

 4        Q.   Oh, I see.

 5        A.   -- I'm not involved.                     10:50:56

 6        Q.   Okay.  Apart from that, which you don't

 7   have knowledge of, it sounds like, does everything

 8   that you read here look complete and accurate

 9   regarding the July 15th call?

10        A.   Yes.                                     10:51:09

11        Q.   For example, during that call, is it your

12   recollection that YouTube requested removal of the

13   Musi app from Apple's App Store?

14        A.   I don't recall them saying those words --

15        Q.   Uh-huh.                                  10:51:34

16        A.   -- exactly.

17        Q.   Okay.  You don't recall YouTube

18   specifically requesting removal of the Musi app

19   from the App Store during that call; is that

20   correct?                                           10:51:45

21        A.   That's correct.

22        Q.   Okay.  Do you know -- looking back to the

23   prior page 4, do you see the sentence that says,

24   "The Apple reps" -- "representatives in attendance

25   included," and then it lists some folks?           10:52:01
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        A.    Yes.                                        10:52:03

2        Q.    Did Ms. Evan-Karimian say anything on

3    that call?

4        A.    She did.

5        Q.    What did she say?                           10:52:11

6        A.    She went into -- I think she's the one

7    that mentioned the March 23rd -- sorry, March 2023

8    complaint.  She shared the details around that.

9        Q.    Got it.

10            What did she say about it to -- without      10:52:34

11   reference to the interrogatory response, I'm just

12   asking about your own personal recollection --

13       A.    Yeah.

14       Q.    -- sitting here today, what did she say

15   about the March '23?                                  10:52:45

16       A.    As far as I remember, that -- I remember

17   that date that she had -- that it was March '23 --

18   2023.

19       Q.    Yeah.

20       A.    Just sort of what I had said before which    10:53:01

21   is that YouTube had filed a complaint.  Apple

22   legal, I believe, had asked YouTube to reach out to

23   Musi and have direct communication with Musi.

24            That started but at a certain point

25   stopped because YouTube stopped responding.           10:53:21

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1           I think -- I believe, from my              10:53:29
2    recollection, that's what Violet shared with them.
3        Q.   Okay.  And are you familiar with an
4    attorney at Apple named Elizabeth Miles?
5        A.   I am.                                    10:53:42
6        Q.   Okay.  Do you work with Ms. Miles at
7    Apple from time to time?
8        A.   I don't.
9        Q.   How do you know her?
10       A.   I've seen her on emails.                 10:53:53
11       Q.   Okay.  And was she on this call?
12       A.   According to this, she was on the call.
13   I have no recollection --
14       Q.   Okay.
15       A.   -- of Ms. Miles being on the call.       10:54:04
16       Q.   I apologize, you've already said this,
17   but this was a video call?
18       A.   It was a video call, but only Kelvin and
19   I were actually on video.  All the lawyers were off
20   camera.                                           10:54:15
21       Q.   Okay.  Just like today.
22           So since you can't recall whether she was
23   even on the line, I assume you don't recall whether
24   she had anything to say on that call?
25       A.   My -- my recollection is that she didn't  10:54:33
```

Page 93

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  say anything on that call.                          10:54:35

2       Q.   Okay.

3       A.   But, like I said, I don't -- I don't even

4  remember her being there, so...

5       Q.   Do you know why she was invited?          10:54:44

6       A.   I do not, no.

7       Q.   Okay.  And you already took me through

8  what Mr. Cameron had to say, and he kind of set the

9  table at the beginning of that call, correct?

10      A.   That's correct.                           10:54:57

11      Q.   Okay.  Anything else that he said during

12 the course of the call that you haven't already

13 testified about today?

14      A.   No.

15      Q.   Okay.  And then looking at the reps from   10:55:02

16 YouTube in attendance, Mr. Paulino, what did he

17 have to say on the call?

18      A.   We did introductions at the beginning.

19      Q.   Yeah.

20      A.   And for the rest of the call, Kelvin and   10:55:20

21 I were silent.

22      Q.   Okay.  You were the relationship managers

23 introducing folks, and then you let the lawyers

24 talk; is that fair?

25      A.   That's fair.                              10:55:32

                                                  Page 94

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.    Okay.  So starting with Kelsea Carlson.        10:55:32

 2              Is it your understanding Kelsea Carlson

 3    is an in-house lawyer at YouTube?

 4              MR. FORD:  I mean, to the extent you

 5    know.                                                    10:55:54

 6              THE DEPONENT:  I don't know.

 7        Q.    (By Ms. Golinveaux)  Okay.

 8        A.    That's how she was introduced.

 9        Q.    Okay.  Fair.

10              MR. FORD:  That's very precise of you.         10:55:59

11              MS. GOLINVEAUX:  Yes, very.

12        Q.    (By Ms. Golinveaux)  Did Ms. Carlson have

13    anything to say on that call?

14        A.    My recollection is both lawyers spoke --

15        Q.    Okay.                                          10:56:07

16        A.    -- from YouTube.

17        Q.    Kelsea and Leo?

18        A.    Yes.

19        Q.    It's driving me crazy because I know -- I

20    know I know Leo because he's got a very unusual          10:56:14

21    last name, but I can't remember where.

22              What did Ms. Kelsea -- what did

23    Ms. Carlson have to say on the call?

24        A.    I don't recollect exactly what one said

25    versus the other.  I just know that both spoke.          10:56:26
```

Page 95

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        Q.   Okay.  Fair.                              10:56:28

2             What did the two of them talk about?

3        A.   They both acknowledged that a complaint

4    had indeed been filed by YouTube and that some

5    communication had been exchanged between Musi and   10:56:42

6    YouTube.

7             They were not aware of the last

8    communication from Apple and indicated that there

9    may have been some confusion as to the email alias

10   that that last communication had been sent to from  10:57:03

11   Apple.

12       Q.   Okay.  What else did they have to say?

13       A.   They were asked what the issues were, I

14   believe.  Actually, I don't know what the question

15   was, but I -- I should strike that.                 10:57:23

16            I don't remember the question, but they

17   did say that they were API issues which were

18   ongoing and that they wanted to pursue the

19   complaint.

20       Q.   And did they give any indication of the    10:57:38

21   nature of the API issues?

22       A.   They did not share that.

23       Q.   Okay.  Did they ask about who in the

24   music industry was inquiring about Musi?

25       A.   Not that I recall.                         10:57:55
```

Page 96

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.   Okay.  Was anything else said by any          10:57:56

2    party on that call?

3    A.   No, I believe that was the extent of it.

4    Q.   Did YouTube discuss any potential legal

5    action it might take against Musi?                 10:58:13

6    A.   They did not.

7    Q.   Okay.  Did it come up as to why they had

8    never pursued anything if they thought there were

9    ongoing violations?

10   A.   Just what I had said, that they had not       10:58:25

11   received that last communication, that last email

12   from Apple so they didn't respond.

13   Q.   Okay.

14        MS. GOLINVEAUX:  May I have tab 7,

15   please.                                            10:58:47

16        (Discussion off the stenographic record.)

17        (Exhibit 25 was marked for identification

18   by the Court Reporter and is attached hereto.)

19   Q.   (By Ms. Golinveaux)  Ms. Singh, the

20   court reporter has handed you what's been marked as  10:59:20

21   Plaintiff's Exhibit 25.

22        Do you have that document?

23   A.   I do.

24   Q.   And what is this document?

25   A.   These are the notes, my call notes, from     10:59:26

Page 97

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    that call of July 15th.                                10:59:27

2        Q.    Okay.  That you've testified about

3    earlier today?

4        A.    That's correct.

5        Q.    Okay.  Did you take these notes            10:59:34

6    contemporaneously during the call?

7        A.    Sorry, what's "contemporaneously"?

8        Q.    Oh, sure.

9              Did you take them during the call, or did

10   you take them at some point after the call?          10:59:44

11       A.    During the call.

12       Q.    Okay.  And so would you consider these an

13   accurate summary of what was discussed on the call?

14       A.    I believe there's a typo on my part in

15   bullet 3, which it should say "YouTube filed a       10:59:57

16   complaint with our team" and not "Musi filed a

17   complaint."

18       Q.    That was my first question to you, so --

19   and that's just a typo?

20       A.    That's a typo.  People are talking.  I'm   11:00:07

21   trying to take notes very quickly.

22       Q.    Sure.

23       A.    So...

24       Q.    Sure.

25             You see the -- the bullet point 3 up from  11:00:18

                                                          Page 98

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    the bottom, it says -- and I should say, this is a          11:00:24

2    document that's Bates-numbered APL-MUSI -36854.

3            And if you look up three hashes up from

4    the bottom, it says, "Want to know which aspects of

5    YouTube they are violating." [as read]                     11:00:36

6            Do you see that?

7        A.   I do.

8        Q.   What does that mean?

9        A.   Apple legal wanted to know which aspects

10   of the AP- -- what API issues of which guidelines          11:00:43

11   Musi was violating.

12       Q.   I see.

13           What aspects of the API or which

14   guidelines Musi was violating; is that accurate?

15       A.   Yes.                                              11:01:03

16       Q.   Okay.  Who -- who from Apple legal asked

17   that question?

18       A.   I don't recall.

19       Q.   Sure.

20           And did they say why they wanted to know?         11:01:10

21       A.   They did not.

22       Q.   Okay.  And did YouTube specify which

23   aspects of the API issues or guidelines Musi was

24   violating?

25       A.   They didn't specify which aspects, but           11:01:29

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    they did indicate that there were some violations.        11:01:31

 2         Q.   So on that last hash, it says, "Is it an

 3    API abuse issue?"

 4              Is that a question that came from one of

 5    the Apple lawyers?                                         11:01:44

 6         A.   Yes.

 7         Q.   Okay.  And it says -- and the response

 8    from YouTube is "There are some violations"?

 9         A.   That's correct.

10         Q.   But to your recollection, they didn't         11:01:52

11    specify what the -- the nature of the violations

12    were --

13         A.   They did not.

14         Q.   -- beyond that?

15         A.   My recollection is they did not.               11:01:58

16         Q.   Okay.  The second hash from the bottom,

17    it says, "They can't speak to GPlay's decision, but

18    it is indeed down from GPlay."

19              Do you see that?

20         A.   Yes.                                            11:02:12

21         Q.   That's what the YouTube lawyers said,

22    that the Musi app was down from GPlay?

23         A.   No, they didn't say that.

24         Q.   Okay.

25         A.   At the beginning when Sean was laying the     11:02:29
```

                                                    Page 100

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    table --                                          11:02:33

 2         Q.    Uh-huh.

 3         A.    -- the second bullet, he's -- he called

 4    out that it was -- or noted that the Musi app was

 5    not on the Google Play Store but we were getting    11:02:40

 6    complaints, Apple, with Musi on the App Store.

 7         Q.    Okay.

 8         A.    And at the end of the call, I believe it

 9    came up and YouTube lawyers said that they couldn't

10    speak to Google Play's decision.                   11:02:57

11         And I've typed in "indeed down from

12    Google Play."  They may have said it's not on

13    Google Play --

14         Q.    Okay.

15         A.    -- Store.                               11:03:10

16         Q.    Did they ever mention that it had never

17    been on Google Play, or did that not come up during

18    the call?

19         A.    They didn't mention that at all.

20         Q.    Okay.  And did you share your notes with   11:03:21

21    anyone after the meeting?

22         A.    No.

23         Q.    Okay.

24         A.    Obviously until this.

25         Q.    Until they became an exhibit in a        11:03:32
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    lawsuit, correct?                                    11:03:34

2        A.    Yeah.

3        Q.    Fair enough.

4              And where you reference "YT" throughout

5    the notes, I assume that refers to YouTube,          11:03:46

6    correct?

7        A.    That's correct.

8        Q.    Okay.  So based on that fourth hash where

9    it says, "YT - wasn't abandoned it.  Sometimes they

10   don't get a response, and don't follow up - could   11:04:10

11   be the case here."

12             So it sounds like the two lawyers on the

13   phone for YouTube weren't really sure why there

14   hadn't been a response, that -- that they were

15   speculating that may have been one; is that true?    11:04:19

16             MR. FORD:  Objection.  Calls for

17   speculation.

18       Q.    (By Ms. Golinveaux)  Based on your

19   experience on the call, they were saying that that

20   may have been the case but they didn't know -- did   11:04:32

21   they specify specifically that that was the case?

22             It says "could be the case here."

23       A.    Yeah.  The lawyers said that the case

24   wasn't abandoned and sometimes they don't get a

25   response when they file a complaint.                 11:04:51

                                          Page 102

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              And they didn't follow up.              11:04:53

 2         Q.   Did they indicate on that call whether

 3    they had ever responded or engaged otherwise with

 4    Musi in response to their complaints?

 5         A.   I don't recall that.                    11:05:03

 6         Q.   Okay.  Okay.  You can put that aside,

 7    thank you.

 8              MS. GOLINVEAUX:  Could I have tab 5,

 9    please.

10              (Exhibit 26 was marked for identification  11:05:11

11    by the Court Reporter and is attached hereto.)

12         Q.   (By Ms. Golinveaux)  The court reporter

13    has handed you what's been marked as Plaintiff's

14    Exhibit 26.

15              Do you have that document?              11:05:47

16         A.   I do.

17         Q.   Ms. Singh, can you tell me what this

18    document is?

19         A.   This is the follow-up from myself to

20    Kelvin, following the conversation on the 15th for  11:05:54

21    the communication, the email, that Apple had sent

22    YouTube to which YouTube had not responded.

23         Q.   Okay.  And if I recall correctly, Kelvin

24    had reached out to you after that July 15 meeting

25    asking you to send this over; is that true?        11:06:13
```

Page 103

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        A.   That's correct.                         11:06:16

 2        Q.   And you went ahead and sent it over to

 3   him?

 4             MR. FORD:  You can answer that yes or no.

 5             THE DEPONENT:  Yes.                      11:06:22

 6        Q.   (By Ms. Golinveaux)  Okay.  How did you

 7   get it in order to send it over?

 8             MR. FORD:  You can say who you got it

 9   from.

10             THE DEPONENT:  I reached out to Sean     11:06:34

11   Cameron and Violet.

12        Q.   (By Ms. Golinveaux)  And asked them to

13   provide it to you to provide to YouTube?

14             MR. FORD:  You can -- you can answer.

15             Actually, no.  I --                      11:06:51

16             MS. GOLINVEAUX:  I'm going to --

17             MR. FORD:  It gets into attorney-client

18   communication.

19             MS. GOLINVEAUX:  I'm going to withdraw

20   it.                                                11:06:55

21             MR. FORD:  So I instruct -- okay.

22             MS. GOLINVEAUX:  Fair enough.  I'm going

23   to withdraw that question.

24             MR. FORD:  I think you can testify that

25   you got this from Violet and you forwarded it to   11:06:58
```

                                                    Page 104

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Cameron.                                                11:07:01

2            MS. GOLINVEAUX:  And the record is clear

3    on that front, so that's fine.

4        Q.  (By Ms. Golinveaux)  Did you read the

5    substance of the -- the email chain here that you       11:07:07

6    were forwarding?

7        A.  I did not.

8        Q.  Okay.  And I think you've already

9    testified to this earlier, but you haven't, to the

10   best of your recollection, communicated with any        11:07:22

11   third parties about Musi, correct?

12       A.  I have not.

13       Q.  Have you heard of -- you said you haven't

14   heard of NMPA.

15           Have you heard of a group called the            11:07:30

16   IFPI?

17       A.  No, I have not.

18       Q.  How about the RIAA?

19       A.  No, I have not.

20       Q.  Okay.  Fair enough.                             11:07:41

21           We're almost done, so just give me a few

22   more minutes here.

23           MS. GOLINVEAUX:  Sam, could we have the

24   supplemental rog responses.  Thank you.

25   /////

                                              Page 105

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              (Exhibit 27 was marked for identification      11:08:07

 2    by the Court Reporter and is attached hereto.)

 3         Q.  (By Ms. Golinveaux)  Okay.  Ms. Singh,

 4    the court reporter has handed you what's been

 5    marked as Plaintiff's Exhibit 27.  And it's a          11:08:22

 6    document, on the first page, you'll see the caption

 7    says, "Defendant's First Supplemental Response to

 8    Plaintiff's First Set of Interrogatories."

 9              Do you see that?

10         A.   I do.                                          11:08:34

11         Q.   Okay.  So let's please flip to page 4.

12              And you see in the middle of the page, it

13    says Interrogatory No. 6?

14         A.   I do.

15         Q.   Interrogatory No. 6 reads, "Describe in       11:09:01

16    detail any meetings that you have had -- "you" is

17    defined as Apple here -- "outside of your

18    July 15th, 2024, meeting with YouTube related to

19    Musi and/or the Musi app, including the identities

20    of the attendees, the topics and nature of the         11:09:17

21    discussions, and any related follow-up

22    correspondence related thereto."

23              Do you see that?

24         A.   Yes.

25         Q.   And then if you flip to the next page,        11:09:30
```

Page 106

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | the first paragraph is some lawyerly objections, | 11:09:31 |
| 2 | without substance. | |
| 3 | And then the second paragraph says, | |
| 4 | "Based on its investigations to date, and subject | |
| 5 | to," with its objections, "Apple responds that it | 11:09:48 |
| 6 | is aware of the following oral communications | |
| 7 | between Apple and a third party related to | |
| 8 | allegations that Musi and/or the Musi app infringes | |
| 9 | intellectual property or terms of service." | |
| 10 | And then if you wouldn't mind -- well, | 11:10:03 |
| 11 | strike that. | |
| 12 | First question is, have you seen this | |
| 13 | document before? | |
| 14 | A.   No. | |
| 15 | Q.   Okay.  If you could please take a look at | 11:10:09 |
| 16 | the substantive response there, starting on line 15 | |
| 17 | of page 5 of the interrogatory responses. | |
| 18 | A.   Just that paragraph or continuing? | |
| 19 | Q.   Go ahead and continue, please. | |
| 20 | Thank you. | 11:10:46 |
| 21 | A.   Just to the bottom of the page? | |
| 22 | Q.   Yes, for the moment. | |
| 23 | My first question is that that paragraph | |
| 24 | that describes your June 18th phone call with | |
| 25 | Mr. Paulino -- | 11:11:13 |

Page 107

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   Uh-huh.                                    11:11:16

2      Q.   -- is that -- with respect to the

3  June 18th call, does that paragraph look complete

4  and accurate?

5      A.   It looks accurate, except I don't believe  11:11:28

6  I mentioned the March 22nd, 2023, date to Kelvin,

7  since I was unaware of that date.

8      Q.   Okay.  Fair enough.

9           Apart from that, does it look accurate?

10     A.   Yes.                                        11:11:44

11     Q.   Okay.  And you see the next paragraph,

12 when it talks about Ms. Miles participating in a

13 call in August of 2024 with the NMPA, were you

14 aware of that call?

15     A.   I was not aware.                            11:11:58

16     Q.   And I believe you already testified you

17 weren't aware of any communications between Apple

18 and the NMPA about Musi; is that correct?

19     A.   That's correct.

20     Q.   Okay.  So if you could turn to the next    11:12:06

21 page, you can see Apple supplemented its response

22 to Interrogatory No. 6.

23          Do you see that?

24     A.   Yes.

25     Q.   And then the substance starts on line 8.   11:12:20

                                                    Page 108

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              Would you please read through to the end      11:12:25

2    of the response.

3         A.   Just up to line 18?

4         Q.   No, go ahead and read through the end of

5    the page, and then you'll see there's text on the      11:13:07

6    first half of this next page.

7         A.   Okay.

8              Okay.

9         Q.   Okay.  So turning back to page 6.

10             You see the -- the last paragraph on        11:14:10

11   page 6 says, "On or around May 29, 2024, Apple's

12   YouTube relationship manager Arun Singh reached out

13   to YouTube relationship contact Kelvin Paulino to

14   inquire about the status of a March 22, 2023,

15   complaint submitted by YouTube regarding the music    11:14:27

16   app and YouTube's contention that the Musi app

17   violates its terms of service."

18             Do you see that?

19        A.   Yes.

20        Q.   Is that accurate?                           11:14:36

21        A.   I didn't know the exact date that I

22   reached out to Kelvin.

23             But my recollection is that Sean Cameron

24   reached out to me towards the end of May, and I

25   followed up -- reached out to Kelvin --               11:14:52
```

                                                   Page 109

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     Q.    Okay.                                          11:14:54

2     A.    -- based on that request.

3     Q.    Would there be diary entries in your

4   calendar or the like about that reach-out, do you

5   think, or not necessarily?                             11:15:00

6     A.    No.

7     Q.    Okay.  Do you remember how Mr. Cameron

8   reached out to you?

9     A.    It was a phone call.

10    Q.    It was a phone call.                            11:15:05

11          And then your reach-out sometime around

12  the May 29th period to Mr. Paulino --

13    A.    Uh-huh.

14    Q.    -- do you recall whether that was a

15  phone --                                                11:15:16

16    A.    That was a phone call.

17    Q.    Okay.  That's probably why we don't have

18  an email reflecting it?

19    A.    That's correct.

20    Q.    And what was discussed during that phone        11:15:25

21  call?

22    A.    Basically, that I had been requested by

23  Apple legal to set up a call with YouTube legal

24  regarding the complaint about the Musi app.

25    Q.    Okay.  And you described that phone call        11:15:35

                                                Page 110

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    in your prior testimony.                              11:15:37

 2            Okay.  But you're not sure that you

 3    really specifically mentioned a March 22, 2023,

 4    complaint there because you may not have been aware

 5    of it at that point in time; is that correct?        11:15:50

 6        A.   I know I didn't mention that date.

 7        Q.   You know you didn't mention that.

 8            Okay.  Fair.

 9            It says after that, "In follow-up to that

10    initial outreach, Ms. Singh engaged in email         11:16:00

11    correspondence with Mr. Paulino between June 12th

12    and July 8 and participated in a brief call with

13    Mr. Paulino on or around June 18th, and potentially

14    also on or around June 24th." [as read]

15            And that sentence is describing the          11:16:14

16    communications we just talked about a few minutes

17    ago, right?

18        A.   Yes.

19        Q.   And including that June 24, 2024, date,

20    where it looks like there may have been a call       11:16:23

21    based on the email, but you just don't have a

22    recollection --

23        A.   That's correct.

24        Q.   -- is that accurate?

25        A.   Yes.                                         11:16:32
```

                                                         Page 111

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.   Okay.  And this next sentence, "Through        11:16:32

 2   these calls and the email correspondence,

 3   Mr. Paulino confirmed that YouTube was discussing

 4   the matter internally, and would be interested in

 5   scheduling a conversation between Apple and YouTube   11:16:47

 6   to discuss further."

 7        Do you see that?

 8        A.   Yes.

 9        Q.   I assume that information came from you,

10   because no one else was involved in those calls --    11:16:53

11        A.   Yes.

12        Q.   -- right?

13        A.   Yes.

14        Q.   Do you recall reviewing this for

15   accuracy?                                              11:17:04

16        A.   I have not seen this document before.

17        Q.   Okay.  Fair.

18        But is that --

19        A.   That's accurate.

20        Q.   That's accurate?                             11:17:12

21        Okay.  "No materials were exchanged for

22   purposes of these discussions, and the follow-up

23   correspondence consisted of Apple and YouTube's

24   scheduling of the July 15th phone call described in

25   response to" [as read] that other interrogatory we    11:17:23
```

Page 112

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    just looked at.                                      11:17:25

2            So is that fully accurate as well?

3        A.   Yes.

4        Q.   And as you've testified earlier today,

5    you've had no other communications with YouTube      11:17:30

6    other than the ones we've discussed today?

7        A.   That's accurate.

8        Q.   About Musi?

9        A.   That's correct.

10       Q.   Okay.                                        11:17:40

11       A.   Thank you for that extra clarification.

12       Q.   Yes, yes.

13           MS. GOLINVEAUX:  Okay.  Counsel, let's go

14   off the record for just a minute.

15           THE VIDEOGRAPHER:  Okay.  We are going        11:17:48

16   off the record.  The time is 11:18 a.m.

17           (Recess taken.)

18           THE VIDEOGRAPHER:  We are back on the

19   record.  The time is 11:28 a.m.

20           MS. GOLINVEAUX:  Ms. Singh, I just want       11:28:01

21   to thank you for your time today.

22           This was a time-limited deposition

23   ordered by the Court.  So I'm going to leave it

24   open in the event that we need to talk to you later

25   in the case.                                          11:28:10
```

Page 113

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              But for purposes of today, subject to any        11:28:11

 2     questions your lawyer may have, I've completed my

 3     examination.

 4              Thank you for your time.

 5              THE DEPONENT:  Thank you.                         11:28:18

 6              MR. FORD:  I have no questions.

 7              We can go off the record.

 8              Before we do, I'd like to just

 9     provisionally designate this "Confidential,

10     Attorneys' Eyes Only," for purposes of the               11:28:25

11     protective order.

12              THE VIDEOGRAPHER:  Okay.  We're going off

13     the record.  The time 11:28 a.m.

14              (TIME NOTED:  11:28 A.M.)

15              MR. FORD:  I will take a rough draft and        11:29:21

16     no expedite on the final.

17              THE COURT REPORTER:  Okay.  Thank you.

18

19

20                                                              11:29:24

21                        ---o0o---

22

23

24

25                                                              11:29:24
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        I, ARUN SINGH, do hereby declare under penalty

2   of perjury that I have read the foregoing

3   transcript; that I have made any corrections as

4   appear notes; that my testimony as contained

5   herein, as corrected, is true and correct.

6        Executed this _____ day of _____,

7   2025, at  _____,_____.

8

9

10

11                     _____

                       ARUN SINGH

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      I, Rebecca L. Romano, a Registered

2    Professional Reporter, Certified Shorthand

3    Reporter, Certified Court Reporter, do hereby

4    certify:

5      That the foregoing proceedings were taken

6    before me at the time and place herein set forth;

7    that any deponents in the foregoing proceedings,

8    prior to testifying, were administered an oath;

9    that a record of the proceedings was made

10    stenographically by me and which was thereafter

11    transcribed under my direction; that the foregoing

12    transcript is a true record of the testimony given.

13      Further, that if the foregoing pertains to the

14    original transcript of a deposition in a Federal

15    Case, before completion of the proceedings, review

16    of the transcript [ ] was [X] was not requested.

17      I further certify I am neither financially

18    interested in the action nor a relative or employee

19    of any attorney or any party to this action.

20      IN WITNESS WHEREOF, I have this date

21    subscribed my name.

22

23    Dated:  March 8, 20

24    _____

         Rebecca L. Romano, RPR,

25         CSR. No 12546

                                    Page 116