```
                                             Pages 1 - 37

                         UNITED STATES DISTRICT COURT

                        NORTHERN DISTRICT OF CALIFORNIA

        Before The Honorable Eumi K. Lee, Judge

        MUSI INC.,                      )
                                        )
                 Plaintiff,             )
                                        )
          VS.                           )     NO. C 24-06920 EKL
                                        )
        APPLE INC.,                     )
                                        )
                 Defendant.             )
        _____)

                                        San Jose, California
                                        Wednesday, April 30, 2025

                           TRANSCRIPT OF PROCEEDINGS


        APPEARANCES:

        For Plaintiff:
                         WINSTON & STRAWN LLP
                         101 California Street, 21st Floor
                         San Francisco, California 94111
                    BY:  JENNIFER A. GOLINVEAUX, ESQ.
                         SAMANTHA LOOKER, ESQ.


        For Defendant:
                         WILMER, CUTLER, PICKERING, HALE & DORR LLP
                         2100 Pennsylvania Avenue Northwest
                         Washington, DC 20037
                    BY:  JENNIFER MILICI, ESQ.

                         WILMER, CUTLER, PICKERING, HALE & DORR LLP
                         2600 El Camino Real, Suite 400
                         Palo Alto, California 94306
                    BY:  CHRISTOPHER WILLIAM JOHNSTONE, ESQ.




        Reported By:   James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                       Official Court Reporter
```

1  **Wednesday - April 30, 2025**                              **10:15 a.m.**

2                           P R O C E E D I N G S

3                              ---oOo---

4      **THE COURT:**  You may be seated.

5      **THE CLERK:**  United States District Court for the

6  Northern District of California is back in session, the

7  Honorable Eumi K. Lee presiding.

8      For our next case, we're going to call Case Number

9  5:24-CV-6920-EKL, Musi Inc. versus Apple.

10     Counsel, please step forward.  State your appearances for

11 the record, starting with counsel for the plaintiff.

12     **MS. GOLINVEAUX:**  Good morning, Your Honor.

13     **THE COURT:**  Good morning.

14     **MS. GOLINVEAUX:**  Jennifer Golinveaux, of

15 Winston & Strawn, on behalf of Plaintiff Musi.  And with me

16 today is my associate, Samantha Looker.

17     **THE COURT:**  All right.  Good morning to you both.

18     **MS. MILICI:**  Good morning, Your Honor.

19 Jennifer Milici, from WilmerHale, for Apple.  And with me is

20 Chris Johnstone, from WilmerHale.

21     **THE COURT:**  Good morning to you both as well.  It's

22 good to see counsel again.

23     So we're here today on Apple's motion to dismiss.  The

24 Court did not send a tentative for today -- today's argument,

25 in terms of substantively, but did indicate sort of the time

1    frame and such that it was thinking.

2         I will say, in terms of argument today, I would encourage

3    the parties to focus on the breach of the implied covenant of

4    good faith and fair dealing and less so on the breach of

5    contract claim because I think the argument -- the arguments

6    filed online and the Court's inclinations are the same in terms

7    of what it has previously indicated as to the breach of

8    contract claim.

9         Similarly, I still remain to have -- which I'll express

10   undoubtedly some con- -- I still remain -- having concerns

11   regarding the implied covenant claim, but let's begin with

12   that.

13        Yes.  Go ahead and approach, Ms. Milici.

14        **MS. MILICI:**  Thank you, Your Honor.  I appreciate your

15   time today.

16        As you just referred to, there's two claims in this

17   complaint.  The breach of contract claim is the same as the

18   claim that it originally -- that Musi originally presented.

19   Apple's happy to rest on its papers and the Court's prior

20   ruling as to that claim, which should be dismissed with

21   prejudice.

22        Musi also raises the breach of the implied covenant claim

23   that it had raised previously and some new allegations.  That

24   claim should also be dismissed with prejudice for two reasons.

25   First, it is foreclosed, as a matter of law, by the express

terms of the contract; and, second, it is implausibly applied.
I'm going to start with the first one because I think it's very
straightforward, and I think it's wholly dispositive of the
case.

As the Court may recall, from the last time we were here,
and looking at it for a long time, what the Court says is -- I
mean, what the contract says is, "Apple reserves the right to
cease allowing download of licensed applications at any time,
with or without cause, by providing notice of termination to
you."

This Court has already held that, based on that clear and
explicit language, Apple had the right to cease offering the
Musi app without cause if Apple provided a notice of
termination.  And Musi's implied covenant claim seeks to
rewrite that clear and explicit language and impose a
limitation on Apple's removal rights that's not in the
contract.

And in a prior decision in this case, this Court, citing
the California Supreme Court's decision in *Carma*, correctly
held that the implied covenant cannot require action that
contradicts the express obligations set forth by a contract's
express terms.

Apple has cited numerous cases following *Carma* and holding
that implied covenant claims cannot be sustained where the
challenged conduct is expressly permitted by the contract.

1  Case law is very clear, as -- and the Ninth Circuit explained

2  in *Solomon* that these claims are prohibited as a matter of law.

3     Now, Musi makes a couple of arguments in its opposition in

4  an attempt to avoid that black letter law, but those arguments

5  don't work.  And -- first, Musi contends that the relevant

6  contract would be illusory if the Court did not imply the

7  covenant to change its terms.

8     And I think, to see why Musi is wrong, you really don't

9  need to do more than look at the cases that it cites.  And

10 these are, for the most part, on Page 10 of its opposition, and

11 those cases fall into a couple buckets.  A bunch of them are

12 dealing with an indefinite term as to price or some other item

13 like that and implying -- applying the implied covenant to give

14 a term meaning.

15    Some of those cases involve the unilateral modification of

16 a contract, and here, the removal provision has been in the

17 contract from the beginning.  It was part of the bargain to

18 begin with.  So those cases have no application.

19    And then there's one case, *Bleecher*, where one party was

20 trying to avoid the contract by saying that the other's

21 obligations were illusory.  That's just -- none of those have

22 anything to do with what's happening here.

23    And just pointing to the case -- or, actually, that Musi

24 cites on that page, which is *Chodos v. West Publishing*, I think

25 that neatly explains what makes this case different is that, in

1    that case, you had an author who was challenging a contract

2    that obligated him to create a publishable work.  And he argued

3    that the contract was illusory because the publisher had no

4    obligation to publish it but could decide, at its discretion,

5    to not publish it.

6         And that's nothing like the situation here.  There is no

7    reciprocal promise in this contract that Musi will develop an

8    app or that Apple will distribute it.

9         The contract at issue here is a license agreement, and the

10   benefit of the bargain is Apple provides a free license to its

11   software and technology to develop apps if the developer agrees

12   to the terms.  And those terms include, amongst others, the

13   right to remove an app from the app store without cause.

14        Now, the same contract also allows the developer to remove

15   an app from the app store without cause.  There's no mutual

16   promise about continuing to offer an app that appears in the

17   contract at all, and so there can't be an illusory promise to

18   do that.

19        Certainly, there's consideration for this contract, and

20   that consideration is a license.

21        **THE COURT:**  So how should the Court consider Musi's

22   argument that Apple departed from its standard permits -- well,

23   I'll quote, "standard process or standard procedures for

24   affirmatively" -- in terms of following up with the complaints?

25        **MS. MILICI:**  Yeah.  I'm happy to move to that.

1        So, Your Honor, I think the issue here is -- is that any

2    implied covenant claim has to be grounded in the terms of the

3    contract, and Musi -- I think the easiest way to see this is to

4    look at their complaint, in Paragraph 61.

5        They say that the implied covenant -- the purpose of it is

6    to effectuate the guarantees in the contract and to ensure that

7    the parties to the contract undertake the actions that they

8    promised to do.

9        And then in the next paragraph, Musi cites the removal

10   provision and says that -- that that provision requires Apple

11   to form a reasonable belief of infringement, and that's wrong.

12   As this Court has already held, that's not what that provision

13   says.

14       And Musi cites no other section of the contract that would

15   give rise to a reasonable expectation that Apple would

16   undertake a process.  And that's the issue here, is that its

17   implied covenant claim has to be grounded in the contract, and

18   they cite to nothing in the contract that would give rise to

19   any of the reasonable expectations they claim to have.

20       **THE COURT:**  I wasn't trying to take you off track in

21   terms off --

22       **MS. MILICI:**  It's okay.

23       **THE COURT:**  Your analysis of the other cases was

24   helpful.

25       **MS. MILICI:**  Yeah.

1    So -- so moving on, one of the other arguments that --

2 that Musi makes is that the implied covenant does provide a

3 contract -- a cause of action, even if the contract does not

4 prohibit the parties' conduct, and that's at the -- on Page 11

5 of their opposition.

6    But the problem for that argument is that what *Carma* was

7 doing in the sentence that they're saying is distinguishing

8 cases in which conduct is merely not prohibited from cases in

9 which contract -- in which conduct was expressly permitted, and

10 this case is -- is the latter.  And so that citation doesn't --

11 doesn't help them at all.

12    And, you know, we cited just a ton of authority

13 interpreting the format exactly that way -- that way, that what

14 it means is that, if the conduct is expressly permitted, there

15 can't be an implied covenant claim to restrict that express

16 permission.

17    And against all of that authority, Musi comes back with

18 one case, and that case is *InfoStream v. PayPal*.  And the

19 discussion of the implied covenant claim in *InfoStream* is quite

20 short.

21    And while it does reference an argument that PayPal had

22 made about an unrestricted right to terminate the contract,

23 when I looked back at the briefing in that case, the -- PayPal

24 had barely mentioned that argument at all in its brief.

25    And -- and Judge Illston's decision suggested there were a

1    number of facts there that would distinguish that case from

2    this one, including that PayPal wasn't really invoking that

3    unilateral termination right but was principally relying on its

4    argument that -- that the breach of the contract justified its

5    termination.

6         But I just want to say that -- I don't want to get too

7    bogged down in that.  I do think that case is distinguishable,

8    but even if one were to credit Musi's reading of it and

9    suggest -- and say that it says something that -- you know, you

10   can limit it in an express way by using the implied covenant,

11   that would run directly contrary to binding law on this issue.

12        *Carma* says you can't do that, the Ninth Circuit cases

13   following *Carma* say you can't do that, and a whole bunch of

14   decisions from this court in this district say the same thing.

15        So I think, you know, while they really go to great

16   lengths to try to argue that their case is like *InfoStream* --

17   and it's not -- I think that *InfoStream* can't mean what Musi

18   says it does, or it would run contrary to California law.

19            **THE COURT:**  So I have a couple questions.

20        So -- well, I mean, you know the allegations.  We -- we --

21   Musi alleges that Apple removed the Musi application based on

22   complaints that appeared to be false.  Apple vehemently

23   disagreed with that in terms of its papers and such, but let's

24   assume, just hypothetically, that that were true.

25        Could Apple remove an application from the app, based on

1  allegations that it knew to be false, under Apple's reading of

2  the contract?

3       MS. MILICI:  Your Honor, I think the answer to that

4  has to be yes because Apple can remove an app without cause,

5  and I think "without cause" has to include for reasons that the

6  other party thinks was unfair or for pretextual reasons, which

7  is what Judge Cousins said in *Intango* very clearly.  So I think

8  it has to include that.

9       But I want to just move for a second to kind of explaining

10  what I think Musi is alleging there.  So I'll skip ahead to the

11  implausibility point.  I do think that this case should end on

12  the -- on the legal point, no matter what it is that Musi's

13  arguing about the facts, just under California law.

14      Because there's an express right to remove an app without

15  cause, that ends the inquiry.

16      THE COURT:  But -- and is that -- before we get there,

17  then, I'm going to ask another question --

18      MS. MILICI:  Sure.

19      THE COURT:  -- my second question, because I think it

20  ties in actually before you bounce your implausibility

21  argument.

22      So -- and I assume that what you stated -- just stated is

23  your basis in terms of saying this should be without leave to

24  amend.

25      MS. MILICI:  Yes, Your Honor.

1        **THE COURT:**  Okay.

2        **MS. MILICI:**  So I -- just to move ahead to the -- to

3    the factual questions -- because I understand that the -- that

4    the Court is concerned about those.

5        And I want to start by saying, just as a full disclosure,

6    that Apple has served a Rule 11 letter on Musi.  You know, it

7    was 22 days ago.  We reserved a date on that with the Court.

8    We expect to file it soon, but it's obviously not before the

9    Court today.

10        And I mention it only because I want to make it very clear

11    to the Court, before it's even filed, that that motion is a

12    wholly separate matter.  For the purpose of this motion, we

13    agree that the Court can, and should, credit all of the

14    factual -- well-pled factual allegations in the complaint.  And

15    our position is that those allegations, either when credited,

16    do not state a claim for relief.

17        And so Musi's bad-faith claim, as far as I understand it

18    at least, has four prongs: that Apple acted for the benefit of

19    members of the music industry; that Apple engaged in a

20    back-channel scheme; that, as part of that scheme, it solicited

21    a complaint from YouTube and evidence from the NMPA; and that

22    Apple knew that the complaint and the evidence were false.

23        Now, as to the first prong, Musi alleges that Apple

24    removed its app to benefit members of the music industry; in

25    other words, for the benefit of the copyright holders who had

1    complained to Apple of infringement.  Of course, the same thing

2    could be said of any takedown, that it was done for the sole

3    benefit of the copyright holder.

4        Well, Musi works very hard to paint the "acting to benefit

5    a copyright owner" as somehow nefarious.  It's not.  As this

6    Court explained in its decision -- decision on the preliminary

7    injunction motion, protecting intellectual property is in the

8    public interest, and that's just indisputable.

9        The second prong is that Musi alleges that Apple engaged

10   in a, quote, "back-channel scheme," which is the phrasing that

11   Musi adopts to refer to any communication that Apple has with a

12   third party in which Musi is not copied.

13       But Musi points to absolutely nothing in the contract that

14   imposes any restriction or suggests that Apple will itself

15   impose any restriction on its ability to communicate with third

16   parties about the apps that it distributes.  It's just not

17   required to share those communications.  There's no grounding

18   in the contract for that claim.

19       And so Musi's contentions about what Apple is allowed to

20   do or prohibited from doing are all over the place.  In one

21   part of its complaint, it suggests that Apple has to

22   investigate claims of infringement before removing an app -- it

23   says that repeatedly -- yet, at the same time, Musi alleges

24   that Apple could not contact third parties that clearly had

25   information relevant to pending complaints.

1    So which is it?  Is Apple required to investigate things,

2    or is it prohibited from calling people and asking questions?

3    Because you can't have it both ways, and neither position is

4    grounded in the contract, which is why it's arguing out of both

5    sides of its mouth.

6    So Apple never promised that it was going to adjudicate

7    disputes, that it would decide who was right, that it would

8    come to any conclusion at all about complaints.  It receives

9    complaints.  It considers complaints and any other evidence

10   that it wants to and any other consideration that it wants to

11   when deciding whether to remove an app.  It never said that it

12   was going to resolve these.  So this case is nothing like the

13   *Campbell* case, for instance, that they cite.

14   So as to the third prong, that Apple solicited a

15   complaint, even assuming that the allegations there are true,

16   they can't -- they, again, just cannot support a claim of bad

17   faith, and I'll use an example here.

18   Let's say somebody published an article tomorrow in which

19   a reporter said, "This artist's work is being infringed by this

20   app that I saw on the app store."

21   Now, if Apple saw that article, Apple could call the

22   artist and say, "What do you think about this?"

23   And if the artist said, "Yes, my work is being infringed,"

24   Apple absolutely could invite that artist to submit a

25   complaint.  This is part of, like, the public interest in

1    protecting cop- -- copyrighted material.  There's nothing

2    nefarious about that.  There's -- and there certainly isn't any

3    grounding in the contract or an expectation that Apple would

4    stop itself from doing that or is not allowed to do that.

5        And Musi, again, here, just can't decide what its

6    reasonable expectations are.  So, on the one hand, it argues

7    that Apple engaged in bad faith because it didn't encourage

8    Sony to submit a complaint; right?  It complains that Sony

9    never submitted a complaint, and Apple just had the email.  And

10   then, on the other hand, it takes Apple to -- to task for

11   encouraging YouTube to submit a complaint that it had expressed

12   outside of the app dispute process.

13       So, again, like, which is it?  Is -- is -- is it the

14   reasonable expectation that, if Apple hears about a complaint

15   outside of the dispute process, it encourages a dispute or that

16   it doesn't?  Musi can't make up its mind because it's -- and it

17   blames Apple for both.

18       And then, finally, I -- the fourth and final prong here,

19   and one that -- that Your Honor raised, is that Musi alleges

20   that Apple knew that certain complaints or evidence was false.

21   And I think, to understand this, you need to kind of take a

22   step back and parse what Musi's actually saying.

23       So Musi's complaint describes several communications that

24   are the basis of its claim.  We requested judicial notice of

25   those communications, and Musi didn't oppose that notice.  And

1    what those communications show is that YouTube complained in

2    2021 that Musi was accessing YouTube content through

3    unauthorized means, not through its API, and running ads on

4    that content in violation of YouTube's terms of service.

5    YouTube did -- Musi describes this letter in -- in its

6    complaint, and it says that this is what YouTube said.

7         Now, Sony, following up on the IFPI's long-running

8    complaint, alleges that Musi was using unauthorized means to

9    access Sony content from YouTube and that it was not paying

10   rights holders.  Sony's email also says that it, quote, "had

11   worked with YouTube to remove API access from Musi, but the app

12   finds ways to access our content."

13        Now, according to Musi, when Apple called YouTube after

14   receiving Sony's email, YouTube said that Musi's app violates

15   the API terms of service.  Finally, the NMPA submitted a letter

16   in which it complained that Musi was accessing member content

17   from YouTube and running ads on it.

18        NMPA's letter attached evidence that it said demonstrated

19   that NM- -- that Musi was replacing YouTube's ads with its own,

20   and the NMPA said that Musi's app violated the YouTube terms of

21   service that are applicable to API use.

22             **THE COURT:**  Uh-huh.

23             **MS. MILICI:**  So Musi is centering this whole claim

24   about -- that Apple solicited false complaints on the

25   distinction about whether Musi was accessing YouTube content

1  through the API and then selling ads or whether it was

2  accessing YouTube content through other means and, again,

3  selling ads.  And I have to admit that I find this theory

4  incredibly confusing.

5      And one reason is that for all of the blustering in this

6  complaint and all the hyperbole about Sony supposedly having

7  told Apple that, years earlier, Musi had stopped using the API,

8  which is not what the email says, but Musi just never explains

9  why it matters one way or the other.  And that's because, as

10  far as I can tell, it doesn't; right?

11      The 2- -- the 2021 letter from YouTube cites to the user

12  terms of service and says that running ads on this content

13  violates those terms of service.  The NMPA cites provisions

14  that apply to developers using the API and says that those

15  terms -- that -- that running ads, replacing YouTube's ads with

16  Musi's ads, violates those terms.

17      So they're -- they're treating this like this big

18  "Gotcha!" of, like, "Oh, they said API here and elsewhere."

19  They didn't, but it's -- it's not clear why it matters.

20  There's two sets of terms.  Both prohibit Musi from

21  commercial -- using unauthorized -- from -- using copyrighted

22  works without authorization for commercial gain, which is what

23  it's accused of doing.

24      And, finally, to come back to the point that even if you

25  think that, for some reason, that's never been a claim, it

1    matters, one way or the other, whether Musi is using the API or

2    not, I think it can't really matter to the bad-faith claim

3    because what's undisputed here is that Apple was receiving

4    complaints.

5        It was receiving complaints from people who said that Musi

6    was -- was infringing copyrights, that Musi was using

7    copyrighted content for its commercial gain, and we're

8    presenting evidence in support of that.  And Apple could

9    absolutely remove Musi's app based on just the number of

10   complaints.  The fact that complaints keep coming is relevant

11   to Apple's evaluation of its own legal risks.

12       And it just doesn't matter whether some complainants

13   misunderstood how -- exactly how it was that Musi was accessing

14   the content that it was illegally exploiting.  I fail to see

15   what the -- what the -- what the kind of big deal is about this

16   difference.

17       And to the extent that they're going to stand up and say

18   they have them, I'm going to say it's not in the complaint.

19           **THE COURT:**  And you will have that chance to add -- to

20   answer that in your brief rebuttal.

21       So --

22           **MS. MILICI:**  Yes.

23           **THE COURT:**  Or to respond to that.

24           **MS. MILICI:**  Yes.

25       So, Your Honor, I'm -- I'm happy to -- to end there

```
1    because I know we've gone a little over, and I would like to
2    reserve a minute to respond to --
3              THE COURT:  Okay.
4              MS. MILICI:  -- whatever they say.
5              THE COURT:  All right.  So reserved.
6         Let's go ahead and turn to Musi.
7         Ms. Golinveaux?
8              MS. GOLINVEAUX:  Thank you, Your Honor.
9         I -- I heard your admonition about not focusing on the
10   contract claim.  I'd just like to make one brief point on that
11   before I move to the covenant.
12             THE COURT:  Yeah.  That's fine.
13             MS. GOLINVEAUX:  So with respect to the contract
14   claim, Musi, of course, recognizes the Court's earlier holding
15   in the context of ruling on Musi's preliminary injunction
16   motion, which was obviously a very different standard and
17   burden of proof, that the DPLA's termination provision was
18   unambiguous and gives Apple the right to terminate with or
19   without cause.
20        And the Court also held that, on that record, at the PI
21   stage, that Musi had not raised a serious question that Apple's
22   decision to remove the app due to claimed infringement was
23   unreasonable.
24        We -- as you -- as you see from our papers, we'd
25   respectfully submit that interpreting the contract to give
```

1    Apple unfettered discretion simply reeds that second sentence

2    of Section 6.3 out, but we understand Your -- Your Honor's

3    position.  So I'm going to leave it at that.

4        But as to the reasonableness, Your Honor, of Apple's

5    termination decision, we submit that the facts alleged in the

6    amended complaint behind Apple's termination -- termination

7    decision, which I'm going to address in a moment in the context

8    of the covenant claim, clearly create a fact issue as to

9    reasonableness.

10       And so we would just ask Your Honor to take a look at

11   that, and I'm going to take the Court -- the Court through why,

12   from our perspective, that's the case with the facts that we

13   allege.

14           **THE COURT:**  It doesn't take away from the plain

15   language of the contract, is the argument that you're making,

16   which goes to the heart of the breach of contract claim and the

17   Court's original findings in the MPI.

18           **MS. GOLINVEAUX:**  And we understand Your --

19   Your Honor's position on that, and -- but Your Honor did go

20   further in the order on the PI and said that, in addition, Musi

21   had not raised a serious question as to reasonableness.

22           **THE COURT:**  Okay.

23           **MS. GOLINVEAUX:**  And my -- my point is, on these facts

24   in the amended complaint, I would ask the Court to take -- take

25   another look at that.

1          THE COURT:  Okay.

2          MS. GOLINVEAUX:  Your Honor, with respect to -- to

3    Musi's claim that Apple breached the implied covenant of good

4    faith and fair dealing, Apple's motion fails for two reasons.

5          First, it is simply wrong that the implied covenant of

6    good faith and fair dealing does not apply to Apple's

7    termination decision as a matter of law.  That is wrong, and

8    I'll take the Court through the cases and why, respectfully,

9    Counsel's attempt to -- to distinguish several of them just --

10   just fail because they're on all fours.

11         THE COURT:  Can I -- can I actually ask that you start

12   where Apple left off in terms of -- just because -- something

13   which I was -- while I was looking at the papers again, but

14   what distinction does it matter in terms of API versus non-API?

15         MS. GOLINVEAUX:  Certainly, Your Honor.  Let me -- let

16   me jump to that.

17         THE COURT:  And then -- and then I do want you to come

18   back to the cases because I sort of have a similar read in

19   terms of the -- *Carma* and then the progeny in terms of -- as

20   what Apple has.

21         So -- and then you can go on to *InfoWar* [sic].  You can

22   have that discussion as well --

23         MS. GOLINVEAUX:  Yes.

24         THE COURT:  -- but I just -- I don't want to forget

25   the API question --

1              **MS. GOLINVEAUX:**  Yes.

2              **THE COURT:**  -- because I had the same one.

3              **MS. GOLINVEAUX:**  Fair -- fair, Your Honor.

4       Well, you know, Counsel went even further and said Musi

5       just can't decide what its reasonable expectations were under

6       the contract.  Well, I can tell you this:

7              Musi's reasonable expectations were not that, on the basis

8       of a behind-the-scenes reach-out from a music industry partner,

9       Apple would affirmatively solicit a complaint from YouTube that

10      it had already closed -- it's dormant -- and had the meeting

11      with Apple to ask it to re- -- resubmit that complaint.

12             And the issue of the API was -- we -- was -- testimony was

13      provided in the depositions that we -- that -- in one of the

14      depositions we took.  And during that meeting, Apple asked what

15      the basis was for the violation, and YouTube specifically

16      talked about violation of YouTube's API terms of service.

17             But there's evidence in the record that Apple had already

18      been informed that Musi hadn't been using the API for years,

19      and the witness who was at that meeting said Apple didn't even

20      bother to ask YouTube about that, sitting at the meeting

21      during -- during that phone call.

22             So that -- that's why it's an issue, because Apple had

23      already been told that Musi was not using the API.  It would

24      not be a violation; right?  And yet it -- it -- its active

25      solicitation of another complaint from -- from YouTube to

1    resurrect this complaint that had been dormant, it had been

2    closed -- it didn't even bother to ask YouTube about -- about

3    that claim.

4        And so --

5        THE COURT:  What about Counsel's point that, whether

6    it was the API or the -- or otherwise -- that the concern was

7    basically the alleged violation of copyright -- copyright laws?

8        MS. GOLINVEAUX:  Certainly, Your Honor.  Certainly.

9        It's striking that, Number 1, YouTube never made a claim

10   based on copyright in its -- in its -- in its notices to Apple,

11   and it's striking that these -- these content owners like Sony

12   never made a claim of copyright.  Musi -- the Musi app, as you

13   know, has been operating for more than a decade.  It has never

14   been sued for copyright infringement in all that time.

15       And so Counsel is standing up and saying this was in the

16   public interest because Apple was doing the bidding of these --

17   these -- these industry players to protect intellectual

18   property.  There is no evidence in the record whatsoever that

19   that's the case, and no one's gone on record with the courts or

20   even with -- to say that that's the case.

21       So --

22       THE COURT:  And so why don't you begin where you --

23   before I interrupted, in terms of the case law and the

24   interpretation regarding the scope of the implied covenant and

25   what is proper, especially given the Court's interpretation as

1    to the express terms and obligations earlier?

2        So --

3        **MS. GOLINVEAUX:**  So Apple -- Apple's doubling down on

4    the argument that the covenant of good faith and fair dealing

5    does not apply to the termination decision because it had the

6    right to terminate with or without cause but -- not just

7    *InfoStream* but also *Campbell v. eBay*.

8        In *InfoStream*, Judge Illston specifically held -- and this

9    was in response to PayPal's argument, which is exactly the

10    argument that Apple's making here.  PayPal -- PayPal argued

11    that, essentially, there was no implied covenant of good faith

12    and fair dealing with the parties' agreement because the

13    contract allowed PayPal, in its sole discretion, to terminate.

14        And Judge Illston held that, whether or not that turns out

15    to be the case, it's sufficiently alleged to survive a motion

16    to dismiss.  And the California courts, including *Carma*, are

17    consistent that, particularly in these -- in cases where one

18    party has sole discretionary rights, it's particularly

19    important to credit the covenant of good faith and fair

20    dealing.

21        Now, *Carma*'s distinguishable from this case because the

22    Court held that the clause there did not -- the clause said

23    that they would terminate solely to realize they could -- they

24    could terminate for any reason, and to terminate solely to

25    realize a property -- excuse me -- a profit was in the parties'

1    reasonable expectations with *Carma*.

2        But the facts, Your Honor, that we've alleged here, the

3    series of facts leading up to the termination, distinguish it

4    from *Carma* because it quite thoroughly was not in the

5    expectation of use -- reasonable expectation of the parties

6    that Apple would affirmatively look for a way to kick Musi off

7    the platform.

8        Apple cites to cases where, in -- for -- for example,

9    *R.J. Cardinal*, and they say, "Well, this is an example where

10   there was also" -- that they shouldn't credit the covenant in

11   Musi's case because there was a termination clause that gave

12   Musi some value to the contract.

13       But the *R.J. Cardinal* decision is distinguishable.  It had

14   a 60-day written termination clause that Apple and Musi

15   contracted DPLA at issue.  There was termination -- there was

16   termination notice provided the same day that -- that Apple's

17   terminated.

18       This -- it's distinguishable.  And, again, it was not

19   within the parties' reasonable expectations, based on the facts

20   in this case.

21           **THE COURT:**  So the contract provides for cause or no

22   cause, and arguably -- I mean, taking the -- in terms of that

23   interpretation of -- of the provisions, *Carma*, *Thrifty* -- I

24   can't remember -- I was just talking about this case -- the

25   *Waits* -- *Tom Waits* case.

1      All of them discuss basically, you know, being constrained

2   by the express grant of discretion as long as it wouldn't

3   render the contract illusory -- right? -- in terms of the scope

4   of the implied covenant --

5           **MS. GOLINVEAUX:**  Correct, Your Honor.

6           **THE COURT:**  -- and that the Court is bound by those

7   express -- by the express promises.

8      And so the express terms -- and I just -- hearing how

9   it -- well, right now, how is Musi not adding additional

10  requirements, additional terms?

11          **MS. GOLINVEAUX:**  Right.

12     Your Honor, I think if you look at Illston -- Illston --

13  Judge Illston's decision in the *PayPal* case and the *Campbell*

14  *v. eBay* case and you also look at *Carma* itself, they all stand

15  for the proposition that, while the covenant does not prohibit

16  a party from -- from -- from doing what it's expressly

17  permitted to do under the contract, it does prohibit a party

18  vested with discretion from exercising that discretion in bad

19  faith or in a manner that is contrary to the parties'

20  legitimate expectations.

21     And I would submit, Your Honor, that the series of facts

22  leading up to the Musi termination, after nearly a decade on

23  the platform, was -- was not in good faith.  It certainly has

24  pled sufficiently to raise an issue of fact as to whether that

25  was good faith or within the parties' reasonable expectations.

1    **THE COURT:**  So let's explore this.

2    So what -- and this is a question which I had asked in

3    terms of the MPI hearing, the preliminary injunction hearing.

4    So under Musi's read of the contract, under Musi's read of the

5    implied covenant of good faith and fair dealing, what did it

6    require Apple to do?

7    **MS. GOLINVEAUX:**  Your Honor, the facts alleged in the

8    amended complaint show why the decision was in bad faith.  What

9    it required Apple to do was to act in good faith and

10   reasonably.  What Apple -- Apple is not in the business of

11   going out and soliciting complaints in order to remove apps, to

12   our knowledge.

13   Here, what you had is a very powerful music industry

14   player, who had never made a claim against Musi, writing an

15   email to Apple and saying, "This is a complicated case.  Can

16   you help us out?  Can you help us?  Can you tell us what you

17   need to get this app off the platform?"

18   And what did Apple do?  Apple goes and it con- -- and the

19   relationship at Apple -- or the YouTube relationship manager at

20   Apple contacts Apple [sic], at the lawyer's direction --

21   contacts YouTube and says, "We have a call."

22   And they say, "You know that notice that we were going" --

23   "about Musi you sent more than a year ago?  Would you like to

24   resurrect that?  Would you like to resubmit that now?"

25   Your Honor, that is not -- that is not in good faith.  That

1    was --

2         **THE COURT:**  So -- so let's take your -- you're

3    iterating facts which I know, again, that Apple strongly

4    contests in terms of allegations.  That's fine.  That's a

5    factual question or so forth, arguably.

6         But let's -- versus restating the first amended complaint

7    for me, walk with me -- what obligations, like, bigger

8    picture -- like, what obligations -- so you're saying good

9    faith, but what does that look like?

10        What process, what procedures -- what would you read

11   into -- because this was part of my concern, in terms of the

12   preliminary injunction motion, is reading into the contract

13   different processes which Apple should have followed or could

14   have followed or may have followed.

15        **MS. GOLINVEAUX:**  Understood, Your Honor.

16        And -- and I think the bottom line is that its actions

17   needed to be reasonable and in good faith, and so there's a

18   whole variety of actions that Apple could have taken reasonably

19   in good faith.

20        But this particular series of facts -- and if the Court

21   has any concern -- I know they take issue with our

22   interpretation of the facts, but that's really not appropriate

23   on a motion to dismiss.

24        If the Court has any concern about the nature of the

25   facts, whether they, in fact, illustrate bad faith, we would

```
 1    ask for an opportunity to amend to quote the specific

 2    deposition testimony and the additional documents, if the Court

 3    thinks that's necessary.

 4         But when you ask what did --

 5         THE COURT:  I mean -- so -- so you took discovery.

 6    You had the opportunity to amend the complaint, discovery

 7    which -- well, this sort of leads into one of the questions I

 8    had for counsel, was what I heard from Musi was both a request

 9    for leave to amend both as the breach of contract claim, which

10    I have great concerns about, as well as the implied covenant of

11    good faith and fair dealing.

12         You heard Apple indicate dismissal with prejudice.  Why

13    should the Court grant leave to amend, assuming that the Court

14    were to find, for the same reasons as to the breach of contract

15    and as to the implied covenant, concerns that basically further

16    obligations are being read in, which contradict the express

17    terms of the contract?

18         MS. GOLINVEAUX:  Well, Your Honor, we -- we certainly

19    think that the detailed allegations in the amended complaint

20    are sufficient to raise a factual issue as to whether Apple

21    operated in good faith and within the reasonable expectation of

22    the parties.

23         If the Court disagrees, we would ask for an opportunity

24    to -- to provide even more detail around those discussions so

25    that the picture is clearer.  We don't think it's necessary on
```

1    a motion to dismiss.  The -- the facts, as -- as the Court will

2    certainly do, need to be interpret -- interpreted in our favor

3    at the pleading stage.

4         But if that's the concern of the Court, that there is not

5    enough detail to illustrate that, then we would ask for -- and

6    would -- and would dismiss on that ground, we would ask for

7    leave to amend at least the breach of covenant claim.

8              **THE COURT:**  To add details?

9              **MS. GOLINVEAUX:**  To add additional details, if that is

10   the -- if that is the Court's concern.

11             **THE COURT:**  Okay.

12             **MS. GOLINVEAUX:**  So, Your Honor, really, the series of

13   events that led to -- to -- to Musi's removal are really -- are

14   somewhat remarkable here.  I've taken the Court through them.

15   You have them in the amended complaint.

16             **THE COURT:**  Uh-huh.

17             **MS. GOLINVEAUX:**  But the notion that Apple would

18   affirmatively go out and seek a complaint from YouTube on

19   grounds that it knew, and had already been told by its music

20   industry partners, were false really is -- really is highly

21   unusual here.  And it's not -- it certainly raises an issue of

22   whether Apple is acting in good faith on these particular

23   facts.

24        And Apple's after-the-fact justifications with respect to

25   the NMPA letter or the IFPI really don't stand -- stand up.

1   Here, they told Musi they were terminating it based on its

2   refusal to engage with YouTube, but it had gone out and -- it

3   had gone out and gotten that -- affirmatively received that

4   notice and solicited that notice from YouTube itself in order

5   to take -- on grounds that it knew were false to get Musi off

6   the -- off the platform.

7         And on those facts, Your Honor, I would submit that that

8   goes far beyond what was -- is needed to plausibly allege a

9   case of bad faith in violation of the covenant of good faith

10  and fair dealing on these facts and would really -- you'd have

11  to credit Apple's spin on the facts, which is just entirely

12  improper at the pleading stage.

13        **THE COURT:**  I think the Court is still going back to

14  first principles, *Carma*, the other cases, in terms of what

15  renders the contract illusory and so forth.

16        And I'm still -- I'd like -- it's not really about the

17  spin on the facts, then; right?  It's about the obligation and

18  response, express terms of the contract, whether or not the

19  interpretation which Musi is offering would force the Court to

20  basically read in obligations or -- which contradict the

21  express terms of the obligations in the contract.

22        Let me -- let me ask this a different way.  So, you know,

23  the scope of the implied covenant is constrained by the

24  purposes of the agreement at issue.  So -- and I know Counsel

25  knows that.

1    So -- so what is, in Musi's view, the purpose of the DPLA,

2    and how would Musi's proposed application of implied covenant

3    be consistent or inconsistent with that purpose?

4         **MS. GOLINVEAUX:**  Your Honor, we think that the purpose

5    of the provision at issue in the DPLA is that Apple treats

6    termination decisions fairly and neutrally -- and I don't know

7    that they would disagree with that -- and reasonably and within

8    the parties' reasonable expectations that they will not be

9    favoring one side or the other behind closed doors in order to

10   execute the wishes of third parties.

11        So that -- that is what we think is a reasonable

12   expectation of the termination provision.  And we think here,

13   on these facts, the termination decision was not executed

14   reasonably and in good faith, and we don't think -- we think

15   that's entirety consistent with both *Carma* and with *InfoStream*

16   and with *Campbell v. eBay*.  I think the case is on all fours

17   with those.

18        **THE COURT:**  Anything further?  We have -- we have

19   45 seconds or so, a minute or two.  So --

20        **MS. GOLINVEAUX:**  I think those were the key points,

21   Your Honor.

22        Thank you.

23        **THE COURT:**  Okay.  Thank you, Ms. Golinveaux.

24        **MS. MILICI:**  If I could just have a minute, I'd like

25   to just respond to a -- to a couple of brief things.

1      And, of course, my opposing counsel never really answered

2 the question of what the contract requires Apple to do outside

3 of the removal provision, and the removal provision itself

4 obviously says that Apple can remove an app without cause.

5      The contention that there was a reasonable expectation

6 that Apple would adjudicate claims fairly and not favor one

7 side or another just has no grounding in the contract.

8      If Apple decides that it wants to favor copyright on all

9 those, we'll -- we'll make repeated claims.  It certainly can

10 under the contract.  There's nothing that would restrict that

11 right, and there's no remedy in the contract for the -- for

12 the -- the contrary position.

13      I want to just respond to -- to -- briefly to the point

14 that we're trying to spin facts.  I am not.  If the Court

15 accepts every single fact within the complaint but just leaves

16 the adjectives aside, there's no claim here.

17      You can call it a back-channel scheme, but it's still just

18 a phone call, and it's a phone call following up on an email

19 where Sony said they're accessing content from YouTube

20 without -- through technical means that -- without

21 authorization.

22      Calling YouTube while getting that email from Sony is not

23 a back-channel scheme.  It's an -- it's an inquiry.  So I --

24 we're -- we're disputing the characterization and the

25 adjectives.  The facts -- we understand that the Court has to

 1  accept them as true for the purpose of this motion, and if the

 2  Court does, you don't state a claim, for the reason that I

 3  think Your Honor has already said.

 4      There's nothing in the contract providing a reasonable

 5  expectation that Apple would handle complaints any differently

 6  than it did, that Apple would pre- -- a developer who has been

 7  the subject of many, many complaints, on equal footing with

 8  rights holders who were complaining -- none of that's in the

 9  contract.

10      If they made it up, it seems very clear that whatever

11  reason Apple had for removing the app, Musi would say it was

12  bad faith and unfair.  That doesn't mean that it's grounded in

13  the contract.

14      So, finally, I just want to raise one just housekeeping

15  issue, which is that, you know, given where we are in this case

16  and given the amount of kind of burdensome and, from our

17  position, pretty wasteful discovery that's happened, we would

18  like to stay discovery from here while we're awaiting a

19  decision from the Court.

20      And I'm happy to submit that by motion, but I just wanted

21  to raise it.

22          **THE COURT:**  Okay.  Ms. Golinveaux, why don't you

23  approach, but -- well, argument submitted in terms of the -- in

24  terms of the motion to dismiss?

25          **MS. MILICI:**  Thank you very much, Your Honor.

```
 1            THE COURT:  Counsel, why don't you approach.  Let's
 2   discuss this quickly.
 3       So does Musi have any objections?
 4            MS. GOLINVEAUX:  We would object to that, Your Honor.
 5   We still haven't had an opportunity to depose Elizabeth Miles,
 6   who had communications with Sony and was -- both before and
 7   after the removal and was involved in the call with YouTube as
 8   well.
 9       So I think that there is no reason, at this stage, to stay
10   discovery.  I can understand why Apple would want to do that.
11            THE COURT:  Why -- before we infer the sort of -- some
12   sort of purpose here, just -- let's go to, again, sort of first
13   principles.
14       How is this not plausibility discovery at that point?
15            MS. GOLINVEAUX:  Well, Your Honor, there are key
16   witnesses that we didn't have an opportunity to depose in the
17   very short window that we were provided before the amendment
18   and --
19            THE COURT:  But, again, this raises concerns to me in
20   terms of plausibility discovery.  We were sort of in an odd --
21   odd position before because we had the MPI.  Musi asked for
22   leave to amend.  The Court had granted that and then did permit
23   some discovery over Apple's protests.
24       But now I'm worried that we're -- we're getting into
25   plausibility discovery.
```

1          **MS. GOLINVEAUX:**  Well, I don't -- I don't think that's

2   what we're seeking, Your Honor, but we would appreciate the

3   opportunity to brief this issue, if the Court's considering a

4   stay of discovery.

5          **THE COURT:**  I am -- I am considering a stay of

6   discovery.  So we're going to do this on the papers, short.

7       Ms. Milici, you had indicated Apple's -- is -- is fine

8   with doing papers as well on this, and so --

9          **MS. MILICI:**  Absolutely.

10         **THE COURT:**  -- I assume, given the motion to stay

11  would be Apple's, that we'll start with a brief from Apple.

12      What time frame can we do this all in?

13      **MS. MILICI:**  We're happy to do it quickly.  I think

14  that the arguments are pretty straightforward.  We think that

15  the motion to dis- -- that this claim is precluded, as a matter

16  of law, and that the complaint should be dismissed with

17  prejudice and that further discovery at this point is wasteful

18  and not proportional to the needs of the case.

19      I think we can write that up very quickly, and I'm happy

20  to do that.  Maybe we can file by next week, if that works for

21  you.

22         **MS. GOLINVEAUX:**  If they file next week, that's fine

23  by us.

24         **THE COURT:**  And when can Musi --

25         **MS. GOLINVEAUX:**  I would ask, I guess, for two weeks

1    to -- to file an opposition, ten days.

2         THE COURT:  So -- or the Court is going to stay

3    temporarily discovery as of now if you're asking for two weeks.

4         MS. GOLINVEAUX:  We can respond in one week,

5    Your Honor.

6         THE COURT:  Okay.  So we're still inclined to stay,

7    then, at this point, temporarily.  So we'll stay discovery

8    temporarily until the briefing's done.  Each side will get one

9    week.

10        So when next week would you like your trigg- -- the

11    triggering point to be?

12        MS. MILICI:  How about a week from today?

13        THE COURT:  Okay.  So a week from today would bring us

14    to -- is it through the 7th?

15        So May 7th, the opening brief.  15th?

16        MS. GOLINVEAUX:  Yes, Your Honor.

17        THE COURT:  No.  14th.

18        MS. GOLINVEAUX:  14th.

19                        (Laughter.)

20        THE COURT:  It's going to be -- yeah, the 14th in

21    terms of any opposition.

22        Do you need a reply?  If Apple replies -- replies, it's

23    going to be very short because I'm inclined to just rule on the

24    papers on that.

25        MS. MILICI:  Your Honor, I don't think we need a reply

```
 1   brief.
 2           THE COURT:  Okay.  So we'll do the 7th, the 14th.
 3           MS. GOLINVEAUX:  Yes, Your Honor.
 4           THE COURT:  Discovery will be stayed temporarily in
 5   the meantime.
 6        And -- and I will likely do it on the papers.  If I need a
 7   hearing, we'll contact you and just special-set something for a
 8   quick hearing, remote.
 9           MS. GOLINVEAUX:  Okay.  Thank you, Your Honor.
10           THE COURT:  Okay.  All right.  Thank you, everyone.
11           MS. MILICI:  Thank you, Your Honor.
12               (Proceedings adjourned at 11:04 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2

3                    <u>**CERTIFICATE OF REPORTER**</u>

4           I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Monday, May 5, 2025

8

9

10

11    _____

12         James C. Pence-Aviles, RMR, CRR, CSR No. 13059
                     U.S. Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25