EXHIBIT 3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1                UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF CALIFORNIA
3                    SAN JOSE DIVISION
4    MUSI INC.,
5         Plaintiff,
6           vs.                    Case No. 5:24-cv-06920
                                              EKL
7    APPLE INC.,
8         Defendant.
     _____
9
10
11
12
13
14        **CONFIDENTIAL - ATTORNEYS' EYES ONLY**
15           VIDEO DEPOSITION OF ARUN SINGH
16              Redwood City, California
17              Friday, March 7, 2025
18                   Volume 1
19
20
     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 7226014
25   PAGES 1 - 120
```

Page 1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                  SAN JOSE DIVISION

4    MUSI INC.,

5         Plaintiff,

6            vs.              Case No. 5:24-cv-06920

                              EKL

7    APPLE INC.,

8         Defendant.

     _____

9

10

11

12

13

14         DEPOSITION OF ARUN SINGH, taken on behalf

15   of the Plaintiff, at 255 Shoreline Drive, #520,

16   Redwood City, California, commencing at 9:01 a.m.,

17   Friday, Friday, March 7, 2025 before

18   REBECCA L. ROMANO, a Registered Professional

19   Reporter, Certified Shorthand Reporter, Certified

20   Court Reporter.

21

22

23

24

25

                                        Page  2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1                    APPEARANCES OF COUNSEL

 2

 3    For the Plaintiff:

 4         WINSTON & STRAWN LLP

 5         BY:  JENNIFER A. GOLINVEAUX

 6         BY:  SAMANTHA K. LOOKER

 7         Attorneys at Law

 8         101 California Street

 9         21st Floor

10         San Francisco, California 94111-5891

11         (415) 591-1000

12         jgolinveaux@winston.com

13         slooker@winston.com

14

15

16

17

18

19

20

21

22

23

24

25    /////
```

Page  3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              APPEARANCES OF COUNSEL(cont'd)

 2

 3    For the Defendant:

 4          WILMER CUTLER PICKERING HALE AND DORR LLP

 5          BY:  MARK A. FORD

 6          Attorney at Law

 7          60 State Street

 8          Boston, Massachusetts 02109

 9          (617) 526-6423

10          mark.ford@wilmerhale.com

11

12

13

14

15    ALSO PRESENT:

16          Colleen Powers, In-House Counsel at Apple Inc.

17          Cameron Tuttle, Videographer

18

19

20

21

22

23

24

25    /////
```

                                                    Page  4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1         A.   That was between Apple and YouTube.          09:45:32

2         Q.   Got it.

3         A.   So Sean and Violet and myself from the

4    Apple side.  Kelvin and two lawyers from the

5    YouTube side.                                          09:45:42

6         Q.   I see.

7              And was this the video call about Musi?

8         A.   Correct.

9         Q.   Okay.  Do you remember approximately the

10   date of that video call?                               09:45:53

11        A.   July 15th.

12        Q.   That's the July 15th call.

13             What was discussed on that video call?

14        A.   Sean started by basically giving an

15   overview of what had happened which was that           09:46:10

16   YouTube had filed a complaint against Musi.  It --

17   the communication began between Musi and YouTube.

18   And at a certain point, YouTube stopped responding.

19             We -- Apple legal checked in with them

20   and didn't get a response and so believed that the     09:46:32

21   issue had been resolved.

22             And so when the complaint was filed, I

23   believe, if I recall correctly, the Musi app had

24   been taken down from the App Store.

25             When YouTube did not respond and Apple       09:46:49
```

                                                      Page 49

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   legal believed the issue had been resolved, it was        09:46:51

2   reinstated to the App Store.

3        Q.   I see.

4             So that was Mr. Cameron's setting the

5   table, so to speak, for the call with YouTube?          09:47:07

6        A.   That's correct.

7        Q.   Okay.  And what precipitated the -- the

8   video -- the July 15th video call between Apple and

9   YouTube?

10            MR. FORD:  Because that's implicating the       09:47:20

11  attorney-client communication, I can -- I'll

12  instruct you that you can identify the person who

13  asked you to set up the call and the fact of the

14  ask, but don't reveal the substance of any

15  attorney-client communication beyond that.               09:47:31

16            THE DEPONENT:  So that was the first

17  phone call I had with Sean Cameron.

18        Q.   (By Ms. Golinveaux)  I see.

19             It's all making sense.

20             Okay.  So after Mr. Cameron set the table      09:47:46

21  at that July 15th video call by giving an overview

22  and the history and why Apple put the Musi app back

23  up, what was said next?

24        A.   He said that we -- Apple had been

25  receiving complaints about the Musi app and asked        09:48:06

Page 50

```
1    YouTube if they wanted to continue with the           09:48:09

2    complaint.

3         Q.   Okay.  And did Mr. Cameron mention from

4    whom Apple had been receiving complaints about the

5    Musi app?                                              09:48:26

6         A.   No specifics.  I believe he said the

7    music industry.

8         Q.   Okay.  Fair enough.

9              I'm looking at this because the

10   court reporter didn't get your full answer.            09:48:58

11             Your answer was, "He said that we, Apple,

12   had been receiving complaints about the Musi app

13   and asked YouTube if they wanted to continue with

14   the" -- and then it drops off.

15             Do you recall how you finished that          09:49:13

16   sentence?

17        A.   Complaint.

18        Q.   Okay.

19        A.   And I think I said Apple legal not just

20   "we," Apple.  I said, I think, "we," Apple legal.      09:49:17

21        Q.   Okay.  Did Mr. Cameron describe the

22   nature of the complaints from the music industry?

23        A.   No.

24        Q.   Did he describe --

25        A.   Sorry.                                       09:49:43
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     Q.   Sure.                                      09:49:44

2     A.   He said that there were API guideline

3   violations, YouTube API guideline violations.

4     Q.   Okay.  He said that those were the nature

5   of the complaints --

6     A.   Sorry.

7     Q.   -- with Musi?

8     A.   Yeah.  That was not the nature of the

9   complaint from the music industry.  That was what

10  YouTube said was the original reason for the        09:50:13

11  complaint that YouTube had filed.

12    Q.   I see.

13         So Mr. Cameron reminded YouTube that that

14  was the nature of the original complaint?

15    A.   Sorry.  I'm mixing it up now.              09:50:28

16    Q.   No, that's okay.

17    A.   It's been a bit of time.

18         So from the music industry, Mr. Cameron

19  didn't specify what the -- what the exact

20  complaints were and asked YouTube why they had     09:50:39

21  filed the complaint.

22         And they -- YouTube said it was because

23  of API issues.

24    Q.   I see.

25    A.   Sorry.                                     09:50:52

                                                   Page 52

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    communications about Musi with anyone outside of          10:15:58

2    Apple?

3         A.   No.

4         Q.   Do any of the accounts you manage fall

5    within the music industry?                                10:16:11

6         A.   No.

7         Q.   Have you had any communications about

8    Musi with anyone at Apple other than the lawyers?

9         A.   No.

10        Q.   Okay.  So clearly, you are familiar with        10:16:23

11   an app called the Musi app, correct?

12        A.   Only after I was contacted by

13   Sean Cameron to set up a call.

14        Q.   You anticipated my next question, which

15   is, how did you become aware of Musi?                     10:16:54

16             And that was through Mr. Cameron reaching

17   out to you to set up a call?

18        A.   That's correct.

19        Q.   Understood.

20             Were you aware that YouTube, through the        10:17:15

21   law firm of Wilson Sonsini Goodrich & Rosati, had

22   sent Musi a detailed letter in April of 2021?

23             Were you aware of that?

24        A.   I was not.

25        Q.   Okay.  So you probably weren't aware that       10:17:29

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   And when you called him up, what did you | 10:34:30 |
| 2 | say? | |
| 3 | MR. FORD:  You can totally divulge -- you | |
| 4 | can testify as to your memory of the phone call | |
| 5 | between you and Mr. Paulino. | 10:34:38 |
| 6 | You can do that. | |
| 7 | THE DEPONENT:  I told him that Apple | |
| 8 | legal wanted a conversation with YouTube legal | |
| 9 | regarding Musi and a complaint that YouTube had | |
| 10 | filed. | 10:34:51 |
| 11 | Q.   (By Ms. Golinveaux)  Okay.  Did he know | |
| 12 | what you were talking about? | |
| 13 | Had he heard of Musi before? | |
| 14 | A.   He did not -- | |
| 15 | MR. FORD:  Objection.  Calls for | 10:34:57 |
| 16 | speculation. | |
| 17 | Q.   (By Ms. Golinveaux)  Based on your | |
| 18 | conversation with him and his reaction to your | |
| 19 | question asking for a call, did he indicate whether | |
| 20 | or not he was familiar with Musi? | 10:35:06 |
| 21 | A.   He did not indicate he was familiar with | |
| 22 | Musi. | |
| 23 | Q.   Okay.  What did you say -- how did you | |
| 24 | set the table for him on that call about what this | |
| 25 | was about? | 10:35:21 |

Page 76

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        A.    Correct.                                    10:40:49

2        Q.    Did he ask any specific questions?

3        A.    Just that one.

4        Q.    Okay.  Did he ask why Apple was following

5   up about this -- this Musi complaint?               10:40:56

6        A.    He didn't ask that question because I

7   don't think he was aware that we were following up.

8        Q.    Okay.

9        A.    Again, I'm just -- I don't know if that's

10  speculation but...                                   10:41:09

11       Q.    Okay.

12       A.    He wasn't aware of a complaint --

13       Q.    Okay.

14       A.    -- prior, previous, following up.

15       Q.    I'm not trying to build anything into the  10:41:17

16  term "prior."  I just --

17       A.    Uh-huh.

18       Q.    -- before the call.

19             But he knew about the complaint at this

20  point because you told him about it in the initial   10:41:25

21  call that we looked at in this, right?

22       A.    That's correct.

23       Q.    So he was asking, do you have any

24  additional information about what the call is going

25  to be about, in addition to the fact that we had     10:41:33
```

Page 83

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              And so when Kelvin was following up and          10:42:30

2     you were having this additional conversation on

3     June 18th, he's saying, Are there any other details

4     that you can share with me about what this call is

5     about; is that fair?                                      10:42:38

6         A.   That's fair.

7         Q.   Okay.  Why did you reach out to Kelvin to

8     set up this meeting about Musi?

9              MR. FORD:  Again, because this implicates

10    the attorney-client privilege, you can answer --         10:42:53

11    you can identify the person who requested you reach

12    out and the fact of the request but not divulge the

13    substance of attorney-client communication.

14             THE DEPONENT:  Sean Cameron had reached

15    out to me asking me to set up this call.                 10:43:05

16        Q.   (By Ms. Golinveaux)  Okay.  Okay.  So

17    continuing with the chain.

18             You have the call with Kelvin on

19    June 18th.

20             And then the next email in this chain,          10:43:21

21    you get an email from Kelvin on June 24th, "Hi

22    Arun, do you have a few minutes to catch up on

23    this?  Thanks."

24             Do you see that?

25        A.   Yes.                                             10:43:31
```

Page 85

```
 1        Q.   Okay.  Fair.                          10:56:28

 2             What did the two of them talk about?

 3        A.   They both acknowledged that a complaint

 4   had indeed been filed by YouTube and that some

 5   communication had been exchanged between Musi and  10:56:42

 6   YouTube.

 7             They were not aware of the last

 8   communication from Apple and indicated that there

 9   may have been some confusion as to the email alias

10   that that last communication had been sent to from  10:57:03

11   Apple.

12        Q.   Okay.  What else did they have to say?

13        A.   They were asked what the issues were, I

14   believe.  Actually, I don't know what the question

15   was, but I -- I should strike that.               10:57:23

16             I don't remember the question, but they

17   did say that they were API issues which were

18   ongoing and that they wanted to pursue the

19   complaint.

20        Q.   And did they give any indication of the  10:57:38

21   nature of the API issues?

22        A.   They did not share that.

23        Q.   Okay.  Did they ask about who in the

24   music industry was inquiring about Musi?

25        A.   Not that I recall.                      10:57:55
```

Page 96

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    the bottom, it says -- and I should say, this is a        11:00:24

2    document that's Bates-numbered APL-MUSI -36854.

3            And if you look up three hashes up from

4    the bottom, it says, "Want to know which aspects of

5    YouTube they are violating." [as read]                    11:00:36

6            Do you see that?

7    A.    I do.

8    Q.    What does that mean?

9    A.    Apple legal wanted to know which aspects

10   of the AP- -- what API issues of which guidelines        11:00:43

11   Musi was violating.

12   Q.    I see.

13            What aspects of the API or which

14   guidelines Musi was violating; is that accurate?

15   A.    Yes.                                                11:01:03

16   Q.    Okay.  Who -- who from Apple legal asked

17   that question?

18   A.    I don't recall.

19   Q.    Sure.

20            And did they say why they wanted to know?       11:01:10

21   A.    They did not.

22   Q.    Okay.  And did YouTube specify which

23   aspects of the API issues or guidelines Musi was

24   violating?

25   A.    They didn't specify which aspects, but           11:01:29

Page 99

```
1    they did indicate that there were some violations.        11:01:31
2        Q.    So on that last hash, it says, "Is it an
3    API abuse issue?"
4            Is that a question that came from one of
5    the Apple lawyers?                                         11:01:44
6        A.    Yes.
7        Q.    Okay.  And it says -- and the response
8    from YouTube is "There are some violations"?
9        A.    That's correct.
10       Q.    But to your recollection, they didn't            11:01:52
11   specify what the -- the nature of the violations
12   were --
13       A.    They did not.
14       Q.    -- beyond that?
15       A.    My recollection is they did not.                 11:01:58
16       Q.    Okay.  The second hash from the bottom,
17   it says, "They can't speak to GPlay's decision, but
18   it is indeed down from GPlay."
19            Do you see that?
20       A.    Yes.                                             11:02:12
21       Q.    That's what the YouTube lawyers said,
22   that the Musi app was down from GPlay?
23       A.    No, they didn't say that.
24       Q.    Okay.
25       A.    At the beginning when Sean was laying the        11:02:29
```

Page 100

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              And they didn't follow up.              11:04:53

2         Q.   Did they indicate on that call whether

3    they had ever responded or engaged otherwise with

4    Musi in response to their complaints?

5         A.   I don't recall that.                    11:05:03

6         Q.   Okay.  Okay.  You can put that aside,

7    thank you.

8              MS. GOLINVEAUX:  Could I have tab 5,

9    please.

10             (Exhibit 26 was marked for identification  11:05:11

11   by the Court Reporter and is attached hereto.)

12        Q.   (By Ms. Golinveaux)  The court reporter

13   has handed you what's been marked as Plaintiff's

14   Exhibit 26.

15             Do you have that document?              11:05:47

16        A.   I do.

17        Q.   Ms. Singh, can you tell me what this

18   document is?

19        A.   This is the follow-up from myself to

20   Kelvin, following the conversation on the 15th for  11:05:54

21   the communication, the email, that Apple had sent

22   YouTube to which YouTube had not responded.

23        Q.   Okay.  And if I recall correctly, Kelvin

24   had reached out to you after that July 15 meeting

25   asking you to send this over; is that true?       11:06:13
```

Page 103

```
1        A.   That's correct.                          11:06:16

2        Q.   And you went ahead and sent it over to

3   him?

4             MR. FORD:  You can answer that yes or no.

5             THE DEPONENT:  Yes.                       11:06:22

6        Q.   (By Ms. Golinveaux)  Okay.  How did you

7   get it in order to send it over?

8             MR. FORD:  You can say who you got it

9   from.

10            THE DEPONENT:  I reached out to Sean      11:06:34

11  Cameron and Violet.

12       Q.   (By Ms. Golinveaux)  And asked them to

13  provide it to you to provide to YouTube?

14            MR. FORD:  You can -- you can answer.

15            Actually, no.  I --                       11:06:51

16            MS. GOLINVEAUX:  I'm going to --

17            MR. FORD:  It gets into attorney-client

18  communication.

19            MS. GOLINVEAUX:  I'm going to withdraw

20  it.                                                 11:06:55

21            MR. FORD:  So I instruct -- okay.

22            MS. GOLINVEAUX:  Fair enough.  I'm going

23  to withdraw that question.

24            MR. FORD:  I think you can testify that

25  you got this from Violet and you forwarded it to    11:06:58
```

                                                    Page 104

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              Would you please read through to the end       11:12:25

 2      of the response.

 3          A.   Just up to line 18?

 4          Q.   No, go ahead and read through the end of

 5      the page, and then you'll see there's text on the      11:13:07

 6      first half of this next page.

 7          A.   Okay.

 8               Okay.

 9          Q.   Okay.  So turning back to page 6.

10               You see the -- the last paragraph on          11:14:10

11      page 6 says, "On or around May 29, 2024, Apple's

12      YouTube relationship manager Arun Singh reached out

13      to YouTube relationship contact Kelvin Paulino to

14      inquire about the status of a March 22, 2023,

15      complaint submitted by YouTube regarding the music     11:14:27

16      app and YouTube's contention that the Musi app

17      violates its terms of service."

18               Do you see that?

19          A.   Yes.

20          Q.   Is that accurate?                             11:14:36

21          A.   I didn't know the exact date that I

22      reached out to Kelvin.

23               But my recollection is that Sean Cameron

24      reached out to me towards the end of May, and I

25      followed up -- reached out to Kelvin --                11:14:52
```

Page 109

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        Q.   Okay.                                    11:14:54

 2        A.   -- based on that request.

 3        Q.   Would there be diary entries in your

 4   calendar or the like about that reach-out, do you

 5   think, or not necessarily?                         11:15:00

 6        A.   No.

 7        Q.   Okay.  Do you remember how Mr. Cameron

 8   reached out to you?

 9        A.   It was a phone call.

10        Q.   It was a phone call.                     11:15:05

11             And then your reach-out sometime around

12   the May 29th period to Mr. Paulino --

13        A.   Uh-huh.

14        Q.   -- do you recall whether that was a

15   phone --                                           11:15:16

16        A.   That was a phone call.

17        Q.   Okay.  That's probably why we don't have

18   an email reflecting it?

19        A.   That's correct.

20        Q.   And what was discussed during that phone 11:15:25

21   call?

22        A.   Basically, that I had been requested by

23   Apple legal to set up a call with YouTube legal

24   regarding the complaint about the Musi app.

25        Q.   Okay.  And you described that phone call 11:15:35
```

Page 110

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        I, Rebecca L. Romano, a Registered

2    Professional Reporter, Certified Shorthand

3    Reporter, Certified Court Reporter, do hereby

4    certify:

5        That the foregoing proceedings were taken

6    before me at the time and place herein set forth;

7    that any deponents in the foregoing proceedings,

8    prior to testifying, were administered an oath;

9    that a record of the proceedings was made

10   stenographically by me and which was thereafter

11   transcribed under my direction; that the foregoing

12   transcript is a true record of the testimony given.

13       Further, that if the foregoing pertains to the

14   original transcript of a deposition in a Federal

15   Case, before completion of the proceedings, review

16   of the transcript [ ] was [X] was not requested.

17       I further certify I am neither financially

18   interested in the action nor a relative or employee

19   of any attorney or any party to this action.

20       IN WITNESS WHEREOF, I have this date

21   subscribed my name.

22

23   Dated:  March 8, 202

24                          _____

                            Rebecca L. Romano, RPR,

25                          CSR. No 12546

                                              Page 116