10:28:56

                    IN THE UNITED STATES DISTRICT COURT

                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

                            SAN JOSE DIVISION


    MUSI, INC.,                    )   CV-24-6920-EKL
                                   )
                    PLAINTIFF,     )   SAN JOSE, CALIFORNIA
                                   )
            VS.                    )   JULY 31, 2025
                                   )
    APPLE, INC.,                   )   PAGES 1-37
                                   )
                    DEFENDANT.     )
                                   )
    _____ )

                       TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE EUMI K. LEE
                     UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:       WINSTON & STRAWN LLP
                         101 CALIFORNIA STREET, 21ST FLOOR
                         SAN FRANCISCO, CA 94111
                    BY:  **JENNIFER A. GOLINVEAUX**
                         **SAMANTHA LOOKER**


FOR THE DEFENDANT:       WILMER CUTLER PICKERING HALE & DORR LLP
                         2100 PENNSYLVANIA AVENUE, NW
                         WASHINGTON, DC 20037
                    BY:  **JENNIFER MILICI**
                         **LYDIA TURNAGE**




OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185


              PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER

```
 1              SAN JOSE, CALIFORNIA                JULY 31, 2025

 2                      P R O C E E D I N G S

 3              (COURT CONVENED AT 10:29 A.M.)

 4              THE CLERK:  WE ARE CALLING CASE 5-24-CV-6920-EKL.

 5    MUSI, INC. VERSUS APPLE, INC., ON MOTION FOR SANCTIONS.

 6              COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES

 7    FOR THE RECORD STARTING WITH COUNSEL FOR PLAINTIFF.

 8              MS. GOLINVEAUX:  GOOD MORNING, YOUR HONOR.

 9              JENNIFER GOLINVEAUX OF WINSTON & STRAWN ON BEHALF OF

10    PLAINTIFF.  AND WITH ME TODAY IS SAMANTHA LOOKER, ALSO FROM

11    WINSTON STRAWN.

12              MS. MILCI:  GOOD MORNING, YOUR HONOR.

13              JENNIFER MILCI FROM WILMER HALE FOR APPLE.  AND WITH ME IS

14    LYDIA TURNAGE, ALSO FROM WILMER HALE.

15              THE COURT:  GOOD MORNING TO YOU ALL.  THANK YOU FOR

16    YOUR PATIENCE.  WE HAVE HAD A LITTLE BIT OF TECHNICAL ISSUES

17    THIS MORNING.

18         WE ARE HERE TODAY FOR THE ARGUMENT REGARDING THE RULE 11

19    SANCTIONS BROUGHT BY DEFENDANT.

20         SO WITH THAT, I HAD SENT SOME QUESTIONS TO PARTIES AND TO

21    COUNSEL, AND WE WILL BEGIN WITH DEFENDANT.

22              MS. MILCI:  THANK YOU, YOUR HONOR.  AND THANK YOU FOR

23     YOUR TIME TODAY.

24         I WANT TO START BY SAYING THAT I HAVE BEEN LITIGATING IN

25    FEDERAL COURT FOR 20 YEARS NOW AND THIS IS THE VERY FIRST TIME
```

The timestamps in the left margin:
10:29:31 (line 4), 10:36:00 (line 5), 10:36:05 (line 6), 10:36:10 (line 7), 10:36:12 (line 8), 10:36:13 (line 9), 10:36:17 (line 10), 10:36:22 (line 11), 10:36:24 (line 12), 10:36:25 (line 13), 10:36:30 (line 14), 10:36:32 (line 15), 10:36:35 (line 16), 10:36:38 (line 17), 10:36:40 (line 18), 10:36:43 (line 19), 10:36:48 (line 20), 10:36:51 (line 21), 10:37:03 (line 22), 10:37:05 (line 23), 10:37:07 (line 24), 10:37:11 (line 25)

10:37:15  1    THAT I HAVE EVER FILED A RULE 11 MOTION.

10:37:18  2         I DISAGREE WITH OPPOSING COUNSEL ON MANY, MANY THINGS, BUT

10:37:22  3    WHERE WE AGREE IS THIS RULE 11 MOTION IS NOT SOMETHING THAT

10:37:27  4    SHOULD BE LIGHTLY FILED, IT'S NOT A PLACE TO REARGUE YOUR

10:37:30  5    MOTION TO DISMISS, IT'S NOT A PLACE TO MAKE SUMMARY JUDGEMENT

10:37:33  6    ARGUMENTS.  I AGREE COMPLETELY THERE.

10:37:37  7         AND THAT IS NOT -- THOSE ARE NOT THE REASONS THAT APPLE

10:37:40  8    FILED THIS MOTION.  AS I SAID LAST TIME I WAS HERE ON THE

10:37:43  9    MOTION TO DISMISS, WE ASSUME THAT THE COURT IS GOING TO ACCEPT

10:37:47  10   EVERY ALLEGATION AS TRUE, AND OUR POSITION IS THAT EVEN IF YOU

10:37:52  11   ACCEPT EVERY ALLEGATION, THE EXPRESS TERMS OF THE CONTRACT

10:37:55  12   PRECLUDE THE CLAIM.

10:37:56  13        THAT IS A WHOLLY SEPARATE ISSUE THAN WHAT WE ARE HERE

10:37:59  14   TODAY ABOUT WHICH IS THAT THE FIRST AMENDED COMPLAINT CONTAINS

10:38:03  15   NUMEROUS FACTUAL CONTENTIONS AND HAVE NO EVIDENTIARY SUPPORT.

10:38:09  16        AND THIS IS NOT A MATTER OF A LITTLE EXAGGERATION, A

10:38:12  17   LITTLE SPIN, THIS IS AN AMENDED COMPLAINT THAT IS STRUCTURED

10:38:17  18   AROUND KEY FACTUAL ALLEGATIONS THAT MUSI DECLINES TO EVEN

10:38:21  19   DEFEND.

10:38:23  20        AND WHAT MAKES MATTERS WORSE IS THAT MUSI FILED THIS FIRST

10:38:26  21   AMENDED COMPLAINT AFTER OBTAINING DISCOVERY FROM APPLE.  THIS

10:38:30  22   IS NOT A PLAINTIFF WHO BEFORE DISCOVERY HAS CONDUCTED A

10:38:35  23   REASONABLE BUT NECESSARILY LIMITED INVESTIGATION AND WE ARE

10:38:38  24   HERE ARGUING ABOUT WHETHER THEY SHOULD HAVE INVESTIGATED MORE

10:38:43  25   BEFORE MAKING ALLEGATIONS, INSTEAD WHAT WE HAVE HERE IS A

10:38:47  1    PLAINTIFF WHO HAS TAKEN DISCOVERY AND THEN FILED AN AMENDED

10:38:49  2    COMPLAINT THAT GROSSLY MISREPRESENTS WHAT THAT DISCOVERY SAYS.

10:38:55  3        AND EVEN WORSE STILL, MUSI'S COUNSEL SOUGHT TO LEND

10:38:59  4    CREDENCE TO THESE FALSE ALLEGATIONS BY CLAIMING THAT

10:39:02  5    SPECIFICALLY REDACTED SENTENCES, PROVISIONALLY REDACTED

10:39:06  6    SENTENCES AND PARAGRAPHS CAME DIRECTLY FROM MATERIALS THAT

10:39:10  7    APPLE PRODUCED IN DISCOVERY, AND THAT WASN'T TRUE.

10:39:13  8        AND SO APPLE FILED THIS MOTION FOR TWO REASONS.  THE

10:39:18  9    CONDUCT HERE IS JUST MORE EGREGIOUS AND MORE HARMFUL, NOT THAT

10:39:22 10    ORDINARY CASE WHERE A PLAINTIFF OVERREACHES IN A COMPLAINT.

10:39:26 11    APPLE FACES LOTS OF COMPLAINTS IN WHICH IT VIEWS THE PLAINTIFF

10:39:30 12    HAS OVERREACHED.  APPLE MOVES TO DISMISS THOSE COMPLAINTS, IT

10:39:34 13    DOESN'T FILE RULE 11 MOTIONS.

10:39:37 14        HERE THOUGH, WE HAVE A SITUATION WHERE IF THE FIRST

10:39:40 15    AMENDED COMPLAINT IS DISMISSED ON THE LEGAL GROUND THAT WE

10:39:43 16    ARGUED LAST TIME I WAS HERE, YOU STILL HAVE A PUBLIC RECORD

10:39:46 17    THAT SUGGESTS THAT APPLE PRODUCED IN DISCOVERY MATERIALS THAT

10:39:51 18    SHOW THAT IT ADMITTED TO RELYING ON FALSE INFORMATION WHEN

10:39:58 19    REMOVING AN AD.  AND THAT ALLEGATION REMAINS HARMFUL TO APPLE

10:40:01 20    AND TO THE EMPLOYEES WHO ARE IMPLICATED.  AND THERE'S JUST NO

10:40:06 21    EVIDENTIARY SUPPORT FOR THAT ALLEGATION, THAT'S NOT IN THE

10:40:10 22    DISCOVERY RECORD.

10:40:10 23        AND SECOND AND RELATEDLY, APPLE FILED THIS MOTION BECAUSE

10:40:16 24    IT THINKS IT'S IMPORTANT TO DETER OPPOSING COUNSEL IN THIS CASE

10:40:20 25    AND IN OTHER CASES FROM DOING WHAT MUSI DID HERE WHICH IS

10:40:25  1    TAKING DISCOVERY BEFORE FILING AN AMENDED COMPLAINT AND THEN

10:40:29  2    FILING AN AMENDED COMPLAINT THAT DOES NOT TAKE INTO ACCOUNT

10:40:32  3    THAT DISCOVERY AND THAT MISREPRESENTS THE DISCOVERY THAT IT

10:40:36  4    DOES TAKE ACCOUNT OF.  WE THINK THAT INCREASES BURDENS NOT JUST

10:40:40  5    ON APPLE, BUT ON THE COURT, AND THAT THIS IS CONDUCT THAT

10:40:45  6    SHOULD BE DISCOURAGED AND THAT RULE 11 EXISTS TO DETER EXACTLY

10:40:50  7    THIS KIND OF CONDUCT.  AND THAT'S A PRINCIPLE THAT THE

10:40:53  8    NINTH CIRCUIT REITERATED RECENTLY IN THE LAKE CASE.

10:40:59  9         SO I WANT TO START ON THE ALLEGATIONS, WITH THE ONE THAT

10:41:02  10   YOUR HONOR HAD QUESTIONS ABOUT WHICH IS IN PARAGRAPH 1 OF THE

10:41:05  11   COMPLAINT.

10:41:07  12        AND WHAT PARAGRAPH 1 OF THE COMPLAINT SAYS IS THAT APPLE

10:41:12  13   REMOVED THE APP SAYING IT WAS DUE TO A COMPLAINT BY YOUTUBE AND

10:41:17  14   THEN, THIS IS A QUOTE, APPLE LATER STATED THAT IT "RELIED ON

10:41:21  15   EVIDENCE PROVIDED BY THE NATIONAL MUSIC PUBLISHER'S

10:41:26  16   ASSOCIATION, NOT YOUTUBE," THAT MUSI WAS VIOLATING YOUTUBE'S

10:41:29  17   TERMS OF SERVICE BUT APPLE KNEW THAT THIS EVIDENCE WAS FALSE,

10:41:33  18   AS IT HAS SINCE ADMITTED.

10:41:38  19        AND I WANT TO BE ABSOLUTELY CLEAR HERE, APPLE NEVER

10:41:41  20   ADMITTED THAT IT RELIED ON EVIDENCE PRESENTED BY THE NMPA THAT

10:41:47  21   THE EVIDENCE IS FALSE.  THERE IS NO ADMISSION, THIS IS PURE

10:41:49  22   FICTION.

10:41:50  23        APPLE SPECIFICALLY CHALLENGED THIS ALLEGATION ON BOTH

10:41:53  24   PAGES 2 AND 7 OF ITS MOTION FOR SANCTIONS AND HAD PREVIOUSLY

10:41:58  25   RAISED TO THE COURT THAT THIS WAS A FALSE ALLEGATION IN ITS

10:42:02  1    OPPOSITION TO THE ADMINISTRATIVE MOTION TO SEAL.  AND DESPITE

10:42:05  2    THAT, MUSI OFFERS NOT A SHRED OF EVIDENTIARY SUPPORT FOR THE

10:42:11  3    HEADLINE CLAIM THAT APPLE ADMITTED THAT IT RELIED ON FALSE

10:42:15  4    INFORMATION WHEN IT REVIEWED THE APP.

10:42:18  5          THE COURT:  I MEAN, FRANKLY COUNSEL, I FOUND MANY OF

10:42:21  6    THE ALLEGATIONS -- WELL, BUT THIS ONE PROBABLY TROUBLED THE

10:42:31  7    COURT MOST, IF NOT CLEAR FROM THE QUESTIONS I RAISED WITH THE

10:42:36  8    PARTIES.

10:42:36  9          MS. MILCI:  THANK YOU, YOUR HONOR.  AND THIS IS WHY

10:42:38  10   I'M ADDRESSING IT FIRST.

10:42:40  11      I DO THINK IT'S A PARTICULARLY TROUBLING ALLEGATION AND

10:42:42  12   THE FACT THAT MUSI DIDN'T RESPOND TO THE MANY TIMES WE RAISED

10:42:45  13   IT IS A REAL ISSUE.

10:42:46  14      AND I THINK IF WE STEP BACK, THERE'S THE -- THERE IS NO

10:42:52  15   ADMISSION, WHICH I THINK IS INDISPUTABLY TRUE, BUT IF WE STEP

10:42:56  16   BACK EVEN FURTHER AND LOOK AT WHAT THIS ALLEGATION IS, IT

10:43:00  17   STARTS WITH APPLE LATER STATED THAT IT RELIED ON EVIDENCE FROM

10:43:04  18   THE NMPA, AND EVEN THAT PART OF THE ALLEGATION IS FALSE AND HAS

10:43:08  19   NO SUPPORT IN THE RECORD.

10:43:09  20      APPLE HAS NEVER SAID IT RELIED ON EVIDENCE PRESENTED BY

10:43:14  21   THE NMPA, IN FACT APPLE'S POSITION HAS BEEN THAT IT WAS NOT

10:43:19  22   ADJUDICATING CLAIMS OF INFRINGEMENT, THAT IT RECEIVED THOSE

10:43:24  23   COMPLAINTS, THOSE COMPLAINTS WERE CONSISTENT WITH A WHOLE LOT

10:43:26  24   OF OTHER COMPLAINTS OVER TIME, AND CERTAINLY THE CONSISTENCY OF

10:43:29  25   COMPLAINTS IS SOMETHING THAT APPLE CONSIDERED, BUT APPLE NEVER

10:43:33  1    SAID IT RELIED ON EVIDENCE PRESENTED BY THE NMPA TO REMOVE

10:43:38  2    MUSI'S APP, SO EVEN THE PREMISE IS WRONG.

10:43:40  3         AND THEN IF YOU LOOK AT THE NMPA LETTER, RIGHT, IT

10:43:43  4    CONTAINS A WHOLE LOT OF THINGS.  IT SAYS -- IT EXPLAINS THAT

10:43:47  5    MUSI'S APP INJURES NMPA MEMBERS BECAUSE IT MUTES YOUTUBE'S ADS

10:43:53  6    AND REPLACES IT WITH MUSI'S OWN WHICH DIVERTS ROYALTY REVENUES

10:43:58  7    AWAY FROM ARTISTS TO MUSI.

10:44:01  8         AND IT HAS SNIPPETS OF CODE AND IT HAS SCREEN SHOTS OF THE

10:44:07  9    MUSI APP'S REQUEST.  IT CITES TO A STATUTE, IT CITES TO A WIRED

10:44:13 10    ARTICLE, IT CITES TO SOME YOUTUBE DOCUMENTS.  MUSI NEVER SAYS

10:44:18 11    WHICH EVIDENCE IT'S CLAIMING APPLE SAID IT RELIED ON OR WHICH

10:44:22 12    EVIDENCE IS FALSE, THAT'S NOT IN THE COMPLAINT.

10:44:26 13         IN THEIR OPPOSITION, WHAT THEY SEEM TO BE SUGGESTING IS

10:44:29 14    THAT APPLE RELIED ON EVIDENCE THAT'S SPECIFIC TO THE USE OF THE

10:44:36 15    API, BUT THAT'S AGAIN A POINT THAT'S NOT SUPPORTED BY THE

10:44:42 16    EVIDENCE.  AND I SAID THIS LAST TIME I WAS HERE, I WILL SAY IT

10:44:46 17    AGAIN, I CONTINUE TO BE COMPLETELY BAFFLED BY THIS WEIGHT THAT

10:44:52 18    MUSI IS PLACING ON WHETHER IT WAS USING THE API OR WAS EVADING

10:44:59 19    TECHNICAL MEASURES AND ACCESSING YOUTUBE SOME OTHER WAY.

10:45:05 20         CERTAINLY THE COMPLAINT THAT THE NMPA MADE WHICH -- THE

10:45:09 21    GIST OF WHICH IS YOU ARE DIVERTING ROYALTIES FROM ARTISTS TO

10:45:13 22    YOURSELF, THAT HAS NOTHING TO DO WITH WHETHER YOU ARE USING THE

10:45:18 23    API OR NOT.

10:45:22 24         SO JUST TO STEP BACK ON THAT, THEIR RESPONSE THAT OH,

10:45:26 25    APPLE MUST HAVE KNOWN THIS WAS FALSE BECAUSE OF THE API ISSUE,

10:45:31  1      I DON'T KNOW THAT THE GIST OF THE NMPA'S COMPLAINT EVEN HAS

10:45:36  2      ANYTHING TO DO WITH THE USE OF THE API, MUCH LESS WHICH PART OF

10:45:39  3      IT IS SUPPOSED TO BE FALSE.

10:45:44  4           MUSI POINTS TO THREE THINGS IN ITS OPPOSITION BRIEF, AND I

10:45:48  5      WANT TO JUST BRIEFLY DESCRIBE THEM SINCE I THINK IT KIND OF

10:45:50  6      HELPS TO CONTEXTUALIZE WHAT'S EGREGIOUS ABOUT THIS.  AND THE

10:45:54  7      FIRST THING MUSI POINTS TO IS AN E-MAIL THAT MUSI WROTE TO

10:45:59  8      YOUTUBE IN 2020 WHICH APPLE WAS COPIED.  IN THAT E-MAIL, MUSI

10:46:05  9      CLAIMED IT DOES NOT USE YOUTUBE'S API.  THIS WAS THE E-MAIL,

10:46:11  10     EXHIBIT 14 TO MY DECLARATION, IT'S DOCKET 83-16.

10:46:18  11          SO THAT DOCKET IS DEFINITELY NOT THE CONCLUSIVE EVIDENCE

10:46:21  12     THAT MUSI PRETENDS IT IS BECAUSE YOUTUBE RESPONDED TO MUSI'S

10:46:24  13     E-MAIL THAT SAYS WE DON'T USE THE API, BY SENDING SCREEN SHOTS

10:46:30  14     THAT YOUTUBE SAID SHOWS THAT MUSI IN FACT DOES USE THE API BOTH

10:46:34  15     FOR SEARCH AND PLAYBACK.

10:46:39  16          NEEDLESS TO SAY, THIS E-MAIL IN WHICH MUSI SAYS IT DOESN'T

10:46:42  17     USE THE API AND THEN YOUTUBE RESPONDS AND SAYS IT DOES, IS NOT

10:46:45  18     EVIDENCE THAT APPLE ADMITTED IT RELIED ON FALSE INFORMATION.

10:46:50  19          SECOND, MUSI POINTS TO AN E-MAIL FROM SONY, AND AGAIN WE

10:46:54  20     TALKED ABOUT THIS A LITTLE BIT LAST TIME I WAS HERE, BUT THAT'S

10:46:57  21     THE E-MAIL DATED APRIL 2024, IT WAS SUBMITTED AS EXHIBIT 2 TO

10:47:01  22     THE MOTION TO DISMISS.  SO THAT'S DOCKET 68-6.  AND IN THAT

10:47:07  23     E-MAIL, SONY WROTE, AMONGST OTHER THINGS, "WE HAVE WORKED WITH

10:47:13  24     YOUTUBE TO REMOVE API ACCESS FROM MUSI, BUT THE APP FINDS WAYS

10:47:19  25     TO ACCESS OUR CONTENT THROUGH TECHNOLOGICAL MEANS THAT ARE MORE

10:47:23  1    DIFFICULT FOR GOOGLE TO ACTION."

10:47:25  2         YET IN THE COMPLAINT, COUNSEL REPEATEDLY MISREPRESENTS

10:47:28  3    WHAT THAT E-MAIL SAYS, AND ITS ALLEGATIONS ABOUT IT ARE

10:47:32  4    INDEPENDENTLY SANCTIONABLE.

10:47:35  5         SO IN PARAGRAPH 44 OF THE FIRST AMENDED COMPLAINT MUSI

10:47:39  6    ALLEGES THAT IN THE E-MAIL, SONY "MADE IT KNOWN TO APPLE THAT

10:47:44  7    YEARS EARLIER MUSI HAD CEASED USE OF YOUTUBE'S API."

10:47:51  8         THAT IS NOT WHAT THE E-MAIL SAYS, AND AGAIN THIS IS

10:47:54  9    SOMETHING THAT WE RAISED IN THE SANCTIONS MOTION AND WE SERVED

10:48:00  10   AND THE SAFE HARBOR AND MUSI CHOSE TO WEAVE IN TO THE

10:48:02  11   COMPLAINT.

10:48:04  12        AGAIN, ALL THE E-MAIL SAYS IS THAT SONY WORKED WITH

10:48:07  13   YOUTUBE TO REMOVE API ACCESS FROM MUSI, NOT THAT MUSI CEASED

10:48:10  14   USING IT YEARS EARLIER, NOT EVEN THAT MUSI WASN'T USING IT,

10:48:14  15   JUST THAT IT HAD WORKED TO REMOVE ACCESS.

10:48:17  16        AND I WANT TO JUST TO MAKE THIS A LITTLE BIT MORE CLEAR,

10:48:22  17   WHEN I READ IT, I DON'T EVEN SEE THAT THERE IS A DIFFERENCE

10:48:25  18   BETWEEN WHAT SONY IS SAYING AND WHAT THE NMPA IS SAYING.  THE

10:48:29  19   NMPA'S LETTER SAYS THAT MUSI IS USING BUCKETS, IS USING TOKENS

10:48:35  20   AND BUCKETS OF TOKENS IN ORDER TO EVADE RESTRICTIONS THAT WOULD

10:48:41  21   APPLY TO AN API CORPORATE ACCOUNT, RIGHT.

10:48:48  22        AND SONY IS SAYING, WELL WE REMOVED MUSI'S API ACCESS, BUT

10:48:54  23   IT'S STILL ACCESSING THE CONTENT THROUGH UNAUTHORIZED MEANS,

10:48:57  24   WHICH AGAIN IS THE SAME THING THE -- WAS RAISED IN MANY

10:49:02  25   COMPLAINTS, AND THERE'S A LETTER THAT'S ATTACHED AS EXHIBIT 1

| | | |
|---|---|---|
| 10:49:05 | 1 | TO MY DECLARATION, AND THAT WALKS THROUGH A LOT OF THE |
| 10:49:09 | 2 | COMPLAINTS AND THAT WE HAD SENT BEFORE THE AMENDED COMPLAINT |
| 10:49:13 | 3 | WAS FILED. |
| 10:49:13 | 4 | BUT FUNDAMENTALLY, THE E-MAIL THAT MUSI IS PUTTING SO MUCH |
| 10:49:19 | 5 | WEIGHT ON DOESN'T SAY WHAT MUSI SAYS IT DOES, AND WHAT MUSI HAS |
| 10:49:27 | 6 | ALLEGED IN THE COMPLAINT THAT IT FILED IN FEDERAL COURT THAT IT |
| 10:49:30 | 7 | SAYS. |
| 10:49:31 | 8 | AND RULE 11 VERY SIMPLY DOESN'T ALLOW YOU TO DO THAT, YOU |
| 10:49:34 | 9 | CAN'T COME TO COURT AND SAY THERE IS A DOCUMENT THAT SAYS X |
| 10:49:37 | 10 | WHEN THE DOCUMENT SAYS Z, PARTICULARLY WHEN YOU HAVE BEEN GIVEN |
| 10:49:42 | 11 | A RULE 11 LETTER CHALLENGING THAT ALLEGATION AND THE |
| 10:49:45 | 12 | OPPORTUNITY TO WITHDRAW IT. |
| 10:49:48 | 13 | AND AGAIN, I THINK THAT THERE'S -- LET ME SAY FINALLY, THE |
| 10:49:53 | 14 | FINAL THING THAT MUSI POINTS TO IN SUPPORT OF THIS ALLEGATION |
| 10:49:57 | 15 | IN PARAGRAPH 1 ABOUT THE ADMISSION, AND THAT'S TO DEPOSITION |
| 10:50:00 | 16 | TESTIMONY GIVEN BY MS. EVAN KARIMIAN.  SORRY, I STUMBLE ON THAT |
| 10:50:08 | 17 | EVERY TIME.  AND WHAT SHE DID IN THAT DEPOSITION, WHAT THE |
| 10:50:12 | 18 | WITNESS DID WHEN SHE WAS ASKED ABOUT THE SONY E-MAIL, SHE READ |
| 10:50:15 | 19 | IT INTO THE RECORD.  THAT'S IT.  SHE READ THE E-MAIL INTO THE |
| 10:50:18 | 20 | RECORD. |
| 10:50:19 | 21 | MUSI'S OPPOSITION AGAIN SEEKS TO MISLEAD THE COURT BY |
| 10:50:22 | 22 | QUOTING ONLY PART OF HER SENTENCE.  AND THIS IS ON PAGE 7 OF |
| 10:50:26 | 23 | THEIR OPPOSITION, AND IT QUOTES PART OF HER SENTENCE, WHICH |
| 10:50:31 | 24 | SAYS SOMETHING LIKE, YOU KNOW, AT THIS POINT APPLE HAD BEEN |
| 10:50:33 | 25 | TOLD, BUT THEY DON'T INCLUDE THE END OF IT, WHICH IS -- SHE |

10:50:38  1    SAYS, "IS WHAT IT SAYS."  BECAUSE SHE WAS, AGAIN, READING FROM

10:50:42  2    THE DOCUMENT, SHE WAS SAYING THIS IS WHAT THE DOCUMENT THAT

10:50:45  3    SONY SENT TO APPLE SAYS.

10:50:49  4         EVEN LEAVING ASIDE THE DEBATE ABOUT WHAT THAT E-MAIL

10:50:52  5    MEANS, THAT IS OBVIOUSLY NOT AN ADMISSION THAT APPLE RELIED

10:51:01  6    ON -- KNOWINGLY RELIED ON FALSE EVIDENCE MONTHS AFTER THIS

10:51:06  7    E-MAIL.

10:51:07  8         AND I THINK AGAIN THERE IS A BASELINE ABSURDITY TO THE

10:51:10  9    ALLEGATIONS, MUSI STARTS FROM THE PROPOSITION THAT IF SONY SAID

10:51:15  10   SOMETHING ABOUT HOW THE MUSI APP WORKED IN APRIL, APPLE THEN

10:51:19  11   KNEW THAT ANY CONTRARY THING LATER SAID BY ANYONE ELSE WAS

10:51:23  12   FALSE.

10:51:24  13        BUT THAT DOESN'T MAKE ANY SENSE, SONY'S E-MAIL IS NOT A

10:51:30  14   MODEL OF CLARITY, AS WE JUST DISCUSSED, SONY IS NOT AN EXPERT,

10:51:33  15   AS FAR AS I KNOW, IN MUSI'S APP, SONY COULD HAVE BEEN WRONG,

10:51:37  16   SONY COULD HAVE MISUNDERSTOOD WHAT YOUTUBE SAID, AND MUSI COULD

10:51:40  17   HAVE CHANGED ITS APP.

10:51:43  18        SO POINTING TO THE FACT THAT APPLE COULD HAVE ADMITTED IT

10:51:46  19   RECEIVED AN E-MAIL IN 2024, CANNOT COME ANYWHERE CLOSE TO

10:51:51  20   SUPPORTING AN ALLEGATION THAT APPLE ADMITTED THAT IT RELIED ON

10:51:53  21   EVIDENCE THAT IT KNEW WAS FALSE.

10:51:56  22             THE COURT:  WHAT PAGE OF THE OPPOSITION WAS THAT THAT

10:51:58  23    YOU JUST CITED?

10:52:00  24             MS. MILCI:  FROM THE TESTIMONY?

10:52:02  25             THE COURT:  YES.

10:52:03  1        MS. MILCI:  THAT'S ON PAGE 7 OF THE OPPOSITION, THEY

10:52:08  2   QUOTE HER TESTIMONY AND DON'T QUOTE THE PART WHERE SHE SAYS "IS

10:52:13  3   WHAT IT SAYS".

10:52:14  4        THE COURT:  OKAY.

10:52:15  5        MS. MILCI:  SO I DO THINK THAT THERE'S A KIND OF

10:52:23  6   BASELINE ABSURDITY TO THESE ALLEGATIONS.  BUT AT THE END OF THE

10:52:27  7   DAY, THAT DOESN'T MATTER, FOR THE PURPOSE OF THIS MOTION WHAT

10:52:30  8   MATTERS IS THAT MUSI HAS DECLINED TO PROVIDE ANY EVIDENTIARY

10:52:33  9   SUPPORT FOR THE ALLEGATION THAT APPLE RELIED ON EVIDENCE FROM

10:52:36  10  THE NMPA THAT APPLE ADMITTED IT KNEW WAS FALSE.

10:52:40  11       AND THIS ALLEGATION IS AT THE HEART OF MUSI'S BAD FAITH

10:52:44  12  CLAIM.  MUSI RAISES APPLE'S ALLEGED RELIANCE ON WHAT IT SAYS

10:52:49  13  WAS KNOWINGLY FALSE EVIDENCE THROUGHOUT THE FIRST AMENDED

10:52:51  14  COMPLAINT.

10:52:52  15       AND THIS REPEATED ALLEGATION WAS CLEARLY INTENDED TO

10:52:56  16  CONVINCE THE COURT THAT THIS CASE INVOLVED SOMETHING OTHER THAN

10:52:59  17  A DISAGREEMENT OVER APPLE'S EXERCISE OF A DISCRETIONARY

10:53:03  18  CONTRACTURAL RIGHT.

10:53:04  19       WITH THESE FALSE ALLEGATIONS, MUSI SOUGHT TO TURN APPLE'S

10:53:08  20  DECISION TO REMOVE AN APP, FOLLOWING YEARS OF CONSISTENT

10:53:12  21  COMPLAINTS, INTO SOMETHING SHOCKING AND SCANDALOUS.  BUT MUSI

10:53:17  22  AND ITS COUNSEL HAVE ALWAYS KNOWN THAT APPLE HAD PREVIOUSLY

10:53:22  23  REMOVED MUSI'S APP, BASED ON SIMILAR COMPLAINTS ABOUT THE SAME

10:53:28  24  FEATURES THAT APPLE RESTORED TO THE APP STORE AFTER MUSI LIED

10:53:35  25  TO APPLE THAT AFTER THE APP WAS RESTORED, IT FACED CONSISTENT

10:53:39 1    NUMEROUS COMPLAINTS OF STEADY STREAM OF FOLKS COMPLAINING ABOUT

10:53:43 2    THE SAME THINGS.

10:53:49 3         MUSI CAME IN HERE WITH A COMPLAINT THAT SAID APPLE REMOVED

10:53:55 4    THE APP BASED ON A FIVE-WORD COMPLAINT.  THEY KNEW THAT WAS NOT

10:53:59 5    THE CASE.  THEY HID THAT CONTEXT FROM THE COURT AND THEN THEY

10:54:01 6    TOOK DISCOVERY AND THEY CONCEALED MATERIAL FACTS FROM THE COURT

10:54:05 7    IN THEIR AMENDED COMPLAINT.

10:54:11 8         AND WE CITE A COUPLE CASES THAT BEAR ON THIS.  THERE'S THE

10:54:16 9    RATTAGAN CASE, THERE IS THE HALL V. HAMILTON CASE AND I THINK

10:54:19 10   THOSE CASES STAND FOR THE PROPOSITION THAT WHEN COUNSEL KNOW

10:54:22 11   THINGS FROM THIS CASE, FROM THE DISCOVERY RECORD, FROM THE

10:54:26 12   DEPOSITION THEY TAKE OR FROM THEIR PRIOR REPRESENTATION OF THE

10:54:29 13   SAME CLIENT, THEY ARE UNDER OBLIGATION TO CONSIDER ALL THE

10:54:31 14   FACTS KNOWN TO THEM AND TO OBJECTIVELY REFLECT ON THOSE BEFORE

10:54:36 15   FILING A COMPLAINT IN COURT.

10:54:39 16        AND YOU KNOW, SEE THERE'S -- AND HERE I WOULD SUBMIT THAT

10:54:42 17   THEY DIDN'T DO THAT.

10:54:43 18             THE COURT:  OKAY.

10:54:46 19             MS. MILCI:  SO I SPENT SOME TIME ON THAT PARAGRAPH 1

10:54:49 20   BECAUSE I KNOW YOU HAD ASKED ABOUT IT, BUT I DO WANT TO QUICKLY

10:54:52 21   POINT TO A COUPLE OF THE OTHER THINGS.

10:54:54 22        AND BEFORE I GET THERE I WOULD SAY THAT EVEN IF THE COURT

10:54:57 23   WERE TO ONLY FIND THAT PARAGRAPH 1 WAS AN ISSUE THAT VIOLATED

10:55:04 24   RULE 11, I DO THINK SANCTIONS ARE APPROPRIATE.  I THINK THAT

10:55:08 25   THAT'S AN EGREGIOUS MISREPRESENTATION, IT'S ONE THAT THEY CHOSE

10:55:11  1    NOT TO WITHDRAW, DESPITE HAVING RECEIVED A CHALLENGE TO IT, AND

10:55:17  2    THAT THEY CHOSE NOT TO DEFEND.

10:55:18  3        BUT I DO WANT TO SAY, POINTING TO A COUPLE OF THE OTHER

10:55:23  4    THINGS, ONE IS IN PARAGRAPH 7, THERE IS AN ALLEGATION THAT

10:55:26  5    SEVERAL MUSIC INDUSTRY ENTITIES HAD FILED COMPLAINTS ABOUT

10:55:32  6    MUSI'S APP AND THAT THOSE COMPLAINTS WERE ULTIMATELY CLOSED,

10:55:36  7    WAS THE QUOTE.  AND THAT IS FALSE.

10:55:38  8        MUSI PRODUCED DOCUMENTS FROM ITS OWN FILES DEMONSTRATING

10:55:41  9    THAT MULTIPLE COMPLAINTS WERE PENDING AT THE TIME OF MUSI'S

10:55:44  10   REMOVAL, THAT INCLUDES THE IFPI COMPLAINT, IT INCLUDES A

10:55:49  11   COMPLAINT FROM BH MEDIA, WHICH ITSELF PARTICIPATED IN

10:55:55  12   COMMUNICATIONS ABOUT THOSE, AND MUSI'S OPPOSITION DIDN'T DEFEND

10:55:59  13   THAT ALLEGATION, INSTEAD THEY KIND OF PIVOT TO SAY, WELL WE

10:56:02  14   DIDN'T HAVE TO ALLEGE THE EXISTENCE OF OTHER COMPLAINTS.

10:56:05  15       AND TO BE CLEAR, I THINK THEY PROBABLY DID, RIGHT, THAT'S

10:56:07  16   PART OF THE CONTEXT, THE FACTS KNOWN TO THEM.  I THINK IT'S

10:56:10  17   MISLEADING, IT'S KIND OF LIKE THE LAKE CASE, YOU CAN'T BRING A

10:56:15  18   COMPLAINT THAT'S AIMED AT ELECTRONIC VOTING AND NOT ACKNOWLEDGE

10:56:19  19   THAT YOU CAN ALSO VOTE BY PAPER BALLOT, RIGHT.  AND THAT'S KIND

10:56:23  20   OF WHAT THEY HAVE DONE HERE.

10:56:25  21       BUT LEAVING THAT ASIDE, I DON'T THINK THE COURT HAS TO

10:56:28  22   REACH THAT BECAUSE THIS IS JUST A DIRECTLY FALSE STATEMENT.

10:56:34  23   MUSI AND ITS COUNSEL KNEW THE COMPLAINTS WEREN'T CLOSED, THAT

10:56:38  24   THERE WERE OPEN COMPLAINTS.

10:56:42  25       I THEN JUST WANT TO POINT TO PARAGRAPH 46, AND THIS IS

10:56:45  1    AGAIN A SERIES OF ALLEGATIONS THAT ARE REALLY CENTRAL TO THE

10:56:48  2    THEORY OF THE CASE HERE.  AND IN PARAGRAPH 46, MUSI MAKES A

10:56:52  3    NUMBER OF FALSE STATEMENTS ABOUT APPLE'S OUTREACH TO YOUTUBE

10:56:56  4    WHICH MUSI CALLS A SCHEME TO COOK UP A BASIS TO REMOVE THE APP.

10:57:02  5         NOW MUSI ALLEGES THAT "AN IMMEDIATE ROADBLOCK TO APPLE'S

10:57:07  6    PLAN BECAME APPARENT, ITS CONTACTS AT YOUTUBE HAD NO IDEA WHAT

10:57:12  7    APPLE WAS TALKING ABOUT."

10:57:13  8         IN RESPONSE TO APPLE'S MOTION, MUSI POINTED TO TESTIMONY

10:57:17  9    DEMONSTRATING THAT THE INITIAL OUTREACH FROM APPLE WAS TO A

10:57:21 10    SPECIFIC INDIVIDUAL WHO DID NOT KNOW ANYTHING ABOUT THE

10:57:24 11    COMPLAINT.  BUT THAT'S AKIN TO ME SAYING THAT THE COURT HAS NO

10:57:27 12    IDEA WHAT'S GOING ON IN THIS MOTION BECAUSE THE SECURITY GUARD

10:57:31 13    DIDN'T KNOW MY NAME WHEN I ARRIVED.

10:57:35 14         HERE, A LAWYER AT APPLE ASKED MS. SINGH, A NONLAWYER AT

10:57:38 15    APPLE WHO HAS NO RESPONSIBILITY FOR DISPUTES, TO REACH OUT TO

10:57:41 16    HER CONTACT AT YOUTUBE, ALSO A NONLAWYER WITH NO RESPONSIBILITY

10:57:45 17    FOR DISPUTES, FOR THE PURPOSE OF SETTING UP A CALL WITH THE

10:57:49 18    RELEVANT LEGAL TEAM.  AGAIN, I WANT TO HIGHLIGHT THAT THIS IS

10:57:53 19    NOT A CASE --

10:57:54 20         THE COURT:  I FOUND THE CHARACTERIZATION AND THE CUT

10:57:57 21    AND PASTE TESTIMONY TROUBLING AS WELL, BOTH IN TERMS OF, EVEN

10:58:03 22    IN SO AS FAR AS HOW IT WAS REPRESENTED TO THE COURT.

10:58:06 23         MS. MILCI:  THANK YOU, YOUR HONOR.  AND I APPRECIATE

10:58:08 24    THAT.

10:58:09 25         AND I DO THINK THAT IT'S IMPORTANT TO NOTE AGAIN HERE THAT

10:58:12  1    THIS IS NOT A CASE WHERE YOU HAVE A PLAINTIFF THAT'S CONDUCTING

10:58:14  2    A REASONABLE INVESTIGATION BEFORE FILING A COMPLAINT BUT DIDN'T

10:58:19  3    FIND SOME FACTS THAT ARE RELEVANT, AND WE ARE ARGUING THAT THEY

10:58:22  4    SHOULD HAVE.

10:58:22  5         THAT'S NOT WHAT HAPPENED HERE.  WHAT HAPPENED HERE IS THEY

10:58:24  6    WERE GIVEN THE OPPORTUNITY TO TAKE THE SWORN TESTIMONY OF

10:58:27  7    MS. SINGH, WHO HAD TO TAKE TIME OUT OF HER DAY AND AWAY FROM

10:58:31  8    HER FAMILY TO DO THAT AND THEN THEY CAME HERE AND THEY

10:58:35  9    MISREPRESENTED WHAT THIS TESTIMONY SAID.

10:58:37 10         AND RULE 11, IF IT MEANS ANYTHING, HAS TO MEAN THAT

10:58:40 11    LAWYERS ARE NOT ALLOWED TO DO THAT.

10:58:43 12         THE COURT:  SO WE'RE AT 20 MINUTES NOW BUT I HAVE ONE

10:58:46 13    QUICK QUESTION FOR YOU ABOUT YOUR LAST POINT CONCERNING THE

10:58:49 14    COMPLAINTS, AND THE LINE BETWEEN WHETHER OR NOT THIS WAS TRULY

10:58:59 15    AN OMISSION OF CRITICAL INFORMATION OR WHETHER OR NOT IT WAS --

10:58:59 16    THE LINE BETWEEN MANIPULATIVE PRESENTATION AND THE OMISSION OF

10:59:10 17    CRITICAL INFORMATION AND WHETHER OR NOT IT ROSE TO THE LEVEL OF

10:59:12 18    RULE 11, IN TERMS OF THE OTHER COMPLAINTS.

10:59:14 19         MS. MILCI:  THANK YOU, YOUR HONOR.

10:59:16 20         SO I THINK THAT RULE 11 SAYS THAT WHEN YOU SIGN A

10:59:21 21    COMPLAINT, WHEN YOU SUBMIT A COMPLAINT TO THE COURT, YOU ARE

10:59:23 22    SAYING THAT THE FACTUAL CONTENTIONS HAVE EVIDENTIARY SUPPORT.

10:59:27 23    IT'S NOT YOU ARE SAYING THAT SOME OF THE FACTUAL CONTENTIONS

10:59:31 24    HAVE EVIDENTIARY SUPPORT, IT'S NOT THAT WHILE SOME OF THESE

10:59:35 25    MIGHT BE LIES OR MISREPRESENTATIONS BUT OTHERS ARE TRUE, IT'S

10:59:39  1    THE FACTUAL CONTENTIONS YOU MADE HAVE EVIDENTIARY SUPPORT.

10:59:42  2        WE HAVE POINTED NOW TO SEVERAL THAT DON'T, AND I THINK

10:59:45  3    THAT THAT'S ENOUGH.

10:59:46  4        I THINK THAT IF YOU LOOK AT THE LAKE CASE AND THE HALL

10:59:49  5    CASE AND THE RATTAGAN CASE, THERE'S ALSO THE POINT THAT WHEN

10:59:53  6    THE COUNSEL KNOWS SOMETHING THAT'S RELEVANT TO WHAT THEY ARE

10:59:56  7    PRESENTING TO THE COURT, THEY HAVE SOME OBLIGATION TO DISCLOSE

10:59:59  8    IT TO THE COURT.  THEY CAN'T FILE A COMPLAINT THAT ONLY

11:00:02  9    REFERENCES ONE AMBIGUOUS DOCUMENT WHEN THEY HAVE IN THEIR

11:00:05  10   POSSESSION SEVERAL OTHER DOCUMENTS THAT EXPLAIN WHAT THAT

11:00:08  11   DOCUMENT MEANS.

11:00:09  12       AND THAT'S WHAT THE COURT HELD IN RATTAGAN AND IN HALL,

11:00:13  13   AND THAT'S THE GIST OF THE NINTH CIRCUIT'S DECISION IN LAKE,

11:00:16  14   YOU CAN'T JUST LEAVE THINGS OUT OF THE COMPLAINT.

11:00:19  15            THE COURT:  THANK YOU.

11:00:19  16            MS. MILCI:  THANK YOU, YOUR HONOR.

11:00:21  17            THE COURT:  MS. GOLINVEAUX.

11:00:29  18            MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

11:00:30  19       LET ME START BY SAYING SIMILAR TO COUNSEL, I HAVE BEEN

11:00:34  20   PRACTICING IN FEDERAL COURT FOR ALMOST 26 YEARS AND I HAVE

11:00:39  21   NEVER BEEN SUBJECT TO A RULE 11 MOTION SANCTIONS.  AND BOTH I,

11:00:46  22   MY FIRM, AND MY TEAM TAKE OUR DUTY OF CANDOR TO THE COURT

11:00:50  23   EXTREMELY SERIOUSLY, SO I APPRECIATE THIS OPPORTUNITY TO TAKE

11:00:53  24   THE COURT THROUGH AND ANSWER YOUR SPECIFIC QUESTIONS THAT YOU

11:00:57  25   POSED TO THE PARTIES AND EXPLAIN OUR ALLEGATIONS THAT YOU

11:01:03  1    POINTED OUT, YOUR HONOR.

11:01:06  2        YOUR FIRST QUESTION WAS REGARDING THE NMPA LETTER, MUSI

11:01:12  3    ALLEGES THAT "APPLE KNEW THAT THE EVIDENCE WAS FALSE AS IT HAS

11:01:17  4    SINCE ADMITTED."

11:01:18  5        AND YOU ASKED WHAT DID MUSI MEAN BY THAT ALLEGATION?

11:01:22  6        YOUR HONOR, THIS QUESTION IS DIRECTED AT THE

11:01:25  7    SEPTEMBER 11TH, 2024 LETTER FROM THE NMPA TO ELIZABETH MILES,

11:01:32  8    THE SENIOR LEGAL DIRECTOR AT APPLE.  THE NMPA LETTER IS IN THE

11:01:37  9    CASE RECORD AS PART OF THE PI BRIEFING AT DOCKET 30-14 FILED ON

11:01:43 10    11-15-24.  THE RE LINE OF THAT LETTER READS "EVIDENCE OF

11:01:49 11    YOUTUBE POLICY VIOLATIONS TO MUSI, INC."

11:01:52 12        YOUR HONOR, THE FAC GOES ON TO EXPLAIN SPECIFICALLY WHAT

11:01:59 13    PLAINTIFF MEANT BY THAT ALLEGATION IN THE VERY NEXT SENTENCE

11:02:03 14    FOLLOWING THE ONE QUOTED IN YOUR HONOR'S QUESTION.  THAT

11:02:08 15    SENTENCE READS, "SPECIFICALLY APPLE'S POST HOC JUSTIFICATION

11:02:13 16    FOR REMOVING THE MUSI APP THAT MUSI WAS VIOLATING YOUTUBE'S

11:02:18 17    TERMS OF SERVICE WITH REGARDS TO ITS USE OF YOUTUBE'S DATA

11:02:23 18    IFRAME APPLICATION PROGRAMMING INTERFACE," REFERRED TO AS THE

11:02:27 19    API, "WAS SOMETHING THAT APPLE KNEW TO BE FALSE."

11:02:31 20        INDEED, APPLE KNEW MONTHS BEFORE THE REMOVAL, IT HAD

11:02:36 21    LEARNED FROM THE VERY MUSIC INDUSTRY PLAYERS IT WAS ACTING TO

11:02:41 22    APPEASE THAT MUSI WAS NOT USING YOUTUBE'S API.

11:02:44 23        THAT'S THE NEXT SENTENCE OF THE COMPLAINT, YOUR HONOR.

11:02:52 24        THE NMPA LETTER, COUNSEL TRIED TO MUDDY THE RECORD AND

11:02:59 25    DESCRIBE IT AS MAKING ALL KINDS OF CLAIMS AGAINST MUSI, BUT THE

1    THRUST OF THE NMPA LETTER IS THAT IT SPECIFICALLY CLAIMS ON

2    PAGE 1 THAT MUSI "LEACHES ITS CONTENT OFFERINGS FROM YOUTUBE'S

3    APPLICATION PROGRAMMING INTERFACE, API, TO AVOID PAYING

4    LICENSING FEES."

5         YOUR HONOR, APPLE ADMITTED IN TESTIMONY WITH MS. EVAN

6    KARIMIAN DURING HER DEPOSITION THAT APPLE RECEIVED THAT E-MAIL

7    WHICH WAS CIRCULATED TO SENIOR APPLE LEGAL PERSONNEL, INCLUDING

8    ELIZABETH MILES WHO IS LATER PRESENT ON THE CALL WITH YOUTUBE.

9    THOSE INDIVIDUALS WERE LATER TOLD THAT APPLE HAD REMOVED THE

10   API ACCESS FROM MUSI.

11        THIS AMOUNTS TO AN ADMISSION THAT APPLE WAS TOLD THAT THE

12   NMPA LETTER CONTAINS FALSE CLAIMS BECAUSE THE NMPA LETTER

13   REPEATEDLY ASSERTS THAT YOUTUBE API -- THAT MUSI USES YOUTUBE'S

14   API, PRECISELY WHAT APPLE ADMITS WAS TOLD EARLIER WAS NOT TRUE.

15        YOUR HONOR, MUSI HAD TESTIMONY FROM APPLE THAT IT WAS TOLD

16   MONTHS BEFORE THE NMPA LETTER, BUT A VERY E-MAIL THAT SPARKED

17   APPLE'S OUTREACH TO YOUTUBE TO REVIVE ITS COMPLAINT THAT -- AND

18   THIS IS NOT AMBIGUOUS AS COUNSEL TRIED TO DESCRIBE MR. WALKER'S

19   E-MAIL, IT SAID SPECIFICALLY GOOGLE HAD REMOVED THE API ACCESS

20   FROM MUSI.  THAT'S NOT AMBIGUOUS.

21            THE COURT:  SO GOING BACK, I MEAN COUNSEL, WHAT YOU

22   REFERRED TO WAS AN ADMISSION THAT SOMEONE HAD RECEIVED AN

23   E-MAIL OR WAS TOLD SOMETHING.  GOING BACK TO MY QUESTION WHICH

24   I ASKED IN THE E-MAIL, WHAT'S APPLE'S ADMISSION THAT IT

25   KNOWINGLY RELIED ON, ON WHICH FALSE EVIDENCE?

```
11:05:02   1            MS. GOLINVEAUX:  YOUR HONOR, THE ADMISSION IS THAT

11:05:06   2     THEY RECEIVED NOTICE --

11:05:08   3            THE COURT:  THE E-MAIL --

11:05:09   4            MS. GOLINVEAUX:  PARDON, YOUR HONOR?

11:05:09   5            THE COURT:  THAT THEY RECEIVED THE E-MAIL.

11:05:12   6            MS. GOLINVEAUX:  WELL YOUR HONOR, I CAN READ YOU THE

11:05:14   7     TESTIMONY.

11:05:15   8          THE QUESTION WAS:

11:05:18   9            "QUESTION:  AND YOU SEE IN THE MIDDLE OF THE

11:05:20   10    PARAGRAPH TO ROBERT AND ELIZABETH," (REFERRING TO ELIZABETH

11:05:24   11    MILES) HE SAYS, REFERRING TO MR. WALKER, "WE HAVE WORKED WITH

11:05:28   12    YOUTUBE TO REMOVE API ACCESS TO MUSI.  DO YOU SEE THAT?

11:05:33   13            "ANSWER:  LET'S SEE, WE HAVE WORKED WITH YOUTUBE TO

11:05:37   14    REMOVE API ACCESS FROM MUSI BUT THE APP FINDS WAYS TO ACCESS

11:05:40   15    OUR CONTENT THROUGH TECHNOLOGICAL MEANS THAT ARE MORE DIFFICULT

11:05:48   16    FOR GOOGLE TO ACTION, YES.

11:05:51   17            "QUESTION:  OKAY.  SO AT THIS POINT IN TIME --

11:05:53   18            THE COURT:  MS. GOLINVEAUX, CAN YOU CITE AGAIN WHERE

11:05:56   19    YOU ARE READING FROM?

11:05:58   20            MS. GOLINVEAUX:  CERTAINLY, YOUR HONOR.

11:05:59   21          THIS IS FROM THE DEPOSITION OF MS. EVAN KARIMIAN, IT'S

11:06:02   22    ATTACHED TO THE GOLINVEAUX DECLARATION IN SUPPORT OF THE

11:06:06   23    OPPOSITION TO MOTION FOR SANCTIONS, EXHIBIT 7.  IT'S DOCKET

11:06:11   24    86-8.  AT PAGES 110 THROUGH 111.

11:06:16   25            THE COURT:  ONE MOMENT.
```

| | | |
|---|---|---|
| 11:06:18 | 1 | (PAUSE IN PROCEEDINGS.) |
| 11:06:45 | 2 | THE COURT:  OKAY.  GO AHEAD. |
| 11:06:50 | 3 | MS. GOLINVEAUX:  SO YOUR HONOR, THE NEXT QUESTION IS: |
| 11:06:55 | 4 | "QUESTION:  OKAY, SO AT THIS POINT IN TIME, APRIL 11TH, |
| 11:07:02 | 5 | 2024, APPLE HAD BEEN INFORMED THAT YOUTUBE HAD REMOVED THE API |
| 11:07:07 | 6 | ACCESS FROM MUSI, CORRECT?" |
| 11:07:11 | 7 | "OBJECTION.  VAGUE." |
| 11:07:16 | 8 | "ANSWER:  AT THIS POINT IN 2024, INDIVIDUALS AT APPLE WERE |
| 11:07:19 | 9 | TOLD THAT GOOGLE HAD REMOVED THE API ACCESS FROM MUSI BUT THE |
| 11:07:26 | 10 | APP WAS SOMEHOW STILL USING GOOGLE'S SERVICE IN A WAY THAT WAS |
| 11:07:29 | 11 | MORE DIFFICULT FOR GOOGLE TO ACTION."  IS WHAT IT SAYS. |
| 11:07:36 | 12 | "QUESTION:  OKAY.  THANK YOU." |
| 11:07:37 | 13 | THAT'S THE END OF THAT EXCERPT OF TESTIMONY, YOUR HONOR. |
| 11:07:42 | 14 | THIS WAS NOT -- COUNSEL TRIED TO MUDDY THE WATER HERE AND |
| 11:07:47 | 15 | SAY, WELL HOW COULD APPLE HAVE KNOWN THIS WAS NOT CLEAR? |
| 11:07:51 | 16 | MR. WALKER IS THE EXECUTIVE VICE PRESIDENT AND HEAD OF BUSINESS |
| 11:07:54 | 17 | AND LEGAL AFFAIRS FOR SONY MUSIC, HE WROTE AN E-MAIL TO |
| 11:07:59 | 18 | ELIZABETH MILES OF APPLE DATED APRIL 11, 2024, STATING THAT |
| 11:08:05 | 19 | SONY MUSIC HAD "WORKED WITH YOUTUBE TO REMOVE API ACCESS FROM |
| 11:08:10 | 20 | MUSI BUT THAT THE APP FINDS WAYS TO ACCESS OUR CONTENT THROUGH |
| 11:08:15 | 21 | TECHNOLOGICAL MEANS THAT ARE MORE DIFFICULT FOR GOOGLE TO |
| 11:08:19 | 22 | ACTION." |
| 11:08:20 | 23 | YOUR HONOR, ONE THING THAT COUNSEL AND I AGREE ON IS THAT |
| 11:08:23 | 24 | THIS IS AT THE HEART OF THIS LAWSUIT.  THIS IS NO SMALL POINT, |
| 11:08:27 | 25 | YOUR HONOR.  FOR CLARITY, THE YOUTUBE API PROVIDES PROGRAMATIC |

ACCESS TO YOUTUBE DATA AND COMES WITH ITS OWN SET OF TERMS.

THE API MAKES IT EASIER FOR DEVELOPERS TO BUILD SERVICES THAT

INTEGRATE YOUTUBE DATA.  RATHER THAN SOFTWARE THAT RELIES ON

YOUTUBE'S API TO ACCESS DATA, MUSI IS A CUSTOM BROWSER

INTERFACE TO YOUTUBE'S PUBLICLY AVAILABLE WEBSITE.  AND AS A

MATTER OF FACT, MUSI DOES NOT USE THE API AND APPLE HAD BEEN

INFORMED THAT IT DID NOT USE THE API SINCE 2016.  THIS MEANS

IT'S NOT SUBJECT TO THE API TERMS OF SERVICE.

        SO WHEN MR. WALKER SAYS THAT SONY HAD WORKED WITH YOUTUBE

TO REMOVE API ACCESS TO MUSI BUT THAT THE MUSI APP FINDS WAYS

TO ACCESS OUR CONTENT THROUGH TECHNOLOGICAL MEANS THAT ARE MORE

DIFFICULT FOR GOOGLE TO ACTION, THIS IS PRECISELY WHAT HE'S

REFERRING TO, YOUR HONOR.  THEY KNEW THAT MUSI WASN'T SUBJECT

TO THE API.

        AND WHEN MS. ELIZABETH MILES, AFTER THE REMOVAL OF THE

APP, WROTE BACK TO MR. WALKER AND CALLED, AND LET HIM KNOW THAT

THE MISSION HAD BEEN ACCOMPLISHED, THE APP HAD BEEN TAKEN DOWN,

SHE SAID SPECIFICALLY, THIS ONE WAS "COMPLEX PROCESS-WISE",

GOLINVEAUX EXHIBIT 10 TO THE OPPOSITION TO THE RULE 11 MOTION,

YOUR HONOR.  IT'S ALSO WHY WE ASSUME YOUTUBE NEVER BOTHERED TO

RESPOND TO THE DETAILED LETTER FROM COUNSEL IN 2021 EXPLAINING

EXACTLY THE FACTS THAT MUSI DID NOT --

            THE COURT:  WE HAVE GONE BACK AND FORTH ABOUT WHAT

 SUPPOSEDLY HAPPENED IN TERMS OF BOTH IN THE

 CHARACTERIZATIONS -- LET'S BACKTRACK FOR A MINUTE.

11:10:37   1          MS. GOLINVEAUX:  YES, YOUR HONOR.

11:10:37   2          THE COURT:  SO GOING BACK TO THE POINT WHICH I HAD

11:10:41   3   RAISED EARLIER WAS THERE'S A DISTINCTION BETWEEN MUSI ARGUING

11:10:54   4   THAT THE SONY E-MAIL PERMITS AN INFERENCE THAT APPLE KNEW THAT

11:10:59   5   THE NMPA LETTER WAS INCORRECT -- WELL, THAT'S ONE THING FOR

11:11:19   6   MUSI TO ARGUE THAT, BUT THEN TO SAY ON THE OTHER HAND THAT

11:11:21   7   BASED OFF OF WHAT WAS JUST PRESENTED BY COUNSEL THAT APPLE IS

11:11:28   8   ADMITTING THAT IT KNEW THAT THE LETTER ITSELF WAS FALSE,

11:11:32   9   THERE'S INFERENCE, UPON INFERENCE, UPON INFERENCE THAT MUSI IS

11:11:35  10   ASKING THE COURT TO DRAW, AND THE STANDARD OF SAYING THAT THE

11:11:42  11   PARTY ADMITTED, IT'S DIFFERENT FROM THIS INFERENCE, UPON

11:11:48  12   INFERENCE, UPON INFERENCE YOU ARE ASKING THE COURT TO MAKE.

11:11:56  13          MS. GOLINVEAUX:  I UNDERSTAND THE CONCERN YOU ARE

11:11:58  14   ARTICULATING, YOUR HONOR.

11:11:59  15          THE COURT:  GOOD, BECAUSE I'M NOT ARTICULATING IT THE

11:12:01  16   BEST.  I THINK YOU UNDERSTAND WHAT I'M TRYING TO GET TO HERE,

11:12:05  17   WE ARE NOT IN A 12(B)(6) MOTION RIGHT NOW.

11:12:08  18          MS. GOLINVEAUX:  CORRECT.

11:12:09  19          THE COURT:  WE ARE TALKING ABOUT THE REPRESENTATIONS

11:12:12  20   WHICH WERE MADE IN THE COMPLAINT THAT A PARTY ADMITTED -- FIRST

11:12:19  21   PARAGRAPH, I BELIEVE OF THE COMPLAINT, THAT ONE WAS IN, AND

11:12:23  22   THAT CHARACTERIZATION, AND THEN SAYING OKAY, TO GET TO THIS

11:12:27  23   POINT, WE ARE ASKING THE COURT AND THE READER TO DRAW ALL THESE

11:12:31  24   INFERENCES, WHICH IS A BIT OF A HOUSE OF CARDS AT THIS POINT.

11:12:34  25          MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

| | |
|---|---|
| 11:12:35 | 1 |

                    LET ME TRY TO EXPLAIN.  I UNDERSTAND YOUR QUESTION
PERFECTLY AND LET ME TRY TO UNDERSTAND THE THINKING BEHIND THE
ALLEGATION AND THE RESPONSE HERE.

                    MY QUESTION IN DEPOSITION TO MS. EVAN KARIMIAN WAS
SPECIFICALLY:

                        "QUESTION:  SO AT THIS POINT IN TIME, APRIL 11, 2024,
APPLE HAD BEEN INFORMED THAT YOUTUBE HAD REMOVED THE API ACCESS
FROM MUSI, CORRECT?

                        "ANSWER:  AT THIS POINT IN 2024, INDIVIDUALS AT APPLE
WERE TOLD THAT GOOGLE HAD REMOVED THE API ACCESS FROM MUSI BUT
THAT THE APP WAS STILL FINDING WAYS TO ACCESS GOOGLE SERVICES
IN A WAY THAT WAS MORE DIFFICULT FOR GOOGLE TO ACTION."

                    THAT'S THE TESTIMONY.  THAT'S WHAT WE WERE RELYING ON.
AND SO THE FACTS -- I THINK THIS GOES FAR BEYOND WHAT IS
NECESSARY TO SUPPORT THE ALLEGATION BECAUSE THE FACTS SHOW --

                        THE COURT:  WHAT YOU JUST READ ACTUALLY, COUNSEL,
SORT OF CUTS THE OTHER WAY, THEY WERE TOLD THAT THIS HAD
HAPPENED.  IT SAYS THEY ADMITTED THAT THIS WAS.

                        MS. GOLINVEAUX:  YOUR HONOR, I THINK WHAT COUNSEL IS
FOCUSED ON, WHAT PERHAPS WHAT YOUR QUESTION IS FOCUSED ON IS
THERE IS SOME DAYLIGHT BETWEEN "WERE TOLD" AND "KNEW."

                    AND FOR PURPOSES OF A CHARACTERIZATION OF EVIDENCE IN A
COMPLAINT, I RESPECTFULLY DISAGREE.  THE WITNESS TESTIFIED AT
THAT POINT IN TIME THAT THE INDIVIDUALS AT APPLE HAD BEEN TOLD
THAT -- BY A SENIOR EXECUTIVE BY ONE OF THEIR INDUSTRY MUSIC

11:14:21  1    PARTNERS THAT MUSI WAS NOT USING THE API.

11:14:24  2         AND SO THE FACTS SPECIFICALLY SHOW THAT APPLE KNEW AT THAT

11:14:28  3    POINT IN TIME IN APRIL OF 2024 THAT MUSI DIDN'T USE YOUTUBE'S

11:14:33  4    API, WAS TOLD THAT BY SONY IN APRIL, AND BY MUSI EARLIER IN

11:14:39  5    2020, AND THAT APPLE EXPRESSLY ADMITTED RECEIVING THE E-MAIL

11:14:46  6    FROM SONY IN APRIL 2024 SHOWING THAT MUSI COULD NOT USE

11:14:53  7    YOUTUBE'S API BECAUSE GOOGLE HAD REMOVED THE ACCESS.

11:14:58  8         THE COURT:  DRAWING AN ANALOGY TO THIS, YOU ARE

11:15:01  9    SAYING IN A DOUBLE OR TRIPLE HEARSAY SCENARIO, THAT NO MATTER

11:15:04 10    WHAT THAT INITIAL -- SOMEONE -- THAT THAT IS ACCEPTING ALL THE

11:15:09 11    DIFFERENT LAYERS OF HEARSAY AS TRUE.

11:15:11 12         I MEAN, THAT IS BASICALLY WHAT -- ALL THEY ADMITTED TO WAS

11:15:16 13    RECEIVING THE E-MAIL AT THAT POINT, THEY HADN'T ADMITTED TO THE

11:15:25 14    TRUTH OR FALSE OF THE STATEMENTS EARLIER -- I'M STILL HAVING

11:15:29 15    PROBLEMS ARTICULATING IT CLEARLY, BUT --

11:15:35 16         MS. GOLINVEAUX:  I UNDERSTAND, YOUR HONOR.

11:15:36 17         I THINK THE CRUX OF IT HERE IS THAT THE WITNESS ADMITTED

11:15:38 18    THAT INDIVIDUALS AT APPLE HAD BEEN TOLD AT THAT POINT IN TIME

11:15:44 19    IN APRIL, BY THE SENIOR VICE PRESIDENT OF SONY, THAT THE APP

11:15:48 20    WAS NOT USING THE API.  THEY HAD BEEN TOLD THAT.

11:15:51 21         NOW THERE IS A FACT QUESTION, IF THEY WANT TO COME AND TRY

11:15:54 22    TO DEVELOP A RECORD IN THE CASE THAT, WELL YEAH, THEY TOLD US

11:15:57 23    THAT BUT WE DIDN'T BELIEVE IT, WE DIDN'T CREDIT IT, SO WE

11:16:01 24    CREDITED INSTEAD THE NMPA EVIDENCE.  THEY CAN DO THAT, BUT

11:16:05 25    THAT'S A FACT ISSUE.

11:16:06  1          BUT YOU HAVE TO ASK YOURSELF, YOUR HONOR, WHY WAS

11:16:09  2     MR. WALKER SAYING BECAUSE MUSI DOESN'T USE THE API, THIS IS AN

11:16:16  3     ACTION THAT'S MORE DIFFICULT FOR GOOGLE TO ADDRESS, AND WHY WAS

11:16:22  4     MS. MILES, IN HER RESPONSE TO MR. WALKER AFTER THEY HAD

11:16:26  5     SUCCESSFULLY REMOVED THE APP, WHY WAS SHE CALLING THE REMOVAL

11:16:33  6     "COMPLEX PROCESS-WISE."

11:16:36  7          THE COURT:  SO MS. GOLINVEAUX, I WANT TO MAKE SURE WE

11:16:39  8     GET TO ALL THE COURT'S QUESTIONS.  SO THE OTHER QUESTION WAS IF

11:16:42  9     THE COURT WERE TO FIND A RULE 11 VIOLATION AND AWARDS MONETARY

11:16:45 10     SANCTIONS, HOW SHOULD THESE SANCTIONS BE ALLOCATED BETWEEN

11:16:50 11     MUSI'S COUNSEL?

11:16:51 12          MS. GOLINVEAUX:  WE OF COURSE SUBMIT THAT THE

11:16:53 13     ALLEGATIONS IN THE FAC ARE ALL WELL SUPPORTED IN THE RECORD AS

11:17:01 14     REFLECTED IN THE OPPOSITION BRIEF AND THE RECORD TODAY.  IF THE

11:17:05 15     COURT DOES FIND A RULE 11 VIOLATION AND AWARDS MONETARY

11:17:09 16     SANCTIONS ON THIS RECORD, WE DO NOT BELIEVE THEY SHOULD HAVE

11:17:12 17     LEVIED AGAINST MUSI.  BUT RESPECTFULLY, FINDING A RULE 11

11:17:17 18     MOTION HERE BASED UPON DAYLIGHT BETWEEN THE WORD CHOICE LIKE

11:17:21 19     "KNEW" AND "WERE INFORMED" WOULD OPEN -- LITERALLY OPEN THE

11:17:25 20     FLOOD GATES TO RULE 11 MOTION PRACTICE.

11:17:27 21          WE RESPECTFULLY SUBMIT THAT THIS IS AN IMPROPER USE OF

11:17:31 22     RULE 11.  RULE 11, AS YOUR HONOR KNOWS, IS AN EXTRAORDINARY

11:17:35 23     REMEDY RESERVED FOR THE MOST EGREGIOUS CASES.

11:17:40 24          AND FOR FILING A COMPLAINT, IT CAN ONLY BE ORDERED IF THE

11:17:43 25     COMPLAINT IS LEGALLY OR FACTUALLY BASELESS FROM AN OBJECTIVE

11:17:48  1    PERSPECTIVE.

11:17:49  2         AND YOUR HONOR, WE SUBMIT THAT THE ALLEGATIONS THAT HAVE

11:17:52  3    BEEN MADE ARE SUPPORTED BY THE RECORD AND THE CHARACTERIZATIONS

11:17:58  4    ARE ENTIRELY APPROPRIATE BASED ON THE RECORD.

11:18:09  5         THE COURT:  COUNSEL, CAN WE DISCUSS THE SINGH

11:18:11  6    DEPOSITION?

11:18:12  7         MS. GOLINVEAUX:  YES, YOUR HONOR.

11:18:17  8         THE COURT:  SO I'M TRYING TO PULL UP -- SO AT PAGE 5

11:18:48  9    OF THE OPPOSITION --

11:18:55  10        MS. GOLINVEAUX:  YES, YOUR HONOR.

11:18:56  11        THE COURT:  -- MUSI STATES, EXCERPTS THE SINGH

11:19:03  12   DEPOSITION AT DIFFERENT POINTS.

11:19:15  13        MS. GOLINVEAUX:  YOUR HONOR, ARE YOU REFERRING TO THE

11:19:16  14   TESTIMONY WHERE MS. SINGH IS TESTIFYING ABOUT HER INTERACTIONS

11:19:20  15   WITH HER CONTACT AT YOUTUBE?

11:19:22  16        THE COURT:  CORRECT.  I AM TRYING TO FIND THE EXACT

11:19:25  17   LINE HERE.

11:19:36  18        THAT IS DIRECTLY SUPPORTED BY SINGH'S TESTIMONY THAT WHEN

11:19:39  19   SHE REACHED OUT TO YOUTUBE, HER CONTACTS WERE UNAWARE OF THE

11:19:42  20   2023 COMPLAINT AGAINST MUSI AND EVEN UNAWARE OF MUSI, ITSELF.

11:19:47  21        MS. GOLINVEAUX:  YES, YOUR HONOR.

11:19:48  22        THE COURT:  EXHIBIT 3, AND THEN THERE'S A, GOING BACK

11:19:52  23   AND FORTH IN TERMS OF THE SING DEPOSITION.

11:19:56  24        "QUESTION:  OKAY.  DID HE KNOW WHAT YOU WERE TALKING

11:19:58  25   ABOUT, HAD HE HEARD OF MUSI BEFORE?

| | |
|---|---|
| 11:20:01 | 1 |
| 11:20:08 | 2 |
| 11:20:12 | 3 |
| 11:20:17 | 4 |
| 11:20:27 | 5 |
| 11:20:28 | 6 |
| 11:20:28 | 7 |
| 11:20:37 | 8 |
| 11:20:37 | 9 |
| 11:20:42 | 10 |
| 11:20:44 | 11 |
| 11:20:46 | 12 |
| 11:20:49 | 13 |
| 11:20:49 | 14 |
| 11:20:53 | 15 |
| 11:20:57 | 16 |
| 11:21:01 | 17 |
| 11:21:04 | 18 |
| 11:21:06 | 19 |
| 11:21:10 | 20 |
| 11:21:13 | 21 |
| 11:21:20 | 22 |
| 11:21:25 | 23 |
| 11:21:31 | 24 |
| 11:21:32 | 25 |

"ANSWER:  HE DID NOT... HE DID NOT INDICATE HE WAS
FAMILIAR WITH MUSI."

AND SO IN LOOKING AT THAT QUOTE FROM THE SINGH DEPOSITION,
WHICH WAS 76, PAGE 76, LINES 11 THROUGH 22, LET ME PULL THAT
UP.

MS. GOLINVEAUX:  YES, YOUR HONOR.

THE COURT:  THERE'S A QUESTION.  THE FULL TRANSCRIPT
SAYS:

"QUESTION:  OKAY.  DID HE KNOW WHAT YOU WERE TALKING
ABOUT, HAD HE HEARD OF MUSI BEFORE?

"ANSWER:  HE DID NOT."

AND AN OBJECTION, MR. FORD SAYS "OBJECTION.  CALLS FOR
SPECULATION."

THEN COUNSEL PROCEEDS TO SAY, "BASED ON YOUR CONVERSATION
WITH HIM AND HIS REACTION TO YOUR QUESTION ASKING FOR A CALL,
DID HE INDICATE WHETHER OR NOT HE WAS FAMILIAR WITH MUSI?"

AND THEN ANSWER, "HE DID NOT INDICATE HE WAS FAMILIAR
WITH MUSI."

SO THERE ARE MULTIPLE QUESTIONS WHICH WERE IMBEDDED WITHIN
THAT.  THE WAY IT WAS PRESENTED WITHIN THE OPPOSITION AND THE
USE OF ELLIPSIS THERE, LIKE WHY CUT OUT THE ACTUAL QUESTION AND
PICK AND CHOOSE THOSE EXCERPTS?

MS. GOLINVEAUX:  YOUR HONOR, WE ATTACHED THE EXCERPTS
FROM HER DEPOSITION TO THE OPPOSITION.

THE COURT:  SO COUNSEL IS SAYING THE COURT SHOULD GO

11:21:35  1    AND MAKE SURE WE READ THROUGH EVERYTHING, WHICH HAS BEEN

11:21:38  2    REDACTED.

11:21:39  3        MS. GOLINVEAUX:  NO, YOUR HONOR, NOT AT ALL.  I AM

11:21:41  4    NOT TRYING TO SAY THAT.

11:21:43  5        WHAT I'M SAYING IS WE WERE ABSOLUTELY NOT TRYING TO HIDE

11:21:46  6    THE BALL IN ANY RESPECT WITH THE ELLIPSIS, THERE IS LIMITATION

11:21:51  7    IN PAGE NUMBERS, AND WE THOUGHT IF YOU LOOK AT WHAT THE CONTENT

11:21:56  8    OF THE QUOTE IS FROM THE BRIEF, I THINK IT CAPTURES THE

11:22:00  9    TESTIMONY.

11:22:05  10       WHEN I WAS QUESTIONING MS. SINGH ABOUT, THIS IS WHEN SHE'S

11:22:09  11   REACHING OUT TO HER CONTACT AT YOUTUBE BECAUSE SHE'S THE

11:22:12  12   MANAGER AT APPLE THAT HAS -- MANAGES THE RELATIONSHIP, SO TO

11:22:19  13   SPEAK, AND WHEN SHE REACHED OUT TO HIM, AND I ASKED, "DID HE

11:22:22  14   KNOW WHAT YOU WERE TALKING ABOUT WITH THIS MUSI ISSUE," BECAUSE

11:22:25  15   THE LAWYERS AT APPLE HAD GO AND ASKED HER TO SET UP A CALL WITH

11:22:29  16   YOUTUBE AFTER GETTING THE JEFF WALKER E-MAIL, THE LAWYER SAID

11:22:32  17   GO SET UP A CALL FOR US TO HAVE, AND THAT RESULTED IN THAT CALL

11:22:36  18   WE ARE AWARE OF BETWEEN APPLE AND YOUTUBE.

11:22:39  19       AND I SAID -- IN READING THE ENTIRETY OF IT HERE, I THINK

11:22:46  20   THE EXCERPTS ACCURATELY REFLECT WHAT SHE TESTIFIED.

11:22:49  21       I SAY:

11:22:49  22       "QUESTION:  DID HE KNOW WHAT YOU WERE TALKING ABOUT?  HAD

11:22:53  23   HE HEARD OF MUSI BEFORE?"

11:22:56  24       "ANSWER:  HE DID NOT."

11:22:57  25       "QUESTION:  BASED ON YOUR CONVERSATION WITH HIM AND HIS

11:22:58  1    REACTION TO YOUR QUESTION ASKING FOR A CALL, DID HE INDICATE

11:23:02  2    WHETHER OR NOT HE WAS FAMILIAR WITH MUSI?"

11:23:03  3         "ANSWER:  HE DID NOT INDICATE HE WAS FAMILIAR WITH MUSI."

11:23:07  4         I DON'T THINK IT'S MISLEADING --

11:23:09  5              THE COURT:  THE ANSWER WAS CUT OFF BY AN OBJECTION,

11:23:11  6    CORRECT?  THAT HE DID NOT.

11:23:15  7              MS. GOLINVEAUX:  MR. FORD OBJECTS AFTER I SAID "HE

11:23:17  8    DID NOT."  BUT I --

11:23:20  9              THE COURT:  AND THEN THERE IS -- IT SAYS "HE DID

11:23:24 10    NOT," THERE A DOUBLE HYPHEN, THERE IS AN OBJECTION.  IT'S CLEAR

11:23:29 11    SHE WAS MID-STATEMENT.

11:23:29 12              MS. GOLINVEAUX:  CORRECT, YOUR HONOR.

11:23:30 13              THE COURT:  THAT MS. SINGH WAS.

11:23:32 14         AND THEN RATHER THAN INCLUDE THE ACTUAL QUESTION THAT WAS

11:23:35 15    ASKED AND THE ACTUAL ANSWER, IT WAS PICK AND CHOSEN AROUND.

11:23:42 16              MS. GOLINVEAUX:  I SEE, YOUR HONOR.

11:23:45 17         WHEN SHE ANSWERS AFTER I REPEAT THE FULL QUESTION AND SHE

11:23:48 18    SAYS HE DID NOT INDICATE HE WAS FAMILIAR WITH MUSI?

11:23:52 19              THE COURT:  YOU DID NOT REPEAT THE FULL QUESTION, YOU

11:23:54 20    ASKED A DIFFERENT QUESTION.  SHE ANSWERED THAT DIFFERENT

11:23:57 21    QUESTION.

11:23:59 22         WHAT WAS PRESENTED IN COUNSEL'S BRIEF WAS A DIFFERENT

11:24:04 23    QUESTION AND THEN THE ANSWER.

11:24:06 24              MS. GOLINVEAUX:  WELL, YOUR HONOR, THE FIRST QUESTION

11:24:08 25    WAS "OKAY, DID HE KNOW WHAT YOU WERE" -- I'M SORRY, YOUR HONOR.

```
11:24:12  1        THE COURT:  IT SEEMED TO BE A DELIBERATE CHOICE TO
11:24:20  2    NOT INCLUDE THE QUESTION AND THE ANSWER, TO PUT A DIFFERENT
11:24:24  3    QUESTION AND THEN PUT THE ANSWER TO A DIFFERENT QUESTION.  AND
11:24:27  4    IT WAS A LITTLE BIT -- IT WAS STRIKING THAT THIS IS WHAT WAS
11:24:34  5    INCLUDED IN MUSI'S OPPOSITION TO A RULE 11 MOTION.
11:24:43  6        MS. GOLINVEAUX:  YOUR HONOR, RESPECTFULLY, I THINK
11:24:46  7    THAT THE EXCERPT IN THE BRIEF ACCOMPANIED BY THE ENTIRETY OF
11:24:54  8    THE PORTION OF THE DEPOSITION TESTIMONY, IT DOESN'T -- THE
11:24:58  9    FIRST QUESTION I ASKED WAS, DID HE KNOW WHAT YOU WERE TALKING
11:25:01 10    ABOUT?  AND WHEN MR. FORD'S OBJECTION INTERRUPTS THE QUESTION,
11:25:05 11    I SAID, BASED ON YOUR CONVERSATION WITH HIM AND HIS REACTIONS
11:25:08 12    TO YOUR QUESTION FOR A CALL, DID HE INDICATE WHETHER OR NOT HE
11:25:12 13    WAS FAMILIAR WITH MUSI?
11:25:14 14       THAT WAS A FULLER QUESTION JUST GETTING AT THE SAME POINT
11:25:17 15        THE COURT:  NOT NECESSARILY THE SAME POINT BECAUSE
11:25:19 16    THE QUESTION BEFORE THEN TALKED ABOUT THE COMPLAINT AND WE ARE
11:25:22 17    NOT -- IT COULD CLEARLY BE REFERRING TO SOMETHING ELSE
11:25:26 18    DIFFERENTLY THAN WHAT MUSI IMPLIES IN THE BRIEF THAT IT WAS
11:25:30 19    REFERRING TO, AND TO GO BACK AND FORTH AT THIS POINT, NOT
11:25:34 20    RECOGNIZING CLEARLY THOSE QUESTIONS ARE DIFFERENT QUESTIONS.
11:25:39 21        MS. GOLINVEAUX:  YOUR HONOR, I UNDERSTAND THE POINT
11:25:41 22    YOU ARE MAKING.
11:25:43 23        THE COURT:  OKAY.
11:25:48 24       SO WE ARE PAST TIME AT THIS POINT, WE ARE AT 25 MINUTES
11:25:53 25    VERSUS THE 20.  ANYTHING FURTHER?
```

11:25:54  1          MS. GOLINVEAUX:  YOUR HONOR, ONLY TO REITERATE THAT

11:25:57  2     IN THESE CIRCUMSTANCES WHERE YOU HAD A BUSINESS PARTNER AT

11:26:03  3     APPLE WRITING TO THEM IN APRIL AND ASKING, CAN YOU HELP US OUT

11:26:07  4     HERE TO GET THE MUSI APP DOWN AND TELLING THEM THAT MUSI DIDN'T

11:26:10  5     USE THE API, DIDN'T USE YOUTUBE'S API, AND THEN YOU HAVE AN

11:26:19  6     INCOMING LETTER FROM THE NMPA THAT IS FOCUSED, AND I WOULD ASK

11:26:23  7     THE COURT TO LOOK BACK AT THAT LETTER BECAUSE IT IS NOT ALL

11:26:27  8     OVER THE PLACE, IT IS FOCUSED ON THE FACT THAT MUSI -- THAT THE

11:26:33  9     CLAIM THAT MUSI WAS USING THE API, AND THAT WAS SOMETHING THAT

11:26:38  10    APPLE HAS SPECIFICALLY BEEN TOLD WAS NOT TRUE.

11:26:42  11         AND WHEN YOU LOOK AT MR. WALKER AND MS. MILES AND THEIR

11:26:47  12    RESPONSE THAT THIS WAS A PARTICULARLY COMPLEX AND TRICKY

11:26:52  13    TAKEDOWN, IT'S BECAUSE MUSI WASN'T USING THE API AND IT WASN'T

11:26:56  14    SUBJECT TO THOSE TERMS, YOUR HONOR.

11:26:58  15         AS YOU KNOW, MUSI HAS NEVER BEEN SUBJECT TO CLAIMS BY

11:27:02  16    YOUTUBE OR ANYONE ELSE FOR THAT MATTER.  IT WAS TRICKY, IT WAS

11:27:06  17    COMPLEX BECAUSE MUSI WAS NOT USING THE API AND WAS NOT SUBJECT

11:27:11  18    TO THE TERMS.  AND FOR APPLE TO COME TO THIS COURT AND OPPOSING

11:27:16  19    THE PI AND SAYING THEY RELIED ON THIS EVIDENCE FROM THE NMPA

11:27:21  20    THAT SAID THEY WERE USING THE API, AFTER THEY HAD BEEN TOLD

11:27:24  21    FROM A SENIOR EXECUTIVE AT A MUSIC COMPANY MONTHS BEFORE THAT

11:27:28  22    THEY WERE NOT, THAT IS VERY CONCERNING, YOUR HONOR, AND WE

11:27:34  23    THINK IT SPEAKS TO THE BAD FAITH AT ISSUE IN OUR CLAIMS.

11:27:41  24          THE COURT:  SUBMITTED?

11:27:44  25          MS. GOLINVEAUX:  YES, YOUR HONOR, UNLESS THE COURT

11:27:46  1      HAS ADDITIONAL QUESTIONS.

11:27:50  2              THE COURT:  THE COURT DOES NOT.

11:27:52  3              MS. GOLINVEAUX:  THANK YOU, YOUR HONOR.

11:27:52  4              THE COURT:  BRIEF REBUTTAL SINCE MUSI HAD BEEN GIVEN

11:27:57  5      SEVEN MINUTES ADDITIONAL, BUT LET'S KEEP IT SHORT.

11:28:01  6              MS. MILCI:  YOUR HONOR, I WILL BE VERY BRIEF.

11:28:03  7          I WANTED TO REPLY TO JUST A COUPLE OF THE THINGS THAT

11:28:06  8      COUNSEL JUST SAID.

11:28:08  9              FIRST OF ALL, THERE'S THIS, AGAIN, THIS MISREPRESENTATION

11:28:12  10     ABOUT WHAT THIS E-MAIL SAYS.  IT DOES NOT SAY THAT MUSI DOESN'T

11:28:17  11     USE THE API, IT SAYS THAT SONY HAS WORKED WITH GOOGLE TO REMOVE

11:28:21  12     THEIR ACCESS.  THAT'S NOT THE SAME THING.

11:28:23  13             BUT EVEN IF YOU TAKE THIS STORY THEY ARE TELLING IN THEIR

11:28:27  14     COMPLAINT, IT'S THAT SONY WROTE THIS E-MAIL SAYING THEY DON'T

11:28:30  15     USE THE API AND THEN YOUTUBE SAID THEY DO USE THE API AND THEN

11:28:34  16     THE NMPA SNIPPETS OF CODE AND SCREEN SHOTS SHOWING THAT THEY DO

11:28:40  17     USE THE API.

11:28:41  18          SO THIS IDEA THAT WHAT JEFF WALKER SAID IS THE TRUTH

11:28:46  19     FOREVER AFTER IS JUST NOT CREDIBLE, I THINK THEY KNOW IT'S NOT

11:28:50  20     CREDIBLE, THEY CERTAINLY DID NOT POINT TO ANYTHING IN THE

11:28:53  21     RECORD THAT COULD EVEN SUPPORT AN ADMISSION THAT APPLE RELIED

11:29:02  22     ON AN NMPA AT ALL OR THAT IT RELIED ON ANYTHING IN THE NMPA

11:29:05  23     LETTER THAT IT KNEW WAS FALSE.

11:29:07  24             AND JUST TO CIRCLE ON THAT, THE NMPA LETTER, AND I

11:29:12  25     REFERENCED THIS EARLIER, BUT IT SAYS MUSI USES MULTIPLE API

11:29:17  1    TOKENS AND APPLIES USERS INTO BUCKETS PER TOKEN AND THEN MOVES

11:29:21  2    USERS ONCE BANNED BY YOUTUBE, THIS ALLOWS MUSI TO EXCEED

11:29:26  3    YOUTUBE LIMITS AND SCALE WITHOUT NEEDING A COMMERCIAL API

11:29:29  4    ACCOUNT.

11:29:30  5        SO THE NMPA LETTER IS NOT SAYING THAT MUSI HAS A

11:29:33  6    COMMERCIAL API ACCOUNT, IT IS SAYING THAT IT IS ACCESSING THE

11:29:37  7    API THROUGH OTHER MEANS, IT IS ACCESSING THE CONTENT THROUGH

11:29:40  8    OTHER MEANS.

11:29:41  9        I'M NO EXPERT IN YOUTUBE TERMS OF SERVICE, BUT THEY

11:29:45  10   CERTAINLY SEEM LIKE THE API TERMS OF SERVICE, LIKE THE USER

11:29:48  11   TERMS OF SERVICE, THEY ALL PROHIBIT ANYBODY FROM USING YOUTUBE

11:29:52  12   CONTENT COMMERCIALLY AND RUNNING YOUR OWN ADS ON IT AND

11:29:57  13   PROHIBIT YOU FROM USING UNAUTHORIZED MEANS TO ACCESS THAT

11:30:00  14   CONTENT.

11:30:00  15       SO THIS WHOLE DISTINCTION OF WE'RE NOT SUBJECT TO THE API

11:30:03  16   TERMS, I THINK IS NOT SUPPORTABLE, BUT IT'S NOT SUPPORTABLE IN

11:30:07  17   THE LOGIC OF THE COMPLAINT AND THEY CERTAINLY HAVE NOT

11:30:09  18   IDENTIFIED TODAY ANY EVIDENCE SUPPORTING THE BLOCKBUSTER

11:30:14  19   ALLEGATION IN PARAGRAPH 1 OF THEIR COMPLAINT THAT APPLE

11:30:17  20   ADMITTED THAT IT RELIED ON EVIDENCE IT KNEW WAS FALSE.

11:30:20  21       I JUST WANT TO SAY ALSO THEY SAID THAT THAT E-MAIL SAYS

11:30:23  22   THAT THEY TOLD APPLE THAT THEY HAVEN'T USED THE API SINCE 2016,

11:30:28  23   I JUST WANT TO POINT THE COURT TO EXHIBIT 10 TO MY DECLARATION

11:30:32  24   WHICH IS A DOCUMENT THAT MUSI ALSO SUBMITTED TO APPLE, THIS

11:30:37  25   TIME IN 2021, PURPORTING TO GIVE IT AUTHORIZATION TO USE THE

11:30:41  1    API.

11:30:42  2         SO EVEN THE THINGS THEY ARE SAYING HERE IN COURT TODAY ARE

11:30:45  3    NOT SUPPORTED BY THE EVIDENCE -- ARE NOT SUPPORTED BY THE

11:30:50  4    EVIDENCE.  SO I JUST WANTED TO RAISE THOSE POINTS QUICKLY.

11:30:58  5         I'M NOT GOING TO GO BACK THROUGH IT.  OBVIOUSLY OUR

11:31:01  6    POSITION IS THAT SAYING THAT YOU'VE RECEIVED AN E-MAIL FROM

11:31:04  7    SOMEBODY WHO MAY OR MAY NOT KNOW WHAT THEY ARE TALKING ABOUT,

11:31:07  8    NO MATTER WHAT THEIR TITLE IS, IS NOT THE SAME THING AS

11:31:10  9    ADMITTING YOU RELIED ON FALSE INFORMATION.

11:31:12  10        I THINK THAT THE SINGH TESTIMONY WAS ALSO MISREPRESENTED

11:31:15  11   AS WELL AS THE TESTIMONY ABOUT THE CALL WITH YOUTUBE.  YOUTUBE

11:31:20  12   DID NOT SAY ON THAT CALL THAT IT WAS ONLY RAISING A VIOLATION

11:31:28  13   OF THE API TERMS.

11:31:29  14        AS I MENTIONED, LOTS OF CONDUCT CAN VIOLATE BOTH SETS OF

11:31:32  15   TERMS, SAYING THAT THERE IS AN API ABUSE ISSUE COULD MEAN THE

11:31:36  16   SAME THING THAT THE NMPA IS SAYING, IS THAT YOU ARE ACCESSING

11:31:39  17   THINGS THROUGH UNAUTHORIZED MEANS WHICH IS WHAT THE IFPI WAS

11:31:45  18   SAYING WHICH IS CONSISTENT ACROSS A NUMBER OF COMPLAINTS THAT

11:31:49  19   ARE SET OUT IN EXHIBIT 1 TO MY DECLARATION.

11:31:55  20        SO I APPRECIATE YOUR TIME WITH THIS, YOUR HONOR, AND OUR

11:32:00  21   POSITION REMAINS THESE ALLEGATIONS WERE MADE WITHOUT

11:32:03  22   EVIDENTIARY SUPPORT, THAT COUNSEL KNEW THAT THE FACTS DIDN'T

11:32:06  23   SUPPORT THE ALLEGATIONS, AND THAT AS A MATTER OF DETERRING

11:32:09  24   CONDUCT, THEY SHOULD BE SANCTIONED.

11:32:11  25             THE COURT:  OKAY.  SUBMITTED.

11:32:14  1          ALL RIGHT.  THE COURT WILL TAKE THIS MOTION UNDER

11:32:16  2     SUBMISSION.

11:32:16  3          THANK YOU.

11:32:17  4          (THE PROCEEDINGS WERE CONCLUDED AT 11:32 A.M.)

          5

          6

          7

          8

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1

2

3                        **CERTIFICATE OF REPORTER**

4

5

6

7            I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

8    UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

9    CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

10   HEREBY CERTIFY:

11            THAT THE FOREGOING TRANSCRIPT, CERTIFICATE

12   INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF

13   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

14

15

16

17

18

19

20

21

22   _____
     SUMMER A. FISHER, CSR, CRR
23   CERTIFICATE NUMBER 13185

24
     DATE:  7/31/25
25