UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSI INC., | Case No. 24-cv-06920-EKL |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| APPLE INC., | Re: Dkt. No. 68 |
| Defendant. | |

This action arises out of Defendant Apple Inc.'s decision to remove Plaintiff Musi Inc.'s music streaming application ("Musi app") from the App Store following third-party complaints that the app violates intellectual property rights.  Musi claims that Apple breached the Developer Program License Agreement ("DPLA"), which governs the relationship between Apple and software developers, and that Apple breached the implied covenant of good faith and fair dealing. Apple moves to dismiss, primarily arguing that it had an express contractual right to remove the Musi app from its App Store.  *See* Mot. to Dismiss, ECF No. 68.  The Court reviewed the briefs and relevant law and heard argument on the motion.  For the following reasons, Apple's motion to dismiss is GRANTED, and Musi's complaint is DISMISSED with prejudice.

## I.    BACKGROUND

### A.    Factual Background[1]

Musi is "the developer, owner, and operator of the Musi app," which draws from "publicly available content on YouTube's website."  First Am. Compl. ¶ 2, ECF No. 67 ("FAC").  The Musi app was downloadable through the App Store – "an online marketplace for apps" – for years until

---

[1] These facts are drawn from the allegations in the complaint, documents attached to the complaint – including the DPLA – and documents that are incorporated by reference.  *See infra* Section I.C.

United States District Court
Northern District of California

United States District Court
Northern District of California

it was removed by Apple in September 2024. *Id.*

Both Musi and Apple had received complaints about the Musi app for years before it was ultimately removed from the App Store. These complaints alleged that the Musi app infringed third-party intellectual property rights or violated certain terms of service. For example, in April 2021, YouTube complained to Apple and Musi that "the Musi app violated YouTube's Terms of Service because (1) the Musi app accessed and used YouTube's non-public interfaces; (2) the Musi app used the service for a commercial use; and (3) the Musi app violated YouTube's prohibition on the sale of advertising 'on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales.'" FAC ¶ 40; *see also* Milici Decl. Ex. 3, ECF No. 68-7. Musi "addressed these concerns" by denying them, and by arguing that it was justified in selling advertising over YouTube content streamed through the Musi app. FAC ¶ 41; *see also* Golinveaux Reply Decl. Ex. 1 at 2, ECF No. 31-13. YouTube renewed its complaint to Apple in March 2023, but it was not resolved. *See* FAC ¶ 42.

In 2024, "Apple was facing mounting pressure from the music industry," which had made other "unsuccessful attempts to remove the Musi app from the App Store." *Id.* ¶¶ 6-7. In April 2024, "several music-industry players" escalated their complaints directly to Apple "to demand Musi's removal" from the App Store. *Id.* ¶ 8. Musi focuses on a complaint from Sony Music Entertainment ("SME" or "Sony"). *Id.* ¶ 44. Sony's letter to Apple states:

> I am reaching out to see whether you might be able to help us identify a path forward in our efforts to have the Musi app removed from the Apple app store. <u>The Musi app sources SME music content from YouTube without SME authorization by circumventing YouTube's technical protection measures</u> (i.e., rolling cypher). We have worked with YouTube to remove API access from Musi, but the app finds ways to access our content through technological means that are more difficult for Google to action. The app is not available in the Google App store. <u>It would be helpful to understand what Apple may need to make a decision to remove the app from the storefront. We are not aware that Musi pays any of the creators or rightsholders whose music they make available in their app</u>.
>
> <u>The IFPI (our international trade association) has participated in Apple's mitigation process with Musi for several years. All indications are that the conversations have not been productive or lead to resolution. SME is considering other enforcement options,</u> but it would be helpful to understand if additional enforcement measures would move the needle for purposes of Apple and the App Store. Ideally, we would like to establish a line of communication around unlicensed music apps. If you might be able to facilitate appropriate introductions, it would be very helpful.

Milici Decl. Ex. 2, ECF No. 68-6 (emphasis added).

Musi claims that, in order to appease Sony and Apple's other "friends in the music industry," Apple "solicited YouTube to resurrect its" prior disputes regarding the Musi app. FAC ¶ 8. Musi further asserts that Apple "solicited a letter of support for YouTube's supposed complaint" from the National Music Publishers' Association ("NMPA"), and that this letter "was littered with falsehoods, including factual claims that Apple *knew* to be false." FAC ¶ 9. The NMPA letter states that "Musi is an audio streaming app that leeches its content offerings from YouTube's Application Programming Interface ('API') to avoid paying copyright licensing fees. The app offers an alternative user interface for accessing the entire YouTube video library, except with ads served by Musi rather than YouTube." Milici Decl. Ex. 4 at 1, ECF No. 68-8. The NMPA expressed concern that the Musi app's "ad manipulation serves to undermine NMPA members' various YouTube licensing structures." *Id*. The NMPA letter attached purported evidence of Musi's use of YouTube's API. *Id*. at 4-5. The NMPA letter also included analysis of Musi's software code to demonstrate how "Musi lays its own ads over YouTube's ads." *Id*. at 4. As noted above, Musi disputes that it uses YouTube's API, but does not dispute that the Musi app plays and displays YouTube content and sells advertising that displays over the YouTube content. *See* FAC ¶ 37; *see also* Golinveaux Reply Decl. Ex. 1 at 2.

On August 8, 2024, Apple notified Musi that it received a complaint from YouTube on July 29, 2024, alleging that the Musi app infringes YouTube's intellectual property rights and violates its terms of service. FAC Ex. C at 1-2, ECF No. 67-4. The notice informed Musi that failure to respond to YouTube "or to take steps toward resolving [the] dispute may lead to removal of the app(s)" from the App Store. *Id*. at 2. On August 12, 2024, Musi responded to Apple that it believed YouTube's claims were "unsubstantiated." FAC Ex. D at 3, ECF No. 67-5. On August 14, 2024, Apple noted that the dispute was "still not resolved," and it instructed Musi again to "contact YouTube Legal immediately regarding this issue." *Id*. at 2. On September 6, 2024, YouTube wrote to Apple: "Musi has not reached out to us . . . and [the Musi] app continues to violate our Terms of Service. We request that you please proceed with removing [the Musi] app from the App Store." *Id*. Finally, after receiving this email, Musi contacted YouTube directly on

United States District Court
Northern District of California

September 6, 2024, and repeated its position that the Musi app complies with YouTube's terms. FAC Ex. E at 1, ECF No. 67-6.

On September 18, 2024, Apple notified Musi that if the YouTube dispute "is not resolved shortly, Apple may be forced to pull your application(s) from the App Store." FAC Ex. F at 3, ECF No. 67-7. But Musi did not commit to changing the Musi app to address YouTube's complaint. Instead, Musi argued to Apple that YouTube did not provide "any details to substantiate its complaint." *Id*. at 1-2. On September 24, 2024, Apple removed the Musi app from the App Store. Apple reminded Musi that it was Musi's responsibility "to resolve the matter directly with [YouTube], or risk removal of [the Musi] app from the App Store." FAC Ex. G at 1, ECF No. 67-8. Because Musi failed to resolve YouTube's complaint, Apple removed the Musi app from the App Store "on the basis of intellectual property infringement." *Id*. at 1.

### B.    Procedural History

Musi initiated this action on October 2, 2024, asserting breach of contract and breach of the implied covenant of good faith and fair dealing. *See* Compl. ¶¶ 43-54, ECF No. 1. On October 9, 2024, Musi filed a motion for preliminary injunction. *See* ECF No. 10. The preliminary injunction sought to prevent Apple "from refusing to list or otherwise making unavailable the Musi app from the App Store." Proposed Order at 2, ECF No. 10-22. The parties stipulated to defer Apple's deadline to file a motion to dismiss until after the close of briefing on Musi's motion for preliminary injunction. *See* Stip. at 2, ECF No. 25; *see also* Order, ECF No. 26 (granting stipulation with slight modification). Briefing on the motion for preliminary injunction closed on December 6, 2024, and Apple filed its motion to dismiss Musi's original complaint on December 11, 2024. *See* ECF Nos. 31, 33.

In advance of the initial case management conference and hearing on Musi's motion for preliminary injunction, Musi stated that it "may amend its complaint" because Apple's submissions in connection with the preliminary injunction briefing "revealed highly relevant facts previously unknown to Musi." Joint Case Mgmt. Statement at 9, ECF No. 36. Apple contended that "Musi's legal theory cannot be remedied through amendment" because "Apple acted within its express contractual rights in removing the Musi app from the App Store." *Id*. Consistent with

United States District Court
Northern District of California

United States District Court
Northern District of California

that position, Apple asked the Court to stay discovery pending a ruling on its then-pending motion to dismiss. *Id*. at 14.  Apple argued that no discovery was needed because Musi's claims fail based on the "plain language" of the DPLA.  *Id*. at 17.  Musi vigorously opposed a discovery stay. *See id*. at 9-14.  Musi acknowledged that Apple's motion to dismiss was potentially dispositive of the case but argued that discovery was needed to probe Apple's claimed reasons for removing the Musi app from the App Store.  *See id*. at 10-12.

On January 9, 2025, the Court heard argument on Musi's motion for preliminary injunction and denied the motion with a written order to follow.  1/9/25 Hr'g Tr. 47:3-48:17, ECF No. 41. After issuing its ruling, the Court held an initial case management conference, at which Apple repeated its request to stay discovery, and Musi renewed its request for leave to amend the complaint.  *See id*. 49:15-21, 55:18-57:9.  The Court granted Musi leave to amend the complaint in light of new information that Apple had relied on to oppose the motion for a preliminary injunction.[2]  The Court also terminated Apple's then-pending motion to dismiss as moot in light of the Court's order granting Musi leave to amend the complaint.  *See id*. 60:8-19.  The Court set a deadline of March 10, 2025, for Musi to file an amended complaint.  Case Mgmt. & Scheduling Order at 2, ECF No. 38.

The parties commenced discovery, and pursuant to the Court's instruction, prioritized issues relevant to Musi's amendments to the complaint.  *See, e.g.*, 1/9/25 Hr'g Tr. 73:6-13.  The parties raised two discovery disputes to Magistrate Judge Cousins.  Judge Cousins granted in part Musi's motion to compel Apple to produce documents from an additional custodian on an expedited basis.  *See* Min. Entry, ECF No. 52.  Judge Cousins also denied Apple's motion for a protective order, thus permitting Musi to take the depositions of two key Apple employees.  *See* Min. Entry, ECF No. 59.  The parties stipulated to further extend Musi's deadline to amend the complaint to March 12, 2025, so Musi could complete the depositions and use the testimony to amend the complaint.  *See* Order Granting Stip., ECF No. 61 (granting extension in light of

---

[2] Musi needed leave of court to amend because its time to amend as a matter of course had expired.  Musi did not amend its complaint within 21 days after Apple served its motion to dismiss on December 11, 2024.  *See* Fed. R. Civ. P. 15(a)(1).

depositions scheduled for March 6 and 7, 2025).  In sum, when Musi amended the complaint, it had access to more than 3,500 documents produced by Apple, responses to interrogatories and requests for admission, and deposition testimony from two Apple witnesses.  *See* Joint Disc. Letter Br. at 1, ECF No. 58.

### C.    Request for Judicial Notice

When deciding a Rule 12(b)(6) motion, courts generally do not consider material outside of the pleadings.  *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011).  However, courts may consider "documents incorporated in the complaint by reference."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  Incorporation by reference "treats certain documents as though they are part of the complaint itself.  The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'"  *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  Additionally, courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Apple asks the Court to consider five documents in connection with its motion to dismiss.  *See* Req. for Judicial Notice, ECF No. 68-3 ("RJN").  Exhibit 1 is a copy of the Apple Developer Agreement, which is a separate document from the DPLA.  Milici Decl. Ex. 1, ECF No. 68-5.  Musi opposes Apple's request.  *See* Opp. at 3 n.1, ECF No. 69.  The Court will not consider this document because the DPLA is dispositive of Apple's motion to dismiss as explained below.  Thus, Apple's request is denied as moot.

Exhibit 2 is the email from a Sony Music representative to Apple, described above.  Milici Decl. Ex. 2.  This document is incorporated by reference in the complaint because Musi's claim relies on it to explain why Apple allegedly acted in bad faith.  *See* FAC ¶¶ 1, 8, 11, 44.  Musi does not dispute that the Sony email is incorporated by reference.  Musi also cites this document in its

6

opposition brief. *See* Opp. at 15. Accordingly, the Court will consider Exhibit 2.

Exhibit 3 is a cease-and-desist email from YouTube to Musi dated April 22, 2021, described above. Milici Decl. Ex. 3. This document is also incorporated by reference in the complaint. *See* FAC ¶¶ 4, 40. Musi relies upon this exchange as proof that it responded to YouTube's complaints in the past, and that therefore YouTube had no basis to maintain its complaints in 2024. Musi criticizes Apple for asking the Court to consider this email without considering Musi's response letter, which Musi describes in the complaint and relies upon to oppose Apple's motion to dismiss. *See* Opp. at 15. To resolve this objection, the Court will also consider Musi's response letter dated May 5, 2021. *See* Golinveaux Reply Decl. Ex. 1. Musi's letter is incorporated by reference in the complaint because Musi relies on its response to YouTube to support its allegations of bad faith. *E.g.*, FAC ¶¶ 4, 41, 43.

Exhibit 4 is the letter from the NMPA to Apple providing purported evidence of Musi's infringement and violation of YouTube policies, described above. Milici Decl. Ex. 4. This document is also incorporated by reference in the complaint. *See* FAC ¶¶ 1, 9, 10, 50-52. This document is key to Musi's claim of bad faith because Musi claims that Apple solicited the NMPA letter as a pretext, and that Apple knew the NMPA letter contained false information. Musi does not dispute that the Court may consider this document.

Exhibit 5 is the YouTube Terms of Service. Milici Decl. Ex. 5, ECF No. 68-9. Although not material to the Court's analysis below, the Terms of Service are also incorporated by reference in the complaint because Musi's claimed compliance with them forms part of the basis for its claim that Apple lacked a reasonable belief to remove the Musi app from the App Store. FAC ¶¶ 1, 4-5, 38-40, 42, 48-49, 53.

In sum, Apple's request for judicial notice is GRANTED as to Exhibits 2 through 5, but DENIED as to Exhibit 1.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

## III.    DISCUSSION

Apple moves to dismiss, relying primarily on its contractual right to remove the Musi app from the App Store.  The Court first summarizes the key terms of the DPLA, then addresses Musi's claims for breach of contract and breach of the implied covenant of good faith and fair dealing in turn.

### A.    Terms of the DPLA

The DPLA outlines the terms under which a developer like Musi may use certain Apple Software to develop an application for use on Apple devices.  The stated purpose of the DPLA is to facilitate development of applications "for Apple-branded products."  *Id.* at 1.  To that end, Apple grants developers "a limited license to use the Apple Software and Services . . . to develop and test [their] Applications on the terms and conditions set forth in [the DPLA]."  *Id.*  "Either party may terminate [the DPLA] for its convenience, for any reason or no reason, effective 30 days after providing the other party with written notice of its intent to terminate."  *Id.* § 11.2.

The DPLA also provides that some applications may be distributed through the App Store, but "only if selected by Apple (in its sole discretion)."  *Id.* § 3.2(g); *see also id.* at 1 ("Applications developed under this Agreement . . . can be distributed[] through the App Store, if selected by Apple[.]").  Apple "may, in its sole discretion . . . reject [an] Application for distribution for any reason."  *Id.* § 6.9.  Distribution of applications through the App Store is "subject to the distribution terms contained in Schedule 1" to the DPLA.  *Id.* at 1.  Schedule 1 provides that, after

United States District Court
Northern District of California

an application is accepted by Apple for distribution through the App Store, both Apple and the developer have the right to remove the application from the App Store at any time. "Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to [the developer]." DPLA Schedule 1 § 6.3. Likewise, a developer "may withdraw any or all of the Licensed Applications from the App Store . . . at any time, and for any reason[.]" *Id*. § 6.4.

The DPLA also includes provisions relating to intellectual property rights and disputes that may arise with respect to applications offered through the App Store. Developers agree not to "violate, misappropriate, or infringe any Apple or third-party copyrights, trademarks, rights of privacy and publicity, trade secrets, patents, or other proprietary or legal rights." *Id*. § 3.2(d). "[I]n the event a dispute arises over the content" of an application, the developer must "permit Apple to share [its] contact information with the party filing such dispute" and "follow Apple's app dispute process on a non-exclusive basis and without any party waiving its legal rights." DPLA Schedule 1 § 4.1(g).

In sum, these provisions establish that the DPLA is mutually terminable by either party, and applications may be removed from the App Store by either party, upon satisfying the relevant notice requirements. The DPLA also establishes a non-exclusive dispute process that a developer must follow in response to complaints.

### B.    Breach of Contract

Musi's breach of contract claim requires "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). A contract must be interpreted "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636. The contract's language governs if it is "clear and explicit." *Id*. § 1638.

Musi fails to plausibly allege that Apple breached the DPLA by removing the Musi app from the App Store. Relevant here, the DPLA includes the following provision regarding Apple's right to remove an application from its App Store offerings:

> Apple reserves the right to cease marketing, offering, and allowing download by end-users of the Licensed Applications at any time, with or without cause, by providing notice of termination to You. Without limiting the generality of this Section 6.3, You acknowledge that Apple may cease allowing download by end-users of some or all of the Licensed Applications, or take other interim measures in Apple's sole discretion, if Apple reasonably believes, based [on] human and/or systematic review, and, including without limitation upon notice received under applicable laws, that: (i) those Licensed Applications are not authorized for export to one or more of the regions designated by You under Section 2.1 hereof, in accordance with the Export Administration Regulations or other restrictions; (ii) those Licensed Applications and/or any end-user's possession and/or use of those Licensed Applications, infringe patent, copyright, trademark, trade secret or other intellectual property rights of any third party; (iii) the distribution and/or use of those Licensed Applications violates any applicable law in any region You designate under Section 2.1 of this Schedule 1; (iv) You have violated the terms of the Agreement, this Schedule 1, or other documentation including without limitation the App Review Guidelines; or (v) You or anyone representing You or Your company are subject to sanctions of any region in which Apple operates. An election by Apple to cease allowing download of any Licensed Applications, pursuant to this Section 6.3, shall not relieve You of Your obligations under this Schedule 1.

DPLA Schedule 1 § 6.3 (emphasis added).

The plain language of the DPLA governs because it is clear and explicit: Apple may "cease marketing, offering, and allowing download by end-users of the [Musi app] at any time, with or without cause, by providing notice of termination." *Id*. Based on this language, Apple had the right to cease offering the Musi app without cause if Apple provided notice to Musi. The complaint alleges, and Musi does not dispute, that Apple gave Musi the required notice. FAC ¶¶ 3, 56.[3] Therefore, Apple's decision to remove the Musi app from the App Store did not breach the DPLA.

Musi contends that more was required of Apple. Musi points to other language in the DPLA, which provides that "Apple may cease allowing download by end-users . . . if Apple

---

[3] Several documents that Musi attached to the amended complaint reflect that Apple provided notice that the Musi app would be removed from the App Store if Musi did not resolve YouTube's complaint promptly. *See* FAC Ex. C at 1-2 (notifying Musi on August 8, 2024, that "[d]evelopers with a history of allegations of repeat infringement . . . are at risk of termination from the Developer Program" and that "[f]ailure to . . . take steps toward resolving a dispute may lead to removal of the app(s) at issue"); FAC Ex. F at 2-3 (notifying Musi on September 18, 2024, that "[i]f the matter is not resolved shortly, Apple may be forced to pull your application(s) from the App Store"); FAC Ex. G at 1 (notifying Musi on September 24, 2024, that the Musi app "will be removed from the App Store on the basis of intellectual property infringement").

reasonably believes, based [on] human and/or systematic review," that an application infringes intellectual property rights. DPLA Schedule 1 § 6.3 (emphasis added). Musi proposes that this "reasonable belief" clause limits Apple's right to cease offering an application "at any time, with or without cause." According to Musi, Apple was required to (1) conduct a "human and/or systematic review" of YouTube's complaint, and (2) based on that review, form a reasonable belief that the Musi app infringed intellectual property rights. Opp. at 7.

The problem with Musi's construction of the DPLA is that the "reasonable belief" clause expressly does not "limit[] the generality" of Apple's right to cease offering an application "at any time, with or without cause." DPLA Schedule 1 § 6.3 ("Without limiting the generality of this Section 6.3 . . . ."). When a contract's plain language expressly states that a clause is not limiting, a court should not construe the clause as a limitation. *See FTC v. EDebitPay, LLC*, 695 F.3d 938, 943 (9th Cir. 2012) (holding that the phrase "including but not limited to" is a "phrase of enlargement" indicating that "enumerated examples following the phrase should not be construed as an exhaustive listing"); *see also Marder v. Lopez*, 450 F.3d 445, 451-52 (9th Cir. 2006). Musi argues that the "reasonable belief" clause is superfluous if it has no limiting effect. Opp. at 7. But it is neither superfluous nor unusual for a contract to list non-exhaustive examples of a general provision. *See EDebitPay*, 695 F.3d at 943. By contrast, Musi's preferred interpretation would render the primary clause – that Apple may act "with or without cause" – superfluous.[4]

Judge Cousins' opinion in *Intango, Ltd. v. Mozilla Corp.* is instructive. No. 20-cv-02688-NC, 2020 WL 12584274 (N.D. Cal. Aug. 25, 2020). In that case, the plaintiff made add-ons for Mozilla's Firefox browser. Mozilla disabled the plaintiff's add-ons because they allegedly

---

[4] Listing specific termination conditions in Schedule 1 § 6.3 is also consistent with the overall structure of Schedule 1. Section 6.3 states that Apple may cease allowing downloads of an application if Apple reasonably believes, or upon receiving notice, that the application is not authorized for export or infringes intellectual property rights, that distribution of the application violates any law, or that the developer has violated the DPLA or other documentation. These conditions mirror the other terms in Schedule 1. For example, Schedule 1 § 2.3 requires developers to certify compliance with export requirements. Schedule 1 § 4.1 requires developers to warrant that their applications do not violate or infringe any intellectual property rights. Schedule 1 § 4.1 also requires developers to warrant that their applications do not contain any material that is "prohibited or restricted under the laws or regulations" of any region in which the application will be distributed. In sum, Section 6.3 identifies the consequences that may follow if a developer violates other terms in Schedule 1, without limiting Apple's rights otherwise.

11

violated Mozilla's distribution agreement by "secretly redirecting its users' internet searches and tracking its users' search activity." *Id*. at *1. Mozilla's distribution agreement provided that:

> Mozilla <u>reserves the right</u> (though not the obligation) <u>to, in [Mozilla's] sole discretion, remove or revoke access to any Listed or Unlisted Add-ons</u>. <u>This applies, but is not limited to, Add-ons that, in [Mozilla's] reasonable opinion, violate this Agreement or the law, any applicable Mozilla policy</u>, or is in any way harmful or objectionable. In addition, [Mozilla] may at any time remove Your Add-on from AMO; revoke Your Mozilla Certificate; blocklist an Add-on; delete your AMO account; flag, filter, modify related materials (including but not limited to descriptions, screenshots, or metadata); reclassify the Add-on; or take other corrective action.

*Id.* at *6 (emphasis added). This language, including the provision that Mozilla "may at any time remove" add-ons, gave Mozilla broad discretion to remove the plaintiff's add-on. Judge Cousins held that Mozilla's right to remove add-ons was expressly "'not limited to' situations where Mozilla found that the add-on violates Mozilla policy." *Id*. The same is true here. The DPLA provides example circumstances under which Apple may cease offering an application, and those examples do not limit the broad discretion that Apple reserved for itself.

Musi relies on *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (2008), to argue that the "reasonable belief" clause limits Apple's rights. *Nygard* is inapposite. In that case, a company alleged that its former employee violated a confidentiality agreement by making statements about the employee's working conditions. *Id.* at 1046. The confidentiality agreement prohibited the former employee from disclosing "any information, knowledge or data of the Company." *Id.* at 1044. The court reasoned that this phrase was "susceptible of more than one interpretation," so it "must be construed in light of the kinds of protected information enumerated in the sentence that follows." *Id.* at 1046 & n.5. By contrast, the clause in the DPLA that Musi seeks to limit is unambiguous: It provides that Apple may cease offering an application "at any time, with or without cause." DPLA Schedule 1 § 6.3. There is simply no textual basis in the DPLA to construe a limitation on Apple's right to cease offering an application, as long as Apple provided notice – which it did.[5] Accordingly, Musi's breach of contract claim is dismissed.

---

[5] Musi also argues that the "app dispute process" described in Section 4.1(g) of the DPLA would be "redundant" if Apple could unilaterally remove an application from the App Store. Opp. at 7.

#### C.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Musi also claims that Apple violated the covenant of good faith and fair dealing. A claim for breach of the implied covenant of good faith and fair dealing requires "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act." *VFLA Eventco, LLC v. William Morris Endeavor Ent., LLC*, 100 Cal. App. 5th 287, 312-13 (2024) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).

Although a plaintiff need not identify a "breach of a specific provision of [a] contract" to state a claim, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) (in bank). It follows that the implied covenant cannot require action that contradicts the rights and obligations set forth by a contract's express terms. The Supreme Court of California has observed: "We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." *Id.* at 373-74; *see also Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) ("Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" (quoting *Carma*, 2 Cal. 4th at 374)).

Here, Musi has not plausibly alleged that Apple breached an implied covenant. Based on the plain language of the DPLA, Apple had the express right to remove the Musi app from the App Store "at any time, with or without cause." DPLA Schedule 1 § 6.3. The covenant of good faith and fair dealing cannot impose an obligation on Apple that contradicts this express term.

---

But this provision imposes an obligation on ***Musi***, not on Apple, and it expressly does not waive Apple's rights. DPLA Schedule 1 § 4.1(g) (requiring developers "to permit Apple to share [their] contact information with the party filing [a] dispute fand to follow Apple's app dispute process on a non-exclusive basis and without any party waiving its legal rights"). There is nothing redundant about requiring a developer to agree to follow a platform's informal dispute process, while also reserving a general right to remove an application – particularly if disputes persist.

United States District Court
Northern District of California

*Carma*, 2 Cal. 4th at 373-74; *see also Intango*, 2020 WL 12584274, at *7 (holding that a claim for beach of the implied covenant was "precluded by the specific terms" of the agreement, which permitted defendant to remove plaintiff's browser add-ons "at any time").

Musi argues that the Court must read into the DPLA an undefined constraint on Apple's right to cease offering an application through the App Store. Opp. at 9. It is true that, "where one party is invested with a discretionary power affecting the rights of another," that power "must be exercised in good faith." *Carma*, 2 Cal. 4th at 372. But "courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995). Here, there is no need to imply a further limitation on Apple's termination rights because "a contract with a mutual termination provision is not illusory when conditioned on notice." *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1063 (2010). That is precisely the structure of the DPLA, which provides parallel and mutual termination rights to both Musi and Apple upon notice to the other party. DPLA § 11.2; DPLA Schedule 1 §§ 6.3, 6.4.

Imposing a further limitation on Apple's termination rights would also frustrate the purpose of the DPLA and contradict its express terms. The purpose of the DPLA is to provide developers with a limited, non-exclusive license to use Apple software to develop and test applications, and to create a distribution arrangement that is mutually terminable at will. DPLA §§ 1, 3.2(g), 6.9. Just as Apple may remove an application from the App Store at any time by providing notice, so may a developer withdraw its application from the App Store at any time, and for any reason. DPLA Schedule 1 §§ 6.3, 6.4. Apple assumed no contractual obligation to continue distributing an application, and developers assumed no contractual obligation to continue offering an application – even if withdrawal of the application would disappoint Apple users, undermine the value of the App Store, or deprive Apple of commissions. Thus, the Court cannot imply an obligation on Apple to continue distributing the Musi app, or to continue overseeing an informal dispute process that, as acknowledged in the complaint, went nowhere.

14

The cases cited by Musi do not support its position. Instead, they demonstrate that courts will imply limits to a contract's express terms only under specific circumstances. For example, *Chodos v. West Publishing Co.*, 292 F.3d 992 (9th Cir. 2002), involved a contract between an author and a publisher. The author "spent a number of years fulfilling his part of the bargain and had submitted a completed manuscript" of a treatise. *Id*. at 994. But the publisher "declined to publish the treatise, citing solely sales and marketing reasons." *Id*. The Ninth Circuit held that, because the contract "obligate[d] the publisher to make a judgment as to the quality or literary merit of the author's work . . . it must make that judgment in good faith, and cannot reject a manuscript for other, unrelated reasons." *Id*. at 997. The agreement in *Chodos* is distinguishable because it "impose[d] numerous obligations on the author" but imposed no obligation on the publisher. *Id*. at 996-97. Because the contract required one party to perform, but permitted the author party to terminate at will, it lacked "mutuality of obligation" unless the publisher's discretion was "limited by its duty of good faith and fair dealing." *Id*. at 997. Here, by contrast, the DPLA's distribution arrangement is mutually terminable by Musi or Apple upon notice – which was given. Moreover, Apple has performed under the DPLA by distributing the Musi app through the App Store for years. FAC ¶¶ 2, 5, 23-25; *see Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) (holding that a policy "was not illusory because plaintiffs obtained the benefits of the policy while it was operable"). Therefore, the DPLA is not illusory because neither Musi nor Apple is required to unilaterally perform subject to the other party's termination and non-performance on a whim.

Musi's other authority is likewise unpersuasive. In *Reyes v. Wells Fargo Bank, N.A.*, the court rejected a bank's position that it could "foreclose on Plaintiffs' home at any time, without notifying Plaintiffs . . . even if Plaintiffs have complied with all the requirements of" the parties' forbearance agreement. No. C-10-01667 JCS, 2011 WL 30759, at *16 (N.D. Cal. Jan. 3, 2011). The court held that the forbearance agreement would be illusory if it granted the bank "sole discretion to terminate . . . at any time without notice to Plaintiffs." *Id*. Of course, permitting a bank to capriciously foreclose on a home while the homeowners were making the required payments would frustrate the very purpose of a forbearance agreement – *i.e.*, to stave off

United States District Court
Northern District of California

United States District Court
Northern District of California

foreclosure. *See id.* at *2. Nor does *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165 (2015), support Plaintiff's position. In *Serafin*, the court stated the uncontroversial proposition that an employer may not exercise its discretionary power to ***modify*** its employment policies and practices in bad faith. *Id.* at 176. But here, Musi does not allege that Apple unilaterally modified the terms of the DPLA. Instead, according to the complaint, Apple ceased offering the Musi app through the App Store based on the existing, mutual provision in the DPLA.[6]

Finally, even if the implied covenant of good faith and fair dealing limited Apple's termination rights, which it does not, Musi still fails to plausibly allege that Apple acted in bad faith. For present purposes, the Court accepts as true Musi's allegation that Apple knew that Musi did not violate YouTube's API Terms of Service.[7] Regardless, the complaint reflects that Apple was facing pressure from multiple music industry complaints. The letter from Sony expressly states that its trade organization (the IFPI) had already tried to resolve issues with Musi through the app dispute process, but Musi was not cooperating. Milici Decl. Ex. 2. Sony accused Musi of sourcing Sony music content without Sony's authorization, and without paying creators or rightsholders. *Id.* Sony also warned Apple that it was "considering other enforcement options" given that the app dispute process was not productive. *Id.* Thus, regardless of the YouTube dispute, Apple was in receipt of at least one other active complaint about the Musi app. The implied covenant of good faith did not require Apple to side with Musi in this dispute. Nor did the implied covenant require Apple to continue to oversee an informal dispute process in which Musi "responded" to complaints by denying them. In sum, Apple was not required to expose itself to legal claims by Sony or other rightsholders for Musi's benefit. This claim is dismissed.

---

[6] Musi's other authority is also inapposite. *See InfoStream Grp., Inc. v. PayPal, Inc*., No. C 12-748 SI, 2012 WL 3731517, at *8 (N.D. Cal. Aug. 28, 2012) (Plaintiffs plausibly alleged "that PayPal acted in bad faith by terminating the [plaintiffs' account] for the sole purpose of benefitting plaintiffs' competitors."); *Campbell v. eBay, Inc*., No. 13-CV-2632 YGR, 2014 WL 3950671, at *2-3 (N.D. Cal. Aug. 11, 2014) (Plaintiff plausibly alleged bad faith based on alleged violations of the express terms of eBay's Buyer Protection Policy and other conduct that frustrated the plaintiff's legitimate expectations.).

[7] Apple moved for Rule 11 sanctions on the grounds that several key allegations in the amended complaint are factually baseless. That motion is addressed by a separate order. Here, the Court assumes the truth of well-pleaded allegations, regardless of their factual basis or lack thereof.

**D.    Dismissal is Without Leave to Amend**

Generally, if dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  In assessing whether to grant leave to amend, courts consider the factors set forth in *Foman v. Davis*, including the plaintiff's failure to cure pleading deficiencies "by amendments previously allowed" and whether amendment would be futile.  371 U.S. 178, 182 (1962).  "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended."  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996)); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile).

Here, the Court denies further leave to amend because amendment would be futile in light of the legal deficiencies of Musi's claims.  Additionally, Musi has not stated a claim even after the Court previously granted leave to amend and permitted two months of discovery.

Musi's claims fail as a matter of law for essentially the same reasons that Musi failed to show a likelihood of success at the preliminary injunction stage.  Specifically, Musi's claim for breach of contract fails because Apple had the contractual right under the DPLA to cease offering the Musi app if it provided notice of termination, which it did.  *See* Order Denying Mot. for Prelim. Inj. at 10-11, ECF No. 44 ("MPI Order").  Likewise, Musi's claim for breach of the implied covenant of good faith and fair dealing fails because the covenant does not impose obligations on Apple that contradict the express terms of the DPLA under these circumstances.  *Id*. at 14-15.  These are also the same issues Apple raised in its motion to dismiss the original complaint, which the Court terminated when it granted Musi leave to amend.  *See* Mot. to Dismiss at 6-13, ECF No. 33-1.  In sum, Musi has already had an opportunity to cure its pleading deficiencies, but it failed to do so.  Because Musi's claims fail as a matter of law, further amendment would be futile.  *See, e.g., Ofir v. Transam. Premier Life Ins. Co.*, 781 F. App'x 617,

17

619 (9th Cir. 2019) ("Amendment to add further factual allegations would have been futile given the legal deficiencies in [plaintiff's] theories of relief.").

At the motion hearing, Musi requested further leave to amend the complaint "to quote the specific deposition testimony and the additional documents" obtained in discovery to "provide even more detail" to support its theory of bad faith. 4/30/25 Hr'g Tr. 27:24-29:10, ECF No. 80; *see also* Opp. at 18 n.6. But Musi did not identify any facts that it could allege that are not already included in the amended complaint. *See id.* 28:23-29:19 (vaguely referencing "additional details" without identifying any). Nor has Musi identified any other facts that would be material in light of the plain language of the DPLA. Musi's failure to identify "any such fact in [its] briefing or argument" supports dismissal without leave to amend. *Dougherty v. City of Covina*, 654 F.3d 892, 901 (9th Cir. 2011); *see also Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (affirming denial of leave to amend because plaintiff "did not propose any new facts or legal theories for an amended complaint and therefore gave the Court no basis to allow an amendment"). Finally, Musi already had the deposition testimony and documents from Apple when it amended the complaint. Indeed, the Court further extended Musi's deadline to amend the complaint after discovery concluded so Musi could use Apple documents and witness testimony to amend the complaint, which Musi did. *See* Order Granting Stip. For all these reasons, dismissal is without leave to amend.

## IV.     CONCLUSION

For the foregoing reasons, Apple's motion to dismiss is GRANTED. Musi's complaint is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: March 16, 2026

_____
Eumi K. Lee
United States District Judge

United States District Court
Northern District of California

18